# NO. 25-2022

In The

# United States Court Of Appeals

For The

# Fourth Circuit

KRISTEN GRACE, ROSSANA
HERNANDEZ, J. MICHAEL
HEYSER, LISA LEAKE,
CHRISTOPHER STEIN,
CHRISTOPHER SUBLETT,
and LESLIE ZEPEDA

*Plaintiffs – Appellants,*

**and**

FRANCISCO GARZA

*Plaintiff,*

v.

RTX CORPORATION f/k/a
RAYTHEON
TECHNOLOGIES
CORPORATION,

*Defendant – Appellee,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT
OF VIRGINIA AT ALEXANDRIA

---

**JOINT APPENDIX**

---

**E. Scott Lloyd**
**LLOYD LAW GROUP, PLLC**
**106 Chester Street, Suite 1**
**Front Royal, VA 22630**
*Counsel for Appellant*

**Samantha L. Brooks**
**SEYFARTH SHAW LLP**
**975 F Street, N.W.**
**Washington, D.C. 20004**
*Counsel for Appellee*

## Table of Contents
## Joint Appendix

Docket Sheet ...................................................................................................JA001

Original Complaint (ECF No. 1) ....................................................................JA009

Motion for Sanctions Pursuant to Rule 11 (ECF No. 4) ..........................JA018

Memorandum in Support re 4 Motion for Sanctions (ECF No. 5) .......................JA022

Declaration of Samantha L. Brooks (ECF No. 5-1) ..................................JA044

     and Exhibits A-O thereto (ECF Nos. 5-2 through 5-16)............................JA048

Motion to Dismiss (ECF No. 7) .....................................................................JA183

Amended Complaint (ECF No. 16) ................................................................JA188

Motion to Dismiss (ECF No. 18) ...................................................................JA200

Memorandum in Support re 18 Motion to Dismiss (ECF No. 19).......................JA205

Notice of Hearing Date on Defendant's Motion to Dismiss (ECF No. 20) ........JA225

Memorandum in Opposition (ECF No. 22)..................................................JA228

Reply Memorandum (ECF No. 23)................................................................JA243

Order re Hearing (ECF No. 30)......................................................................JA254

Order re Motion to Dismiss (ECF No. 31) ..................................................JA255

Notice of Appeal (ECF No. 37)..................................................................JA264

APPEAL,JURY

# U.S. District Court
## Eastern District of Virginia - (Alexandria)
### CIVIL DOCKET FOR CASE #: 1:24-cv-02083-PTG-WBP

Grace et al v. RTX Corporation
Assigned to: District Judge Patricia Tolliver Giles
Referred to: US Magistrate Judge William B. Porter
Demand: $800,000,000
Case in other court: Fourth Circuit, 25-02022
Cause: 42:2000 Job Discrimination (Religion)

Date Filed: 11/20/2024
Jury Demand: Plaintiff
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**Kristen Grace**

represented by **Edward Scott Lloyd**
Lloyd Law Group, PLLC
Lloyd Law Group, PLLC
106 Chester Street
Suite 1
Front Royal, VA 22630
540-823-1110
Email: scott@lloydlg.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Francisco Garza**

represented by **Edward Scott Lloyd**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rossana Hernandez**

represented by **Edward Scott Lloyd**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Heyser**

represented by **Edward Scott Lloyd**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lisa Leake**

represented by **Edward Scott Lloyd**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christopher Stein**

represented by **Edward Scott Lloyd**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

JA001

**Christopher Sublett**                     represented by   **Edward Scott Lloyd**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Leslie Zepeda**                           represented by   **Edward Scott Lloyd**
                                                            (See above for address)
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**RTX Corporation**                         represented by   **Samantha Leader Brooks**
*formerly known as*                                          Seyfarth Shaw LLP (DC-NA)
Raytheon Technologies Corporation                           975 F Street NW
                                                            Washington, DC 20004-1454
                                                            NA
                                                            202-463-2400
                                                            Fax: 202-641-9209
                                                            Email: sbrooks@seyfarth.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Dawn Reddy Solowey**
                                                            Seyfarth Shaw LLP (MA-NA)
                                                            Two Seaport Blvd
                                                            Suite 1200
                                                            Boston, MA 02210
                                                            **NA**
                                                            617-946-4800
                                                            Fax: 617-439-3675
                                                            Email: dsolowey@seyfarth.com
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Owen Richard Wolfe**
                                                            Seyfarth Shaw, LLP (NY - NA)
                                                            620 Eighth Avenue
                                                            32nd Floor
                                                            New York, NY 10018
                                                            **NA**
                                                            212-218-5500
                                                            Fax: 917-344-1394
                                                            Email: owolfe@seyfarth.com
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 11/20/2024 | 1 | Complaint ( Filing fee $ 405, receipt number AVAEDC-9860258.), filed by Rossana Hernandez, Kristen Grace, Michael Heyser, Lisa Leake.(Lloyd, Edward) (Entered: 11/20/2024) |
| 11/21/2024 | 2 | Civil Cover Sheet re 1 Complaint by Francisco Garza, Kristen Grace, Rossana Hernandez, Michael Heyser, Lisa Leake, Christopher Stein, Christopher Sublett, Leslie Zepeda. |

JA002

| | | (Lloyd, Edward) (Entered: 11/21/2024) |
|---|---|---|
| 11/21/2024 | | Initial Case Assignment to District Judge Claude M. Hilton and US Magistrate Judge William B. Porter. (Cwel) (Entered: 11/22/2024) |
| 11/22/2024 | | Notice of Correction re 2 Civil Cover Sheet. Unfortunately, document number (2) is an incorrectly saved PDF fillable form which we have removed. Please refile the document after saving it correctly. To correctly save the PDF fillable form, click on the File menu select Print, and then select your PDF writer from the Printer Name List, then click on Print or OK depending on your program. (Cwel) (Entered: 11/22/2024) |
| 11/22/2024 | | No service issued at this time. (Cwel) (Entered: 11/22/2024) |
| 11/25/2024 | 3 | Civil Cover Sheet re 1 Complaint *resubmitted* by Francisco Garza, Kristen Grace, Rossana Hernandez, Michael Heyser, Lisa Leake, Christopher Stein, Christopher Sublett, Leslie Zepeda. (Lloyd, Edward) (Entered: 11/25/2024) |
| 01/24/2025 | 4 | MOTION for Sanctions *Pursuant to Rule 11* by RTX Corporation. (Brooks, Samantha) (Entered: 01/24/2025) |
| 01/24/2025 | 5 | Memorandum in Support re 4 MOTION for Sanctions *Pursuant to Rule 11* filed by RTX Corporation. (Attachments: # 1 Affidavit of Samantha Brooks, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O)(Brooks, Samantha) (Entered: 01/24/2025) |
| 01/24/2025 | 6 | Notice of Hearing Date set for February 28, 2025 re 4 MOTION for Sanctions *Pursuant to Rule 11*, 5 Memorandum in Support, (Brooks, Samantha) (Entered: 01/24/2025) |
| 01/24/2025 | 7 | MOTION to Dismiss for Failure to State a Claim by RTX Corporation. (Brooks, Samantha) (Entered: 01/24/2025) |
| 01/24/2025 | 8 | Memorandum in Support re 7 MOTION to Dismiss for Failure to State a Claim filed by RTX Corporation. (Brooks, Samantha) (Entered: 01/24/2025) |
| 01/24/2025 | 9 | Notice of Hearing Date set for February 28, 2025 re 8 Memorandum in Support, 7 MOTION to Dismiss for Failure to State a Claim (Brooks, Samantha) (Entered: 01/24/2025) |
| 01/24/2025 | | Set Deadlines as to 7 MOTION to Dismiss for Failure to State a Claim , 4 MOTION for Sanctions *Pursuant to Rule 11*. Motion Hearing set for 2/28/2025 at 10:00 AM in Alexandria Courtroom 800 before District Judge Claude M. Hilton. (triv) (Entered: 01/24/2025) |
| 01/27/2025 | 10 | Motion to appear Pro Hac Vice by Owen Richard Wolfe and Certification of Local Counsel Samantha L. Brooks Filing fee $ 75, receipt number AVAEDC-9969269. by RTX Corporation. (Brooks, Samantha) (Entered: 01/27/2025) |
| 01/27/2025 | 11 | Motion to appear Pro Hac Vice by Dawn Reddy Solowey and Certification of Local Counsel Samantha L. Brooks Filing fee $ 75, receipt number AVAEDC-9969298. by RTX Corporation. (Brooks, Samantha) (Entered: 01/27/2025) |
| 01/31/2025 | 12 | ORDER granting 10 Motion for Pro hac vice Appointed Owen Richard Wolfe for RTX Corporation. Signed by District Judge Claude M. Hilton on 1/31/2025. (swil) (Entered: 01/31/2025) |
| 01/31/2025 | 13 | ORDER granting 11 Motion for Pro hac vice Appointed Dawn Reddy Solowey for RTX Corporation. Signed by District Judge Claude M. Hilton on 1/31/2025. (swil) (Entered: 01/31/2025) |

JA003

| 02/07/2025 | 14 | RESPONSE in Opposition re 4 MOTION for Sanctions *Pursuant to Rule 11* filed by Francisco Garza, Kristen Grace, Rossana Hernandez, Michael Heyser, Lisa Leake, Christopher Stein, Christopher Sublett, Leslie Zepeda. (Lloyd, Edward) (Entered: 02/07/2025) |
|---|---|---|
| 02/13/2025 | 15 | REPLY to Response to Motion re 4 MOTION for Sanctions *Pursuant to Rule 11* filed by RTX Corporation. (Brooks, Samantha) (Entered: 02/13/2025) |
| 02/14/2025 | 16 | AMENDED COMPLAINT against All Defendants, filed by Christopher Stein, Rossana Hernandez, Christopher Sublett, Francisco Garza, Leslie Zepeda, Kristen Grace, Michael Heyser, Lisa Leake.(Lloyd, Edward) (Entered: 02/14/2025) |
| 02/24/2025 | | Reset Deadlines as to 4 MOTION for Sanctions *Pursuant to Rule 11*. Motion Hearing set for 2/28/2025 at 10:00 AM in Alexandria Courtroom 400 before US Magistrate Judge William B. Porter. (Sbro, ) (Entered: 02/24/2025) |
| 02/26/2025 | | Remark - Deadlines terminated - Motion Hearing set for 2/28/25 will be decided on the papers; no oral argument will be heard.(#7 - Per CMH Chambers). (yguy) (Entered: 02/26/2025) |
| 02/28/2025 | 17 | ORDERED that Defendant's Motion to Dismiss is DENIED as moot. It is further ORDERED that the hearing set for February 28, 2025 is CANCELLED re 7 MOTION to Dismiss for Failure to State a Claim. Signed by District Judge Claude M. Hilton on 2/28/2025. (Sbro, ) (Entered: 02/28/2025) |
| 02/28/2025 | 18 | MOTION to Dismiss *Pursuant to Rule 12(B)(6)* by RTX Corporation. (Brooks, Samantha) (Entered: 02/28/2025) |
| 02/28/2025 | 19 | Memorandum in Support re 18 MOTION to Dismiss *Pursuant to Rule 12(B)(6)* filed by RTX Corporation. (Brooks, Samantha) (Entered: 02/28/2025) |
| 02/28/2025 | 20 | Notice of Hearing Date *on Defendant's Motion to Dismiss* set for March 28, 2025 re 19 Memorandum in Support, 18 MOTION to Dismiss *Pursuant to Rule 12(B)(6)* (Brooks, Samantha) (Entered: 02/28/2025) |
| 02/28/2025 | | Set Deadline as to 18 MOTION to Dismiss *Pursuant to Rule 12(B)(6)*. Motion Hearing set for 3/28/2025 at 10:00 AM in Alexandria Courtroom 800 before District Judge Claude M. Hilton. (triv) (Entered: 02/28/2025) |
| 02/28/2025 | 21 | ORDERED that Defendant's Motion for Sanctions is DENIED as moot. Signed by Magistrate Judge William B. Porter on 02/28/2025. (jlan) (Entered: 03/02/2025) |
| 03/14/2025 | 22 | Memorandum in Opposition re 18 MOTION to Dismiss *Pursuant to Rule 12(B)(6)* filed by Francisco Garza, Kristen Grace, Rossana Hernandez, Michael Heyser, Lisa Leake, Christopher Stein, Christopher Sublett, Leslie Zepeda. (Lloyd, Edward) (Entered: 03/14/2025) |
| 03/20/2025 | 23 | REPLY to Response to Motion re 18 MOTION to Dismiss *Pursuant to Rule 12(B)(6) MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12* filed by RTX Corporation. (Brooks, Samantha) (Entered: 03/20/2025) |
| 03/24/2025 | 24 | NOTICE by RTX Corporation *Request for Authorization to Bring Electronic Devices Into the Court* (Brooks, Samantha) (Main Document 24 replaced to correct format on 3/25/2025) (Sbro, ). Modified to correct filing event on 3/25/2025 (Sbro, ). (Entered: 03/24/2025) |
| 03/25/2025 | | Notice of Correction: Incorrect Docket Entry used/Filing user notified to file any future documents in PDF format re 24 NOTICE by RTX Corporation Request for Authorization |

| | | |
|---|---|---|
| | | to Bring Electronic Devices Into the Court ***NO FURTHER ACTION NEEDED AT THIS TIME*** (Sbro, ) (Entered: 03/25/2025) |
| 03/27/2025 | | Remark - **Deadlines terminated - Motion Hearing set for 3/28/25 will be decided on the papers; no oral argument will be heard. (#18 Per CMH Chambers). (yguy) (Entered: 03/27/2025) |
| 03/27/2025 | 25 | MOTION for Sanctions - *Renewed Rule 11 Sanctions* by RTX Corporation. (Brooks, Samantha) (Entered: 03/27/2025) |
| 03/27/2025 | 26 | Memorandum in Support re 25 MOTION for Sanctions - *Renewed Rule 11 Sanctions* filed by RTX Corporation. (Attachments: # 1 Exhibit A)(Brooks, Samantha) (Entered: 03/27/2025) |
| 03/27/2025 | 27 | Notice of Hearing Date *on Renewed Motion for Sanctions* set for May 2, 2025 re 26 Memorandum in Support, 25 MOTION for Sanctions - *Renewed Rule 11 Sanctions* (Brooks, Samantha) (Entered: 03/27/2025) |
| 03/27/2025 | | Set Deadline as to 25 MOTION for Sanctions - *Renewed Rule 11Sanctions*. Motion Hearing set for 5/2/2025 at 10:00 AM in Alexandria Courtroom 400 before US Magistrate Judge William B. Porter. (triv) (Entered: 03/27/2025) |
| 04/10/2025 | 28 | RESPONSE in Opposition re 25 MOTION for Sanctions - *Renewed Rule 11 Sanctions* filed by Francisco Garza, Kristen Grace, Rossana Hernandez, Michael Heyser, Lisa Leake, Christopher Stein, Christopher Sublett, Leslie Zepeda. (Lloyd, Edward) (Entered: 04/10/2025) |
| 04/16/2025 | 29 | Memorandum in Support re 25 MOTION for Sanctions - *Renewed Rule 11 Sanctions* filed by RTX Corporation. (Brooks, Samantha) (Entered: 04/16/2025) |
| 04/22/2025 | 30 | ORDERED that the hearing on Defendant's Motion-currently scheduled for May 2, 2025-will be held in abeyance pending the district judge's ruling on Defendant's Motion to Dismiss. Once the district judge rules on the Motion to Dismiss, Defendant may notice a hearing on the Motion, if it is appropriate that it do so. Signed by US Magistrate Judge William B. Porter on 4/22/2025. (Sbro, ) (Entered: 04/22/2025) |
| 07/22/2025 | 31 | ORDERED that Defendant's Motion to Dismiss is GRANTED, and this matter is DISMISSED re 18 MOTION to Dismiss Pursuant to Rule 12(B)(6). Signed by District Judge Claude M. Hilton on 7/22/2025. (Sbro, ) (Entered: 07/23/2025) |
| 08/04/2025 | 32 | ORDERED that, if RTX wishes to proceed with its Motion, it must file any amended motion on or before August 8, 2025, and it also must file a notice for a hearing on the Motion by that same deadline. If RTX does not notice a hearing on or before August 8, 2025, the undersigned will deny the Motion as moot in re 25 MOTION for Sanctions - *Renewed Rule 11 Sanctions*, filed by RTX Corporation (see Order for further details). Signed by US Magistrate Judge William B. Porter on 8/4/2025. (Dest) (Entered: 08/04/2025) |
| 08/08/2025 | 33 | Amended MOTION for Sanctions *Pursuant to Rule 11* by RTX Corporation. (Brooks, Samantha) (Entered: 08/08/2025) |
| 08/08/2025 | 34 | Memorandum in Support re 33 Amended MOTION for Sanctions *Pursuant to Rule 11* filed by RTX Corporation. (Brooks, Samantha) (Entered: 08/08/2025) |
| 08/08/2025 | 35 | Declaration re 33 Amended MOTION for Sanctions *Pursuant to Rule 11 of Samantha L. Brooks* by RTX Corporation. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P)(Brooks, Samantha) (Entered: 08/08/2025) |

JA005

| | | |
|---|---|---|
| 08/08/2025 | 36 | Notice of Hearing Date set for September 19, 2025 re 33 Amended MOTION for Sanctions *Pursuant to Rule 11* (Brooks, Samantha) (Entered: 08/08/2025) |
| 08/08/2025 | | Set Deadline as to 33 Amended MOTION for Sanctions *Pursuant to Rule 11*. Motion Hearing set for 9/19/2025 at 10:00 AM in Alexandria Courtroom 400 before US Magistrate Judge William B. Porter. (triv) (Entered: 08/08/2025) |
| 08/22/2025 | 37 | NOTICE OF APPEAL as to 31 Order on Motion to Dismiss by Kristen Grace, Rossana Hernandez, Michael Heyser, Lisa Leake, Christopher Stein, Christopher Sublett, Leslie Zepeda. Filing fee $ 605, receipt number AVAEDC-10407757. (Lloyd, Edward) (Entered: 08/22/2025) |
| 08/22/2025 | 38 | Memorandum in Opposition re 33 Amended MOTION for Sanctions *Pursuant to Rule 11* filed by Francisco Garza, Kristen Grace, Rossana Hernandez, Michael Heyser, Lisa Leake, Christopher Stein, Christopher Sublett, Leslie Zepeda. (Lloyd, Edward) (Entered: 08/22/2025) |
| 08/26/2025 | 39 | Transmission of Notice of Appeal to US Court of Appeals re 37 Notice of Appeal, (All case opening forms, plus the transcript guidelines, may be obtained from the Fourth Circuit's website at www.ca4.uscourts.gov) (Sbro, ) (Entered: 08/26/2025) |
| 08/26/2025 | 40 | Reply to Motion re 33 Amended MOTION for Sanctions *Pursuant to Rule 11* filed by RTX Corporation. (Brooks, Samantha) (Entered: 08/26/2025) |
| 09/02/2025 | 41 | USCA Case Number 25-2022 Fourth Circuit, Case Manager Taylor Barton for 37 Notice of Appeal, filed by Rossana Hernandez, Christopher Sublett, Michael Heyser, Christopher Stein, Lisa Leake, Leslie Zepeda, Kristen Grace. (Sbro, ) (Entered: 09/02/2025) |
| 09/16/2025 | 42 | MOTION for Electronic Device Application by RTX Corporation. (Brooks, Samantha) (Entered: 09/16/2025) |
| 09/16/2025 | 43 | ORDER granting 42 MOTION for Electronic Device Application. Signed by US Magistrate Judge William B. Porter on 09/16/2025. (triv) (Entered: 09/16/2025) |
| 09/19/2025 | 44 | Minute Entry for proceedings held before US Magistrate Judge William B. Porter:Motion Hearing held on 9/19/2025 re 33 Amended MOTION for Sanctions *Pursuant to Rule 11* filed by RTX Corporation. Appearance of counsel for plaintiffs and defendant. Motion argued and 33 Amended MOTION for Sanctions - GRANTED. Order to Follow. (Tape #FTR)(wgar, ) (Entered: 09/19/2025) |
| 09/19/2025 | 45 | ORDER granting 33 Motion for Sanctions. ORDERED that Defendant however, has not provided sufficient support for a financial sanction. If Defendant intends to proceed with a request for a financial sanction, it is hereby ORDERED that Defendant file with the Court by 5:00 p.m. on September 26, 2025, a supplemental brief with information sufficient to support its request for financial sanctions; Plaintiffs must file any opposition by 5:00 p.m. on October 3, 2025; and Defendant may file any reply by noon on October 8, 2025; and it is further ORDERED that a hearing will be scheduled to determine the amount of any financial sanction at 10:00 a.m. on October 10, 2025. Signed by US Magistrate Judge William B. Porter on 09/19/2025. (wgar, ) Modified on 9/19/2025 to correct text (wgar, ). (Entered: 09/19/2025) |
| 09/19/2025 | | Motion Hearing in re: to determine the amount of the any financial sanction set for 10/10/2025 at 10:00 AM in Alexandria Courtroom 400 before US Magistrate Judge William B. Porter. (wgar, ) (Entered: 09/19/2025) |
| 09/26/2025 | 46 | Brief in Support to 33 Amended MOTION for Sanctions *Pursuant to Rule 11 (Supplemental)* filed by RTX Corporation. (Brooks, Samantha) (Entered: 09/26/2025) |

JA006

| 09/26/2025 | 47 | Declaration re 46 Brief in Support *by Owen R. Wolfe* by RTX Corporation. (Attachments: # 1 Exhibit A)(Brooks, Samantha) (Entered: 09/26/2025) |
|---|---|---|
| 10/03/2025 | 48 | Memorandum in Opposition re 33 Amended MOTION for Sanctions *Pursuant to Rule 11* filed by Francisco Garza, Kristen Grace, Rossana Hernandez, Michael Heyser, Lisa Leake, Christopher Stein, Christopher Sublett, Leslie Zepeda. (Lloyd, Edward) (Entered: 10/03/2025) |
| 10/03/2025 | 49 | EXHIBIT by Francisco Garza, Kristen Grace, Rossana Hernandez, Michael Heyser, Lisa Leake, Christopher Stein, Christopher Sublett, Leslie Zepeda.. (Lloyd, Edward) (Entered: 10/03/2025) |
| 10/03/2025 | 50 | Motion Re: Objections to Magistrate Judge's Ruling or Recommendation re 45 Order on Motion for Sanctions,,, by Francisco Garza, Kristen Grace, Rossana Hernandez, Michael Heyser, Lisa Leake, Christopher Stein, Christopher Sublett, Leslie Zepeda. (Lloyd, Edward) (Entered: 10/03/2025) |
| 10/06/2025 | 51 | MOTION for Electronic Device Application by RTX Corporation. (Brooks, Samantha) (Entered: 10/06/2025) |
| 10/06/2025 | 52 | ORDER denying 51 Motion for Electronic Device Application. Signed by US Magistrate Judge William B. Porter on 10/6/2025. (Sbro, ) Modified to update order on 10/7/2025 (Sbro, ). (Entered: 10/07/2025) |
| 10/08/2025 | 53 | RESPONSE in Support re 33 Amended MOTION for Sanctions *Pursuant to Rule 11 (Supplemental)* filed by RTX Corporation. (Brooks, Samantha) (Entered: 10/08/2025) |
| 10/08/2025 | 54 | MOTION for Extension of Time to File Response/Reply as to 49 Exhibit by Kristen Grace, Rossana Hernandez, Michael Heyser, Lisa Leake, Christopher Stein, Christopher Sublett, Leslie Zepeda. (Lloyd, Edward) (Entered: 10/08/2025) |
| 10/08/2025 | 55 | ORDER: Before the Court is Plaintiffs' Motion to File Outside of Time (ECF No. 54) certain exhibits (ECF No. 49) to their Memorandum in Opposition to the Amended Motion for Sanctions (ECF No. 48). On September 19, 2025, the Court ordered Plaintiffs to file a supplemental response to Defendants Amended Motion for Sanctions (ECF No. 33) by 5:00 p.m. on October 3, 2025. (ECF No. 45.) Plaintiffs timely filed their Memorandum in Opposition but filed the exhibits at 5:03 p.m. on October 3, 2025. (ECF No. 54 at 2.) According to Plaintiffs, Defendant does not oppose the Motion. (Id.) Accordingly, based on the parties' agreement, a showing of good cause, and it otherwise being proper to do so, it is hereby ORDERED that the Motion is GRANTED; and it is further ORDERED that Plaintiffs exhibits are deemed timely filed. Signed by US Magistrate Judge William B. Porter on 10/8/25. (yguy, ) (Entered: 10/09/2025) |
| 10/10/2025 | 56 | ORDERED that the Court assesses a $7,500.00 sanction in favor of Defendant and against Plaintiffs counsel the Lloyd Law Group, PLLC, which must be paid within 30 days re 33 Amended MOTION for Sanctions Pursuant to Rule 11. Signed by US Magistrate Judge William B. Porter on 10/10/2025. (Sbro, ) (Entered: 10/10/2025) |
| 10/10/2025 | 57 | Minute Entry for proceedings held before US Magistrate Judge William B. Porter:Motion Hearing held on 10/10/2025 re 33 Amended MOTION for Sanctions *Pursuant to Rule 11* filed by RTX Corporation. Plaintiff appeared through Edward Lloyd. Defendant appeared through Samantha Brooks. Parties provided oral argument to the Court. The Court ruled on the motion. See order (Dkt. 56 ) (Tape #FTR.)(Dcrow, ) (Entered: 10/10/2025) |
| 10/13/2025 | | Case Reassigned to District Judge Patricia Tolliver Giles. District Judge Claude M. Hilton no longer assigned to the case. (jlan) (Entered: 10/13/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/14/2025 11:38:20 | | | |
| **PACER Login:** | edwardscottlloyd | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:24-cv-02083-PTG-WBP |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

JA008

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

|  |  |  |  |
|---|---|---|---|
| KRISTEN GRACE, | ) | | |
| FRANCISCO GARZA, | ) | | |
| ROSSANA HERNANDEZ, | ) | | |
| J. MICHAEL HEYSER, | ) | | |
| LISA LEAKE, | ) | | |
| CHRISTOPHER STEIN, | ) | | |
| CHRISTOPHER SUBLETT, | ) | | |
| LESLIE ZEPEDA | ) | | |
| | ) | | |
| *Plaintiffs*, | ) | | |
| | ) | Case No.: | |
| | ) | | |
| v. | ) | JURY IS DEMANDED | |
| | ) | | |
| | ) | | |
| RTX CORPORATION F/K/A RAYTHEON | ) | | |
| TECHNOLOGIES CORPORATION | ) | November 20, 2024 | |
| | ) | | |
| 100 Wilson Blvd | ) | | |
| Arlington, VA 2209-3927 | ) | | |
| | ) | | |
| *Defendants*. | ) | | |
| | ) | | |
| | ) | | |

## COMPLAINT

COMES NOW, Kristen Grace, Francisco Garza, Rossana Hernandez, J. Michael Heyser,

Lisa Leake, Christopher Stein, Christopher Sublett, and Leslie Zepeda, by and through their

attorney, and hereby state the following in support of their Complaint and Jury Demand against

Defendant RTX Corporation, formerly known as Raytheon Technologies Corporation, ("RTX" or

"Defendant") and allege:

## INTRODUCTION

1

JA009

1.      Plaintiffs are eight former employees of RTX Corporation ("RTX") who requested religious accommodations to RTX's COVID-19 vaccine mandate.

2.      RTX responded to these requests by imposing a testing, masking, and travel restriction policy which for various reasons also violated Plaintiffs' religious beliefs.

3.      RTX, however, did not offer any accommodations for the testing, masking, and travel restriction policies.

4.      RTX terminated or constructively discharged them in violation of Title VII of the Civil Rights Act.

**PARTIES**

5.      Plaintiff Kristen Grace was a Senior Engineer, Design Engineer at Defendant RTX's Tucson location. She was employed at RTX for more than 18 years. Defendant terminated Ms. Grace on January 31, 2022.

6.      Plaintiff Francisco Garza was employed with RTX Corporation for over 15 years when he submitted a religious accommodation request for the COVID-19 vaccine mandate. He also had a religious objection to the testing that RTX offered as an "accommodation." RTX did not offer any religious accommodation for testing and fired. Mr. Garza.

7.      Plaintiff Rossana Hernandez began working at RTX in April of 2019. She requested a religious accommodation for the COVID-19 vaccine. She had a religious objection to testing as well, but RTX had no process for requesting a religious accommodation for COVID-19 testing. RTX terminated her on January 29, 2022.

8.      Plaintiff J. Michael Heyser began at RTX in 2008 and worked his way over 12 years to his dream job as a Warfighter School Director. He requested a religious accommodation to the COVID-19 vaccine mandate, but found that RTX offered no accommodations for testing,

2

masking, and travel restrictions, which also violated his beliefs. RTX constructively discharged Mr. Heyser on January 14, 2022.

9. Plaintiff Lisa Leake was an RTX employee for more than 14 years, where she served as a Senior Systems Engineer I and RTX's Tucson, Arizona facility. Ms. Leake requested a religious accommodation to the COVID-19 vaccine. RTX required her to test instead, which also violated her religious beliefs. She was unwilling to violate her religious beliefs in order to keep her job, so RTX fired her on January 31, 2022.

10. Plaintiff Christopher Stein worked for RTX for over 20 years. He requested a religious accommodation to the COVID-19 vaccine mandate. RTX responded that he would have to test, which also violated his religious beliefs. Despite his repeated efforts to work to find a workable solution, RTX terminated Mr. Stein on January 31, 2022.

11. Plaintiff Christopher Sublett was similarly a long-term employee of RTX. He submitted a religious accommodation request for the vaccine mandate and received the response that he would have to test, which he also objected to doing. RTX constructively discharged Mr. Sublett on December 4, 2021.

12. Plaintiff Leslie Zepeda was a six-year employee of RTX and served as a Principal Specialist, Engineering Services. She requested a religious accommodation request, but could not in good conscience submit her testing results in a manner that waive her rights under HIPAA. RTX terminated her on February 4, 2022.

13. Defendant RTX Corporation is an aerospace and defense conglomerate that employs more than 185,000 people. It is headquartered at 1000 Wilson Blvd Arlington, VA 2209-3927.

**JURISDICTION**

3

JA011

14.     This Court has Jurisdiction, and Venue is proper, under 42 U.S.C. § 2000e-5(f)(3). Defendant is located in Arlington, Virginia.

**FACTUAL BACKGROUND**

15.     Kristen Grace was employed as a Sr Eng, Design Engineer by RTX for more than 18 years and consistently received outstanding reviews.

16.     On February 25, 2021, Ms. Grace requested a transfer to a remote position as an accommodation to her sincerely held religious beliefs against the masking policy that Defendant held for unvaccinated individuals.

17.     Upon learning that no religious accommodation was available for the masking policy, on March 23, 2021, Ms. Grace reluctantly submitted an ADA accommodation request to the masking and testing policy.

18.     Ms. Grace continued to work remotely while awaiting RTX's determination on a permanent remote position.

19.     On May 7, 2021, RTX denied Ms. Grace's request for a permanent remote position and put her on permanent unpaid medical leave.

20.     On September 21, 2021, Ms. Grace filed an EEO complaint against RTX.

21.     On September 22, 2021, Ms. Grace secured a permanent remote position with RTX through her own independent efforts.

22.     She immediately submitted a religious accommodation request to the vaccine, masking, and testing policies that RTX announced on September 15, 2021.

23.     Despite her approved ADA accommodation for her medical disability, RTX denied her religious accommodation request for the testing and masking requirements.

24.     RTX terminated Ms. Grace on January 31, 2022.

4

25.     Francisco "Frank" Garza was a Principal Specialist, Mission / Quality Assurance.

26.     He requested a religious accommodation request to RTX's testing mandate that RTX denied.

27.     On November 22, 2021, Mr. Garza informed his management that he would submit to RTX's testing mandate under duress despite his sincerely held religious beliefs against testing.

28.     He suffered religious and spiritual injury as a result of RTX's refusal to accommodate his religious beliefs.

29.     Rossana Hernandez worked for RTX beginning in April of 2019.

30.     She requested a religious accommodation for the vaccine mandate but could not in good conscience agree to the testing that came as a result of her request for accommodation.

31.     Because she would not violate her conscience, RTX terminated Ms. Hernandez on January 31, 2022.

32.     J. Michael Heyser began his career with RTX in 2008.

33.     Over 12 years, he worked his way up to his "dream job" as a Warfighter School Director, where he planned to stay until retirement.

34.     He requested a religious accommodation to the COVID-19 vaccine mandate, but found that RTX offered no accommodations for testing, masking, and travel restrictions, which also violated his beliefs.

35.     RTX constructively discharged Mr. Heyser on January 14, 2022.

36.     Plaintiff Lisa Leake was an RTX employee for more than 14 years, where she served as a Senior Systems Engineer I and RTX's Tucson, Arizona facility.

37.     Ms. Leake requested a religious accommodation to the COVID-19 vaccine.

JA013

38.    RTX required her to test instead, which also violated her religious beliefs.

39.    She was unwilling to violate her religious beliefs in order to keep her job, so RTX fired her on January 31, 2022.

40.    Plaintiff Christopher Stein worked for RTX for over 20 years.

41.    He requested a religious accommodation to the COVID-19 vaccine mandate.

42.    RTX responded that he would have to test, which also violated his religious beliefs.

43.    Despite his repeated efforts to work to find a workable solution, RTX terminated Mr. Stein on January 31, 2022.

44.    Plaintiff Christopher Sublett was similarly a long-term employee of RTX.

45.    He submitted a religious accommodation request for the vaccine mandate and received the response that he would have to test, which he also objected to doing. RTX constructively discharged Mr. Sublett on December 4, 2021.

46.    Plaintiff Leslie Zepeda was a six-year employee of RTX and served as a Principal Specialist, Engineering Services.

47.    She requested a religious accommodation request but could not in good conscience submit her testing results in a manner that waive her rights under HIPAA.

48.    RTX terminated her on February 4, 2022.

49.    All plaintiffs submitted their claims as part of a class complaint submitted on September 24, 2022.

50.    That claim was dismissed.

51.    The putative class appealed the decision and the 9th Circuit Court of Appeals upheld the decision.

JA014

52.     Plaintiffs filed a petition for a writ of certiorari with the U.S. Supreme Court which it declined on October 21, 2024.

**CLAIMS FOR RELIEF**

**COUNT I**
**(Title VII Religious Discrimination: Failure to Accommodate)**

1.      All previous paragraphs are incorporated herein.

2.      RTX has failed to accommodate the religious beliefs of the plaintiffs.

3.      Title VII of the Civil Rights Act of 1964 requires employers to accommodate the religious practice of their employees unless doing so would impose an undue hardship on the conduct of the employer's business. 42 U.S.C.S. § 2000e(j), *Groff v. DeJoy*, 143 S. Ct. 2279, 2286 (2023).

4.      As the Supreme Court has stated,

> Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. *Rather, it gives them favored treatment*, affirmatively obligating employers not "to fail or refuse to hire or discharge any individual . . . because of such individual's religious observance and practice.

> *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775, 135 S. Ct. 2028, 2034 (2015) (emphasis added and internal citations omitted).

5.      To establish a *prima facie* religious accommodation claim, a plaintiff must establish that: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Chalmers v. Tulon Co.*, 101 F.3d 1012, 1019 (4th Cir. 1996) (*quoting Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985)).

7

6. Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship. *Id.*

7. The Supreme Court recently clarified that, "'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." That inquiry it described as "fact specific." *Groff v. DeJoy*, 2023 U.S. LEXIS 2790, *28 (2023).

8. Plaintiffs all had sincere religious beliefs that conflicted with aspects of the testing, masking, and travel restriction regime.

9. Plaintiffs each made that conflict known to RTX by filing a religious accommodation exemption requests or otherwise informing their supervision about their beliefs.

10. As a result of such actions, RTX terminated defendants, or in Mr. Garza's case, required him to test under religious and spiritual duress.

11. RTX offered only medical / ADA accommodations for the testing and associated requirements which were inapplicable to all plaintiffs.

12. The statutory framework for determining reasonable accommodation requires an interactive process and participation by both the employer and the employee. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (stating that, consistent with the goals expressed in the legislative history of the religious accommodation provision, "courts have noted that bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business") *Id., see also Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141 (5th Cir. 1982).

13. "Once an employee makes [an accommodation] request, the employer is obligated by law to engage in an interactive process - a meaningful dialogue." *Equal Emp. Opportunity*

JA016

*Comm'n v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009) (in the context of a disability).

14.     Here, RTX made no attempt to arrive at an "acceptable reconciliation for both parties." *Ansonia Bd. of Educ.*, 479 U.S. at 69.

15.     If RTX had provided meaningful accommodations to Plaintiffs' requests, all of them would be contributing meaningfully to its operations, and Mr. Garza would not have suffered spiritual and religious harm.

## PRAYER FOR RELIEF

79.     Plaintiffs respectfully requests that the Court award the following:

(a) Compensatory damages for monetary and non-monetary loss in the amount of 8 million dollars;

(b) Exemplary and punitive damages;

(c) Prejudgment interest;

(d) Reasonable attorney's fees; and,

(e) Such other relief as law or equity may pertain.

## JURY TRIAL

80.     A jury trial is requested in this matter.

Dated: November 20, 2024                                  Respectfully Submitted,

                                                          /s/ E. Scott Lloyd

                                                          E. Scott Lloyd
                                                          Virginia Bar # 76989
                                                          Lloyd Law Group, PLLC
                                                          15 Chester St.
                                                          Front Royal, VA 22630
                                                          (540) 823-1110
                                                          scott@lloydlg.com
                                                          *Counsel for Plaintiffs*

9

JA017

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| KRISTEN GRACE, FRANCISCO GARZA, ROSSANA HERNANDEZ, J. MICHAEL HEYSER, LISA LEAKE, CHRISTOPHER STEIN, CHRISTOPHER SUBLETT, and LESLIE ZEPEDA<br><br>Plaintiffs,<br><br>v.<br><br>RTX CORPORATION f/k/a RAYTHEON TECHNOLOGIES CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 24-cv-2083-CMH-WBP |

**DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO RULE 11**

Defendant RTX Corporation f/k/a Raytheon Technologies Corporation ("Raytheon"),[1] by its undersigned attorneys, respectfully moves this Court for an order sanctioning plaintiffs Kristen Grace, Franciso Garza, Rossana Hernandez, J. Michael Heyser, Lisa Leake, Christopher Stein, Christopher Sublett, and Leslie Zepeda (collectively, "Plaintiffs") and their counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure by dismissing this action with prejudice and awarding monetary sanctions in the amount of $25,000.

As set forth more fully in the accompanying Memorandum of Points and Authorities in Support and the Declaration of Samantha L. Brooks and exhibits thereto, Plaintiffs and their counsel violated Rule 11 for two reasons. **First**, the claims of plaintiffs Grace, Heyser, Leake,

---

[1] Plaintiffs were actually employed by Raytheon Company, not Raytheon Technologies Company. Raytheon Technologies Company is now RTX Corporation. For ease of reference, RTX Corporation refers to itself and Plaintiffs' employer as "Raytheon."

315818375v.1

JA018

Stein, and Zepeda (collectively, the "Arizona Plaintiffs") are barred by *res judicata* because they previously asserted similar claims in an action filed in the U.S. District Court for the District of Arizona, Case No. 22-cv-00436-TUC-RM, which was dismissed **with prejudice**.  *Leake v. Raytheon Technologies Corp.*, 2023 U.S. Dist. LEXIS 32177 (D. Az. Feb. 27, 2023); *Leake v. Raytheon Technologies Corp.*, 2024 U.S. App. LEXIS 10287 (9th Cir. Apr. 29, 2024), *cert denied*, 2024 U.S. LEXIS 4384 (Oct. 21, 2024).  Because the Complaint in this action arises from the exact same nucleus of fact as the Arizona Plaintiffs' prior action, their claims in this action are barred by *res judicata*.  *See, e.g., Laurel Sand & Gravel, Inc. v. Wilson,* 519 F.3d 156, 161-62 (4th Cir. 2008).

**Second**, all of Plaintiffs' claims are time-barred because they waited more than 90 days after receiving right-to-sue letters from the U.S. Equal Employment Opportunity Commission ("EEOC") to commence this action.  *See, e.g., Quinn v. Copart of Conn., Inc.*, 791 F. App'x 393, 395 (4th Cir. 2019).  Each of the Plaintiffs received their right-to-sue letters between October 3, 2022 and August 4, 2024, yet did not commence this action until November 20, 2024.  Accordingly, all Plaintiffs' claims are time-barred.

Plaintiffs' and their counsel's conduct violates Rule 11 because they knew that Plaintiffs' claims were barred, yet proceeded anyway.  Raytheon served this motion and supporting papers on Plaintiffs on December 31, 2024, but Plaintiffs failed to withdraw the Complaint within 21 days of service.  Accordingly, Plaintiffs and their counsel should be sanctioned for violating Rule 11.

Dated: January 24, 2025

Respectfully submitted,

By:     */s/ Samantha L. Brooks*
Samantha L. Brooks, VA Bar No. 91928
SEYFARTH SHAW LLP

2

315818375v.1

JA019

975 F Street, N.W.
Washington, D.C. 20004
(202) 828-3560

Fax: (202) 641-9209
sbrooks@seyfarth.com

Dawn R. Solowey (*pro hac vice* application forthcoming)
SEYFARTH SHAW LLP
Seaport East, Suite 1200
Two Seaport Lane
Boston, MA 02210
(617) 946-4800
dsolowey@seyfarth.com

Owen R. Wolfe (*pro hac vice* application forthcoming)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, NY 10018
(212) 218-5500
owolfe@seyfarth.com

*Counsel for Defendant RTX Corporation*

3

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 24th day of January 2025, the foregoing MOTION FOR

SANCTIONS PURSUANT TO RULE 11 was filed with the Clerk of Court using the CM/ECF

system, which will then send a notification of such filing to the following counsel of record:

> E. Scott Loyd
> Lloyd Law Group, PLLC
> 15 Chester Street
> Front Royal, VA 22630
> scott@lloydlg.com
>
> *Counsel for Plaintiffs*


> */s/ Samantha L. Brooks*
> Samantha L. Brooks
> VA Bar No. 91928
> SEYFARTH SHAW LLP
> 975 F Street, N.W.
> Washington, D.C. 20004
> (202) 828-3560
> Fax: (202) 641-9209
> sbrooks@seyfarth.com
> *Counsel for Defendant RTX Corporation*

315818375v.1

JA021

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| KRISTEN GRACE, FRANCISCO GARZA, ROSSANA HERNANDEZ, J. MICHAEL HEYSER, LISA LEAKE, CHRISTOPHER STEIN, CHRISTOPHER SUBLETT, and LESLIE ZEPEDA | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 24-cv-2083-CMH-WBP |
| RTX CORPORATION f/k/a RAYTHEON TECHNOLOGIES CORPORATION, | ) ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO RULE 11**

Defendant RTX Corporation f/k/a Raytheon Technologies Corporation ("Raytheon"),[1] by

its undersigned attorneys, respectfully submits this memorandum of points and authorities in

support of its motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

Five of the plaintiffs in this action—Kristen Grace, J. Michael Heyser, Lisa Leake,

Christopher Stein, and Leslie Zepeda (collectively, the "Arizona Plaintiffs")—brought suit

against Raytheon under 42 U.S.C. §§ 2000e-2 and 2000e-3 ("Title VII") in the United States

District Court for the District of Arizona, Case No. 22-cv-00436-TUC-RM (the "Arizona

Action").  They alleged religious discrimination in connection with Raytheon's COVID-19

---

[1] Plaintiffs were actually employed by Raytheon Company, not Raytheon Technologies Company.  Raytheon Technologies Company is now RTX Corporation.  For ease of reference, RTX Corporation refers to itself and Plaintiffs' employer as "Raytheon."

315454821v.1

JA022

vaccination policy from 2021 (the "2021 Policy").  The Arizona District Court dismissed the Arizona Plaintiffs' claims ***with prejudice***.  The Arizona Plaintiffs appealed to the Ninth Circuit, which unanimously affirmed the dismissal ***with prejudice***.  The Arizona Plaintiffs sought review in the U.S. Supreme Court, but the Court denied their petition for a writ of certiorari in October 2024.

Approximately one month later, the Arizona Plaintiffs filed suit in this Court.  Their sole cause of action in this new lawsuit is based upon the same facts as the Arizona Action, *i.e.*, Raytheon's purported religious discrimination in connection with the 2021 Policy.  The Arizona Plaintiffs are suing under the same statute, Title VII.  Under black-letter law, the Arizona Plaintiffs' claims are barred by *res judicata*.  By nonetheless commencing this action, the Arizona Plaintiffs and their counsel violated Rule 11.[2]

Moreover, the claims of the Arizona Plaintiffs and plaintiffs Francisco Garza, Rossana Hernandez, and Chirstopher Sublett (the "Additional Plaintiffs") are unequivocaly time-barred. A plaintiff bringing suit under Title VII has 90 days to commence an action after receiving a right-to-sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC").  Here, the Arizona Plaintiffs and the Additional Plainitffs (collectively, "Plaintiffs") filed suit on November 20, 2024.  Yet they received their respective right-to-sue letters from the EEOC between October 3, 2022 and August 5, 2024.  Thus, many of the Plaintiffs' claims have been time-barred for several years.  Even as to the most recent right-to-sue letter, for Mr. Heyser, he

---

[2] Although Raytheon limits its request for Rule 11 sanctions based upon *res judicata* to the Arizona Plaintiffs, the Complaint in this action affirmatively alleges that "***all plaintiffs*** submitted their claims as part of the" Arizona Action, which appears to be a binding judicial admission that ***all*** Plaintiffs' claims here are barred by *res judicata*. ECF No. 1 ¶ 49.  The Court need not reach this issue, however, because all Plaintiffs' claims are time-barred as set forth below.

315454821v.1

was required to file suit by November 5, 2024, but did not. Plaintiffs' claims are quite obviously time-barred.

Plaintiffs and their counsel knew that this action, and their certifications to the Court, violated Rule 11. Plaintiffs' counsel represented the Arizona Plaintiffs during part of the Ninth Circuit proceedings and in the U.S. Supreme Court. Moreover, Raytheon's counsel wrote to Plaintiffs' counsel on December 9, 2024 to advise him of the foregoing facts. Plaintiffs refused to withdraw this action, however. On December 31, 2024, 21 days before filing the motion with this Court, Raytheon served a copy of its Rule 11 motion papers on Plaintiffs' counsel pursuant to Rule 11(c). Plaintiffs still refused to withdraw this Complaint.

Plaintiffs' conduct is egregious. There is no good-faith basis on which this action could be maintained. Accordingly, this Court should sanction Plaintiffs by: (a) dismissing this action, with prejudice; (b) awarding Raytheon $25,000 in fees and costs in connection with responding to this action; and (c) awarding such other and further relief as the Court deems warranted.

## FACTUAL BACKGROUND

Raytheon accepts the facts recited in Plaintiff's Complaint (ECF No. 1) and in the Complaint from the Arizona Action (the "Arizona Complaint") as true for purposes of this motion only. A copy of the Arizona Complaint is annexed as **Exhibit A** is the accompanying Declaration of Samantha Brooks (the "Brooks Declaration").[3]

### The Arizona Action

The Arizona Plaintiffs commenced the Arizona Action on September 24, 2022. Brooks Decl. Ex. A. The Arizona Plaintiffs alleged that on September 15, 2021, Raytheon announced

---

[3] The Court may take judicial notice of that court filing and other filings in the Arizona Action. *See, e.g., Anderson v. Bolster*, 2020 U.S. Dist. LEXIS 156859, at *7-8 (E.D. Va. Aug. 27, 2020) ("a court may take judicial notice of matters of public record such as court filings or records") (citing *Wittholn v. Fed. Ins. Co.*, 164 F. App'x 395 (4th Cir. 2006)).

3

that all of its employees would be required to be vaccinated against COVID-19, *i.e.*, the 2021 Policy.  *Id.* ¶¶ 18-19.  All of the Arizona Plaintiffs objected to receiving COVID-19 vaccines, and for at least some of the Arizona Plaintiffs, the objection was allegedly based upon "the sincere religious belief" of an unspecified religious denomination that "the human body is God's temple, and that they must not take anything into their bodies that God has forbidden or that would alter the functions of their body such as by inducing the production of a spike protein in a manner not designed by God."  *Id.* ¶¶ 20-21.  The Arizona Plaintiffs alleged that, beginning on September 15, 2021, Raytheon provided "blanket" exemptions from the 2021 Policy for all employees who sought exemptions for medical or religious reasons, on the condition that those exempt employees agreed to "mask wear and weekly COVID testing."  *Id.* ¶ 47.  The Arizona Plaintiffs affirmatively alleged that they "***did not object*** to other non-permanent safety measures, such as physical distancing, sick leave, indoor masking, and teleworking."  *Id.* ¶ 29 (emphasis added).

Each of the Arizona Plaintiffs alleged that he or she sought, and received, an exemption from the 2021 Policy, but refused to comly with the health and safety protocols that were conditions of that exemption:

**Plaintiff Leake**:  On November 1, 2021, Ms. Leake "submitted a request for religious accommodation."  *Id.* ¶ 35.  Ms. Leake alleged that her "religious accommodation was approved with a…weekly testing stipulation."  *Id.* ¶ 36.  Ms. Leake asserted that this stipulation "was in violation of Plaintiff's accommodation statement explaining sincerely held religious beliefs," but did not explain how or why.  *See id.*  In fact, Ms. Leake admitted that her concerns about testing were not religious at all, but rather based on the false assertion that the tests "were the most invasive EUA [Emergency Use Authorization] versions, that have since been recalled by the

FDA." *Id.* ¶ 36.  Ms. Leake alleged that she was fired on February 1, 2022, not because of her religious beliefs, but because of "non-compliance with the Defendant's Covid 19 mandate" (*i.e.*, her refusal to submit to testing).  *Id.* ¶ 37.

**Plaintiff Grace**:  Ms. Grace alleged that, on February 25, 2021, she "requested a transfer to a remote position, due to her sincere religious objections…that precluded her from complying to [sic] Defendant's COVID-19 policy."  *Id.* ¶ 39.  Raytheon's 2021 Policy was not announced until September 15, 2021, *see id.* ¶ 18, and the Arizona Complaint did not explain what "COVID-19 policy" was in effect as of February 25, 2021, a time period in which vaccines were not widely available to the public.  *See id.* ¶ 39.[4]  Ms. Grace alleged that on May 7, 2021, Raytheon "denied [her] request for a remote position" and instead placed her "involuntary medical leave."  *See id.* ¶ 40.  Ms. Grace alleged, without any explanation, that on September 24, 2021,[5] she "secured a remote position" with Raytheon.  *Id.* ¶ 41.  She then applied for a religious exemption, which was allegedly "denied based on Plaintiff's [unspecified] medical disability."  *Id.* ¶ 42.  Ms. Grace alleged that she was subject to unspecified "harassment, coercion, threats, and humiliation," and was ultimately terminated on January 31, 2022 "for non-compliance to [sic] Defendant's COVID-19 mandate."  *Id.* ¶ 43.

**Plaintiff Heyser**:  Mr. Heyser alleged that on September 30, 2021, Raytheon "lifted masking and social distancing requirements for vaccinated employees only, making [Mr. Heyser] easily identifiable as a person who had a medical or religious objection."  *Id.* ¶ 48.  Mr. Heyser conceded that he refused to abide by the health and safety protocols that were conditions of his

---

[4] The COVID-19 vaccines did not become available to all individuals over the age of 16 until April 19, 2021.  *See* U.S. Dep't of Health and Human Services, *COVID-19 Vaccines*, https://tinyurl.com/3wh37acb (last visited December 31, 2024).

[5] This paragraph of the Arizona Complaint says "September 24, 2022," but since that is the date on which the Arizona Complaint was filed, the Arizona Plaintiffs presumably meant 2021.

5

exemption, allegedly based on unspecified religious beliefs, and was "repeatedly advised and warned" that failure to comply with the conditions of his exemption "would be termination." *Id.* ¶¶ 49-51.  Mr. Heyser opted to resign on January 14, 2022.  *Id.* ¶ 52.

**Plaintiff Stein**:  Mr. Stein alleged that he was unable to obtain a medical exemption because he did not have "a doctor's note" supporting such an exemption.  *Id.* ¶ 54.  Mr. Stein was instead advised that he could seek a religious exemption, which would allegedly require Mr. Stein to comply with "blanket" conditions applied to all medical and religious exemptions, "masking, social distancing, weekly testing."  *Id.* ¶ 55.  Mr. Stein objected to these health and safety protocols on non-religious grounds because they were "only required . . . of unvaccinated employees" and because they involved the use of "invasive PCR tests."  *Id.* ¶ 56.  Mr. Stein alleged that he refused to comply with the health and safety protocols, and was terminated on January 31, 2022 "for non-compliance."  *Id.* ¶¶ 59-60.

**Plaintiff Zepeda**:  Ms. Zepeda alleged that she submitted "a religious accommodation based on sincerely held faith for [sic] the COVID 19 vaccine."  *Id.* ¶ 63.  Ms. Zepeda further alleged that she sought "a medical accommodation to submit a saliva only test for COVID 19." *Id.*  Ms. Zepeda did not allege that Raytheon refused her request for a "saliva only test."  *See id.* Instead, Ms. Zepeda alleged that she was terminated on February 2, 2022, not because of her religious beliefs, but because she refused to provide "a waiver of HIPPA [sic] rights" as part of the testing requirement.  *Id.* ¶¶ 65-66.

Based upon these allegations, the Arizona Plaintiffs commenced the Arizona Action on behalf of themselves individually, and on behalf of a purported class of affected individuals. Brooks Decl. Ex. A.  Although inartfully drafted, the Arizona Complaint alleged three causes of action under Title VII: (1) disparate treatment; (2) hostile work environment; and (3) retaliation.

315454821v.1

*See id.*  On December 2, 2022, Raytheon filed a motion to dismiss the Arizona Complaint for failure to state a claim.  *Leake v. Raytheon Technologies Corp.*, 2023 U.S. Dist. LEXIS 32177, at *4 (D. Az. Feb. 27, 2023).[6]

On February 27, 2023, the Arizona District Court dismissed the Arizona Complaint, **with prejudice**.  *Id.* at *19.  The District Court held that "Plaintiffs' overlapping allegations lack the legal and factual support to state a Title VII claim."  *Id.* at *19.  The Arizona District Court held that the Arizona Plaintiffs could not state a disparate treatment claim because

> [a]ll vaccination-exempt employees were treated the same, regardless of the reason for the exemption.  The vaccination mandate never mentioned religion and was therefore facially neutral, and Plaintiffs have not established that Defendant had a discriminatory intent in either issuing the vaccination mandate or implementing health and safety protocols for vaccination-exempt employees.

*Id.* at *13-14.  Although the Arizona District Court held that the foregoing was sufficient to dismiss the claim, it held also that "Plaintiffs never alleged they were members of any protected class, or what their religious beliefs were," particularly since some of the Arizona Plaintiffs objected to vaccination "not because of religious reasons, but for medical reasons."  *Id.* at *14.  Even if the Arizona Plaintiffs had adequately alleged membership in a protected class, the District Court held that "they still fail to demonstrate that they were treated any differently from other vaccination-exempt employees."  *Id.*

The Arizona District Court next held that "Plaintiffs fail to show they were members of a protected class" and had not, in any event, met the "demanding standard" for a hostile work environment claim.  *Id.* at *15.  The District Court found that "Defendant had a blanket vaccination exemption and only required those employees with a vaccination exemption to wear

---

[6] A copy of the Arizona District Court's decision is also annexed as **Exhibit B** to the Brooks Declaration.

315454821v.1

masks and test weekly for COVID-19." *Id.* The District Court found Plaintiffs' allegation that requiring masking and testing created a hostile work environment "shocking" in light of the fact that COVID-19 "has claimed the lives of over one million Americans, and counting." *Id.* at *16. The District Court further held that masking requirements "do[] not create a 'scarlet letter' effect because the employees could be vaccination-exempt for a multitude of reasons" other than religion, "or the masking employees could be vaccinated but simply want the added facial protection." *Id.* The District Court held that email reminders and signage regarding the 2021 Policy were "facially neutral" communications "visible to all Raytheon employees," which, "combined with the reasonable safety accommodations for vaccination-exempt employees, does not come close to meeting the demanding standard needed to state a legally valid hostile work environment claim." *Id.* at *16-17.

Finally, with respect to retaliation, the Arizona District Court again held that "Plaintiffs have not established that they were members of a protected class or were engaging in protected activity." *Id.* at *17. The Arizona District Court further held that even if the Arizona Plaintiffs had done so, they did not "establish a causal link between [their] protected activity and any adverse employment action." *Id.* at *17. As the Arizona District Court held:

> Plaintiffs admit in their Complaint … [that] they were terminated or resigned due to their refusal to comply with the health and safety protocols for vaccination-exempt employees. Defendant's requirement that vaccination-exempt employees wear facial masks and engage in weekly COVID-19 testing does not have any religious aspect attached to it and is a facially neutral policy. Plaintiffs' religious and, in some cases, medical objections to the COVID-19 vaccine was not a but-for cause of Plaintiffs' termination. Instead, the but-for cause of Plaintiffs' termination was Plaintiffs' refusal to comply with the safety conditions for vaccination exempt employees.

*Id.* at *17-18.

315454821v.1

8

The District Court concluded that, in light of the Arizona Plaintiffs' binding judicial admissions in the Arizona Complaint, "any amendment to the Complaint would be futile. Therefore, dismissal of the Complaint with prejudice is appropriate." *Id.* at *18-19.  Raytheon had also moved to strike the Arizona Plaintiffs' class allegations, but because the Arizona District Court dismissed the Arizona Plaintiffs' individual claims with prejudice, it did not address Raytheon's other motion.  *Id.* at *19.

The Arizona Plaintiffs appealed to the Ninth Circuit.  ECF No. 1 ¶ 51.  On April 29, 2024, the Ninth Circuit unanimously affirmed.  *Leake v. Raytheon Techs. Corp.*, 2024 U.S. App. LEXIS 10287 (9th Cir. Apr. 29, 2024).[7]  The Arizona Plaintiffs next sought review from the U.S. Supreme Court, but the Supreme Court denied their petition for a writ of certiorari on October 21, 2024.  ECF No. 1 ¶ 52; *Leake v. Raytheon Technologies Corp.*, 2024 U.S. LEXIS 4384 (Oct. 21, 2024).

### **Plaintiffs' Receive Right-to-Sue Letters from the EEOC**

At various times during the pendency of the Arizona Action, each of the Plaintiffs received a right-to-sue letter from the EEOC.  Mr. Garza was the first, on October 3, 2022, followed by Ms. Grace on October 13, 2022; Ms. Leake on October 24, 2022; Mr. Stein on October 26, 2022; Ms. Zepeda on December 13, 2022; Mr. Sublett on April 13, 2023; Ms. Hernandez on January 2, 2024; and Mr. Heyser on August 5, 2024.  Brooks Decl. Exs. D-K.[8]

---

[7] A copy of the Ninth Circuit's decision is also annexed as **Exhibit C** to the Brooks Declaration.

[8] The Court may take judicial notice of these right-to-sue letters.  *See Davis v. Navy Fed. Credit Union*, 2012 U.S. Dist. LEXIS 2649, at *7-8 (E.D. Va. Jan. 10, 2012) (court may consider right-to-sue letters, even if not referenced in the complaint, because they are nonetheless "integral to the Complaint's administrative history" and are "public documents of which the Court may take judicial notice"; dismissing complaint, with prejudice, as untimely).

315454821v.1

**Plaintiffs Improperly Commence This Action**

Soon after the U.S. Supreme Court denied the Arizona Plaintiffs' petition for a writ of certiorari, Plaintiffs commenced this action on November 20, 2024.  ECF No. 1.  The Complaint is based upon Plaintiffs' allegation that they "requested religious accommodations to RTX's COVID-19 vaccine mandate," and in response, Raytheon "impos[ed] a testing, masking, and travel restriction policy which for various reasons" not explained anywhere in the Complaint "also violated Plaintiffs' religious beliefs." *Id.* ¶¶ 1-2.  As in the Arizona Action, Plaintiffs allege that Raytheon "terminated or constructively discharged them in violation of Title VII." *Id.* ¶ 4.

The Complaint's allegations regarding the Arizona Plaintiffs are nearly identical in many respects to those in the Arizona Complaint:

| Plaintiff Kristen Grace | |
|---|---|
| **Arizona Complaint Allegation** | **Virginia Complaint Allegation** |
| "Named Plaintiff Grace was employed by Defendant for over 18 years and received various promotions and pay increase.  She had no prior disciplinary issues with Defendant." Brooks Decl. Ex. A ¶ 38. | "Kristen Grace was employed as a Sr Eng, Design Engineer by RTX for more than 18 years and consistently received outstanding reviews." ECF No. 1 ¶ 15. |
| "On or about February 25, 2021, Plaintiff requested a transfer to a remote position, due to her sincere religious objections and medical disability that precluded her from complying to Defendant's COVID-19 policy.  Defendant acknowledged Plaintiff's ADA disability but dismissed Plaintiff's right to assert a religious exception." Brooks Decl. Ex. A ¶ 39. | "On February 25, 2021, Ms. Grace requested a transfer to a remote position as an accommodation to her sincerely held religious beliefs against the masking policy that Defendant held for unvaccinated individuals.  Upon learning that no religious accommodation was available for the masking policy, on March 23, 2021, Ms. Grace reluctantly submitted an ADA accommodation request to the masking and testing policy.  Ms. Grace continued to work remotely while awaiting RTX's determination on a permanent remote position." ECF No. 1 ¶¶ 16-18. |
| "On or about May 7, 2021, Defendant denied Plaintiff's request for a remote position as a | "On May 7, 2021, RTX denied Ms. Grace's request for a permanent remote position and |

315454821v.1

| | |
|---|---|
| reasonable accommodation and retaliated against Plaintiff by putting her on involuntary unpaid medical leave, prohibiting Plaintiff from seeking any outside income while on leave." Brooks Decl. Ex. A ¶ 40. | put her on permanent unpaid medical leave." ECF No. 1 ¶ 19. |
| "On or about September 24, 202[1], Plaintiff secured a remote position and submitted a religious exemption for the COVID-19 vaccine mandate." Brooks Decl. Ex. A ¶ 41. | "On September 22, 2021, Ms. Grace secured a permanent remote position with RTX through her own independent efforts.  She immediately submitted a religious accommodation request to the vaccine, masking, and testing policies that RTX announced on September 15, 2021." ECF No. 1 ¶¶ 21-22. |
| "On or about November 4, 2022, Plaintiff's religious exemption was denied based on Plaintiff's medical disability."  Brooks Decl. Ex. A ¶ 42. | "Despite her approved ADA accommodation for her medical disability, RTX denied her religious accommodation request for the testing and masking requirements."  ECF No. 1 ¶ 23. |
| "After months of Defendant's continuous harassment, coercion, threats, and humiliation, on or about January 31, 2022, Defendant terminated Plaintiff's employment for non-compliance to [sic] Defendant's COVID-19 mandate." Brooks Decl. Ex. A ¶ 43. | "RTX terminated Ms. Grace on January 31, 2022."  ECF No. 1 ¶ 24. |

| Plaintiff J. Michael Heyser | |
|---|---|
| **Arizona Complaint Allegation** | **Virginia Complaint Allegation** |
| "Named Plaintiff Heyser was a longtime employee (14 years) and USAF veteran who left a career as an airline pilot to join Raytheon so he could help deliver solutions to his brothers in arms." Brooks Decl. Ex. A ¶ 44. | "J. Michael Heyser began his career with RTX in 2008.  Over 12 years, he worked his way up to his 'dream job' as a Warfighter School Director, where he planned to stay until retirement."  ECF No. 1 ¶¶ 32-33. |
| "Plaintiff never agreed to any medical procedures as a condition to employment. Defendant, without a published policy, imposed such a requirement…. Unable to tolerate what had become a hostile work environment, Plaintiff resigned on Jan 14, 2022." Brooks Decl. Ex. A ¶¶ 49-52. | "He requested a religious accommodation to the COVID-19 vaccine mandate, but found that RTX offered no accommodations for testing, masking, and travel restrictions, which also violated his beliefs.  RTX constructively discharged Mr. Heyser on January 14, 2022." ECF No. 1 ¶¶ 34-35. |

| Plaintiff Lisa Leake | |
|---|---|
| **Arizona Complaint Allegation** | **Virginia Complaint Allegation** |
| "Named Plaintiff Leake was employed by Defendant for over 13 years and received various promotions and yearly pay increases. She had no prior disciplinary issues." Brooks Decl. Ex. A ¶ 34. | "Plaintiff Lisa Leake was an RTX employee for more than 14 years, where she served as a Senior Systems Engineer I and RTX's Tucson, Arizona facility."  ECF No. 1 ¶ 36. |
| "On or about November 1, 2021, in good faith and compliance to policy, Plaintiff submitted a | "Ms. Leake requested a religious accommodation to the COVID-19 vaccine." |

11

315454821v.1

| | |
|---|---|
| request for religious accommodation." Brooks Decl. Ex. A ¶ 35. | ECF No. 1 ¶ 37. |
| "On or about December 15, 2021, religious accommodation was approved with a with weekly testing stipulation, which was in violation of Plaintiff's accommodation statement explaining sincerely held religious beliefs. This non-negotiable testing requirement, dictated by Defendant, was only required of a small set of employees and tests were the most invasive EUA versions, that have since been recalled by the FDA." Brooks Decl. Ex. A ¶ 36. | "RTX required her to test instead, which also violated her religious beliefs." ECF No. 1 ¶ 38. |
| "On or about February 1, 2022, Plaintiff was terminated for non-compliance with the Defendant's Covid 19 mandate." Brooks Decl. Ex. A ¶ 37. | "She was unwilling to violate her religious beliefs in order to keep her job, so RTX fired her on January 31, 2022." ECF No. 1 ¶ 39. |
| **Plaintiff Christopher Stein** ||
| **Arizona Complaint Allegation** | **Virginia Complaint Allegation** |
| "Named Plaintiff Stein was employed by Defendant for over 20 years, receiving multiple promotions and pay increase[s]. He had no prior disciplinary issues with Defendant." Brooks Decl. Ex. A ¶ 53. | "Plaintiff Christopher Stein worked for RTX for over 20 years." ECF No. 1 ¶ 40. |
| "Defendant recommended a religious exemption which had three non-negotiable, mandated 'accommodations' dictated by Defendant (masking, social distancing, weekly testing)." Brooks Decl. Ex. A ¶ 55. | "He requested a religious accommodation to the COVID-19 vaccine mandate. RTX responded that he would have to test, which also violated his religious beliefs." ECF No. 1 ¶¶ 41-42. |
| "Plaintiff repeatedly worked with managerial staff and Defendant representatives to attempt an acceptable resolution to discriminatory and invasive weekly testing, but was told Defendant's testing mandate 'accommodations' were non-negotiable. Plaintiff was terminated by Defendant for non-compliance to Defendant's COVID-19 mandate ON January 31, 2022." Brooks Decl. Ex. A ¶¶ 59-60. | "Despite his repeated efforts to work to find a workable solution, RTX terminated Mr. Stein on January 31, 2022." ECF No. 1 ¶ 43. |
| **Plaintiff Leslie Zepeda** ||
| **Arizona Complaint Allegation** | **Virginia Complaint Allegation** |
| "Named Plaintiff Zepeda was employed by Defendant for six years, earning two promotions and multiple awards." Brooks Decl. Ex. A ¶ 61. | "Plaintiff Leslie Zepeda was a six-year employee of RTX and served as a Principal Specialist, Engineering Services." ECF No. 1 ¶ 46. |
| "Plaintiff submitted vaccination status and a | "She requested a religious accommodation |

12

| religious accommodation based on sincerely held faith for the COVID 19 vaccine and a medical accommodation to submit a saliva only test for COVID 19….. Defendant refused test results unless accompanied by a waiver of HIPPA [sic] rights presented as RTX COVID Testing Privacy Consent Form." Brooks Decl. Ex. A ¶¶ 63-65. | request but could not in good conscience submit her testing results in a manner that waive [sic] her rights under HIPAA." ECF No. 1 ¶ 47. |
|---|---|
| "In retaliation, Zepeda's employment was wrongfully terminated by Raytheon Technologies due to not agreeing waiving/ consenting to waive HIPPA [sic] rights on February 2. 2022." Brooks Decl. Ex. A ¶ 66. | "RTX terminated her on February 4, 2022." ECF No. 1 ¶ 48. |

The Complaint contains similar allegations regarding the Additional Plaintiffs. With respect to Mr. Garza, Plaintiffs allege that he "requested a religious accommodation request to RTX's testing mandate that RTX denied." ECF No. ¶ 26. "On November 22, 2021, Mr. Garza informed his management that he would submit to RTX's testing mandate under duress despite his sincerely held religious beliefs against testing." *Id.* ¶ 27. Plaintiffs allege, without elaboration, that "[h]e suffered religious and spiritual injury as a result of RTX's refusal to accommodate his religious beliefs." *Id.* ¶ 28. Plaintiffs allege that Ms. Hernandez "requested a religious accommodation for the vaccine mandate but could not in good conscience agree to the testing that came as a result of her request for accommodation." *Id.* ¶ 30. Plaintiffs do not explain why testing would violate Ms. Hernandez's conscience. *See id.* They allege that "[b]ecause she would not violate her conscience, RTX terminated Ms. Hernandez on January 31, 2022." *Id.* ¶ 31. Plaintiffs allege in a single paragraph that Mr. Sublett "submitted a religious accommodation request for the vaccine mandate and received the response that he would have to test, which he also objected to doing," for unexplained reasons, and so "RTX constructively discharged Mr. Sublett on December 4, 2021." *Id.* ¶ 45.

13

Plaintiffs concede that "*[a]ll plaintiffs* submitted their claims as part of a class complaint submitted on September 24, 2022," *i.e.*, the Arizona Action, and "[t]hat claim was dismissed." *Id.* ¶¶ 49-50 (emphasis added).  Plaintiffs allege that "[t]he putative class appealed the decision and the 9th Circuit Court of Appeals upheld the decision." *Id.* ¶ 51.  They further allege that "Plaintiffs filed a petition for a writ of certiorari with the U.S. Supreme Court which it declined on October 21, 2024." *Id.* ¶ 52.

Plaintiffs assert a single cause of action, for failure to accommodate under Title VII.  *See* ECF No. 1 at Count I.  They seeks damages of "8 million dollars," plus punitive damages, interest, and attorneys' fees.  ECF No. 1 ¶ 79.

### Raytheon Attempts to Avoid Motion Practice, but Plaintiffs Refuse

On December 9, 2024, Raytheon's counsel wrote to Plaintiffs' counsel, stating that Plaintiffs and their counsel had violated Rule 11 because the Complaint is both barred by *res judicata* and is time barred.  Brooks Decl. Ex. L.  On December 13, 2024, Plaintiffs' counsel responded by asserting that the Complaint complied with Rule 11 and that if Raytheon filed this motion, **Raytheon** would be subject to Rule 11 sanctions.  Brooks Decl. Ex. M.  Plaintiffs' counsel did not address the fact that Plaintiffs' claims were time-barred.  *See id.*  With respect to *res judicata*, Plaintiffs' counsel argued that Plaintiffs' claims were not barred under *Cooper v. Fed. Res. Bank*, 467 U.S. 867, 880 (1984).  *See id.*  On Monday December 16, 2024, Raytheon's counsel responded by noting that *Cooper* confirms that the Arizona Plaintiffs' claims in particular are barred by *res judicata*, and that Plaintiffs' counsel failed to address the fact that all Plaintiffs' claims are time barred.  *See id.*  Plaintiffs' counsel did not respond.

On December 31, 2024, Raytheon served Plaintiffs with a copy of these motion papers.  Brooks Decl. Ex. N.  Plainitffs' counsel failed to withdraw the Complaint within 21 days.

315454821v.1

## <u>ARGUMENT</u>

Rule 11 authorizes a trial court to impose "an appropriate sanction" upon parties who have violated the requirements of Rule 11(b).  When filing a pleading with the Court, a party certifies under Rule 11(b) that to the best of his or her knowledge, information, and belief—formed after an inquiry reasonable under the circumstances—*all* of the following conditions are met:

> **(1)      Proper purpose** — It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

> **(2)      Legal merit** — The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

> **(3)      Evidentiary support** — The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b)(1)-(3).

This certification creates an ***affirmative duty of investigation*** as to both law and fact before signing and submitting any pleading, motion, or other paper.  *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 550 (1991).  The Fourth Circuit has recognized that in deciding whether a Rule 11 sanction is warranted, courts must apply a standard of "objective reasonableness."  *See Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987); *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 872 F.2d 984, 987 (4th Cir. 1987); *see also Lake Wright Hospitality, LLC v. Holiday Hospitality Franchising, Inc.*, 2009 U.S. Dist. LEXIS 73903, at *9 (E.D. Va. Aug. 20, 2009).

Under Rule 11, "a complaint containing allegations unsupported by any information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to Rule 11 sanctions."  *Baker v. Booz Allen Hamilton, Inc.*,

315454821v.1

358 Fed. Appx. 476, 483-484 (4th Cir. 2009).  Thus, "[t]o be reasonable, the prefiling factual investigation must uncover some information to support the allegations in the complaint." *Brubaker*, 943 F.2d at 1373.

Here, Plaintiffs and their counsel knew that the Complaint was frivolous for two separate reasons.  First, Plaintiffs and their counsel knew that, at the very least, the claims of the Arizona Plaintiffs were barred by *res judicata*.  Second, Plaintiffs and their counsel knew that all Plaintiffs' claims were time-barred.  Plaintiffs have nonetheless continued to maintain this lawsuit.  They should be sanctioned pursuant to Rule 11(c).

### A. Plaintiffs Should be Sanctioned Because the Arizona Plaintiffs' Claims are Barred by *Res Judicata*.

Plaintiffs' Complaint is barred because the Arizona Plaintiffs' claims arising from the same exact facts were already dismissed with prejudice in the Arizona Action and affirmed by a unanimous Ninth Circuit.  *See* ECF No. 1 ¶¶ 49-52; *see* pgs. 3-13, *supra*.

"Courts have granted Rule 11 sanctions where the doctrine of res judicata barred the claims." *Oudeh v. Goshen Med. Ctr.*, 2024 U.S. Dist. LEXIS 147016, at *12-13 (D.N.C. Aug. 16, 2024) (collecting cases); *see also, e.g.*, *Reaves v. Roanoke Redevelopment & Hous. Auth.*, 2009 U.S. Dist. LEXIS 10703, at *19-20 (W.D. Va. Feb. 12, 2009) (same).

"Res judicata, also known as claim preclusion, bars a party from relitigating a claim that was decided ***or could have been decided*** in an original suit." *Laurel Sand & Gravel, Inc. v. Wilson,* 519 F.3d 156, 161 (4th Cir. 2008) (emphasis added).  Under this standard, "[t]he test for deciding 'whether the causes of action are identical for claim preclusion purposes is whether the claim presented in the new litigation '***arises out of the same transaction or series of transactions*** as the claim resolved by the prior judgment.'" *Id.* at 162 (emphasis added).  Accordingly, "'[n]ewly articulated claims based on the same [transactional] nucleus of facts may

16

315454821v.1

still be subject to a res judicata finding if the claims could have been brought in the earlier action.'"  *Id.*

Here, the Arizona Plaintiffs' claims in this action arise out of the exact same facts as the Arizona Action: their refusals to comply with the testing, masking, and social distancing required for their exemptions from the vaccination requirement of the 2021 Policy.  *See* pgs. 3-13, *supra*. The Arizona Plaintiffs are suing in this action under the exact same statute at issue in the Arizona Action, Title VII.  *See id.*  Because it was based on the same factual circumstances, the Arizona Plaintiffs could have asserted their Title VII claim for failure to accommodate in the Arizona Action.

In fact, Plaintiffs' counsel argued to the Ninth Circuit in the Arizona Action, after merits briefing had been completed, that the Ninth Circuit should re-open briefing because the Arizona Plaintiffs' prior counsel had failed in the Arizona District Court "to plead a claim under Title VII for failure to accommodate Plaintiffs' religious beliefs, which is the most relevant and applicable claim Plaintiffs had."  Brooks Decl. Ex. O at 6.[9]  The Arizona Plaintiffs argued to the Ninth Circuit that they wished they had "inclu[ded] a Title VII Failure to Accommodate Claim" in the Arizona Complaint.  *Id.* at 9; *see also id.* at 16.  In other words, the Arizona Plaintiffs affirmatively represented to the Ninth Circuit that a failure to accommodate claim ***could have been asserted in the Arizona Action***, and they wanted an opportunity to do so.

There is no serious dispute that the Arizona Plaintiffs' claims are barred by *res judicata*. Plaintiffs' citation to *Cooper*, *supra*, **confirms that the Arizona Plaintiffs' claims are barred**.  In *Cooper*, the Supreme Court held that where ***a class was certified***, the dismissal of the class' generalized claim regarding a "practice and pattern" by their employer did not prelucde the ***non-***

---

[9] Again, the Court can take judicial notice of this court filing from the Ninth Circuit.  *See* n.3, *supra*.

315454821v.1

JA038

*named plaintiffs* from pursuing claims based upon their individualized facts, since those individual facts were never addressed in the prior proceeding. *Cooper*, 467 U.S. at 880. The Supreme Court confirmed, however, that **the claims of the named plaintiffs <u>were barred by res judicata</u>**. *Id.* at 873-74. The Supreme Court stated that "the individual claims of each of the four intervening plaintiffs have been finally decided in the [defendant's] favor" and that "all four of those determinations are now equally final." *Id.* at 873-74 and n.7. The only issue in *Cooper* was whether the dismissal of generalized class claims based upon an alleged "pattern and practice" barred the individual claims of plaintiffs **other than the four named plaintiffs**. *See id.* at 874.

Setting aside the fact that this is not a "pattern and practice" case, no class was ever certified in the Arizona Action and there was no generalized, classwide holding, as in *Cooper*. *See* pgs. 3-9, *supra*. The Arizona District Court declined to decide Raytheon's challenge to the Arizona Plaintiffs' class allegations. *See* pg. 9, *supra*. Instead, the District Court examined the **individualized allegations** of the Arizona Plaintiffs and determined that their **individual claims should be dismissed with prejudice**. *See* pgs. 7-9, *supra*. Thus, as the Supreme Court put it in *Cooper*, "the individual claims of each of the" Arizona Plaintiffs "have been finally decided in [Raytheon's] favor." *See Cooper*, 467 U.S. at 873-74.

There is no reasonable excuse for the Arizona Plaintiffs' attempt to assert claims in this Court that they know are barred. Plaintiffs and their counsel should be sanctioned.

**B. All Plaintiffs' Claims are Time-Barred.**

Rule 11 sanctions are also warranted because **all** Plaintiffs' claims are time-barred. *See, e.g., Morning Star Baptist Church v. James City County Police,* 480 F. Supp. 2d 853, 859-60 (E.D. Va. 2007) (dismissing case based upon *res judicata* and statute of limitations, and

18

awarding Rule 11 sanctions where "[t]he sheer passage of time…makes clear that [plaintiff's] most recent claim was frivolous").

"Title VII requires that an aggrieved person file a civil action within 90 days of receiving a right-to-sue letter from the EEOC." *Quinn v. Copart of Conn., Inc.*, 791 F. App'x 393, 395 (4th Cir. 2019). "It is well settled that a Title VII claimant who fails to file a complaint within the 90-day period generally forfeits his right to pursue his claims." *Id.*; *see also Davis*, 2012 U.S. Dist. LEXIS 2649, at *7-8, 14-16 (dismissing complaint, with prejudice, where plaintiff failed to bring claims within 90 days of receiving right-to-sue letter).

Here, it is indisputable that none of the Plaintiffs filed suit within 90 days of receiving their right-to-sue letters. As set forth above, many of the Plaintiffs received their right-to-sue letters more than ***two years ago***, in late 2022. *See* pg. 9, *supra*; Brooks Decl. Exs. D-K. The most recent right-to-sue letter, issued to Mr. Heyser on August 5, 2024, required him to file suit no later than November 5, 2024. Brooks Decl. Ex. K. Yet this action was not commenced until November 20, 2024. ECF No. 1.

Notably, in the parties' pre-motion correspondence, Plaintiffs' counsel had no response to the fact that Plaintiffs' claims were all time-barred. *See* Brooks Decl. Ex. M. This silence is telling. Plaintiffs have no excuse for their failure to timely assert their claims. They knew their claims were barred, but burdened this Court anyway. Rule 11 sanctions are warranted.

**C. The Court Should Dismiss the Action and Issue Monetary Sanctions.**

"A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). "The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of

315454821v.1

part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.* Here, at a minimum, the Court should issue a nonmonetary sanction by dismissing the Complaint, with prejudice. *See, e.g., Amr v. Va. State Univ.*, 2011 U.S. Dist. LEXIS 110747, at *67 (E.D. Va. Aug. 11, 2011) (dismissing action **with prejudice** as a Rule 11 sanction).

Raytheon also submits, however, that an award of attorneys' fees and other expenses is warranted based upon the egregious nature of Plaintiffs' conduct. "The 'primary purpose of sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for costs in defending a frivolous suit.'" *Instant Tax Serv. 10060 v. TCA Fin., LLC*, 2009 U.S. Dist. LEXIS 72277, at *8-9 (D. Md. Aug. 14, 2009) (citing *In re Kunstler*, 914 F.2d 505, 524 (4th Cir. 1990)) (imposing "a sanction of $30,000 to be paid jointly and severally by [plaintiff's] attorneys, and an additional sanction of $10,000 to be paid by [plaintiff] individually"). Monetary sanctions are appropriate against counsel and parties where, *inter alia*, "it should have been abundantly clear even to an experienced attorney that all the claims raised in the suit were subject to…*res judicata*," yet, "[i]nstead of voluntarily dismissing the suit…[they] forged ahead…." *Id.* at *10-11.

As established above, Plaintiffs knew that their Complaint was barred and, accordingly, frivolous. Raytheon tried repeatedly to avoid motion practice, first by writing a letter to Plaintiffs' counsel; then by responding to Plaintiffs' counsel reliance upon *Cooper*; and finally by serving Plaintiffs with a copy of this motion 21 days before filing. At every turn, Plaintiffs refused to withdraw the Complaint. As a result of their pre-litigation efforts at resolution; the drafting of this motion; and the drafting of Raytheon's accompanying motion to dismiss, Raytheon is expected to incur attorneys' fees and expenses of $25,000, including any oral

argument that may be scheduled by the Court.  Brooks Decl. ¶ 19.  The Court should accordingly sanction Plaintiffs and their counsel in that amount.

CONCLUSION

The Court should grant Raytheon's motion for sanctions, dismiss Plaintiffs' Complaint with prejudice, and award monetary sanctions in favor of Raytheon.

Dated: January 24, 2025

Respectfully submitted,

By: ____*/s/ Samantha L. Brooks*____
Samantha L. Brooks, VA Bar No. 91928
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, D.C. 20004
(202) 828-3560
Fax: (202) 641-9209
sbrooks@seyfarth.com

Dawn R. Solowey (*pro hac vice* application forthcoming)
SEYFARTH SHAW LLP
Seaport East, Suite 1200
Two Seaport Lane
Boston, MA 02210
(617) 946-4800
dsolowey@seyfarth.com

Owen R. Wolfe (*pro hac vice* application forthcoming)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, NY 10018
(212) 218-5500
owolfe@seyfarth.com

*Counsel for Defendant RTX Corporation*

315454821v.1

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of January 2025, the foregoing MEMORANDUM

OF POINTS AND AUTHORITIES IN SUPOPRT OF MOTION FOR SANCTIONS

PURSUANT TO RULE 11 was filed with the Clerk of Court using the CM/ECF system, which

will then send a notification of such filing to the following counsel of record:

> E. Scott Loyd
> Lloyd Law Group, PLLC
> 15 Chester Street
> Front Royal, VA 22630
> scott@lloydlg.com
>
> *Counsel for Plaintiffs*

> _/s/ Samantha L. Brooks_
> Samantha L. Brooks
>  VA Bar No. 91928
> SEYFARTH SHAW LLP
> 975 F Street, N.W.
> Washington, D.C. 20004
> (202) 828-3560
> Fax: (202) 641-9209
> sbrooks@seyfarth.com
> *Counsel for Defendant RTX Corporation*

315454821v.1

JA043

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |
|---|---|
| KRISTEN GRACE, FRANCISCO GARZA, ROSSANA HERNANDEZ, J. MICHAEL HEYSER, LISA LEAKE, CHRISTOPHER STEIN, CHRISTOPHER SUBLETT, and LESLIE ZEPEDA<br><br>Plaintiffs,<br><br>v.<br><br>RTX CORPORATION f/k/a RAYTHEON TECHNOLOGIES CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil Action No. 24-cv-2083-CMH-WBP |

**DECLARATION OF SAMANTHA L. BROOKS IN SUPPORT
OF DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO RULE 11**

I, Samantha L. Brooks, counsel for Defendant RTX Corporation f/k/a Raytheon Technologies Corporation ("Raytheon"),[1] certify under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I am over 18 years of age, of sound mind, and otherwise competent to make this Declaration.

2.      I am counsel of record representing Raytheon in the above-captioned action.

3.      Annexed hereto as **Exhibit A** is a true and correct copy of the Complaint filed by Kristen Grace, J. Michael Heyser, Lisa Leake, Christopher Stein, and Leslie Zepeda

---

[1] Plaintiffs were actually employed by Raytheon Company, not Raytheon Technologies Company.  Raytheon Technologies Company is now RTX Corporation.  For ease of reference, I refer to RTX Corporation and Plaintiffs' employer as "Raytheon."

JA044

(collectively, the "Arizona Plaintiffs") in *Leake, et al. v. Raytheon Technologies Company*, Case No. 22-cv-00436-TUC-RM (D. Az.) (the "Arizona Action").

4.      Annexed hereto as **Exhibit B** is a true and correct copy of the Order entered by the Honorable Rosemary Márquez, U.S. District Judge, dated February 27, 2023, in the Arizona Action.

5.      Annexed hereto as **Exhibit C** is a true and correct copy of the Memorandum Opinion entered by the United States Court of Appeals for the Ninth Circuit, dated April 29, 2024, in connection with the Arizona Action.

6.      Annexed hereto as **Exhibit D** is a true and correct copy of the Determination and Notice of Rights issued by the U.S. Equal Employment Opportunity Commission ("EEOC") to Francisco Garza, dated October 3, 2022.

7.      Annexed hereto as **Exhibit E** is a true and correct copy of the Determination and Notice of Rights issued by the EEOC to Kristen Grace, dated October 13, 2022.

8.      Annexed hereto as **Exhibit F** is a true and correct copy of the Determination and Notice of Rights issued by the EEOC to Lisa Leake, dated October 24, 2022.

9.      Annexed hereto as **Exhibit G** is a true and correct copy of the Determination and Notice of Rights issued by the EEOC to Christopher Stein, dated October 26, 2022.

10.      Annexed hereto as **Exhibit H** is a true and correct copy of the Determination and Notice of Rights issued by the EEOC to Leslie Zepeda, dated December 13, 2022.

11.      Annexed hereto as **Exhibit I** is a true and correct copy of the Determination and Notice of Rights issued by the EEOC to Christopher Sublett, dated April 13, 2023.

12.      Annexed hereto as **Exhibit J** is a true and correct copy of the Determination and Notice of Rights issued by the EEOC to Rossana Hernandez, dated January 2, 2024.

13.     Annexed hereto as **Exhibit K** is a true and correct copy of the Determination and Notice of Rights issued by the EEOC to J. Michael Heyser, dated August 5, 2024.

14.     Annexed hereto as **Exhibit L** is a true and correct copy of a letter sent by my colleague, Owen R. Wolfe, to Plaintiffs' counsel, dated December 9, 2024.

15.     Annexed hereto as **Exhibit M** is a true and correct copy of email correspondence between Mr. Wolfe and Plaintiffs' counsel, dated December 9, December 13, and December 16, 2024.

16.     On December 31, 2024, Raytheon's counsel transmitted a copy of its motion for Rule 11 sanctions and supporting papers, including this declaration and exhibits, to Plaintiffs' counsel via email.

17.     Annexed hereto as **Exhibit N** is a true and correct copy of the December 31, 2024 email transmitting Raytheon's motion for Rule 11 sanctions and supporting papers to Plaintiffs' counsel.

18.     Annexed hereto as **Exhibit O** is a true and correct copy of the Motion to Stay Proceeding and Alternative Motion to Substitute Briefing (or Supplement Briefing) and to Extend Time for Hearing filed by the Arizona Plaintiffs in the United States Court of Appeals for the Ninth Circuit on October 20, 2023.

19.     Based upon my review of Seyfarth Shaw LLP's billing records, I estimate that Raytheon will incur legal fees and costs of $25,000 in connection with its pre-motion efforts to resolve this issue with Plaintiffs' counsel; the drafting of this Rule 11 motion; the drafting of Raytheon's separate motion to dismiss pursuant to Rule 12; and any oral argument that the Court may schedule on these motions.

- 4 -

Executed on:  January 24, 2025

By: */s/ Samantha L. Brooks*
Samantha L. Brooks
*Counsel for Defendant RTX Corporation*

# Exhibit A

Nancy Knox Bierman
1326 E. 33rd St. Suite A
Houston, TX 77002
(713) 836-9990
SBOT #24059177
(Pro Hoc Vice pending)
Libralawtexas@gmail.com

Attorney for the Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| LISA LEAKE, KRISTEN GRACE, JOSEPH HEYSER, CHRISTOPHER STEIN, AND LESLIE ZEPEDA, INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED<br><br>    Plaintiffs,<br><br>vs.<br><br>RAYTHEON TECHNOLOGIES CORPORATION,<br><br>    Defendant | Case No.: _____<br><br><br>CLASS ACTION COMPLAINT<br>JURY TRIAL REQUESTED |

**CLASS ACTION COMPLAINT**

The above-named Plaintiffs, Lisa Leake, Kristen Grace, Joseph Heyser, Christopher Stein and Leslie Zepeda (hereinafter collectively known as "Plaintiffs"), on behalf of themselves and all others similarly situated, hereby complain and allege against Raytheon Technologies Corporation (hereinafter known as "Defendant"), the following:

**INTRODUCTION**

1.  This is a Class Action on behalf of the named Plaintiffs and all other similarly situated claimants who were subject to Defendant's discriminatory policies that substantially

CLASS ACTION COMPLAINT JURY TRIAL REQUESTED - 1

JA049

burdened their ability to exercise their religious freedom by announcing, dictating and mandating that they receive a medical procedure, which insulted and violated their strongly held religious beliefs.

2. The penalty for not violating their own deeply and strongly held religious beliefs was termination from their employment, loss of their job benefits, and legal actions for repayment of trainings and professional degrees earned under employee educational benefits programs.

3. The mandate and subsequent coercive actions on the part of the Defendant violated Plaintiff's rights and caused undue emotional and psychological harm to the Plaintiffs. 4.

4. Defendant reluctantly granted a handful of religious exemptions and medical exemptions, however significant caveats attached, to include a waiver of medical privacy right guaranteed under HIPAA, as Defendant intended to release all medical data to a 3rd party.

5. Defendant willfully discriminated against employees based on disability and/or religious belief and engaged in patterns and practices designed to coerce, manipulate, ostracize them due to those disabilities and beliefs.

6. Furthermore, Defendant engaged in retaliatory behavior by wrongfully terminating Plaintiffs due to their disabilities and/or religious beliefs.

7. By this action, Plaintiffs individually and on behalf of the Class, seek damages and declaratory relief.

## PARTIES

8. Plaintiffs were, at all relevant times, residents of Arizona. Defendant was, at all relevant times, a for-profit corporation doing business in the State of Arizona, availing itself of the privileges and benefits of conducting business in Arizona.

CLASS ACTION COMPLAINT JURY TRIAL REQUESTED - 2

## A. Named Plaintiffs

9.      Named Plaintiff Lisa Leake was employed by Defendant as a Sr Systems Engineer I, at Defendant's Tucson Arizona location.

10.     Named Plaintiff Kristen Grace was employed by Defendant as a Sr Eng, Design Engineer, at Defendant's Tucson location.

11.     Named Plaintiff Joseph Heyser was employed by Defendant as an Associate Director, Program Management, at Defendant's Tucson location.

12.     Named Plaintiff Christopher Stein was employed by Defendant as a Principal Engineer, E&E Engineering at Defendant's Tucson location.

13.     Named Plaintiff Leslie Zepeda was employed by Defendant as a Principal Specialist, Engineering Services at Defendant's Tucson location.

## B. Named Defendant

14.      Defendant is a domestic for-profit corporation whose registered office is located at:

7925 Jones Branch Dr, Mc Lean, VA 22102.

Process may be served on its registered agent, at the company's Tucson location: 1151 E Hermans Road M S TU M09 T, Tucson, AZ 85706

### JURISDICTION AND VENUE

15.     Jurisdiction is proper pursuant to 28 USC §§ 1331, 1332(d), 1441 (c)(A), and 1453. Plaintiffs and the proposed class members are citizens of the State of Arizona. Defendant is a Delaware Corporation, with corporate headquarters in Massachusetts, and at all relevant times hereto, was doing business in the State of Arizona.

CLASS ACTION COMPLAINT JURY TRIAL REQUESTED - 3

JA051

16.   This Court has authority to award the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, and

costs and attorneys' fees pursuant to 28 U.S.C. § 2412 and 42 U.S.C. § 1988(b).

17.   Venue is proper is this District pursuant to USC 28 §1391, as the conduct giving rise to Plaintiff's claims occurred in the State of Arizona, County of Pima.

**FACTUAL ALLEGATIONS**

**The Mandate**

18.   **September 15, 2021:**  Raytheon announced vaccine mandate policy via email blast and video message from CEO On or around September 15, 2021, Defendant implemented a mandatory vaccination policy that requires all employees receive the COVID-19 vaccine and disclose their vaccination status. Plaintiffs refused to submit for varying medical issues and religious beliefs to the experimental medical procedure that may have derived its cell line from aborted fetal tissues.

19.   **September 16, 2021:**  First of many evolutions of FAQ published.  This document and the video from the CEO are what the company says defines the new covid vaccine policy. Vaccinations will be mandatory for all on site AND all off site employees.

**The Objection/Exemption/Accommodation Process**

20.   All Plaintiffs objected to receiving a COVID-19 vaccination based on their sincerely held religious beliefs and/or their pre-existing medical conditions. Plaintiffs sincerely held religious beliefs and/or pre-existing medical issues prevent each of them from receiving the COVID-19 vaccine for a variety of reasons.

21.   Multiple Plaintiffs hold to the sincere religious belief that the human body is God's temple, and that they must not take anything into their bodies that God has forbidden or

CLASS ACTION COMPLAINT JURY TRIAL REQUESTED - 4

JA052

that would alter the functions of their body such as by inducing the production of a spike protein in a manner not designed by God.

22. Multiple Plaintiffs object to the use of mRNA technology, which causes human cells to produce a spike protein they would not normally produce.

23. Multiple Plaintiffs object to being forced to inject a substance that carries with it significant risk. The COVID-19 vaccine has resulted in a statistically significant number of serious adverse reactions, including myocarditis, a potentially fatal inflammation of the heart muscles, and pericarditis, a potentially fatal inflammation of the heart tissue.

24. Multiple Plaintiffs submitted requests for religious and/or medical exemptions. Some were conditionally granted with conditions designed to coerce compliance through segregation, demotion, and other hostile "accommodations".

**The Harassment, Coercion and Creation of a Hostile Work Environment**

25. Plaintiffs were subjected to frequent homepage banners and emails reminding them to submit their vaccine status, threatening termination for non-compliance.

26. Plaintiffs faced constant reminders and coercion via emails, company shout-outs, and "Get vaccinated" signs in all common areas. All efforts were focused on vaccination compliance and submission to this experimental injection.

27. Many of the Plaintiffs have contracted and recovered from COVID-19, and many have antibodies tests showing that they acquired natural immunity, however all of this was rejected by Defendant.

28. Plaintiffs do not believe that staying true to their faith meant exposing themselves or others to unnecessary risk. They view life, both their own and that of their fellow man as sacred and deserving of the utmost protection.

CLASS ACTION COMPLAINT JURY TRIAL REQUESTED - 5

29. Plaintiffs did not object to other non-permanent safety measures, such as physical distancing, sick leave, indoor masking, and teleworking. Defendants had complied with such measures during the prior eleven months, as many returned to work after the initial two weeks of shutdown in April 2020.

30. Defendants possessed multiple less restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and voluntary testing of all symptomatic employees.

31. Defendants should have implemented mitigation protocols irrespective of vaccination status, as those who have been vaccinated can carry, transmit, and become infected with COVID-19.

32. If Defendants true goal was health of workers and a safe environment, forcing weight loss and smoking cessation would have better served the purpose as obesity and hypertension were the most prevalent co-morbidities associated with the virus.

**The Termination and Retaliation**

33. The federal contractor vaccine mandate was stayed on December 17, 2021, in a decision by the U.S. Court of Appeals for the Eleventh Circuit. The nationwide stay of the mandate was in place at the time of all events put forth below. A final decision was expected as late as April 2022.

34. Named Plaintiff Leake was employed by Defendant for over 13 years and received various promotions and yearly pay increases. She had no prior disciplinary issues.

35. On or about November 1, 2021, in good faith and compliance to policy, Plaintiff submitted a request for religious accommodation.

CLASS ACTION COMPLAINT JURY TRIAL REQUESTED - 6

36.     On or about December 15, 2021, religious accommodation was approved with a with weekly testing stipulation, which was in violation of Plaintiff's accommodation statement explaining sincerely held religious beliefs. This non-negotiable testing requirement, dictated by Defendant, was only required of a small set of employees and tests were the most invasive EUA versions, that have since been recalled by the FDA.

37.     On or about February 1, 2022, Plaintiff was terminated for non-compliance with the Defendant's Covid 19 mandate.

38.     Named Plaintiff Grace was employed by Defendant for over 18 years and received various promotions and pay increase. She had no prior disciplinary issues with Defendant.

39.     On or about February 25, 2021, Plaintiff requested a transfer to a remote position, due to her sincere religious objections and medical disability that precluded her from complying to Defendant's COVID-19 policy. Defendant acknowledged Plaintiff's ADA disability but dismissed Plaintiff's right to assert a religious exception.

40.     On or about May 7, 2021, Defendant denied Plaintiff's request for a remote position as a reasonable accommodation and retaliated against Plaintiff by putting her on involuntary unpaid medical leave, prohibiting Plaintiff from seeking any outside income while on leave.

41.     On or about September 24, 2022, Plaintiff secured a remote position and submitted a religious exemption for the COVID-19 vaccine mandate.

42.     On or about November 4, 2022, Plaintiff's religious exemption was denied based on Plaintiff's medical disability.

CLASS ACTION COMPLAINT JURY TRIAL REQUESTED - 7

JA055

43. After months of Defendant's continuous harassment, coercion, threats, and humiliation, on or about January 31, 2022, Defendant terminated Plaintiff's employment for non-compliance to Defendant's COVID-19 mandate.

44. Named Plaintiff Heyser was a longtime employee (14 years) and USAF veteran who left a career as an airline pilot to join Raytheon so he could help deliver solutions to his brothers in arms.

45. Plaintiff was discriminated against due to his religious objections to the COVID injection mandate.

46. On or about September 15, 2021, Defendant issued a companywide vaccine mandate requiring all employees to submit to the experimental mRNA COVID 19 injections.

47. On or about September 15, 2021, Defendant also imposed a blanket "accommodation" for those with medical or religious exemptions of mask wear and weekly COVID testing (despite the fact that the tests are not FDA approved and under an emergency use authorization) indefinitely.

48. On or about September 30, 2021, the Defendant lifted masking and social distancing requirements for vaccinated employees only, making the Plaintiff easily identifiable as a person who had a medical or religious objection.

49. Plaintiff never agreed to any medical procedures as a condition to employment. Defendant, without a published policy, imposed such a requirement.

50. Plaintiff was repeatedly advised and warned via company emails and announcements that the consequences of non-compliance would be termination.

51. On or about Jan 7, 2022, Plaintiff was specifically advised that he would be terminated imminently.

CLASS ACTION COMPLAINT JURY TRIAL REQUESTED - 8

52. Unable to tolerate what had become a hostile work environment, Plaintiff resigned on Jan 14, 2022.

53. Named Plaintiff Stein was employed by Defendant for over 20 years, receiving multiple promotions and pay increase. He had no prior disciplinary issues with Defendant.

54. Plaintiff attempted to work through the Defendant's stated COVID-19 policy in good faith but was rejected for medical exemption because of a requirement for a doctor's note against EUA vaccination.

55. Defendant recommended a religious exemption which had three non-negotiable, mandated "accommodations" dictated by Defendant (masking, social distancing, weekly testing),

56. Defendant only required testing of unvaccinated employees despite the ability of the vaccinated to contract and spread the virus.

57. Defendant demanded invasive PCR tests that were emergency authorized and have since been recalled by the FDA.

58. Plaintiff was told by Defendant that if all three non-negotiable accommodations were 59. accepted, then Plaintiff's Religious Exemption (RE) would be approved.

59. Plaintiff repeatedly worked with managerial staff and Defendant representatives to attempt an acceptable resolution to discriminatory and invasive weekly testing, but was told Defendant's testing mandate "accommodations" were non-negotiable,

60. Plaintiff was terminated by Defendant for non-compliance to Defendant's COVID-19 mandate ON January 31, 2022.

61. Named Plaintiff Zepeda was employed by Defendant for six years, earning two promotions and multiple awards.

CLASS ACTION COMPLAINT JURY TRIAL REQUESTED - 9

62. Plaintiff endured coercion, harassment and threats of loss of livelihood to attest to COVID 19 vaccination status.

63. Plaintiff submitted vaccination status and a religious accommodation based on sincerely held faith for the COVID 19 vaccine and a medical accommodation to submit a saliva only test for COVID 19.

64. Defendant demanded weekly testing per accommodation requirement of only those either not disclosing vaccine status or not vaccinated.

65. Defendant refused test results unless accompanied by a waiver of HIPPA rights presented as RTX COVID Testing Privacy Consent Form.

66. In retaliation, Zepeda's employment was wrongfully terminated by Raytheon Technologies due to not agreeing waiving/ consenting to waive HIPPA rights on February 2. 2022.

## CLASS ALLEGATIONS

67. This Complaint is properly maintained as a Class Action under Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure. Subclasses may be added when necessary or appropriate.

**Numerosity (Rule 23(a)(1))**

68. The members of the Class are so numerous that individual joinder of all Class members is impracticable.

**Commonality (Rule 23(a)(2))**

69. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. Defendants have engaged in a common course of conduct giving rise to violations of the legal rights sought to be asserted by

CLASS ACTION COMPLAINT JURY TRIAL REQUESTED - 10

Plaintiffs. Similar or identical constitutional and statutory violations, policies, and practices as well as harm are prevalent across the Class.

70. The harm flows from a common denominator, that being a mandating of an injection of a synthetic substance to wit: manufactured RNA that was derived from fetal cell lines and contains multiple substances known to be toxic to humans.

71. Multiple Plaintiffs were denied religious and/or medical exemptions even if working remotely with absolutely no contact with co-workers.

72. Multiple Plaintiffs were denied religious exemptions based on their failure to pass a "religiosity test" administered by non-clerical management.

73. Multiple Plaintiffs were denied medical exemptions as they failed to fully waive their HIPPA rights and disclose their medical history, once again, to be weighed and measured for quality by non-medical management.

74. Multiple Plaintiffs were granted medical or religious exemptions but were forced to comply with onerous masking and PCR testing, in the face of nearly all brands of PCR tests being recalled by the FDA on Class 1 likely to cause harm or death status.

75. Multiple Plaintiffs chose not to tolerate a hostile work environment. When they were no longer allowed to travel, attend mandatory meetings, etc. they tendered their resignations.

76. Each named and un-named Plaintiff has lost their livelihood due to the imposition of this injection mandate. Many Plaintiffs had over 10 years of service with Defendant, and all had security clearances.

77. But for the onerous imposition of an employer mandate forcing employees to inject themselves with an unproven, untested, synthetic substance, these Plaintiffs would have

CLASS ACTION COMPLAINT JURY TRIAL REQUESTED - 11

continued as loyal employees, in service not only to the Defendant, but to our Nation and its safety.

**Typicality (Rule 23(a)(3))**

78. The claims of Plaintiffs, who are representative of the Class herein, are typical of the claims of the proposed Class, in that the claims of all members arise from the same policy mandated by the Defendant, and all were injured as a result of the policy mandated by the Defendant.

**Adequacy (Rule 23(a)(4))**

79. The Named Plaintiffs will fairly and adequately protect the interests of the Class. There are no conflicts of interest between the Named Plaintiffs and the other Class Members.

80. Counsel for the Plaintiffs is an experienced trial lawyer with 20years experience and has devoted adequate resources to this litigation and will continue to do so.

**Predominance & Superiority (Rule 23(b)(3))**

81. Class certification is appropriate under Rule 23, as common questions of law and fact in this case predominate over questions affecting individual members of the Class, and a class action is the superior method for fair and efficient adjudication of this controversy.

82. The likelihood of individual prosecutions in in separate actions is remote given the time and expense necessary to conduct such litigation. The class action procedure would permit a large number of injured persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication.

**Final Declaratory or Injunctive Relief (Rule 23(b)(2))**

83. Plaintiffs satisfy the requirements for maintaining a class action under Rule 23(b)(2). Defendant has acted or refused to act on grounds that apply generally to the proposed

CLASS ACTION COMPLAINT JURY TRIAL REQUESTED - 12

Class, making final declaratory and injunctive relief appropriate with respect to the Class as a whole.

**Particular Issues (Rule 23(c)(4))**

84.   Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). The claims of the named Plaintiffs consist of particular issues that are common to all members of the Class and are capable of class-wide resolution that will significantly advance litigation.

**CAUSES OF ACTION**

**COUNT ONE**

**DISCRIMINATION IN VIOLATION OF 42 U.S. CODE §§2000e–2(a)(1) 2(a)(2)**

85.   Plaintiffs repeat and re-allege each and every paragraph above with the same full force and effect as if fully set forth herein.

86.   42  U.S. CODE §§2000e–2(a)(1) states that It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

87.   42 U.S. CODE §§2000e–2(a)(2) states that to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin

CLASS ACTION COMPLAINT JURY TRIAL REQUESTED - 13

88.    Defendant engaged in unlawful employment practices when they discriminated against Plaintiffs by discharging them from their employment due to their strongly held religious beliefs. Their compensation, terms, conditions, and privileges of employment were terminated as a result of their religious beliefs.

89.    Defendant engaged in unlawful employment practices by discipling employees due to their strongly held religious beliefs, by mandating a medical injection the intake of which would have been violative of their strongly and sincerely held religious beliefs.

**COUNT TWO**

**WRONGFUL TERMINATION IN VIOLATION OF 42 U.S. CODE §§2000e–2(a)(1)**

90.    Plaintiffs repeat and re-allege each and every paragraph above with the same full force and effect as if fully set forth herein

91.    42 U.S. CODE §§2000e–2(a)(1) states that it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

92.    Defendant terminated the employment of Plaintiffs for engaging in protected activity vis a vis the request for religious exemption from the medical injection mandated by Defendant.

93.    Plaintiffs' assertion of their right to their deeply held religious beliefs, their refusal to comply with the medical injection directive, and refusal to comply with the odious "accommodations" intended to ostracize and humiliate are the reasons for said termination.

CLASS ACTION COMPLAINT JURY TRIAL REQUESTED - 14

JA062

94. As a result of Defendant's actions, Plaintiffs suffered Damages in an amount to be proven at trial. These actions were the actual and proximate cause of these damages.

95. Defendant acted with malice and reckless indifference with regard to Plaintiffs' right to religious freedom, justifying an award of punitive damages as well as attorney's fees and court costs.

## COUNT THREE

## RETALIATION IN VIOLATION OF 42 U.S. Code § 200e-3

96. Plaintiffs repeat and re-allege each and every paragraph above with the same full force and effect as if fully set forth herein

97. 42 U.S. Code §200e-3 states It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing

98. Plaintiffs are employees of Defendant, with disabilities and/or sincerely held religious beliefs who engaged in protected activity when they submitted requests for reasonable accommodation and/or exemption from Defendant's vaccine directives.

99. Defendant engaged in unlawful employment practices when it ignored, mocked, and dismissed Plaintiff's sincerely held religious beliefs. Defendant behaved unlawfully when

CLASS ACTION COMPLAINT JURY TRIAL REQUESTED - 15

it interrogated Plaintiffs regarding their religiosity, engaged in faux negotiations regarding acceptable accommodations, ostracized them during team meetings, bombarded them with coercive messaging and inevitably terminated their employment, denied them benefits, canceled their insurance, initiated legal actions for education benefits, and delayed termination letters, constructively denying unemployment claims.

100. Plaintiffs were all long-term employees, with specialized training and high-level security clearances. All had significant experience with spotless employment records prior to the medical directives imposed by Defendant.

101. But for the unlawful and discriminatory actions of Defendant, these Plaintiffs would have continued as loyal employees of Defendant for many years to come, with no intentions of leaving Raytheon Technologies. Instead, Defendant terminated their service in retaliation for their refusal to violate their strongly held religious beliefs.

102. By creating and implementing the medical directive, Defendant engaged in a pattern and practice of discrimination against employees with sincerely held religious beliefs by a classification system that adversely affected their employment, based entirely on their refusal to submit to a medical procedure that would violate their strongly held religious beliefs.

103. Defendant retaliated against Plaintiffs for engaging in protected activity and assertion of their right to refuse violation of their strongly held religious beliefs and desecration of their bodies with experimental chemicals at the behest of their employer.

104. As a result of the actions of Defendant, Plaintiffs suffered damages in an amount to be proven at trial. These actions were the actual and proximate cause of those damages.

CLASS ACTION COMPLAINT JURY TRIAL REQUESTED - 16

JA064

105. Furthermore, Defendant acted with malice and reckless indifference by refusing to participate in good-faith dialogue regarding accommodation that would not be in violation of Plaintiffs strongly held religious beliefs, instead hiding behind dogmatic phraseology and sound bites.

106. Plaintiffs are entitled to affirmative relief to remedy the actions of Defendant.

## PRAYER FOR RELIEF

NOW THEREFORE, having fully stated their claims against the Defendants, Plaintiffs pray that this Honorable Court award them relief as follows:

  a. A Certification of this Action as a Class Action under Federal Rules of Civil Procedure 23 (a) and (b).

  b. A Declaratory Judgement stating that Defendant's COVID injection mandate violates Plaintiff's and other class members rights under the First Amendment.

  c. For Injunctive relief as it pertains to all current employees of Defendant.

  d. For compensatory damages in an amount to be proven at trial.

  e. For punitive damages in an amount to be proven at trial.

  f. For Court costs and Attorney's fees as allowable under law.

  g. For such other relief as the Court deems just and proper.

Dated: September 24, 2022,                    Respectfully Submitted

                                              /s/ Nancy Knox Bierman

                                              Attorney for the Plaintiffs

CLASS ACTION COMPLAINT JURY TRIAL REQUESTED - 17

# Exhibit B

 Positive
As of: December 31, 2024 7:16 PM Z

## *Leake v. Raytheon Techs. Corp.*

United States District Court for the District of Arizona

February 27, 2023, Decided; February 27, 2023, Filed

No. CV-22-00436-TUC-RM

**Reporter**
2023 U.S. Dist. LEXIS 32177 *; 2023 WL 2242857

Lisa Leake, et al., Plaintiffs, v. Raytheon Technologies Corporation, Defendant.

**Subsequent History:** Affirmed by *Leake v. Raytheon Techs. Corp., 2024 U.S. App. LEXIS 10287 (9th Cir. Ariz., Apr. 29, 2024)*

## Core Terms

vaccination, employees, allegations, religious belief, exemption, terminated, religious, vaccination-exempt, protocols, reasons, disparate treatment, protected class, retaliation, hostile work environment, objected, motion to dismiss, refuse to comply, work environment, accommodations, resigned, hostile, argues, facially neutral, leave to amend, class action, email, masks

**Counsel:** [*1] For Lisa Leake, Individually and on behalf of all other Similarly Situated, Kristen Grace, Individually and on behalf of all other Similarly Situated, Joseph Heyser, Individually and on behalf of all other Similarly Situated, Christopher Stein, Individually and on behalf of all other Similarly Situated, Leslie Zepeda, Individually and on behalf of all other Similarly Situated, Plaintiffs: Nancy Knox-Bierman, LEAD ATTORNEY, PRO HAC VICE, Libra Law Texas, Houston, TX.

For Raytheon Technologies Corporation, Defendant: Dawn R Solowey, LEAD ATTORNEY, PRO HAC VICE, Seyfarth Shaw LLP - Boston, MA, Seaport E, Boston, MA; Esteban Shardonofsky, LEAD ATTORNEY,

PRO HAC VICE, Seyfarth Shaw LLP - Houston, TX, Houston, TX; Owen Richard Wolfe, LEAD ATTORNEY, PRO HAC VICE, Seyfarth Shaw LLP - New York, NY, New York, NY.

**Judges:** Honorable Rosemary Márquez, United States District Judge.

**Opinion by:** Rosemary Márquez

## Opinion

### ORDER

Pending before the Court is Defendant Raytheon Company's ("Defendant or Raytheon")[1] Motion to Dismiss Plaintiffs' Class Action Complaint Pursuant to *Fed. R. Civ. P. 12(b)(6)* (Doc. 9) and Motion to Strike Class Allegations Pursuant to *Fed. R. Civ. P. 12(f)* and *23* (Doc. 10). Plaintiffs Lisa Leake, Kristen Grace, Joseph Heyser, Christopher Stein, and Leslie Zepeda [*2] ("Plaintiffs") responded in opposition to both Motions (Docs. 11 and 12) and Defendant replied to both Motions (Docs. 13 and 14). For the following reasons the Court will grant Defendant's Motion to Dismiss with prejudice and deny Defendant's Motion to Strike Class Allegations as moot.

---

[1] Defendant claims Plaintiff erroneously named Raytheon Technologies Corporation as the Defendant in this matter when Plaintiffs were actually employed by Raytheon Company. (Doc. 9 at n. 1.)

JA067

## I. Background

All Plaintiffs were employed by Raytheon at the Tucson, Arizona location. (Doc. 1 at 3.) On September 15, 2021, Raytheon announced via email a new, company-wide, mandatory COVID-19 vaccination policy and issued an FAQ the following day. (*Id.* at 4.) Plaintiffs objected to receiving the vaccination for either religious or medical reasons. (*Id.*) Specifically, some Plaintiffs objected to the vaccination based on their "sincere religious belief that the human body is God's temple, and that they must not take anything into their bodies that God has forbidden or that would alter the functions of their body such as by inducing the production of a spike protein in a manner not designed by God," while other Plaintiffs objected "to being forced to inject a substance that carries with it a significant risk... of serious adverse reactions[.]" (*Id.* at 4-5.) Plaintiffs admit that Raytheon imposed a "blanket [*3] accommodation" for those objecting to the vaccination for religious or medical reasons on the condition that the employees with vaccination exemptions wear masks and test weekly for COVID-19. (*Id.* at 8.)[2] However, Plaintiffs felt that these safety protocols, along with constant email reminders and signs posted in the common areas of the workplace encouraging employees to get vaccinated, subjected Plaintiffs to harassment, coercion to get vaccinated, and created a hostile work environment. (*Id.* at 5.) Plaintiffs argue that if Defendant's true goal was employee safety, then Defendant should have required all

employees to partake in the safety protocols regardless of vaccination status while also "forcing weight loss and smoking cessation." (*Id.* at 6.) All named Plaintiffs were terminated or resigned for their refusal to comply with Defendant's safety protocols for vaccination-exempt employees. (*Id.* at 6-10.)

On September 24, 2022, Plaintiffs filed a Class Action Complaint alleging discrimination and wrongful termination in violation of *42 U.S.C. §§2000e-2(a)(1)* and retaliation in violation of *42 U.S.C. § 2000e-3*. (Doc. 1.) Plaintiffs allege that the three-count Complaint properly maintains a class action under *Rule 23(a)* and *Rule 23(b)(2) of the Federal Rules of Civil Procedure*. (*Id.* at [*4] 10-13.) In Count One, Plaintiffs claim Defendant discriminated against them by mandating a medical injection and that Plaintiffs were ultimately discharged from employment due to their sincere religious beliefs. (*Id.* at 13-14.) Similarly, under Count Two Plaintiffs allege they were wrongfully terminated due to their deeply held religious beliefs. (*Id* at 14-15.) Lastly, in Count Three, Plaintiffs allege Defendant retaliated against Plaintiffs' religious beliefs by creating a classification system by ostracizing Plaintiffs during team meetings, bombarding them with coercive emails, and eventually terminating them from employment. (*Id.* at 15-17.)

On December 2, 2022, Defendant filed a Motion to Dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)*. (Doc. 9.) Defendant argues that as a matter of law Plaintiffs cannot state a claim for religious discrimination under Title VII because, among other reasons: (1) the vaccination policy applied to all employees regardless of religious beliefs; (2) Plaintiffs were not terminated, nor did they resign due to their refusal to be vaccinated; rather, they were terminated or resigned from their refusal to comply with the safety protocols for vaccination-exempt employees; and, (3) not [*5] all Plaintiffs even objected to the

---

[2] Plaintiffs claim the PCR nasal swab testing Defendant required was recalled by the FDA. (Doc. 1 at 9.) Defendant requests the Court take judicial notice that Plaintiffs' statement is "demonstrably false." (Doc. 9 at 3, n.1.) After review, the Court will take judicial notice that the PCR nasal swab COVID-19 testing was not recalled by the FDA and will not accept this statement in Plaintiffs' Class Action Complaint as true. *See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).*

vaccination for religious reasons. (*Id.*) Specifically, Defendant argues Plaintiffs' disparate treatment claim fails because (1) Plaintiffs never alleged they were members of a protected class, (2) Plaintiffs were never treated any differently from those outside the class, and (3) there is no link between any adverse employment action and their religious beliefs. (*Id.* at 10-13.) Defendant argues Plaintiffs' hostile work environment claim fails because (1) Plaintiffs failed to exhaust their administrative remedies by asserting this charge with the Equal Employment Opportunity Commission ("EEOC"), (2) there was nothing hostile about the health and safety protocols for vaccination exempt employees, and (3) the email and signage were facially neutral, had nothing to do with Plaintiffs' religious beliefs, and were directed to all employees. (*Id.* at 13-15.) Lastly, Defendant states Plaintiffs' retaliation claim fails because (1) similar to the disparate treatment claim, Plaintiffs have not established any link between their requests for exemptions and loss of employment, and (2) the loss of employment was due to Plaintiffs' refusal to comply with the safety [*6] protocols and not from their religious beliefs. (*Id.* at 15-16.) Alternatively to the Motion to Dismiss, Defendant filed a Motion to Strike Class Allegations. (Doc. 10.) Defendant argues that Plaintiffs cannot maintain a class because the Plaintiffs are not similarly situated such that there is a common question of law or fact common to the class. (*Id.* at 8.)

In response, Plaintiffs argue that the Motion to Dismiss should be denied because all allegations of material facts in a *12(b)(6)* motion are to be construed in Plaintiffs' favor, and taken as true, Plaintiffs have stated a claim in their Complaint. (Doc. 12.) In support of their Response, Plaintiffs argue that they were willfully targeted by Defendant due to their deeply held religious beliefs and that termination from employment is a "pretty dang

adverse" employment action. (*Id.* at 2.) Plaintiffs also assert that Defendant retaliated against Plaintiffs' religious beliefs by terminating their employment, and that Defendant created a hostile work environment leading to discriminatory practices by promoting "a political agenda rather than allow for Plaintiff's [sic] deeply held religious beliefs[.]" (*Id.* at 3.) In response to the [*7] Motion to Strike Class Allegations, Plaintiffs state that questions of law and fact are shared by all members of the class because all Plaintiffs were faced with a Hobbesian choice; Plaintiffs could either reject their deeply held religious beliefs and defile their bodies for the vaccination or lose the job they loved. (Doc. 11.)

Defendant's Reply states that Plaintiffs' Response makes "no attempt to clarify their vague, contradictory, and self-defeating allegations." (Doc. 13 at 2.) Additionally, the Reply clarifies that Plaintiffs do not even dispute the key facts that warrant dismissal under Title VII. (*Id.*) Specifically, the Response does not dispute that: (1) Plaintiffs were treated the same as employees who sought non-religious vaccination exemptions; (2) Plaintiffs were provided vaccination exemptions subject to compliance with health and safety protocols; (3) Plaintiffs objected to these protocols for non-religious reasons; and, (4) Plaintiffs were terminated or resigned not from religious beliefs, but from refusal to comply with the safety conditions of their exemptions. (*Id.*) Defendant reiterates that all three of Plaintiffs' Title VII claims fail because, in large part, there [*8] is no link between Plaintiffs' religious beliefs and any disparate treatment, retaliation, or hostile work environment allegation. (Doc. 13.) Additionally, Defendant argues that the dismissal of Plaintiff's Complaint should be with prejudice, as there is no possibility Plaintiffs could amend their Complaint to state a legal claim. (*Id.* at 7.) Finally, Defendant argues that the Court

should strike Plaintiffs' class allegations because Plaintiffs simply restate *Fed. R. Civ. P. 23* in conclusory fashion and do not provide legal grounds to maintain a class action. (Doc. 14.)

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*. Dismissal is only appropriate if the complaint's factual allegations, together with all reasonable inferences drawn in the plaintiff's favor, fail to state a plausible claim for relief. *Id. at 678*; *see also Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)* (all factual allegations in the complaint must be accepted as true). However, allegations that "contradict matters properly subject to judicial notice or by exhibit" need not be accepted as true. *Gonzalez v. Planned Parenthood of Los Angeles, 759 F.3d 1112, 1115 (9th Cir. 2014)*; *see also Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)* (courts need not accept as true allegations that "contradict [*9] matters properly subject to judicial notice or by exhibit" or that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") "[A] court may disregard allegations of the complaint that are contradicted by attached exhibits." *Castle v. Eurofresh, Inc., No. CV09-8114-PCT-MHMDKD, 2010 U.S. Dist. LEXIS 21481, 2010 WL 797138, at *3 (D. Ariz. Mar. 8, 2010)*. "We have held that a plaintiff can...plead himself out of a claim by including unnecessary details contrary to his claims." *Sprewell, 266 F.3d at 988*.

While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 45 n.12, 131 S. Ct. 1309, 179 L. Ed. 2d 398 (2011)* (quoting *Twombly, 550 U.S. at 570*). The allegations must "raise a reasonable expectation that discovery will reveal [material] evidence" and thus "allow the court to draw the reasonable inference that the defendant is liable" for the alleged misconduct. *Id. at 46*. The plausibility standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal, 556 U.S. at 678*. A formulaic recitation of the elements of a cause of action is not enough to establish a claim, and legal conclusions are not entitled to an assumption of truth. *Id. at 679*.

In resolving a *Rule 12(b)(6)* Motion to Dismiss for failure [*10] to state a claim, "the Court's task is to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Sabol, 439 F. Supp. 3d 131, 2020 WL 705170, at *6* (internal citations and quotations omitted). Within the context of the facts stated in the complaint or documents attached to or incorporated into the complaint by reference, the Court must "draw reasonable inferences and resolve any doubts in favor of the non-moving party." *Id.*

"The court should freely give leave [to amend] when justice so requires." *Fed. R. Civ. P. 15(a)(2)*; *see also Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ., 616 F.3d 963, 971 (9th Cir. 2010)* ("Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment.") (citations omitted). Whether a district court grants leave to amend is

reviewed for an abuse of discretion. *Ecological Rts. Found. v. Pac. Gas & Elec. Co., 713 F.3d 502, 520 (9th Cir. 2013)*. The factors to consider in making the determination of whether to dismiss the complaint without leave to amend are bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *Id.* (citing *United States v. Corinthian Colleges, 655 F.3d 984, 995 (9th Cir. 2011)*). "However, each is not given equal weight. Futility of amendment can, by itself, justify the denial of a motion for leave to amend." [*11] *Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995)*.

## III. Applicable Law [3]

Title VII of the Civil Rights Act of 1964 prohibits discrimination, termination, segregation, or any other act by an employer that deprives an individual of employment opportunities on account of religion. *42 U.S.C § 2000e-2(a)*. Employers have a duty to reasonably accommodate the religious practices of an employee, unless the employer can demonstrate that the accommodation would result in an undue hardship on the conduct of business. *29 C.F.R. § 1605.2(b)-(c)*.

"Disparate treatment occurs 'where an employer has treated a particular person less favorably than others because of a protected trait.'" *Wood v. City of San Diego, 678 F.3d 1075, 1081 (9th Cir. 2012)* (citing *Ricci v. DeStefano, 557 U.S. 557, 577, 129 S. Ct. 2658, 174 L. Ed. 2d 490 (2009)*). "To establish a prima facie case of disparate treatment

under Title VII, a plaintiff must provide evidence that 'give[s] rise to an inference of unlawful discrimination.'" *Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002)* (citing *Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)*). Additionally, when a plaintiff is challenging a facially neutral policy, she must establish that the defendant had a discriminatory intent for taking the job-related action. *Wood, 678 F. 3d at 1081*. Disparate treatment claims follow the *McDonnell Douglas* framework in that a plaintiff bears the initial burden of showing: "(1) he is a member of a protected class, (2) he was performing his job in a satisfactory manner, (3) he suffered an adverse employment decision, and (4) he was treated differently than [*12] similarly situated persons outside his protected class." *Clark v. Frank, 5 F.3d 535 (9th Cir. 1993)* (citing *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*).

"To state a claim based on a hostile work environment, the plaintiff must show that there has been severe or pervasive and unwelcome verbal or physical harassment because of the plaintiff's membership in a protected class," and that the severe and pervasive harassment altered the conditions of employment to create an abusive work environment. *Manatt v. Bank of Am., NA, 339 F.3d 792, 798 (9th Cir. 2003)*; *Clark v. Frank, 5 F.3d 535 (9th Cir. 1993)*. Courts are required to look at the totality of circumstances in determining whether a work environment is sufficiently hostile. *Faragher v. City of Boca Raton, 524 U.S. 775, 787, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)*. However, this is a demanding standard, and conduct must be extreme to constitute a hostile work environment. *Id. at 788*.

"To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) he engaged in protected activity, (2) he suffered

---

[3] Plaintiffs' three claims in their Complaint consist of "Discrimination, Wrongful Termination, and Retaliation;" whereas Defendant's Motion to Dismiss labels the three claims as "Disparate Treatment, Hostile Work Environment, and Retaliation." This Order will label the overlapping Title VII claims in accordance with Defendant's Motion to Dismiss.

an adverse personnel action, and (3) there was a causal link between the two." *Clark v. Frank, 5 F.3d 535 (9th Cir. 1993)*. "To establish causation [a plaintiff] must show 'by a preponderance of the evidence that engaging in the protected activity was one of the reasons for [his] firing and that but for such activity [he] would not have been fired.'" *Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064-65 (9th Cir. 2002)* (citing *Ruggles v. California Polytechnic State Univ., 797 F.2d 782, 785 (9th Cir.1986)*).

Recent case law has addressed Title VII issues regarding vaccination mandates. The EEOC [*13] recognizes that "Title VII prohibits employment discrimination based on religion[; however,] an employee's request for an exemption from a COVID-19 vaccination mandate can be denied on the ground that the employee's belief is not truly religious in nature or is not sincerely held, or on the ground that such an exemption would pose an 'undue hardship' by burdening 'the conduct of the employer's business' through increasing 'the risk of the spread of COVID-19 to other employees or to the public.'" *Doe v. San Diego Unified Sch. Dist., 19 F.4th 1173, 1180 (9th Cir. 2021), reconsideration en banc denied, 22 F.4th 1099 (9th Cir. 2022)* (citing EEOC Guidance). Even before the outbreak of COVID-19, the Supreme Court recognized that "'the right to practice religion freely' is not "'beyond regulation in the public interest,' including regulation aimed at reducing the risk of "'expos[ing] the community'... to 'communicable disease[.]'" *Id. at 1181* (quoting *Prince v. Massachusetts, 321 U.S. 158, 166-67, 64 S. Ct. 438, 88 L. Ed. 645 (1944)*).

## IV. Discussion

Plaintiffs' overlapping allegations lack the legal and factual support to state a Title VII claim. First, Plaintiffs have not and cannot state a

disparate treatment claim. All vaccination-exempt employees were treated the same, regardless of the reason for exemption. The vaccination mandate never mentioned religion and was therefore facially [*14] neutral, and Plaintiffs have not established that Defendant had a discriminatory intent in either issuing the vaccination mandate or implementing the health and safety protocols for vaccination-exempt employees. This alone is enough to defeat Plaintiffs' disparate treatment claim. *See Wood, 678 F. 3d at 1081*. Furthermore, applying the *McDonnell Douglas* framework, Plaintiffs never alleged they were members of any protected class, or what their religious beliefs were. Plaintiffs simply state that some employees rejected the vaccination due to their "sincere religious belief that the human body is God's temple, and that they must not take anything into their bodies that God has forbidden or that would alter the functions of their body such as by inducing the production of a spike protein in a manner not designed by God," while others objected not because of religious reasons, but for medical reasons. (Doc. 1 at 4-5.) Even if Plaintiffs were comprised of a protected class, they still fail to demonstrate they were treated any differently from other vaccination-exempt employees. Therefore, Plaintiffs have failed to allege a legally valid disparate treatment claim and this claim will be dismissed.

Next, Plaintiffs have not, and [*15] cannot, state a hostile work environment claim. As an initial matter, Defendant alleges this Court lacks jurisdiction to consider this claim for Plaintiffs failure to assert this charge with the EEOC. (Doc. 9 at 14.) "However, the district court has jurisdiction over any charges of discrimination that are 'like or reasonably related to' the allegations made before the EEOC, as well as charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations." *Leong v. Potter, 347 F.3d*

*1117, 1122 (9th Cir. 2003)* (citing *Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990)*). Because a hostile work environment claim is related to and could reasonably be expected to grow out of the discrimination allegations Plaintiffs brought before the EEOC, the Court will consider, but dismiss, this claim.

Once again, Plaintiffs fail to show they were members of a protected class, but even if they had, Plaintiffs would not have come close to meeting this demanding standard. *See Faragher, 524 U.S. at 787*. Defendant had a blanket vaccination exemption and only required those employees with a vaccination exemption to wear masks and test weekly for COVID-19. (Doc. 1 at 8.) Plaintiffs' allegation that a hostile work environment was created through the requirement that vaccination-exempt [*16] employees wear facial protection and submit to weekly COVID-19 testing for a virus that has claimed the lives of over one million Americans, and counting, is shocking to the Court.[4] Regardless, the Court fails to see how the safety conditions required for vaccination-exempt employees is in any way related to religious discrimination under Title VII. As some district courts have already found, masking requirements for vaccination-exempt employees does not create a "scarlet letter" effect because the employees could be vaccination-exempt for a multitude of reasons, or the masking employees could be vaccinated but simply want the added facial protection. *Klaassen v. Trustees of Indiana Univ., 549 F. Supp. 3d 836, 890 (N.D. Ind. 2021)*, *vacated and remanded as moot*, *24 F.4th 638 (7th Cir. 2022)*. Plaintiffs also argue that the constant email reminders and signage in workplace common areas contributed to a hostile work environment. (Doc. 1 at 5.) But again, these facially neutral promotions of employee safety and well-being were sent and visible to all Raytheon employees and were not specifically targeted to Plaintiffs. Raytheon's encouragement of their employees to get vaccinated for a deadly virus, combined with the reasonable safety accommodations for vaccination-exempt employees, does not come [*17] close to meeting the demanding standard needed to state a legally valid hostile work environment claim. As such, this claim will be dismissed.

Lastly, Plaintiffs have not, and cannot, state a retaliation claim. As previously mentioned, Plaintiffs have not established that they were members of a protected class or were engaging in any protected activity. But even if Plaintiffs could establish that they were engaging in a protected religious activity that would trigger Title VII protections, they have failed to establish a causal link between this protected activity and any adverse employment action. As Plaintiffs admit in their Complaint, they were not terminated, nor did they resign, because of the religious vaccination exemption, they were terminated or resigned due to their refusal to comply with the health and safety protocols for vaccination-exempt employees. Defendant's requirement that vaccination-exempt employees wear facial masks and engage in weekly COVID-19 testing does not have any religious aspect attached to it and is a facially neutral policy. Plaintiffs' religious and, in some cases, medical objections to the COVID-19 vaccine was not a but-for cause [*18] of Plaintiffs' termination. Instead, the but-for cause of Plaintiffs' termination was Plaintiffs' refusal to comply with the safety conditions for vaccination exempt employees. Therefore, Plaintiffs have failed to establish a legally valid retaliation claim under Title VII and this claim will be dismissed.

Plaintiffs have not, and simply cannot state a Title VII claim on the record before the Court.

---

[4] *Covid Data Tracker*, Ctrs. for Disease Control & Prevention, https://covid.cdc.gov/covid-data-tracker/#data-tracker-home (last visited February 21, 2023).

But even if they had, prior case law has held that an employer may deny a religious vaccination exemption on the ground that such exemptions would pose an undue hardship on the employer's business by increasing the spread of COVID-19 among the employees or public. *See San Diego Unified Sch. Dist., 19 F.4th at 1180*. Employers also have a duty to provide reasonable accommodations to the religious practices of an employee. *29 C.F.R. § 1605.2(b)-(c)*. Defendant provided reasonable accommodations here by allowing for blanket vaccination exemptions for any reason, while requiring vaccination-exempt employees to follow a few additional safety protocols. Because Plaintiffs have failed to link any adverse employment action to their religious beliefs, Plaintiffs have failed to state a Title VII claim. Additionally, the Court finds that any amendment to the Complaint would [*19] be futile. Therefore, dismissal of the Complaint with prejudice is appropriate.

Because the Court will grant Defendant's Motion to Dismiss with prejudice, it need not address Defendant's alternative Motion to Strike Class Allegations (Doc. 10). Accordingly, the Motion to Strike Class Allegations is denied as moot.

**IT IS ORDERED** that Defendant's Motion to Dismiss Plaintiffs' Class Action Complaint Pursuant to *Fed. R. Civ. P. 12(b)(6)* (Doc. 9) is **granted**. This case is hereby **dismissed with prejudice**. The Clerk of the Court is directed to close the case.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Class Allegations Pursuant to *Fed. R. Civ. P. 12(f)* and *23* (Doc. 10) is **denied as moot.**

Dated this 27th day of February, 2023.

/s/ Rosemary Márquez

Honorable Rosemary Márquez

United States District Judge

---

**End of Document**

JA074

# Exhibit C

JA075

 Caution
As of: December 31, 2024 7:18 PM Z

# *Leake v. Raytheon Techs. Corp.*

United States Court of Appeals for the Ninth Circuit

November 7, 2023[**], Submitted, Phoenix, Arizona; April 29, 2024, Filed

No. 23-15320

---

[**] The panel unanimously concludes that this case is suitable for decision without oral argument. See FED. R. APP. P. 34(a)(2)(C).

**Reporter**
2024 U.S. App. LEXIS 10287 *; 2024 WL 1854287

LISA LEAKE; KRISTEN GRACE; JOSEPH HEYSER; CHRISTOPHER STEIN; LESLIE ZEPEDA, each individually and on behalf of all other similarly situated, Plaintiffs-Appellants, v. RAYTHEON TECHNOLOGIES CORPORATION, Defendant-Appellee.

**Notice:** PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**Subsequent History:** US Supreme Court certiorari denied by *Leake v. Raytheon Techs. Corp., 2024 U.S. LEXIS 4384 (U.S., Oct. 21, 2024)*

**Prior History:** [*1] Appeal from the United States District Court for the District of Arizona. D.C. No. 4:22-cv-00436-RM. Rosemary Marquez, District Judge, Presiding.

*Leake v. Raytheon Techs. Corp., 2023 U.S. Dist. LEXIS 32177, 2023 WL 2242857 (D. Ariz., Feb. 27, 2023)*

**Disposition:** AFFIRMED.

## Core Terms

vaccination, religious, employees, protected class, conditions, exemptions, religion, protected activity, allegations, retaliation, but-for, hostile work environment, sufficient facts, adverse action, district court, causal link, harassing—namely, challenging, membership, mask—were, policies, pleaded, emails, fails

## Case Summary

### Overview
HOLDINGS: [1]-Plaintiffs' complaint wholly

failed to plead the fourth element under the framework set forth in McDonnell Douglas Corp. v. Green because plaintiffs had pleaded no facts showing that the actions that they allege were harassing were imposed on them because of their membership in a protected class, in this case, religion; [2]-Plaintiffs' hostile environment claim failed because the complaint's own allegations established that these vaccine-policy communications and measures were imposed on all employees, not just religious ones, and nothing in the complaint came close to supporting a plausible inference that the alleged pro-vaccine messaging campaign was undertaken even in part based on religion.

### Outcome
Judgment affirmed.

## LexisNexis® Headnotes

Labor & Employment Law > ... > Evidence > Burdens of Proof > Burden Shifting

Labor & Employment Law > ... > Disparate Treatment > Evidence > Burdens of Proof

### *HN1*[ ] Burdens of Proof, Burden Shifting

To satisfy the burden under the framework set forth in McDonnell Douglas Corp. v. Green, plaintiffs have to plead facts showing that (1) they belong to a protected class; (2) they were qualified for their positions; (3) they were subject to an adverse employment action; and (4) similarly situated individuals outside their protected class were treated more favorably.

Labor & Employment Law > ... > Harassment > Sexual Harassment > Hostile Work Environment

Labor & Employment Law > ... > Burdens of Proof > Standards of Proof > Pervasive & Severe Standards

Labor & Employment Law > ... > Burdens of Proof > Standards of Proof > Pervasive & Severe Standards

Labor & Employment Law > Discrimination > Harassment > Religious Harassment

Labor & Employment Law > ... > Harassment > Racial Harassment > Hostile Work Environment

*HN2*[⬇] **Sexual Harassment, Hostile Work Environment**

A hostile work environment is shown by the existence of severe or pervasive and unwelcome verbal or physical harassment because of plaintiff's membership in a protected class.

Labor & Employment Law > ... > Retaliation > Elements > Causation

*HN3*[⬇] **Elements, Causation**

To state a claim for retaliation, plaintiffs have to plead sufficient facts to establish that (1) they engaged in activity protected under Title VII, (2) the employer subjected them to an adverse employment decision, and (3) there is a causal link between the protected activity and the employer's action. The causal link required for a retaliation claim under Title VII is that the plaintiff's protected activity was a but-for cause of the alleged adverse action by the employer.

**Counsel:** For LISA LEAKE, Individually and on behalf of all other Similarly Situated, KRISTEN GRACE, JOSEPH HEYSER, CHRISTOPHER STEIN, LESLIE ZEPEDA, Plaintiffs - Appellants: Peter Dunn Lemmon, Esquire, Counsel, Lloyd Lemmon Hale, PLLC, Front Royal, VA.

For RAYTHEON TECHNOLOGIES CORPORATION, Defendant - Appellee: Dawn R. Solowey, Esquire, Seyfarth Shaw, LLP, Boston, MA; Esteban Shardonofsky, Attorney, Seyfarth Shaw, LLP, Houston, TX; Owen Richard Wolfe, Attorney, Seyfarth Shaw, LLP, New York, NY.

**Judges:** Before: HAWKINS and COLLINS, Circuit Judges, and SEEBORG,*** District Judge.

## Opinion

MEMORANDUM*

Plaintiffs, five former employees of Defendant Raytheon Technologies Corporation ("Raytheon"), appeal the district court's dismissal of their complaint challenging, under Title VII of the Civil Rights Act of 1964, Raytheon's policies concerning employee vaccination against Covid. Plaintiffs allege that, while they were each granted religious or medical exemptions from Raytheon's requirement to take the Covid vaccine,[1] the

---

*** The Honorable Richard Seeborg, Chief United States District Judge for the Northern District of California, sitting by designation.

* This disposition is not appropriate for publication and is not precedent except as provided by *Ninth Circuit Rule 36-3*.

[1] Plaintiffs' opening brief on appeal contends that Plaintiffs Lisa Leake and Joseph Heyser did not in fact receive an exemption, but the complaint specifically alleges that the opposite is true. As to Leake, the complaint alleges that her "religious accommodation was approved," subject to conditions. As to Heyser, the complaint notes that he was subject to Raytheon's "blanket 'accommodation' for those with

2024 U.S. App. LEXIS 10287, *1

conditions that Raytheon imposed on these exemptions, and Raytheon's overall enforcement of [*2] its policies, resulted in (1) discrimination based on religion, (2) a hostile work environment based on religion, and (3) unlawful retaliation. The district court dismissed the complaint for failure to state a claim, *see* *Fed. R. Civ. P. 12(b)(6)*, and Plaintiffs timely appeal. We have jurisdiction under *28 U.S.C. § 1291*, and we review the district court's dismissal de novo. *Edwards v. Marin Park, Inc., 356 F.3d 1058, 1061 (9th Cir. 2004)*. We affirm.

1. In challenging the dismissal of their religious discrimination claim, Plaintiffs rely solely on the contention that they pleaded sufficient facts to establish a prima facie case of disparate treatment under the framework set forth in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*. *HN1*[↑] To satisfy that burden, Plaintiffs had to plead facts showing that (1) they "belong[] to a protected class"; (2) they were "qualified for the[ir] position[s]"; (3) they were "subject to an adverse employment action"; and (4) "similarly situated individuals outside [their] protected class were treated more favorably." *Leong v. Potter, 347 F.3d 1117, 1124 (9th Cir. 2003)* (citing *McDonnell Douglas, 411 U.S. at 802*). Plaintiffs' complaint wholly fails to plead the fourth element. To satisfy this element, the complaint had to plead facts showing that there were non-religious employees who, like Plaintiffs, declined to comply with the vaccination requirement or with the conditions attached to exemptions [*3] but who were not subject to the adverse consequences that Plaintiffs allege. The complaint does not allege that there are any such persons; indeed, it

affirmatively alleges that Raytheon imposed a "blanket" accommodations policy that treated the conditions for *any* exemptions that were granted, whether medical or religious, as "non-negotiable."

2. Plaintiffs' hostile environment claim fails for similar reasons. *HN2*[↑] "A hostile work environment is shown by 'the existence of severe or pervasive and unwelcome verbal or physical harassment because of plaintiff's membership in a protected class.'" *Wash. v. Garrett, 10 F.3d 1421, 1431 n.14 (9th Cir. 1993)* (citation omitted). Plaintiffs have pleaded no facts showing that the actions that they allege were harassing—namely, "constant reminders" via "emails, company shout-outs," and "signs" encouraging "vaccination compliance"; emails seeking to enforce the vaccination policy; and Raytheon's later requiring only unvaccinated employees to mask—were imposed on them "because of [their] membership in a protected class," here, religion. The complaint's own allegations establish that these vaccine-policy communications and measures were imposed on all employees, not just religious ones, and nothing in the complaint [*4] comes close to supporting a "plausible" inference that the alleged pro-vaccine messaging campaign was undertaken even in part based on religion. *See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*.

3. *HN3*[↑] To state a claim for retaliation, Plaintiffs had to plead sufficient facts to establish that "(1) [they] engaged in activity protected under Title VII, (2) the employer subjected [them] to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action." *Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 506 (9th Cir. 2000)*. The causal link required for a retaliation claim under Title VII is that the plaintiff's "protected activity was a but-for

---

medical or religious exemptions," which required him to wear a mask and be tested weekly, and that, when the masking requirement was lifted only for vaccinated employees, he was then "identifiable as a person who had a medical or religious objection."

cause of the alleged adverse action by the employer." *University of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013)*. Plaintiffs failed to plead any facts plausibly establishing but-for causation between the alleged adverse actions and Plaintiffs' alleged protected activity of asserting religious objections to Raytheon's "vaccine directives." As the district court recognized, the complaints' allegations confirm that the "but-for cause of Plaintiffs' termination" was not their religious objections to the vaccine, but rather "Plaintiffs' refusal to comply" with the "conditions" that Raytheon neutrally imposed on all non-vaccinated employees. Moreover, the complaint [*5] does not plead any facts suggesting that Plaintiffs' objections to masking or testing were themselves religious-based.

4. Plaintiffs attempt to raise certain constitutional claims for the first time on appeal, but we decline to consider them. *See Community House, Inc. v. City of Boise, 490 F.3d 1041, 1053-54 (9th Cir. 2007)*.

**AFFIRMED.**

---

**End of Document**

JA080

# Exhibit D

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Phoenix District Office**
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012
(602) 661-0041
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)
Issued On:  10/03/2022

**To:**   Francisco Garza
14517 S Camino Tierra Luna
Sahuarita, AZ 85629

Francisco Garza v Raytheon Company
EEOC Charge No: 35A-2022-00041

EEOC Representative and email:   Robin Campbell

State, Local & Tribal Program Manager
robin.campbell@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.) Please retain this notice for your records.

On Behalf of the Commission:

Melinda Caraballo
Acting District Director

CC:
Rachel E Burke
Ogletree Deakins
127 Public Square Ste 4100
Cleveland, OH 44114

JA082

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm. In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

JA083

# Exhibit E

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Phoenix District Office**
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012
(602) 661-0041
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)
Issued On:  10/13/2022

**To:**  Kristen Grace
8105 N Placita Sur Oeste
Tucson, AZ 85741

Kristen Grace v Raytheon
EEOC Charge No: 35A-2021-00492

EEOC Representative and email:   Robin Campbell

State, Local & Tribal Program Manager
robin.campbell@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.) Please retain this notice for your records.

On Behalf of the Commission:

Melinda Caraballo
Acting District Director

CC:
Rachel Burke
Ogletree Deakins Nash Smoak & Stewart PC
127 Public Square Ste 4100
Cleveland, OH 44114

JA085

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm. In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

➤ **Only one** major life activity need be substantially limited.

➤ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➤ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

➤ An impairment **may be substantially limiting even though** it lasts or is expected to last fewer than six months.

**"Regarded as" coverage:**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➤ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# Exhibit F

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Phoenix District Office**
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012
(602) 661-0041
Website: www.eeoc.gov

### DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)
Issued On: 10/24/2022

**To:**   Lisa M. Leake
2124 S Oak Park Dr
Tucson, AZ 85710

Lisa M Leake v Raytheon Company
EEOC Charge No: 35A-2022-00236

EEOC Representative and email:   Robin Campbell

State, Local & Tribal Program Manager
robin.campbell@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.) Please retain this notice for your records.

On Behalf of the Commission:

Melinda Caraballo
Acting District Director

CC:
Rachel Burke
Ogletree Deakins
127 Public Square Ste 4100
Cleveland, OH 44114

Nancy K Bierman
Libra Law
4925 Greenville Ave Ste 200
Dallas, TX 75206

JA089

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm. In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

# Exhibit G

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Phoenix District Office
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012
(602) 661-0041
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)
Issued On: 10/26/2022

RECEIVED
NOV 0 1 202?
BY: ..................

**To:**   Christopher J. Stein
323 E Placita Nubes de Agua
Sahuarita, AZ 85629

Christopher J Stein v Raytheon Company
EEOC Charge No: 35A-2022-00215

EEOC Representative and email:    Robin Campbell

State, Local & Tribal Program Manager
robin.campbell@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.) Please retain this notice for your records.

On Behalf of the Commission:

Melinda Caraballo
Acting District Director

CC:
HR Director
Raytheon Company
1151 E Hermans Rd
Tucson, AZ  85756

JA092

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

**IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT**

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

**ATTORNEY REPRESENTATION**

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm. In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

JA093

# Exhibit H

JA094

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Phoenix District Office**
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012
(602) 661-0041
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)
Issued On:  12/13/2022

**To:**   Lesle Zepeda
6463 E Calle Mercurio
Tucson, AZ 85710

Lesle Zepeda v Raytheon Company
EEOC Charge No: 35A-2022-00541

EEOC Representative and email:   Robin Campbell

State, Local & Tribal Program Manager
robin.campbell@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.) Please retain this notice for your records.

On Behalf of the Commission:

Melinda Caraballo
Acting District Director

CC:
Alia Wynne
Seyfarth Shaw LLP
700 Millan St Ste 1400
Houston, TX 77002

Nancy Knox-Bierman
Libra Law
495 Greenville Ste 200
Dallas, TX 75201

JA095

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm. In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

JA096

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

> **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

> In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions,** such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

> **Only one** major life activity need be substantially limited.

> With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

> An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**

> An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

> A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

JA097

# Exhibit I

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Phoenix District Office**
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012
(602) 661-0002
Website:  www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 04/13/2023

**To:** Mr. Christopher Sublett
3017 Keri ln
MIDLOTHIAN, TX 76065

Charge No: 540-2022-00597

EEOC Representative and email:   Philip Gross
Enforcement Manager
Philip.gross@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 540-2022-00597.

On behalf of the Commission,

For Nancy Sienko
Acting District Director

JA099

**Cc:**
Stephanie Manning
Seyfarth Shaw, LLP
700 MILAM ST STE 1400
Houston, TX 77002

Michael Grubbs
Raytheon Company
1151 E. Hermans Rd., Bldg 807 F8
Tucson, AZ 85756

Nancy Knox-Bierman
Libra Law
1326 E. 33rd St., Ste. A
Houston, TX 77002


Please retain this notice for your records.

JA100

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 540-2022-00597 to the District Director at Melinda Caraballo, 3300 North Central Avenue Suite 690

Phoenix, AZ 85012.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

JA101

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue.  After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

JA102

# Exhibit J

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Los Angeles District Office**
255 East Temple St, 4th Floor
Los Angeles, CA 90012
(213) 785-3090
Website:  www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 01/02/2024

**To:** Mrs. Rossana J. Hernandez
4702 East Cecelia St
TUCSON, AZ 85711
Charge No: 540-2022-05740

EEOC Representative and email:     ERIKA RIBOTA DE LA CONCHA
Equal Opportunity Investigator
erika.ribotadelaconcha@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Christine Park-Gonzalez
01/02/2024
Christine Park-Gonzalez
District Director

JA104

**Cc:**
William Murley
Raytheon Technologies
1717 Cityline Dr,
Richardson, TX 75082

Nickole N Tushan
Raytheon Technologies
1717 E. Cityline
Richardson, TX 75082

Stephanie Manning
Seyfarth Shaw, LLP
700 MILAM ST STE 1400
Houston, TX 77002


Please retain this notice for your records.

JA105

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

**IMPORTANT TIME LIMITS** - **90 DAYS TO FILE A LAWSUIT**

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

**ATTORNEY REPRESENTATION**

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

**HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS**

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 540-2022-05740 to the

JA106

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA 90012.

**<u>To make a Section 83 request for your charge file</u>**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 540-2022-05740 to the District Director at Christine Park-Gonzalez, 255 East Temple St 4th Floor, Los Angeles, CA 90012.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

JA107

# Exhibit K

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Phoenix District Office**
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012
(602) 661-0002
Website:  www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/05/2024

**To:** Joseph Heyser
13909 E. Placita Propia
Vail, AZ 85641
Charge No: 35A-2022-00561

EEOC Representative and email:     JEREMY YUBETA
Jeremy Yubeta
jeremy.yubeta@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Melinda Caraballo
District Director

JA109

**Cc:**
Michael Grubbs
Raytheon
1151 E HERMANS RD
TUCSON, AZ 85756

Stephanie  Manning
Seyfarth Shaw LLP
700 MILAM ST STE 1400
Houston, TX 77002

Nancy  A Know-Bierman
Libra Law
4925 Greenville # 200
Dallas, TX 75201


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 35A-2022-00561 to the

JA111

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Rayford O. Irvin, 3300 North Central Avenue Suite 690, Phoenix, AZ 85012.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 35A-2022-00561 to the District Director at Rayford O. Irvin, 3300 North Central Avenue Suite 690, Phoenix, AZ 85012.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

JA112

# Exhibit L



**Seyfarth Shaw LLP**

620 Eighth Avenue

New York, New York  10018

**T** (212) 218-5500

**F** (212) 218-5526


owolfe@seyfarth.com

T (212) 218-3389


www.seyfarth.com

December 9, 2024

**VIA E-MAIL**

E. Scott Loyd
Lloyd Law Group, PLLC
15 Chester Street
Front Royal, VA 22630
scott@lloydlg.com

Re:     Rule 11 Notice
        *Kristen Grace, et al. v. RTX Corporation f/k/a Raytheon Technologies Corporation*,
        Case No. 24-cv-2083 (E.D. Va.)

Dear Mr. Lloyd:

We represent RTX Corporation ("Raytheon").  We write regarding the above-referenced lawsuit (the "Action") that you filed in the U.S. District Court for the Eastern District of Virginia on behalf of Kristen Grace, Francisco Garza, Rossana Hernandez, J. Michael Heyser, Lisa Leake, Christopher Stein, Christopher Sublett, and Leslie Zepeda (collectively, "Plaintiffs").  Please be advised that Raytheon intends to move for sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11") if Plaintiffs fail or refuse to withdraw their complaint in the Action (the "Complaint").

Rule 11 states that when an attorney signs a court pleading, he or she is certifying to the court that, "to the best of [his or her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the following statements are true:

(1) [The pleading] is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2)     The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

(3)     The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b).

315092531v.1

JA114



An attorney signing court papers has an affirmative duty to investigate both the legal and factual underpinnings of the filing. *See, e.g., Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 550 (1991) (Rule 11 "imposes on any party who signs a pleading…an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing"). "A prefiling investigation of the law will not pass muster under Rule 11 where the complaint has absolutely no chance of success under the existing precedent." *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991) (citing *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 987 (4th Cir. 1987)).

If a plaintiff files a court pleading that violates Rule 11(b), then the defendant can move for sanctions under Rule 11(c). *See* Fed. R. Civ. P. 11(c). Because a Rule 11 violation occurs "when the complaint was filed," a defendant can move for sanctions under Rule 11 **even if the defendant has not been served**. *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987); *Nyer v. Winterarthur Int'l*, 290 F.3d 456, 459 (1st Cir. 2002) (same).

Here, Plaintiffs' Complaint violates Rule 11(b) in multiple respects. As you know, Plaintiffs Grace, Heyser, Leake, Stein, and Zepeda were named plaintiffs in a prior litigation against Raytheon, *Lisa Leake, et al. v. Raytheon Technologies Corporation*, Case No. 22-cv-436 (D. Az.) (the "Arizona Action"). Plaintiffs affirmatively alleged in their Complaint in this Action that the other Plaintiffs, Garza, Hernandez, and Sublett, were part of the "class complaint submitted" in the Arizona Action. *See* Complaint 1 ¶ 49. On February 27, 2023, the court in the Arizona Action dismissed Plaintiffs' claims **with prejudice**. On April 29, 2024, the U.S. Court of Appeals for the Ninth Circuit affirmed. On October 21, 2024, the U.S. Supreme Court denied Plaintiffs' petition for a writ of certiorari.

As a result of the dismissal of the Arizona Action **with prejudice**, Plaintiffs' claims in this Action are barred by *res judicata*. "Res judicata, also known as claim preclusion, bars a party from relitigating a claim that was decided **or could have been decided** in an original suit." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008) (emphasis added). Under this standard, "[t]he test for deciding 'whether the causes of action are identical for claim preclusion purposes is whether the claim presented in the new litigation '**arises out of the same transaction or series of transactions** as the claim resolved by the prior judgment.'" *Id.* at 162 (emphasis added). Accordingly, "'[n]ewly articulated claims based on the same [transactional] nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action.'" *Id.*

There is no doubt that the claims in this Action arise from the same "nucleus of facts" as the Arizona Action. The claims in both actions are based upon Plaintiffs' employment with Raytheon; their objections to Raytheon's COVID-19 vaccination policies; and their terminations or resignations from Raytheon. The fact that Plaintiffs have in the current Action asserted a "[n]ewly articulated claim[]" for failure to accommodate is irrelevant. That claim could have been asserted in, and arises from the exact same facts as, the Arizona Action. Accordingly, the current Action is barred by *res judicata*.

As set forth above, an attorney violates Rule 11 by signing a complaint in which, among other things, "the claims, defenses, and other legal contentions are [not] warranted by existing law" and there is no "nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). In keeping with that principle, "[c]ourts have granted Rule 11 sanctions where the doctrine of res judicata barred the claims." *Oudeh v. Goshen Med. Ctr.*, 2024 U.S. Dist. LEXIS 147016, at *12-13 (D.N.C. Aug. 16, 2024) (collecting

315092531v.1

JA115



cases); *see also, e.g., Reaves v. Roanoke Redevelopment & Hous. Auth.*, 2009 U.S. Dist. LEXIS 10703, at *19-20 (W.D. Va. Feb. 12, 2009) (same).  Accordingly, if Plaintiffs refuse to withdraw the Complaint in this Action, you will be subject to sanctions pursuant to Rule 11(c).

This Action is also improper because it is time-barred.  "Title VII requires that an aggrieved person file a civil action within 90 days of receiving a right-to-sue letter from the EEOC."  *Quinn v. Copart of Conn., Inc.*, 791 F. App'x 393, 395 (4th Cir. 2019).  "It is well settled that a Title VII claimant who fails to file a complaint within the 90-day period generally forfeits his right to pursue his claims."  *Id.*  As you are likely aware, Garza's right-to-sue letter was issued on October 3, 2022; Grace's on October 13, 2022; Leake's on October 24, 2022; Stein's on October 26, 2022; Zepeda's on December 13, 2022; Sublett's on April 13, 2023; Hernandez's on January 2, 2024; and Heyser's on August 5, 2024.

The Complaint in this Action was not filed until November 20, 2024.  That filing was well-outside the 90-day window for all Plaintiffs.  Indeed, the claims of most of the Plaintiffs have been time-barred for nearly two years.  Thus, again, Plaintiffs' filing of the Complaint violates Rule 11 because the time-barred claims are frivolous.  *See, e.g., Morning Star Baptist Church v. James City County Police*, 480 F. Supp. 2d 853, 859-60 (E.D. Va. 2007) (dismissing case based upon *res judicata* and statute of limitations, and awarding Rule 11 sanctions where "[t]he sheer passage of time…makes clear that [plaintiff's] most recent claim was frivolous").

In short, you have certified to the court that Plaintiffs' claim is not frivolous and was not brought for any improper purpose, when in fact the claim lacks any legal basis because it is barred both by *res judicata* and by the applicable statute of limitations.[1]  Moreover, you were aware that this Action was barred when you signed the Complaint because: (a) you appeared on Plaintiffs' behalf in the Ninth Circuit and the U.S. Supreme Court in connection with the Arizona Action; and (b) the Complaint includes allegations regarding the outcome of the Arizona Action.  *See* Complaint ¶¶ 49-52.  The fact that you signed the Complaint, despite knowing that this Action is barred, strongly suggests that Plaintiffs filed the Action in bad faith and for an improper purpose, which is a separate violation of Rule 11.  *See* Fed. R. Civ. P. 11(b)(1).

We expect that you will immediately withdraw the Action under Rule 41(a)(1)(A)(i) **with prejudice** by no later than December 13, 2024.  If you fail or refuse to do so on or before December 13, 2024, then Raytheon intends to serve you with a motion pursuant to Rule 11(c).

---

[1] Plaintiffs' Complaint is deficient in other respects, including because, without limitation, it contradicts Plaintiffs' binding judicial admissions in the Arizona Action and because it does not allege facts sufficient to state a claim upon which relief can be granted.  If Raytheon is served with the Complaint, in addition to its Rule 11 motion, it intends to file a motion to dismiss pursuant to Rule 12 raising all of the arguments referenced in this letter, and any additional arguments for dismissal that Raytheon may identify.



This letter is written without prejudice to our client's rights and remedies, all of which are expressly reserved.

Very truly yours,

SEYFARTH SHAW LLP

*/s/ Owen R. Wolfe*

Owen R. Wolfe


Cc.     Dawn Solowey

JA117

# Exhibit M

| | |
|---|---|
| **From:** | Wolfe, Owen |
| **Sent:** | Monday, December 16, 2024 5:46 PM |
| **To:** | Scott Lloyd |
| **Cc:** | Solowey, Dawn |
| **Subject:** | RE: Grace, et al. v. RTX Corporation, Case No. 24-cv-2083 (E.D. Va.) |

Mr. Lloyd,

Thank you for your response.  The *Cooper* case you cited below is inapplicable, but if it were applicable, it would, at a minimum, support Raytheon's position with respect to Plaintiffs Grace, Heyser, Leake, Stein, and Zepeda.  Your email below also does not address the fact that Plaintiffs' claims are time barred.  Accordingly, Raytheon's position is unchanged.

Because Plaintiffs' Complaint is frivolous, we are not authorized to accept service, nor are we authorized to otherwise reach any agreement concerning service.

Regards,

Owen

**From:** Scott Lloyd <scott@lloydlg.com>
**Sent:** Friday, December 13, 2024 12:26 PM
**To:** Wolfe, Owen <OWolfe@seyfarth.com>
**Cc:** Solowey, Dawn <DSolowey@seyfarth.com>
**Subject:** Grace, et al. v. RTX Corporation, Case No. 24-cv-2083 (E.D. Va.)

**This Message Is From an Untrusted Sender**

You have not previously corresponded with this sender.

Mr. Wolfe,

I am in receipt of your letter and find that the position it conveys is contrary to forty years of Supreme Court precedent arising, notably, out of the Fourth Circuit. Please see *Cooper v. Fed. Res. Bank*, 467 U.S. 867, 880 (1984). A Rule 11 motion, therefore, would itself be subject to a Rule 11 motion, if that is the route that Defendant would like to take. Plaintiffs will not be withdrawing their complaint. Please let me know if you will accept service of the complaint on your client's behalf, or if your client is willing to proceed as though service is complete. I look forward to your response so we can get things underway.

Sincerely,
Scott

---
Lloyd Law Group, PLLC
15 Chester Street
Front Royal, VA 22630
Office: (540) 823-1110
Cell: (540) 631-4081
Fax: (540) 583-4279
scott@lloydlg.com

1
JA119

*Jesus Christ is Lord*

The information in this e-mail transmittal is intended only for the use of the addressee(s) and may contain information that is confidential, subject to the attorney-client privilege, and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering this transmittal to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone or e-mail. Thank you.

All emails encrypted

# Exhibit N

| | |
|---|---|
| **From:** | Wolfe, Owen |
| **Sent:** | Tuesday, December 31, 2024 3:59 PM |
| **To:** | Scott Lloyd |
| **Cc:** | Solowey, Dawn; Brooks, Samantha L. |
| **Subject:** | Grace, et al. v. RTX Corporation, Case No. 24-cv-2083 (E.D. Va.) -- Service of Rule 11 Motion |
| **Attachments:** | 2024.12.31 -- Grace v. RTX -- Motion for Rule 11 Sanctions.pdf; 2024.12.31 -- Grace v. RTX -- Memorandum of Law ISO Rule 11 Motion.pdf; 2024.12.31 -- Grace v. RTX -- Declaration of Samantha L. Brooks.pdf; 2024.12.31 -- Grace v. RTX -- Exhibits to the Brooks Declaration.pdf |

Dear Mr. Lloyd,

Further to our prior correspondence, please find attached the motion of defendant RTX Corporation ("Raytheon") for sanctions pursuant to Federal Rule of Civil Procedure 11(c) and the papers in support thereof.  Please note that Exhibit N will be a copy of this email.

In accordance with Federal Rule of Civil Procedure 11(c)(2), if Plaintiffs do not withdraw their Complaint in the above-referenced action within 21 days of the date of this email, Raytheon will proceed to file the attached motion with the Court.

Regards,

Owen

# Exhibit O

**23-15320**

# United States Court of Appeals
*for the*
# Ninth Circuit

———————— ◆ ————————

LISA LEAKE, KRISTEN GRACE, JOSEPH HEYSER, CHRISTOPHER STEIN, and LESLIE ZEPEDA,

*Plaintiffs-Appellants,*

v.

RAYTHEON TECHNOLOGIES CORPORATION,

*Defendant-Appellee.*

————————————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA
CASE NO. 4:22-cv-00436-RM

**APPELLANTS' MOTION TO STAY PROCEEDING AND APPELLANTS'ALTERNATIVE MOTION TO SUBSTITUTE BRIEFING (OR SUPPLEMENT BRIEFING) AND TO EXTEND TIME FOR HEARING**

Relief Requested by October 27, 2023, to Avoid Irreparable Harm

Respectfully submitted by:

| | |
|---|---|
| LLOYD, LEMMON, & HALE | E. Scott Lloyd |
| Peter D. Lemmon | scott@lloydlemmonhale.com |
| peter@lloydlemmonhale.com | |
| 15 Chester St. | Dana B. Hale |
| Front Royal Va 22630 | dana@lloydlemmonhale.com |
| Telephone: (540) 823-1110 | |
| Facsimile: (540) 583-4279 | *Attorneys for Plaintiffs-Appellants* |

## INTRODUCTION

COME NOW, Plaintiffs Lisa Leak, Kristen Grace, Joseph Heyser, Christopher Stein, and Leslie Zepeda ("Named Plaintiffs/ Appellants"), on behalf of themselves and other similarly situated individuals (together, Plaintiffs/Appellants), by and through the undersigned counsel, and hereby submit the following combined motions before this Court pursuant to FRAP 27, *et seq.*

Appellants ask this Court to grant Appellants' Motion to Stay Proceedings. Appellants noticed this Court of their substitution of counsel Nancy Knox-Bierman in favor of Peter D. Lemmon, *et al.*, of Lloyd, Lemmon, & Hale just one day ago, on October 19, 2023. Based on the inadequate representation and likely malpractice and other potentially unethical and illegal conduct of prior counsel, as further explained below, Appellants will suffer irreparable harm if their motion is not granted.

Appellants intend to concurrently file a Rule 60(d)(1) (Relief from Judgment or Order), in the Federal District Court for the District of Arizona to ask the District Court to relieve Appellants from the Order of the District Court. ER-3-12 (Ex. 1). Appellants request this Court to stay the current appeal until such time as the District Court issues an order in that case.[1]

---

[1] Appellants would have preferred to file the Rule 60(d)(1) motion at the district court level prior to filing the motions herein; however, given the short period of time new counsel for Appellants has had to review this case, and the imminent hearing date (currently scheduled for November 7, 2023), Appellants will file their Rule 60(d)(1) motion upon disposition of the Motion to Stay herein by this Court.

2

In the alternative, should this Court not be inclined to grant the Appellants' Motion to Stay, despite prior counsel's egregious conduct, Appellants ask this Court to grant Appellants' Motion to Extend Time for Hearing and Substitute Briefing. Appellants believe the briefing by prior counsel was so substantially deficient that it cannot be remedied merely by adding a supplemental brief, but rather a new brief on appeal is warranted.

If this Court does not grant Appellants' Motion to Stay or Appellants' Motion to Extend Time for Hearing and Substitute Briefing, Appellants request this Court grant its Motion to Extend Time for Hearing and Supplement Briefing.

Appellants regret they were forced to submit such motions so close to the current hearing date of November 7, 2023. However, given the untimely, unprofessional, and likely illegal conduct of prior counsel, and the time it took to locate new counsel and allow them time to review the case, Appellants have no choice but to seek the mercy of this Court for the requested relief at this time. Appellants also ask this Court to grant its Motion to Extend Time for providing their Acknowledgement of Hearing Notice so that their new counsel may appear (in person) at the hearing.

## PROCEDURAL POSTURE

Appellants filed their Brief of Appellants on May 16, 2023 (ECF 18), appealing the dismissal of their religious discrimination claims against Defendant

3
JA126

Raytheon Corporation[2] by the United States District Court for the District of Arizona. (Final Order of the District Court, see Exhibit 1).

Appellee Raytheon filed its Brief of Defendant-Appellee on June 14, 2023 (ECF 21), and Appellants filed three different versions of their Reply Brief on July 5 and 6, 2023 (ECF 25, 26, and 27). The Reply Brief included Supplemental Appendix, and three exhibits (ECF Nos. 26, 27) ("Reply Supplements), which were submitted for the first time in Appellant's Reply Brief, and which were not filed with the District Court.

Appellee filed a Motion to Strike the Reply Supplements on July 7, 2023 (ECF 28), and Appellants filed a late Motion to Supplement the Record on Appeal on July 11, 2023 (ECF 29). On July 17, 209023 by Order of the Clerk, the Clerk referred all motions related to supplementing the record on appeal (including any future related motions) to the panel assigned to consider the merits of the case (ECF 35). Appellants filed their Opposition to Motion to Supplement on July 21, 2023, and the panel has not yet ruled on the issue.

Oral arguments are scheduled for November 7, 2023.

## **RELEVANT BACKGROUND**

Plaintiffs filed individual EEOC charges in 2021 and 2022 and the EEOC

---

[2] Appellants erroneously named Raytheon Technologies Corporation as the Defendant in the District Court in this matter. The correct Defendant is actually Raytheon Company.

issued Right to Sue letters in June and July of 2022. While their charges were pending, Plaintiffs searched diligently for six months, without success, for counsel to help them bring their cases to court. After months of discussions, Plaintiffs finally retained Attorney Nancy Knox-Bierman ("Attorney" or "Counsel) to file a class action lawsuit in mid-September 2022. *Decl. of Appellants* at ¶3.

Plaintiffs retained Attorney because she said she was passionate about the injustices of mandatory vaccines and rights for religious and medical freedom in the workplace. *Id.* at ¶5. Although her experience was in criminal defense, Plaintiffs (lay people) did not know that her inexperience in civil litigation could limit her ability to adequately represent them. Attorney had been working remotely and residing in Arizona during the pandemic but was barred only in Texas. *Id.* at ¶4. Plaintiffs met with Attorney several times in person until she moved to Texas, which, as explained below, ultimately intensified the deterioration of communication with her clients.

While the representation went fine at first, Attorney's demeanor was abrasive and harsh. She did not appear to be interested in Plaintiffs' perspective and made it clear early on that she was a "lone wolf." She did not want Plaintiffs' help, she resented their input and she often told Plaintiffs she was the lawyer, they were not, and she preferred to work alone. *Id.*

Attorney did not give Appellants the opportunity to review the briefs prior to

submission or to correct factual and legal issues in pleadings. *Id*. at ¶¶6,7, 10-13.

Attorney made several factual errors and omissions in the original Complaint (ER 3-14) that likely played a role in their District Court dismissing their case. Examples include the fact that:

1. Defendant refused to allow Plaintiffs to file requests for religious accommodations to testing and masking, instead requiring them to apply for a medical exemption, notwithstanding most of them did not have a disability.

2. Defendant explicitly stated that alternative accommodations to the vaccine mandate were "non-negotiable."

3. Defendant withdrew Plaintiff Grace's medical accommodation to masking (which had already been in place) once the vaccine mandate was issued.

Id at ¶ 7.

Attorney also failed to plead a claim under Title VII for failure to accommodate Plaintiffs' religious beliefs, which is the most relevant and applicable claim Plaintiffs had. If the facts had been pled properly and had included a full description of Plaintiffs' religious beliefs and the fact that Defendant refused to allow Plaintiffs to file a request for a religious accommodation to testing or masking, Plaintiffs would have stood a good (or at least better) chance of prevailing on that claim. But Attorney never even raised that claim, a point Defendants noticed right away and called out on the first page of their response brief. (ECF 22 at pg. 1)

As Appellee has rightly noted in its Brief of Defendant-Appellee (ECF 21), Attorney for Appellants raised "arguments on appeal that are so divorced from their complaint . . . and the record below that it is almost as if Plaintiffs are arguing about a different case than the one actually before this Court." (ECF 21-1).

As Appellee aptly explained, Appellants seemingly "abandon their arguments raised below and ignore the Complaint, the record and the District Court's decision." *Id.* at 1. As is evident to anyone reading Brief of Appellants (ECR 18), the brief raised myriad new arguments related to the safety and efficacy of the vaccine, including arguments that Defendant violated laws related to informed consent, emergency use authorization, the PREP Act, and claims against vaccine manufacturers (none of which were raised at the District Court level), as well as a series of constitutional arguments related to Equal Protection and Due Process and the question of whether the Court should have applied rational basis or strict scrutiny to Appellants' non-existent constitutional claims.[3]

Attorney for Appellants raised issues and arguments never raised in the District Court and which Appellants did not want raised, diluting the actual issues that should have been brought to the attention of this court.

Indeed, even the District Court had questions about Plaintiffs' opaque,

---

[3] Counsel for Plaintiffs did not raise any constitutional claims in the Complaint, nor could they because Raytheon is a private company; however, counsel erroneously discussed constitutional violations in the appellate brief and argued the District Court applied the wrong standard in analyzing them. ECF 18 33-47.

confusing, and duplicative claims of religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII").  It stated, "Plaintiffs' three claims in their complaint consist of Discrimination, Wrongful Termination, and Retaliation. . . ." (ER-8, N3).  However, the Court stated, "This Order will label the overlapping Title VII claims" in accordance with Defendant's characterization in its Motion to Dismiss. *Id.* (labeling Plaintiffs' claims Disparate Treatment, Hostile Work Environment, and Retaliation).

The District Court's own words show how deficient the original Complaint was and how it led (at least in part) to the Court's dismissal of Plaintiffs' claims. The court was frustrated and confused based on Attorney's poorly written and incomplete pleadings.   The Court expressed outright "shock" that Plaintiffs would consider masking and testing to be discriminatory or to contribute to a hostile work environment.  ER-12 ("Plaintiffs allegation that a hostile work environment was created through the requirement that [Plaintiffs must mask and test] for a virus that has claimed the lives of over one million Americans, and counting, is shocking to the Court").   *Id.*

This statement underscores the dearth of relevant facts in the Complaint.  If the Court had been aware that Plaintiffs had religious beliefs that conflicted with mandated testing or masking and that Defendant prohibited Plaintiffs from even filing for a religious accommodation to testing or masking, the conscience of the

8
JA131

Court may not have been "shocked" after all and it may have been less inclined to grant Defendant's Motion to Dismiss.

The Complaint contained fatal factual and legal errors and omissions that, if properly pled and argued, could have changed the outcome of the case itself (i.e., more accurate description of Plaintiffs' religious beliefs, inclusion of a Title VII Failure to Accommodate Claim, facts related to Defendant's prohibition against filing a religious accommodation claim for testing and masking).

Moreover, on appeal, Appellants' Brief inaccurately stated that all Plaintiffs had filed an EEOC charge prior to their termination, when indeed only one Plaintiff had done so. Decl. of Appellants ¶14. (Exhibit 2). When confronted by Plaintiffs about inaccuracies and the desire to review pleadings prior to filing, Attorney's response was strangely, "You all are NOT lawyers! I am. I live alone, I work alone and I'll die alone." Id. at ¶12.

The relationship with Attorney became increasingly acrimonious. Attorney missed an important client meeting in April 2022, (one of the few in-person meetings scheduled in Arizona after Attorney moved to Texas), which Appellants had insisted on to discuss the contents of Appellants' brief on appeal which was due in just days. After missing the meeting, Attorney explained without apology that she had to "take care of old friends," whom she ran into when she came to town who were "partying too hard at her hotel." *Id.* at ¶17,18.

Attorney refused to read detailed documentary evidence of Appellants' claims. In response to Appellant Zepeda's concern that the document submitted to the Court contained her social security number, Attorney responded,

> I mean I had reams of crap from all of you. Did you honestly think I was going to go through word for word? That's just incredibly irresponsible to throw this all on me young lady [sic] I mean I was writing a freaking brief [sic] hello?"

Text message from Nancy Knox-Bierman to Leslie Zepeda, July 9, 2023 (Exhibit 3).

Attorney went on to say:

> And you do understand that you all gave me that information to put in a brief right? I mean all that s*** didn't come in a dream to me sweetie [sic] y'all threw that in there as your supplements [sic] how was I supposed to know to redact it all."

*Id.*

Communication became so difficult that only one Plaintiff agreed to continue to communicate with her. (Decl. of Appellants at 24).

Attorney's behavior was unprofessional and aggressive. She refused to provide a detailed breakdown of billable hours and threatened multiple times to withdraw representation for non-payment of bills which, according to Appellants' fee agreement, were not even late. *Id.* at ¶¶25-27.[4]

She repeatedly demanded early payment of bills when she "needed money," typically under threat of withdrawing representation. *Id.* at ¶25. She even refused to

---

[4] Appellants admit to paying two partial invoices outside the 30-day time-frame out dozens of invoices, most of which they paid well in advance of the 30-day due date and many of which they paid upon her demand for "money now."

refund $2200 she charged Plaintiffs as a condition of representation to become licensed to practice law in Arizona. *Id.* at ¶¶28,29. She never got licensed and never returned the money. *Id.* When Appellants confronted her about the issue, she berated them stating,

> I never charge for all the emails, calls, and extremely intense case reviews that are done for you all. I have done considerable work on your matter. I have had to be admitted to 2 federal courts and am now obligated to pay their yearly bar dues, not to mention the fact that I am a criminal defense attorney who had to learn all this civil procedure on my own dime, just to be able to adequately represent you all. I will waive any late fees if you pay the remaining balance by Friday. If the balance is not paid by the end of the month, I will withdraw from further representation.

Email from Knox-Bierman to Christopher Stein, *et al.*, Aug.22, 2023. (Exhibit 4)

In June 2023, prior to submitting Appellants' Reply Brief, Attorney indicated she planned to "bow out" after the appeal pleadings were completed because she was "old, tired and missing regular crime." Email from Nancy Knox-Bierman to Christopher Stein, *et al.*, June 25, 2023. (Exhibit. 5).

Later, on August 27, 2023, concerned to know whether Attorney would continue representing Appellants through oral arguments and beyond, Appellant Stein asked her if she planned to continue to represent them and whether they needed to attend the hearing on November 7, 2023. Email from Christopher Stein to Nancy Knox-Bierman, August 27, 2023. (Exhibit 6). Mr. Stein reminded her of her comment about "bowing out" of the case and noted that Appellants needed to know because they wanted to ensure continuity of counsel if she were to withdraw

11

JA134

representation. *Id.*

Attorney angrily replied:

I am the ONLY one who can speak [at the hearing] and the only one who needs to be there. Without me, you are without representation. . . For now, I am your only lawyer. You cannot have 2 at once. At the end of the month you will have no one if your legal fees are not paid. I am not asking for an organ here. I am asking to be paid for what was pretty dang good lawyering.

Email from Nancy Knox-Bierman to Christopher Stein, August 27, 2023. (Exhibit 7).

Just over a week later, Attorney sent a threatening letter to Appellants demanding final payment for services rendered. Plaintiffs had a remaining balance of $3000, one of only two invoices they ever paid late, that was just over 30 days past due. Attorney threatened:

To avoid attorney fees and court costs, payment must be made in full by September 17, 2023, or suit will be filed against you in the matter. In addition, criminal charges may ensue as Theft of Services is a statutory crime under law with a penalty not to exceed $4000 in fines and up to a year in prison under Texas Penal Code 31.04. To avoid criminal charges and additional litigation costs payment must be received within 10 days of this notice.

Nancy Knox-Bierman, *Payment Demand Letter* to Lisa Leake, *et al.*, (September 7, 2023). (Exhibit 8).

On September 15, 2023, having had enough of Attorney's inadequate, threatening and volatile representation, Appellants notified Attorney they would no longer use her services. Email from Christopher Stein to Nancy Knox-Bierman, September 15, 2023. (Exhibit 9).

Appellants retained the undersigned counsel on that same date, who agreed to

12

JA135

review the case and assess the likelihood of success. Appellants began diligently sharing the massive evidentiary file and the record with Lloyd, Lemmon, & Hale, ("LLH") and met with counsel to discuss the facts on September 21, 2023. LLH reached out to counsel for Defendants on October 2, 2023, to ask if Appellee would agree to allow Appellants to supplement their pleadings and reschedule the November 7, 2023, hearing, given the fact that Appellant had just obtained new counsel. Counsel for Appellee agreed to speak to his clients and several days later notified LLH that their client would not only not agree to a postponement and additional briefing but would not cooperate in any way.

LHH began vigorously pursuing a strategy that would ensure continuity of counsel as much as possible and help protect Appellants' rights on appeal.

## MOTION TO STAY APPELLATE PROCEEDINGS

Appellants respectfully submit this Motion to Stay Appellate Proceedings to allow time for Appellants to obtain relief upon a Motion for Relief from Order or Judgment pursuant to Fed. R. Civ. P 60(d)(1) at the District Court level.

The ability to grant a motion to stay, which this Court deems similar to an "administrative closure" of a case, lies inherently in the Court's authority and discretion. *Sarkar v. Garland*, 39 F.4th 611, 618 (9th Cir. 2022). Accordingly, "there is no statute or rule defining when administrative closure is appropriate; it is a matter of discretion. *Id., citing Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th

Cir. 2005) (recognizing a court's discretionary power to control its docket).

In most cases in which the 9th Circuit has granted a motion to stay or administrative closure, it has done so based on, "external factors that impact the decision that [the Court] must make. *Id. at 619.* As this Court has stated, "[i]t makes sense as a matter of efficiency for a court to delay its decision when awaiting some action outside its or the parties' control that will impact the decision to be made." *Id. at 619.*

For example, in *Phillips v. Gilman,* this Court granted a motion to stay under facts similar to this one. *Phillips v. Gilman (In re Gilman)*, 2021 U.S. App. LEXIS 30466, *1 (9th Cir. Oct. 12, 2021) (order published without analysis). There, this Court granted Appellant's motion to stay the appellate proceeding where Appellee's counsel withdrew on motion to the Court in a bankruptcy proceeding. This Court granted the Appellant's motion to stay to allow time for the Appellee to obtain a new personal representative. The Court simply required Appellant to file a status report as to progress on the efforts to find a personal representative for Appellee.

In this case, Appellants did not have control over the inadequate and likely illegal conduct of prior counsel, which in all likelihood doomed their case from the beginning.

When considering a request to stay an appeal, the 9th Circuit has explained it

must weigh "competing interests." *Sarkar,* 39 F.4th at 617-18 (*citing CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Those interests include:

(1) the possible damage which may result from the granting of a stay,

(2) the hardship or inequity which a party may suffer in being required to go forward, and

(3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Id.*

Taking each "competing factor" one by one, the granting of the stay itself will not harm Appellee. *Sarkar,* 39 F.4th at 617-18. This case is relatively young. The District Court granted Defendant's Motion to Dismiss on February 27, 2023, and the appeal brief was filed on June 14, 2023. Argument is scheduled in this Court on November 7, 2023. Other than a short delay, there is no damage to Appellee if this Court grants a stay of this appeal pending disposition of Appellants' Motion to the District Court pursuant to FRCP 60(d)(1) to be relieved from the Order dismissing Plaintiff's Complaint for failure to state a cause of action. Unlike an order or money judgment requiring an appeal bond pursuant to FRAP 8, there is no measurable damage to Defendant from having to merely wait to see if the District Court will allow for the case to be competently pled and then heard on its merits. The damage to Plaintiffs/Appellants, on the other hand, is immeasurable, as their fundamental religious liberty rights as well as their livelihoods and reputations are at stake in

Defendants' actions to terminate their employment

In terms of hardship and inequities to a party (*Sarkar,* 39 F.4th at 617-18), for Appellee to have to go forward with this appeal there is no hardship; it would be a windfall. Appellee has not had to deal with the substance of Plaintiffs' actual claims. Instead, Appellee spent little effort to point out Plaintiffs' counsel's patent failures to plead the case and thus get the case dismissed. Similarly, to defend its denial of religious accommodations to Plaintiffs should not prove any kind of hardship to Appellee if it acted inside the law. Indeed, that is exactly what Defendant would have been put to if Plaintiffs'/Appellants' counsel had competently pled the case. In stark contrast, Plaintiffs' hardship is immeasurable as going forward for Plaintiffs means having no recourse whatsoever to what has been a devastating, crushing loss due primarily to the shocking failures of an officer of the court.

Appellants were unilaterally terminated when Defendant would not accommodate their religious beliefs or even allow them to submit accommodation requests. They were given no severance, they lost pay, healthcare, retirement benefits, life savings, and opportunities to grow and advance in their chosen professions. Then they were forced to spend nearly two years fighting an uphill battle with their counsel to bring their employer to justice.

Finally, allowing a stay in order for Appellants to have competent counsel can only serve the orderly course of justice, since the issues and questions of law will be

16

JA139

simplified.  *Sarkar,* 39 F.4th at 617-18.  The failure of Appellants' former counsel, especially her raising issues and facts having nothing to do with the complaint in the case, is what complicates the issues.  Similarly, narrowing the legal issues to what Defendant did or did not do when it disciplined and then terminated its employees will make the issues of proof much simpler.  Since the law always desires cases to be heard on their merits, granting a stay in this case would allow Plaintiffs the opportunity to properly present their claims so they can be fairly considered by the Defendant and the Court. Furthermore, the hardship and inequity Appellants will suffer is immeasurable if a stay is not granted, since Plaintiffs' claims are about being denied fundamental rights of civil liberty.  Without a hearing on the merits, Plaintiffs will suffer a grave injustice:  the loss of their fundamental rights and no redress for the loss of their jobs and reputations.

Accordingly, Appellants request this Court grant its Motion to Stay Appellate Proceedings.

## ALTERNATE MOTION TO SUBSTITUTE BRIEFING (OR IN THE ALTERNATIVE TO ALLOW SUPPLEMENTAL BRIEFING) AND TO EXTEND TIME FOR HEARING

In the event this Court does not grant Appellants' Motion to Stay Proceedings, Appellants ask this Court to allow them to replace Brief of Appellants with a new brief that gives the Court some basis on which to consider their pleadings.  As noted, the current brief is largely incoherent and does not squarely (or even partially) raise issues that this Court can consider.

17

JA140

Indeed, Appellants' brief is so deficient that merely trying to supplement Appellants' brief would be an exercise in futility. To rule on the issues, this Court needs the issues identified and framed in an organized manner with logical argument. Appellants' meandering brief raises so many new and irrelevant issues to the case below, Appellants would do well to simply incorporate Appellee's arguments as their own and call it a day.

While not binding on this Court, the District Court in *Timbisha Shoshone Tribe v. Kennedy*, addressed a similar set of facts and ultimately recognized the incomprehensible brief at issue must be replaced. *Timbisha Shoshone Tribe v. Kennedy* 267 F.R.D. 333 (E.D. CA, 2010). In that case, the lower court did not grant Defendants' motion to substitute its "incoherent" opposition brief (to Plaintiff's motion to remand) because Defendants had a history of ignoring the court's rules and such equitable relief was therefore improper. *Id.* at 33-337 (noting that Defendants indeed had failed to file a single document within the time limits set by the court's local rules and court's orders). However, given the court could not make heads or tails of Defendants' brief, it ordered "supplemental briefing" to address necessary issues and used its inherent powers to modify the supplemental briefing schedule. The court then ordered Defendants' "supplemental" brief to *replace* its incoherent opposition brief, but as sanction for Defendants' conduct limited the brief to five pages. *Id.* at 337. In other words, the court ordered Defendants to replace their brief because it was so poorly written, but the court

18

shortened the number of pages they could use to make their argument.

Here, Appellants engaged in no such misconduct.  The condition of their brief is in no way their fault and they are entitled to equitable relief by substitution.

Notwithstanding the arguments above, if this Court does not permit Appellants to substitute their appellate brief, they request this Court to allow them to make their best efforts to supplement their brief to try to resurrect their appeal.

Finally, and in any event, Appellants beg this Court to extend the time for Hearing from November 7, 2023, to a minimum of 60 days later to allow both parties time to re-brief their cases (if permitted) or to prepare for oral argument in front of this Court if requested.

For the foregoing reasons, Appellants respectfully requests this Court to grant Appellants' Motion to Stay Proceeding or Appellants' Alternative Motion to Substitute Briefing (or to Substitute Briefing) and to Extend Time for Hearing.

### **STATEMENT PURSUANT TO LOCAL RULE 27 1-(2)**

On October 2, 2023, counsel for Appellants contacted counsel for Appellee to ascertain Appellee's position on this motion (specifically on permitting Appellants to supplement or substitute briefing and to extend time for the hearing).  Counsel for Appellee contacted his client who declined to agree and expressed they were opposed to cooperating with Appellants' request.

Dated: October 20, 2023

Respectfully submitted,

By: */s/ Peter D. Lemmon*

Peter D. Lemmon
LLOYD, LEMMON, & HALE, PLLC

15 Chester St.
Front Royal, VA 22630
Telephone: (540) 823-1110
Facsimile: (540) 583-4279

Peter D. Lemmon
peter@lloydlemmonhale.com
CA Bar # 138691

E. Scott Lloyd
scott@lloydlemmonhale.com

Dana B. Hale
dana@lloydlemmonhale.com

*Attorneys for Plaintiffs-Appellants*

(21 of 61)

**EXHIBIT 1**

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lisa Leake, et al., | No. CV-22-00436-TUC-RM |
| Plaintiffs, | **ORDER** |
| v. | |
| Raytheon Technologies Corporation, | |
| Defendant. | |

Pending before the Court is Defendant Raytheon Company's ("Defendant or Raytheon")[1] Motion to Dismiss Plaintiffs' Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 9) and Motion to Strike Class Allegations Pursuant to Fed. R. Civ. P. 12(f) and 23 (Doc. 10). Plaintiffs Lisa Leake, Kristen Grace, Joseph Heyser, Christopher Stein, and Leslie Zepeda ("Plaintiffs") responded in opposition to both Motions (Docs. 11 and 12) and Defendant replied to both Motions (Docs. 13 and 14). For the following reasons the Court will grant Defendant's Motion to Dismiss with prejudice and deny Defendant's Motion to Strike Class Allegations as moot.

## I. Background

All Plaintiffs were employed by Raytheon at the Tucson, Arizona location. (Doc. 1 at 3.) On September 15, 2021, Raytheon announced via email a new, company-wide, mandatory COVID-19 vaccination policy and issued an FAQ the following day. (*Id*. at 4.)

---

[1] Defendant claims Plaintiff erroneously named Raytheon Technologies Corporation as the Defendant in this matter when Plaintiffs were actually employed by Raytheon Company. (Doc. 9 at n. 1.)

JA145

Plaintiffs objected to receiving the vaccination for either religious or medical reasons. (*Id.*) Specifically, some Plaintiffs objected to the vaccination based on their "sincere religious belief that the human body is God's temple, and that they must not take anything into their bodies that God has forbidden or that would alter the functions of their body such as by inducing the production of a spike protein in a manner not designed by God," while other Plaintiffs objected "to being forced to inject a substance that carries with it a significant risk… of serious adverse reactions[.]" (*Id.* at 4-5.) Plaintiffs admit that Raytheon imposed a "blanket accommodation" for those objecting to the vaccination for religious or medical reasons on the condition that the employees with vaccination exemptions wear masks and test weekly for COVID-19. (*Id.* at 8.)[2] However, Plaintiffs felt that these safety protocols, along with constant email reminders and signs posted in the common areas of the workplace encouraging employees to get vaccinated, subjected Plaintiffs to harassment, coercion to get vaccinated, and created a hostile work environment. (*Id.* at 5.) Plaintiffs argue that if Defendant's true goal was employee safety, then Defendant should have required all employees to partake in the safety protocols regardless of vaccination status while also "forcing weight loss and smoking cessation." (*Id.* at 6.) All named Plaintiffs were terminated or resigned for their refusal to comply with Defendant's safety protocols for vaccination-exempt employees. (*Id.* at 6-10.)

On September 24, 2022, Plaintiffs filed a Class Action Complaint alleging discrimination and wrongful termination in violation of 42 U.S.C. §§2000e–2(a)(1) and retaliation in violation of 42 U.S.C. § 2000e-3. (Doc. 1.) Plaintiffs allege that the three-count Complaint properly maintains a class action under Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure. (*Id.* at 10-13.) In Count One, Plaintiffs claim Defendant discriminated against them by mandating a medical injection and that Plaintiffs were ultimately discharged from employment due to their sincere religious beliefs. (*Id.* at

---

[2] Plaintiffs claim the PCR nasal swab testing Defendant required was recalled by the FDA. (Doc. 1 at 9.) Defendant requests the Court take judicial notice that Plaintiffs' statement is "demonstrably false." (Doc. 9 at 3, n.1.) After review, the Court will take judicial notice that the PCR nasal swab COVID-19 testing was not recalled by the FDA and will not accept this statement in Plaintiffs' Class Action Complaint as true. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

13-14.) Similarly, under Count Two Plaintiffs allege they were wrongfully terminated due to their deeply held religious beliefs. (*Id* at 14-15.) Lastly, in Count Three, Plaintiffs allege Defendant retaliated against Plaintiffs' religious beliefs by creating a classification system by ostracizing Plaintiffs during team meetings, bombarding them with coercive emails, and eventually terminating them from employment. (*Id*. at 15-17.)

On December 2, 2022, Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 9.) Defendant argues that as a matter of law Plaintiffs cannot state a claim for religious discrimination under Title VII because, among other reasons: (1) the vaccination policy applied to all employees regardless of religious beliefs; (2) Plaintiffs were not terminated, nor did they resign due to their refusal to be vaccinated; rather, they were terminated or resigned from their refusal to comply with the safety protocols for vaccination-exempt employees; and, (3) not all Plaintiffs even objected to the vaccination for religious reasons. (*Id*.) Specifically, Defendant argues Plaintiffs' disparate treatment claim fails because (1) Plaintiffs never alleged they were members of a protected class, (2) Plaintiffs were never treated any differently from those outside the class, and (3) there is no link between any adverse employment action and their religious beliefs. (*Id*. at 10-13.) Defendant argues Plaintiffs' hostile work environment claim fails because (1) Plaintiffs failed to exhaust their administrative remedies by asserting this charge with the Equal Employment Opportunity Commission ("EEOC"), (2) there was nothing hostile about the health and safety protocols for vaccination exempt employees, and (3) the email and signage were facially neutral, had nothing to do with Plaintiffs' religious beliefs, and were directed to all employees. (*Id*. at 13-15.) Lastly, Defendant states Plaintiffs' retaliation claim fails because (1) similar to the disparate treatment claim, Plaintiffs have not established any link between their requests for exemptions and loss of employment, and (2) the loss of employment was due to Plaintiffs' refusal to comply with the safety protocols and not from their religious beliefs. (*Id*. at 15-16.) Alternatively to the Motion to Dismiss, Defendant filed a Motion to Strike Class Allegations. (Doc. 10.) Defendant argues that Plaintiffs cannot maintain a class because the Plaintiffs are not

similarly situated such that there is a common question of law or fact common to the class. (*Id*. at 8.)

In response, Plaintiffs argue that the Motion to Dismiss should be denied because all allegations of material facts in a 12(b)(6) motion are to be construed in Plaintiffs' favor, and taken as true, Plaintiffs have stated a claim in their Complaint. (Doc. 12.) In support of their Response, Plaintiffs argue that they were willfully targeted by Defendant due to their deeply held religious beliefs and that termination from employment is a "pretty dang adverse" employment action. (*Id*. at 2.) Plaintiffs also assert that Defendant retaliated against Plaintiffs' religious beliefs by terminating their employment, and that Defendant created a hostile work environment leading to discriminatory practices by promoting "a political agenda rather than allow for Plaintiff's [sic] deeply held religious beliefs[.]" (*Id*. at 3.) In response to the Motion to Strike Class Allegations, Plaintiffs state that questions of law and fact are shared by all members of the class because all Plaintiffs were faced with a Hobbesian choice; Plaintiffs could either reject their deeply held religious beliefs and defile their bodies for the vaccination or lose the job they loved. (Doc. 11.)

Defendant's Reply states that Plaintiffs' Response makes "no attempt to clarify their vague, contradictory, and self-defeating allegations." (Doc. 13 at 2.) Additionally, the Reply clarifies that Plaintiffs do not even dispute the key facts that warrant dismissal under Title VII. (*Id*.) Specifically, the Response does not dispute that: (1) Plaintiffs were treated the same as employees who sought non-religious vaccination exemptions; (2) Plaintiffs were provided vaccination exemptions subject to compliance with health and safety protocols; (3) Plaintiffs objected to these protocols for non-religious reasons; and, (4) Plaintiffs were terminated or resigned not from religious beliefs, but from refusal to comply with the safety conditions of their exemptions. (*Id*.) Defendant reiterates that all three of Plaintiffs' Title VII claims fail because, in large part, there is no link between Plaintiffs' religious beliefs and any disparate treatment, retaliation, or hostile work environment allegation. (Doc. 13.) Additionally, Defendant argues that the dismissal of Plaintiff's Complaint should be with prejudice, as there is no possibility Plaintiffs could amend their

- 4 -

Complaint to state a legal claim. (*Id*. at 7.) Finally, Defendant argues that the Court should strike Plaintiffs' class allegations because Plaintiffs simply restate Fed. R. Civ. P. 23 in conclusory fashion and do not provide legal grounds to maintain a class action. (Doc. 14.)

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is only appropriate if the complaint's factual allegations, together with all reasonable inferences drawn in the plaintiff's favor, fail to state a plausible claim for relief. *Id*. at 678; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (all factual allegations in the complaint must be accepted as true). However, allegations that "contradict matters properly subject to judicial notice or by exhibit" need not be accepted as true. *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (courts need not accept as true allegations that "contradict matters properly subject to judicial notice or by exhibit" or that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") "[A] court may disregard allegations of the complaint that are contradicted by attached exhibits." *Castle v. Eurofresh, Inc.*, No. CV09-8114-PCT-MHMDKD, 2010 WL 797138, at *3 (D. Ariz. Mar. 8, 2010). "We have held that a plaintiff can…plead himself out of a claim by including unnecessary details contrary to his claims." *Sprewell*, 266 F.3d at 988.

While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 n.12 (2011) (quoting *Twombly*, 550 U.S. at 570). The allegations must "raise a reasonable expectation that discovery will reveal [material] evidence" and thus "allow the court to draw the reasonable inference that the defendant is liable" for the alleged misconduct. *Id*. at 46. The plausibility standard demands "more than

a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A formulaic recitation of the elements of a cause of action is not enough to establish a claim, and legal conclusions are not entitled to an assumption of truth. *Id*. at 679.

In resolving a Rule 12(b)(6) Motion to Dismiss for failure to state a claim, "the Court's task is to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Sabol*, 2020 WL 705170, at *6 (internal citations and quotations omitted). Within the context of the facts stated in the complaint or documents attached to or incorporated into the complaint by reference, the Court must "draw reasonable inferences and resolve any doubts in favor of the non-moving party." *Id*.

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 971 (9th Cir. 2010) ("Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment.") (citations omitted). Whether a district court grants leave to amend is reviewed for an abuse of discretion. *Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013). The factors to consider in making the determination of whether to dismiss the complaint without leave to amend are bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *Id*. (citing *United States v. Corinthian Colleges,* 655 F.3d 984, 995 (9th Cir. 2011)). "However, each is not given equal weight. Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

### III.    Applicable Law[3]

Title VII of the Civil Rights Act of 1964 prohibits discrimination, termination,

---

[3] Plaintiffs' three claims in their Complaint consist of "Discrimination, Wrongful Termination, and Retaliation;" whereas Defendant's Motion to Dismiss labels the three claims as "Disparate Treatment, Hostile Work Environment, and Retaliation." This Order will label the overlapping Title VII claims in accordance with Defendant's Motion to Dismiss.

- 6 -

(28 of 61)

segregation, or any other act by an employer that deprives an individual of employment opportunities on account of religion. 42 U.S.C § 2000e-2(a). Employers have a duty to reasonably accommodate the religious practices of an employee, unless the employer can demonstrate that the accommodation would result in an undue hardship on the conduct of business. 29 C.F.R. § 1605.2(b)-(c).

"Disparate treatment occurs 'where an employer has treated a particular person less favorably than others because of a protected trait.'" *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) (citing *Ricci v. DeStefano,* 557 U.S. 557, 577 (2009)). "To establish a prima facie case of disparate treatment under Title VII, a plaintiff must provide evidence that 'give[s] rise to an inference of unlawful discrimination.'" *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)). Additionally, when a plaintiff is challenging a facially neutral policy, she must establish that the defendant had a discriminatory intent for taking the job-related action. *Wood*, 678 F. 3d at 1081. Disparate treatment claims follow the *McDonnell Douglas* framework in that a plaintiff bears the initial burden of showing: "(1) he is a member of a protected class, (2) he was performing his job in a satisfactory manner, (3) he suffered an adverse employment decision, and (4) he was treated differently than similarly situated persons outside his protected class." *Clark v. Frank*, 5 F.3d 535 (9th Cir. 1993) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)).

"To state a claim based on a hostile work environment, the plaintiff must show that there has been severe or pervasive and unwelcome verbal or physical harassment because of the plaintiff's membership in a protected class," and that the severe and pervasive harassment altered the conditions of employment to create an abusive work environment. *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003); *Clark v. Frank*, 5 F.3d 535 (9th Cir. 1993). Courts are required to look at the totality of circumstances in determining whether a work environment is sufficiently hostile. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). However, this is a demanding standard, and conduct must be extreme to constitute a hostile work environment. *Id*. at 788.

JA151

"To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) he engaged in protected activity, (2) he suffered an adverse personnel action, and (3) there was a causal link between the two." *Clark v. Frank*, 5 F.3d 535 (9th Cir. 1993). "To establish causation [a plaintiff] must show 'by a preponderance of the evidence that engaging in the protected activity was one of the reasons for [his] firing and that but for such activity [he] would not have been fired.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064–65 (9th Cir. 2002) (citing *Ruggles v. California Polytechnic State Univ.,* 797 F.2d 782, 785 (9th Cir.1986)).

Recent case law has addressed Title VII issues regarding vaccination mandates. The EEOC recognizes that "Title VII prohibits employment discrimination based on religion[; however,] an employee's request for an exemption from a COVID-19 vaccination mandate can be denied on the ground that the employee's belief is not truly religious in nature or is not sincerely held, or on the ground that such an exemption would pose an 'undue hardship' by burdening 'the conduct of the employer's business' through increasing 'the risk of the spread of COVID-19 to other employees or to the public.'" *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021), *reconsideration en banc denied,* 22 F.4th 1099 (9th Cir. 2022) (citing EEOC Guidance). Even before the outbreak of COVID-19, the Supreme Court recognized that '"the right to practice religion freely' is not '"beyond regulation in the public interest,' including regulation aimed at reducing the risk of '"expos[ing] the community'… to 'communicable disease[.]'" *Id*. at 1181 (quoting *Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944)).

**IV.     Discussion**

Plaintiffs' overlapping allegations lack the legal and factual support to state a Title VII claim. First, Plaintiffs have not and cannot state a disparate treatment claim. All vaccination-exempt employees were treated the same, regardless of the reason for exemption. The vaccination mandate never mentioned religion and was therefore facially neutral, and Plaintiffs have not established that Defendant had a discriminatory intent in either issuing the vaccination mandate or implementing the health and safety protocols for

vaccination-exempt employees. This alone is enough to defeat Plaintiffs' disparate treatment claim. *See Wood*, 678 F. 3d at 1081. Furthermore, applying the *McDonnell Douglas* framework, Plaintiffs never alleged they were members of any protected class, or what their religious beliefs were. Plaintiffs simply state that some employees rejected the vaccination due to their "sincere religious belief that the human body is God's temple, and that they must not take anything into their bodies that God has forbidden or that would alter the functions of their body such as by inducing the production of a spike protein in a manner not designed by God," while others objected not because of religious reasons, but for medical reasons. (Doc. 1 at 4-5.) Even if Plaintiffs were comprised of a protected class, they still fail to demonstrate they were treated any differently from other vaccination-exempt employees. Therefore, Plaintiffs have failed to allege a legally valid disparate treatment claim and this claim will be dismissed.

Next, Plaintiffs have not, and cannot, state a hostile work environment claim. As an initial matter, Defendant alleges this Court lacks jurisdiction to consider this claim for Plaintiffs failure to assert this charge with the EEOC. (Doc. 9 at 14.) "However, the district court has jurisdiction over any charges of discrimination that are 'like or reasonably related to' the allegations made before the EEOC, as well as charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations." *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (citing *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)). Because a hostile work environment claim is related to and could reasonably be expected to grow out of the discrimination allegations Plaintiffs brought before the EEOC, the Court will consider, but dismiss, this claim.

Once again, Plaintiffs fail to show they were members of a protected class, but even if they had, Plaintiffs would not have come close to meeting this demanding standard. *See Faragher*, 524 U.S. at 787. Defendant had a blanket vaccination exemption and only required those employees with a vaccination exemption to wear masks and test weekly for COVID-19. (Doc. 1 at 8.) Plaintiffs' allegation that a hostile work environment was created through the requirement that vaccination-exempt employees wear facial protection and

- 9 -

submit to weekly COVID-19 testing for a virus that has claimed the lives of over one million Americans, and counting, is shocking to the Court.[4] Regardless, the Court fails to see how the safety conditions required for vaccination-exempt employees is in any way related to religious discrimination under Title VII. As some district courts have already found, masking requirements for vaccination-exempt employees does not create a "scarlet letter" effect because the employees could be vaccination-exempt for a multitude of reasons, or the masking employees could be vaccinated but simply want the added facial protection. *Klaassen v. Trustees of Indiana Univ.*, 549 F. Supp. 3d 836, 890 (N.D. Ind. 2021), *vacated and remanded as moot,* 24 F.4th 638 (7th Cir. 2022). Plaintiffs also argue that the constant email reminders and signage in workplace common areas contributed to a hostile work environment. (Doc. 1 at 5.) But again, these facially neutral promotions of employee safety and well-being were sent and visible to all Raytheon employees and were not specifically targeted to Plaintiffs. Raytheon's encouragement of their employees to get vaccinated for a deadly virus, combined with the reasonable safety accommodations for vaccination-exempt employees, does not come close to meeting the demanding standard needed to state a legally valid hostile work environment claim. As such, this claim will be dismissed.

Lastly, Plaintiffs have not, and cannot, state a retaliation claim. As previously mentioned, Plaintiffs have not established that they were members of a protected class or were engaging in any protected activity. But even if Plaintiffs could establish that they were engaging in a protected religious activity that would trigger Title VII protections, they have failed to establish a causal link between this protected activity and any adverse employment action. As Plaintiffs admit in their Complaint, they were not terminated, nor did they resign, because of the religious vaccination exemption, they were terminated or resigned due to their refusal to comply with the health and safety protocols for vaccination-exempt employees. Defendant's requirement that vaccination-exempt employees wear facial masks and engage in weekly COVID-19 testing does not have any religious aspect

---

[4] *Covid Data Tracker*, Ctrs. for Disease Control & Prevention, https://covid.cdc.gov/covid-data-tracker/#data-tracker-home (last visited February 21, 2023).

attached to it and is a facially neutral policy. Plaintiffs' religious and, in some cases, medical objections to the COVID-19 vaccine was not a but-for cause of Plaintiffs' termination. Instead, the but-for cause of Plaintiffs' termination was Plaintiffs' refusal to comply with the safety conditions for vaccination exempt employees. Therefore, Plaintiffs have failed to establish a legally valid retaliation claim under Title VII and this claim will be dismissed.

Plaintiffs have not, and simply cannot state a Title VII claim on the record before the Court. But even if they had, prior case law has held that an employer may deny a religious vaccination exemption on the ground that such exemptions would pose an undue hardship on the employer's business by increasing the spread of COVID-19 among the employees or public. *See San Diego Unified Sch. Dist.*, 19 F.4th at 1180. Employers also have a duty to provide reasonable accommodations to the religious practices of an employee. 29 C.F.R. § 1605.2(b)-(c). Defendant provided reasonable accommodations here by allowing for blanket vaccination exemptions for any reason, while requiring vaccination-exempt employees to follow a few additional safety protocols. Because Plaintiffs have failed to link any adverse employment action to their religious beliefs, Plaintiffs have failed to state a Title VII claim. Additionally, the Court finds that any amendment to the Complaint would be futile. Therefore, dismissal of the Complaint with prejudice is appropriate.

Because the Court will grant Defendant's Motion to Dismiss with prejudice, it need not address Defendant's alternative Motion to Strike Class Allegations (Doc. 10). Accordingly, the Motion to Strike Class Allegations is denied as moot.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

**IT IS ORDERED** that Defendant's Motion to Dismiss Plaintiffs' Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 9) is **granted**. This case is hereby **dismissed with prejudice**. The Clerk of the Court is directed to close the case.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Class Allegations Pursuant to Fed. R. Civ. P. 12(f) and 23 (Doc. 10) is **denied as moot**.

Dated this 27th day of February, 2023.

_____
Honorable Rosemary Márquez
United States District Judge

- 12 -

**EXHIBIT 2**

# 23-15320

## United States Court of Appeals
### *for the*
## Ninth Circuit

LISA LEAKE, KRISTEN GRACE, JOSEPH HEYSER, CHRISTOPHER STEIN, and LESLIE ZEPEDA,

*Plaintiffs-Appellants,*

v.

RAYTHEON TECHNOLOGIES CORPORATION,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
CASE NO. 4:22-cv-00436-RM

### DECLARATION

DECLARATIN OF NAMED
PLAINTIFFS-APPELLANTS
LISA LEAKE, KRISTEN GRACE, JOSEPH
HEYSER, CHRISTOPHER STEIN, and
LESLIE ZEPEDA

COME NOW Named Plaintiffs-Appellants Lisa Leake, Kristen Grace,

Joseph Heyser, Christopher Stein, and Leslie Zepeda ("Appellants"), and

submit the following Declaration in support of the above-styled class

complaint.

JA158

1. Appellants provide this Declaration to attest to their reasons for desiring to file a Rule 60(d)(1) Motion for Relief of Judgment or Order and to seek a Stay in the current appeal.

2. Appellants filed individual EEOC charges and the EEOC issued their Right to Sue letters in June and July 2022.

3. After individually searching for counsel without success for at least six months, Appellants retained Attorney Nancy Knox-Bierman ("Attorney") to file a class action lawsuit in mid-September 2022.

4. They met with her in person frequently during the pendency of the EEOC claims until she moved to Texas, which severely limited the flow of communication.

5. Appellants retained her because she said she was passionate about the injustices of mandatory vaccines and rights for religious and medical freedom in the workplace.

6. Appellants began to meet Attorney via Zoom to discuss the facts of the case for the original filing.

7. Notwithstanding these discussions, Attorney filed Appellants' Complaint on September 24, 2022, but did not allow Appellants to see a final draft it before filing.

8. As a result, the Complaint contained several factual errors and omissions, including for example:

    a. Omitting the fact that Defendant refused to allow Plaintiffs to file

requests for religious exemptions to their testing mandate on the basis that any accommodation request by Appellants to the Defendant's testing mandate must be made exclusively as a medical accommodation under the Americans with Disabilities Act, even though most Appellants did not have physical disabilities and wanted to file religious accommodation requests to the testing requirement.

b. Omitting the fact that Defendant refused to consider any alternative accommodations to Defendant's self-imposed vaccine mandate (other than testing, which most Appellants also objected to on religious grounds), on the basis that regular testing was an "accommodation" and that other accommodations were "non-negotiable."

c. Omitting the fact that Defendant had granted Appellant Grace a medical accommodation to the masking requirement prior to Defendant mandating the vaccine, but after the vaccine mandate was issued, Defendant unilaterally and without explanation or good reason withdrew that accommodation.

d. Omitting the fact that the requirement of weekly testing for those who filed a request for a religious accommodation to Defendant's vaccine mandate was not permitted per ADA guidelines (*see* ADA Periodic Testing and Monitoring, Section D, Point 18, Example B) or that asymptomatic and/or non-disabled people are not permitted to be treated as "threats" per the ADA.

9. Appellant Stein provided all these details to Attorney and her staff on multiple occasions and expected they would have been specifically listed and referenced appropriately in the Complaint alongside the other Title VII claims. Attorney told Mr. Stein these details and facts were relevant to discovery and would be provided later.

10. Appellants have since learned that the Complaint omitted the single most important and actionable legal claim for which Plaintiffs believe Defendant is liable, which is a failure to accommodate Appellants' religious beliefs under Title VII. This claim should have been the foundational claim alleged, for multiple reasons (i.e., Defendants did not engage in an interactive dialogue with Plaintiffs or consider possible accommodations that would not violate Plaintiffs' religious beliefs), but more importantly, given the fact (stated above), that Defendant would not allow or even consider any religious accommodations to the testing or masking mandates.

11. When confronted with the inaccuracies and errors Appellants learned about after she had filed their Complaint, Attorney refused to provide final drafts for their review before filing any of the briefs / rebuttals on appeal. Plaintiffs had minor input early on for the original appellate brief but after that, Attorney's position was, "you are not lawyers and will not be reviewing my work." At the very minimum, this would likely have avoided the kinds of omissions and misstatements described above.

12. When Plaintiffs asked Attorney to review drafts or had other questions,

4

Attorney was verbally belligerent. Per phone call with Plaintiff Leake on April 22, 2023, Attorney stated, "You all are NOT lawyers! I am! I live alone, I work alone and I'll die alone!"

13. On appeal, Attorney drafted the Brief of Appellants based on her own wishes and motivations rather than her clients'. She changed the primary arguments from religious claims under Title VII to medical corruption, EU authorization and constitutional arguments she had never raised at the District Court level.

14. She also erroneously claimed that, "All of the Plaintiffs had filed EEOC Complaints at the time of their termination." Each Plaintiff had made a request for a religious and/or medical accommodation, but only Plaintiff Grace filed an EEOC charge at the time her religious accommodation request for the vaccine was denied. All the named Plaintiffs did file EEOC complaints against the mandate and received "right to sue" letters after their terminations.

15. Once Appellants had seen the appeal brief, Appellants tried to set ground rules to ensure Attorney did not continue to file briefs with inaccurate facts or inapplicable legal issues. Appellants, via email, requested a 24-hour review period prior to any further filings to prevent this from happening again. Attorney agreed with this request but did not honor her commitment for any remaining submissions.

16. Attorney also mentioned in the same email that she wanted to "bow out" after the appeal filing, because she was feeling "old, tired and missing regular crime," which prompted Plaintiffs to significantly increase their search for legal

5

representation alternatives, from cursory interest queries to all-out direct requests. Email from Nancy Knox-Bierman to Christopher Stein, *et al.*, June 25, 2023.

17. In addition to making factual and legal errors in Appellants' filings, preventing Appellants from reviewing briefs and motions prior to filing, and generally ignoring Appellants' wishes altogether, Attorney failed to show up for an important in-person meeting she arranged with Appellants in Tucson on April 22, 2023, a couple weeks in advance of the May 4, 2023 filing deadline of our appellate brief.[1] Appellants wanted to discuss the strategy for the brief and review it for accuracy as would most people who were battling to resuscitate legal claims they felt were wrongly dismissed.

18. After she missed our meeting, Attorney claimed she missed it in order to "take care of old friends" whom she had run into who were partying too hard at her hotel in Tucson. Attorney ignored Appellants until May 1, 2023, when she responded to a text from Plaintiff Leake.

19. In that text, Attorney wrote:

> I know that you are all concerned but I cannot answer everyone's texts and everyone's emails. You guys got to trust me okay? I had to tear the guts out of a lot of the main argument and refashion. I do not want to ask for a Time extension [*sic*] I want to knock this out by the 4th . . . I am a crazy freaking weirdo who is an extremely talented writer when I can focus. We will have an amazing brief [*sic*] I just need to be left along for the next few days.[2]

---

[1] Attorney had moved from Arizona to Texas during the pendency of our claim and came to Arizona in April 2023 to meet with us in person.

[2] Appellants have emails and screen-shots of texts for this communication and most, if not all others quoted herein.

6

JA163

Text message from Nancy Knox-Bierman to Christopher Stein. May 1, 2023.

20. Attorney did not file Appellants' opening brief on May 4th as required, but instead filed a motion to extend time on May 3, 2023, which the Court granted.

21. Plaintiffs did not get to review a draft before Attorney submitted the appellate brief and were reduced to obtaining it from the PACER system.

22. Attorney refused to read the detailed evidence (e.g., inter-correspondence between Defendant / Plaintiffs, Disciplinary Form responses to the vaccine mandate, etc.,) provided by the Plaintiffs in support of their claims.

23. Plaintiff Zepeda confronted Attorney about the fact she had requested Attorney black out her home address and partial social security number from documents provided to the Court as an Appendix to the Reply Brief and Attorney had not done so. Attorney explained her reasoning for refusing to read her clients' evidence stating,

> I mean I had reams of crap from all of you. Did you honestly think I was going to read through word for word? That's just incredibly irresponsible to throw this all on me young lady [*sic*] I mean I was writing a freaking brief [sic] hello?" She went on to say, "And you do understand that you all gave me that information to put in a brief right? I mean all that s*** didn't come in a dream to me sweetie [*sic*] y'all threw that in there as your supplements [*sic*] how was I supposed to know to redact it all.

Text Message from Nancy Knox-Bierman to Leslie Zepeda, July 9, 2023. Ex. XX

24. Communication with Attorney got so bad that only one of the five named Plaintiffs would even attempt to reach out via email to address any issues lay persons

7

like us could spot.

25. Attorney refused to provide a detailed breakdown of hours she billed, and she made multiple threats to stop representing us, even though, all payments except two were always paid in advance and were never late. She repeatedly asked for early payment, claiming she needed "money now."

26. For example, Attorney sent a bill on December 31, 2022, which per our fee agreement was due 30 days later on January 30, 2023. On January 3, 2023, Attorney's office sent us an email stating that, "To be absolutely transparent we will have to withdraw from the case if the invoice is not paid in full by Friday," which was January 6, 2023, just six days after the bill was sent.

27. Such threats happened repeatedly, and frequently just days after Attorney had just sent an invoice.

28. In addition, although attorney moved from Arizona to Texas after she began representing us, she was not licensed in Arizona. Attorney requested, and we naively agreed, to pay for her to become licensed in Arizona to take our case. We paid her $2200 for her Arizona certification, which she never ended up getting.

29. When we confronted her about whether we could get credit for the $2200 on our final bill dated July 11, 2023, ($12,000 for her work on Appellants' Reply Brief of which we had already paid $9000), she angrily responded:

> I never charge for all the emails, calls, and extremely intense case reviews that are done for you all. I have done considerable work on your matter. I have had to be admitted to 2 federal courts and am now obligated to pay their yearly

8

JA165

bar dues, not to mention the fact that I am a criminal defense attorney who had to learn all this civil procedure on my own dime, just to be able to adequately represent you all. I will waive any late fees if you pay the remaining balance by Friday. If the balance is not paid by the end of the month, I will withdraw from further representation.

Email from Nancy Knox-Bierman to Christopher Stein, *et al.*, Aug.22, 2023. Ex. XX

30. Attorney never returned or credited us for that $2200.

31. Two weeks later, Attorney threatened legal action if the $3000 balance of the bill was not paid in full within 10 days. She stated:

In addition, criminal charges may ensue as Theft of Services is a statutory crime under law with a penalty not to exceed $4000 in fines and up to a year in prison under Texas Penal Code 31.04. To avoid criminal charges and additional litigation costs payment must be received within 10 days of this notice.

Nancy Knox-Bierman, *Payment Demand Letter* to Lisa Leake, *et al.*, (September 7, 2023)

32. On August 27, 2023, Appellant Stein asked Attorney via email whether Appellants should be present at the November 7, 2023, hearing and whether she would continue her engagement after oral arguments, given her prior declaration in June that she wished to return to criminal defense work. Appellant Stein explained that his questions "allow us to plan for continuity of counsel w/o malice or bad faith the ensure the original premise of coming together continues forward."

33. Attorney appeared to take offense at the questions stating,

I am the ONLY one who can speak and the only one who needs to be there [via video]. Without me, are you without representation. . . For now, I am your only lawyer. You cannot have 2 at once. At the end of the month, you will have no one if your legal fees are not paid. I am not asking for an organ here. I am asking to be paid for what was pretty dang good lawyering.

9

JA166

Email from Nancy Knox-Bierman to Christopher Stein, August 27, 2023.

34. Appellants did most of the groundwork and organization for the appeal brief's Appendix, including formatting and organization. Attorney was electronically challenged and would only take any help via email (e.g., would not take a phone call to rectify issues). Appellants essentially wrote 95% of the submitted errata to the Appendix after Appellants found horrible formatting issues with the original Appendix submittal. These errors were not present when Appellants provided the Appendix to Attorney.

35. Attorney is primarily a criminal defense attorney who took on Plaintiffs' civil case because of her self-described passion against the vaccine mandate. Shortly after we retained her, and without informing us, Attorney moved to Texas. Since we are all in Tucson, this distance and Attorney's technology challenges significantly hindered her work for Appellants.

36. The unprofessional conduct of Attorney caused significant harm to Appellants. Her pleadings and briefs at the District Court and the Court of Appeals were full of typos and grammatical errors. More importantly, her failure to consider her Clients' factual information, our perspective about our claims and her apparent failure to know the relevant law to apply, directly resulted in dismissal of Plaintiffs' Complaint.

37. Her inability to raise actual errors by the District Court on appeal resulted

10

JA167

in an incomplete, factually and legally flawed record on appeal. Her appellate briefs raised issues Appellants did not want to raise that diluted the real issues and were irrelevant to Appellants' claims. She failed to raise crucial issues for the appeal, and we had no opportunity to avoid these issues given her position that we were not entitled to review her briefs.

38. Finally, Appellants believe a grave injustice will occur if the District Court's decision is allowed to stand. We were all summarily and unjustly terminated by Defendant and several of us have not found new jobs. We have each suffered financially, emotionally and in some cases physically.

39. Because of the record before the Court, we believe likelihood of success on appeal is slim. We don't believe we have any other remedy other than to attempt to obtain relief of the current District Court judgment against us and start over again.

[SPACE INTENTIONALLY LEFT BLANK[

11

Dated: October 20, 2023

Respectfully Submitted,

_Lisa Leake_
Lisa Leake (Oct 20, 2023 10:19 PDT)

Lisa Leake

Kristen Grace (Oct 20, 2023 10:22 PDT)

Kristen Grace

Joseph Heyser (Oct 20, 2023 13:40 CDT)

Joseph Heyser

Christopher J Stein (Oct 20, 2023 11:42 PDT)

Christopher Stein

_Leslie Zepeda_
Leslie Zepeda (Oct 20, 2023 11:45 PDT)

Leslie Zepeda

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, We, Lisa Leake, Kristen Grace, Joseph Heyser, Christopher Stein, and Leslie Zepeda declare under penalty of perjury that the foregoing is true and correct. Executed on October 20, 2023.

_Lisa Leake_
Lisa Leake (Oct 20, 2023 10:19 PDT)

Lisa Leake

Kristen Grace (Oct 20, 2023 10:22 PDT)

Kristen Grace

Joseph Heyser (Oct 20, 2023 13:40 CDT)

Joseph Heyser

Christopher J Stein (Oct 20, 2023 11:42 PDT)

Christopher Stein

_Leslie Zepeda_
Leslie Zepeda (Oct 20, 2023 11:45 PDT)

Leslie Zepeda

12

JA169

**EXHIBIT 3**



← (N) Nancy 📹 📞 ⋮

Yes but I do not understand why you gave the stuff to me in the first place then? I mean I had reams of crap from all of you. Did you honestly think I was going to go through word for word and decide what you may not like? That's just incredibly irresponsible to throw this all on me young lady

I mean I was writing a freaking brief hello?

And all of that crap you had given to Steve way back when who disappeared leaving just me and Chris Stein to sort through and separate everything. If I

  RCS

||| JA171 〈



← (N) **Nancy**

And you do understand that you all gave me that information to put in a brief right? I mean all that s*** didn't come to me in a dream sweetie y'all threw that in there as your supplements how was I supposed to know to redact it all

You should check pacer. Its still there.

So is there motion to strike it.

I will check pa↓ However
it is not in the official record

RCS

 

||| JA172

**EXHIBIT 4**

 Gmail

**Li Le <lleake.1235@gmail.com>**

## Re: August invoice 3rd send

1 message

**nancy knox-bierman** <nknoxbierman@yahoo.com>                    Tue, Aug 22, 2023 at 1:05 PM
Reply-To: nancy knox-bierman <nknoxbierman@yahoo.com>
To: Christopher J Stein <cjstein@cox.net>, "lleake.1235" <lleake.1235@gmail.com>, Kristen Grace
<kdgrace128@gmail.com>
Cc: Mheyser <mheyser@cox.net>, Leslie Zepeda <daniheart2001@hotmail.com>

yes and furthermore, I never charge for all the emails, calls. and extremely intense case reviews
that are done for you all.
I have done considerable work on your matter, I have had to be admitted to 2 federal courts and
am now obligated to pay their yearly bar dues, not to mention the fact that I am a criminal defense
attorney who had to learn all this civil procedure on my own dime, just to be able to adequately
represent you all.
I will waive any late fees if you pay the remaining balance of $3000 by Friday.
If the balance is not paid by the end of the month, I will withdraw from further representation.

Nancy Knox Bierman MA, JD
204 Munford, Houston, TX 77008
Texas Office (713) 836-9990
SBOT #24059177
http://www.libralawtexas.com

"Riamh Nar Dhruid O Spairn Iann"

On Tuesday, August 22, 2023 at 11:05:15 AM PDT, Christopher J Stein <cjstein@cox.net> wrote:

Nancy,

Did we ever get credit for the forward money Lisa and I provided for the AZ certification which wasn't needed / used for
such?

Also, the $12k in one month timespan was quite a hit that drained much of saved up funds / buffer, hence the partial
payment so far.

Thanks,

Chris, et al.

On 8/19/2023 4:26 PM, nancy knox-bierman wrote:

thank you

Nancy Knox Bierman MA, JD
204 Munford, Houston, TX 77008

**EXHIBIT 5**

From  nancy knox-bierman

To  Me <cjstein@cox.net>, lleake.1235 <lleake.1235@gmail.com>, mheyser@cox.net, Kristen Grace, StandforRights <standforrights@protonmail.com>

6/25/2023, 3:30 PM

Subject  **Re: Move Forward Plans with RTX CA**

we are down to the final rebuttal brief.
That is due 7/5/23.
After that the Court will decide if they will grant us oral argument in Phoenix the week of Oct. 19, or they will decide your case on briefs alone, with the submission for review to be determined by the court.
Raytheon cannot file anything else.
I will pass the final draft around for inaccuracies prior to electronic filing.
The bound versions of the rebuttal brief will be due within 7 days of the electronic filing.
That is it.
The appellate court can reverse the ruling of the lower court and remand on any or all portions of the complaint, or they can affirm the ruling of the lower Court.
If the remand, you all can decide what you want to do next.
I will pretty much bow out after this.
It has been a long, amazing journey, but I am old, tired and missing regular crime.
If you win at this level, Raytheon will want to settle with you all, I would imagine.
We can all work on that together, if we get that lucky.
Meanwhile, I have a sh*t ton of work to do. Send any addendums to Zteven, please.
Thanks!

Nancy Knox Bierman MA, JD, EMT
204 Munford, Houston, TX 77008
2719 NE Loop 410 #100
San Antonio, TX 78217
Texas Office   (713) 836-9990
Tucson Office (520) 349-7495
Fax (866) 270-8769
*"Riamh Nar Dhruid O Spairn Lann"*

http://www.libralawtexas.com

**EXHIBIT 6**

From  Me <cjstein@cox.net>   @                                                    ↩ Reply   ↩ Reply All  ∨   ➦ Forward   ▣ Archive   ♨ Junk   🗑 Delete   More ∨

To  nancy knox-bierman  @, Leslie Zepeda  @, lleake.1235 <lleake.1235@gmail.com>  @, Chris Sublett <csublettus@yahoo.com>  @, mheyser@cox.net  @   **MORE**                                    8/27/2023, 10:44 AM

Subject  **Re: oral argument granted**

Nancy,

To clarify what this means...

a) Are all named plaintiffs are expected to be present in Phoenix for "Zoom" orals?

b) Will you need to be present in Phoenix as well (i.e., do we expect you and need to coordinate) or are you allowed to represent from Texas "Zoom" location?

c) If we stay at this level (9th circuit) per court's go-forward orders with potential mediation and/or discovery, are you expecting to stay for that or do you wish to "bow out" after oral arguments are completed, regardless of court direction?  Reasoning:  You told us you wish to return to criminal defense vs civil and we want to clarify specifically where you wanted to make your exit.

While this has been a long process and sometimes contentious, the true goal was always to fight this abomination of corporate tyranny / discrimination for us and future people with conviction.  Above questions allow us to plan for continuity of counsel w/o malice or bad faith to ensure the original premise of us coming together continues forward.

Sincerely,

Chris, Kristen, Lisa, Leslie, and Mike

🦁 Brave

**EXHIBIT 7**



Case: 23-15320, 0/20/2023, ID: 12813071, DktEntry: 41-2, Page 37 of 41

(57 of 61)

From  nancy knox-bierman

To  Me <cjstein@cox.net>                                                      8/27/2023, 10:56 AM

Subject  **Re: oral argument granted**

I am the ONLY one who can speak and the only one who needs to be there.
Without me, you are without representation.
If remand is granted, you will go back to district court and can easily go with any attorney at that point, or we can all stay together.
If we win, I imagine Raytheon will offer to mediate.
They have been ordered to mediate in Florida, where we have a trial date and things are going smoothly.
Note that Judge Marquez was sent notice of the oral argument.
For now, I am your only lawyer. You cannot have 2 at once.
At the end of the month, you will have no one if your legal fees are not paid.
I am not asking for an organ here. I am asking to be paid for what was pretty dang good lawyering.

Nancy Knox Bierman MA, JD
204 Munford, Houston, TX 77008
Texas Office (713) 836-9990
SBOT #24059177
http://www.libralawtexas.com

"Riamh Nar Dhruid O Spairn Iann"

**EXHIBIT 8**



**LIBRA LAW**

September 7, 2023

Lisa Leake
Mike Heyser
Chris Stein
Kristen Grace
Leslie Zepeda


RE: LEAKE ET AL V RAYTHEON TECHNOLOGIES

Greetings:

Let this letter serve as demand for payment for legal services rendered in the above legal action. Your current balance is $3211.50 with an additional 90-day overdue charge of $50, for a total of $3261.50. To avoid attorney fees and court costs, payment must be made in full by September 17, 2023, or suit will be filed against you in the matter. In addition, criminal charges may ensue as Theft of Services is a statutory crime under law with a penalty not to exceed $4000 in fines and up to a year in prison under Texas Penal Code 31.04.

To avoid criminal charges and additional litigation costs payment must be received within 10 days of this notice.


If there are any questions or concerns, please do not hesitate to call my office.

Respectfully,
Nancy A. Knox-Bierman, Esq.
204 Munford St.
Houston, TX 77008
(713) 836-9990
E-mail: Libralawtexas@gmail.com
SBN#24059177

JA182

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| KRISTEN GRACE, FRANCISCO GARZA, ROSSANA HERNANDEZ, J. MICHAEL HEYSER, LISA LEAKE, CHRISTOPHER STEIN, CHRISTOPHER SUBLETT, and LESLIE ZEPEDA<br><br>Plaintiffs,<br><br>v.<br><br>RTX CORPORATION f/k/a RAYTHEON TECHNOLOGIES CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 24-cv-2083-CMH-WBP |

**DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

Defendant RTX Corporation f/k/a Raytheon Technologies Corporation ("Raytheon"),[1] by

its undersigned attorneys, respectfully moves this Court for an order, pursuant to Federal Rule of

Civil Procedure 12(b)(6), dismissing ***with prejudice*** the Complaint of plaintiffs Kristen Grace, J.

Michael Heyser, Lisa Leake, Christopher Stein, and Leslie Zepeda (the "Arizona Plaintiffs") and

Francisco Garza, Rossana Hernandez, and Chirstopher Sublett (the "Additional Plaintiffs") (the

Arizona Plaintiffs and the Additional Plainitffs, collectively, "Plaintiffs").

As set forth more fully in the accompanying Memorandum of Points and Authorities in

Support, Plaintiffs' Complaint should be dismissed with prejudice for four reasons.  **First**, the

claims of the Arizona Plaintiffs are barred by *res judicata* because they previously asserted

---

[1] Plaintiffs were actually employed by Raytheon Company, not Raytheon Technologies Company.  Raytheon Technologies Company is now RTX Corporation.  For ease of reference, RTX Corporation refers to itself and Plaintiffs' employer as "Raytheon."

315507299v.1

JA183

similar claims in an action filed in the U.S. District Court for the District of Arizona, Case No. 22-cv-00436-TUC-RM (the "Arizona Action"), which was dismissed **with prejudice**. *Leake v. Raytheon Technologies Corp.*, 2023 U.S. Dist. LEXIS 32177 (D. Az. Feb. 27, 2023); *Leake v. Raytheon Technologies Corp.*, 2024 U.S. App. LEXIS 10287 (9th Cir. Apr. 29, 2024), *cert denied*, 2024 U.S. LEXIS 4384 (Oct. 21, 2024).  Because the Complaint in this action arises from the exact same nucleus of fact as the Arizona Action, their claims here are barred by *res judicata*.  *See, e.g., Laurel Sand & Gravel, Inc. v. Wilson,* 519 F.3d 156, 161-62 (4th Cir. 2008).

**Second**, all of Plaintiffs' claims are time-barred because they waited more than 90 days after receiving right-to-sue letters from the U.S. Equal Employment Opportunity Commission ("EEOC") to commence this action.  *See, e.g., Quinn v. Copart of Conn., Inc.*, 791 F. App'x 393, 395 (4th Cir. 2019).  Each of the Plaintiffs received their right-to-sue letters between October 3, 2022 and August 4, 2024, yet did not commence this action until November 20, 2024.  Accordingly, all Plaintiffs' claims are time-barred.

**Third**, Plaintiffs' Complaint fails to state a claim upon which relief may be granted because Plaintiffs have not adequately alleged that they held religious beliefs that conflicted with the requirements of their employment.  *See, e.g., Ellison v. Inova Health Care Servs.*, 692 F. Supp. 3d 548, 556-61 (E.D. Va. 2023).  Among other things, several Plaintiffs do not allege that they had religious objections to the health and safety conditions of their exemptions from Raytheon's 2021 COVID-19 vaccination policy, and at least one Plaintiff affirmatively alleges that her objections were secular.  The other Plaintiffs do not allege the nature of their purported religious beliefs and do not explain how those beliefs conflicted with health and safety conditions such as testing and masking.  Accordingly, Plaintiffs have not come close to pleading a Title VII cause of action.

2

315507299v.1

**Fourth**, the Arizona Plaintiffs' claims are barred by their binding judicial admissions in the Arizona Action.  *See, e.g., Flexi-Van Leasing, Inc. v. Traveles Indem. Co.*, 837 F. App'x 141, 145 (4th Cir. 2020).  Among other things, the Arizona Plaintiffs alleged in the Arizona Action that they did ***not*** have religious objections to masking, testing, and social distancing, and that any objections they did have were secular in nature.  Even setting aside *res judicata*, the Arizona Plaintiffs are bound by their representations to another federal court, and they cannot contradict those representations in this Court.

Accordingly, for multiple, independent reasons, the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), with prejudice.

Dated: January 24, 2025

Respectfully submitted,

By: ____/s/ Samantha L. Brooks_____
Samantha L. Brooks, VA Bar No. 91928
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, D.C. 20004
(202) 828-3560

Fax: (202) 641-9209
sbrooks@seyfarth.com

3

315507299v.1

Dawn R. Solowey (*pro hac vice* application forthcoming)
SEYFARTH SHAW LLP
Seaport East, Suite 1200
Two Seaport Lane
Boston, MA 02210
(617) 946-4800
dsolowey@seyfarth.com

Owen R. Wolfe (*pro hac vice* application forthcoming)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, NY 10018
(212) 218-5500
owolfe@seyfarth.com

*Counsel for Defendant RTX Corporation*

315507299v.1

4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of January 2025, the foregoing MOTION TO

DISMISS was filed with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing to the following counsel of record:

E. Scott Loyd
Lloyd Law Group, PLLC
15 Chester Street
Front Royal, VA 22630
scott@lloydlg.com

*Counsel for Plaintiffs*

 */s/ Samantha L. Brooks*
Samantha L. Brooks
 VA Bar No. 91928
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, D.C. 20004
(202) 828-3560
Fax: (202) 641-9209
sbrooks@seyfarth.com
*Counsel for Defendant RTX Corporation*

**UNITED STATES DISTRICT COURT**
**for the EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| KRISTEN GRACE, <br> FRANCISCO GARZA, <br> ROSSANA HERNANDEZ, <br> J. MICHAEL HEYSER, <br> LISA LEAKE, <br> CHRISTOPHER STEIN, <br> CHRISTOPHER SUBLETT, and <br> LESLIE ZEPEDA <br><br> *Plaintiffs,* <br><br><br> v. <br><br><br> RTX CORPORATION F/K/A RAYTHEON <br> TECHNOLOGIES CORPORATION <br><br> 100 Wilson Blvd <br> Arlington, VA 2209-3927 <br><br> *Defendants.* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No.: 1:24-cv-02083 <br><br> JURY IS DEMANDED <br><br><br> February 14, 2025 |

**<u>AMENDED COMPLAINT</u>**

COME NOW, Kristen Grace, Francisco Garza, Rossana Hernandez, J. Michael Heyser,

Lisa Leake, Christopher Stein, Christopher Sublett, and Leslie Zepeda, by and through their

attorney, pursuant to 15(a)(1)(B), and hereby state the following in support of their Complaint

and Jury Demand against Defendant RTX Corporation, formerly known as Raytheon

Technologies Corporation, ("RTX" or "Defendant") and allege the following:

1

JA188

**INTRODUCTION**

1.      Plaintiffs are eight former employees of RTX Corporation ("RTX") who requested religious accommodations to RTX's COVID-19 vaccine mandate.

2.      RTX responded to these requests by imposing a testing, masking, and travel restriction policy which also violated Plaintiffs' religious beliefs.

3.      RTX, however, did not offer any accommodations for the testing, masking, and travel restriction policies.

4.      RTX terminated or constructively discharged them in violation of Title VII of the Civil Rights Act.

**PARTIES**

5.      Plaintiff Kristen Grace was a Senior Engineer, Design Engineer at Defendant RTX's Tucson location. She was employed at RTX for more than 18 years. Defendant terminated Ms. Grace on January 31, 2022.

6.      Plaintiff Francisco Garza was employed with RTX Corporation for over 15 years when he submitted a religious accommodation request for the COVID-19 vaccine mandate. He also had a religious objection to the testing that RTX offered as an "accommodation." RTX did not offer any religious accommodation for testing and fired Mr. Garza.

7.      Plaintiff Rossana Hernandez began working at RTX in April of 2019 as a Financial Analyst for RTX's Rita Ranch location in Tucson, Arizona. She requested a religious accommodation for the COVID-19 vaccine. She had a religious objection to testing as well, but RTX had no process for requesting a religious accommodation for COVID-19 testing. RTX terminated her on January 29, 2022.

2

JA189

8.      Plaintiff J. Michael Heyser began at RTX in 2008 and worked his way over 12 years to his dream job as a Warfighter School Director. He requested a religious accommodation to the COVID-19 vaccine mandate, but found that RTX offered no accommodations for testing, masking, and travel restrictions, which also violated his beliefs. RTX constructively discharged Mr. Heyser on January 14, 2022.

9.      Plaintiff Lisa Leake was an RTX employee for more than 14 years, where she served as a Senior Systems Engineer I and RTX's Tucson, Arizona facility. Ms. Leake requested a religious accommodation to the COVID-19 vaccine. RTX required her to test instead, which also violated her religious beliefs. She was unwilling to violate her religious beliefs to keep her job, so RTX fired her on January 31, 2022.

10.     Plaintiff Christopher Stein worked for RTX for over 20 years. He requested a religious accommodation to the COVID-19 vaccine mandate. RTX responded that he would have to test, which also violated his religious beliefs. Despite his repeated efforts to find a workable solution, RTX terminated Mr. Stein on January 31, 2022.

11.     Plaintiff Christopher Sublett was similarly a long-term employee of RTX. He submitted a religious accommodation request for the vaccine mandate and received the response that he would have to test, which he also objected to doing. RTX constructively discharged Mr. Sublett on December 4, 2021.

12.     Plaintiff Leslie Zepeda was a six-year employee of RTX and served as a Principal Specialist, Engineering Services. She requested a religious accommodation request but could not in good conscience submit her testing results in a manner that waived her rights under HIPAA. RTX terminated her on February 4, 2022.

JA190

13.    Defendant RTX Corporation, formerly known as Raytheon, is an aerospace and defense conglomerate that employs more than 185,000 people. It is headquartered at 1000 Wilson Blvd Arlington, VA 2209-3927.

## JURISDICTION

14.    This Court has Jurisdiction, and Venue is proper, under 42 U.S.C. § 2000e-5(f)(3). Defendant is located in Arlington, Virginia.

## FACTUAL BACKGROUND

15.    RTX Corporation, formerly known as Raytheon, issued a mandate on September 15, 2021, requiring all of its employees to receive one of available COVID-19 vaccines.

### Kristen Grace

16.    Kristen Grace was employed as a Senior Engineer, Design Engineer by RTX for more than 18 years and consistently received outstanding reviews.

17.    On February 25, 2021, Ms. Grace requested a transfer to a remote position as an accommodation to her sincerely held religious beliefs against the masking and testing policy that Defendant held for unvaccinated individuals.

18.    Upon learning that no religious accommodation was available for the masking and testing policy, on March 23, 2021, Ms. Grace reluctantly submitted an ADA accommodation request to the masking policy.

19.    Ms. Grace continued to work remotely while awaiting RTX's determination on a permanent remote position.

20.    On May 7, 2021, RTX denied Ms. Grace's request for a permanent remote position and put her on permanent unpaid medical leave.

21.    On September 21, 2021, Ms. Grace filed an EEO complaint against RTX.

4

JA191

22.     On September 22, 2021, Ms. Grace secured a permanent remote position with RTX through her own independent efforts.

23.     She immediately submitted a religious accommodation request to the vaccine, masking, and testing policies that RTX announced in September 2021.

24.     Despite her approved ADA accommodation for her medical disability, RTX denied her religious accommodation request for the testing and masking requirements.

25.     RTX terminated Ms. Grace on January 31, 2022.

26.     Ms. Grace filed a complaint with the EEOC and received a Notice of Right to Sue after the litigants filed their class complaint but before its final disposition at the Supreme Court.

Francisco "Frank" Garza

27.     Francisco "Frank" Garza was a Principal Specialist, Mission / Quality Assurance.

28.     He requested a religious accommodation to RTX's testing mandate that RTX denied.

29.     On November 22, 2021, Mr. Garza informed his management that he would submit to RTX's testing mandate under duress despite his sincerely held religious beliefs against testing.

30.     He suffered religious and spiritual injury as a result of RTX's refusal to accommodate his religious beliefs.

31.     Mr. Garza was an unnamed putative class member who was part of the group of litigants from the beginning but decided to remain unnamed during the pendency of the class complaint.

32.     Mr. Garza filed a complaint with the EEOC and received a Notice of Right to Sue after the litigants filed their class complaint but before its final disposition at the Supreme Court.

JA192

<u>Rosanna Hernandez</u>

33.    Rossana Hernandez worked for RTX beginning in April of 2019.

34.    She worked as a Financial Analyst for RTX's Tucson, Arizona location, but received a promotion in June of 2021 to Senior Associate, Financial Planning and Analysis.

35.    Her new position was based out of the RTX El Segundo office in California but was 100% remote.

36.    She requested a religious accommodation for the vaccine mandate but could not in good conscience agree to the testing that came as a result of her request for accommodation.

37.    Because she would not violate her conscience, RTX terminated Ms. Hernandez on January 31, 2022.

38.    Ms. Hernandez was an unnamed putative class member who was part of the group of litigants from the beginning but decided to remain unnamed during the pendency of the class complaint.

39.    Ms. Hernandez filed a complaint with the EEOC and received a Notice of Right to Sue after the litigants filed their class complaint, but before its final disposition at the Supreme Court.

<u>J. Michael Heyser</u>

40.    J. Michael Heyser began his career with RTX in 2008.

41.    Over 12 years, he worked his way up to his "dream job" as a Warfighter School Director, where he planned to stay until retirement.

42.    He requested a religious accommodation to the COVID-19 vaccine mandate, but found that RTX offered no accommodations for testing, masking, and travel restrictions, which also violated his beliefs, which he also communicated to RTX.

6

JA193

43.     RTX constructively discharged Mr. Heyser on January 14, 2022.

44.     Mr. Heyser filed a complaint with the EEOC and received a Notice of Right to Sue after the litigants filed their class complaint but before its final disposition at the Supreme Court.

## Lisa Leake

45.     Plaintiff Lisa Leake was an RTX employee for more than 14 years, where she served as a Senior Systems Engineer I and RTX's Tucson, Arizona facility.

46.     Ms. Leake requested a religious accommodation to the COVID-19 vaccine.

47.     RTX required her to test instead, which also violated her religious beliefs.

48.     She informed RTX of her religious objection to the testing requirement.

49.     She was unwilling to violate her religious beliefs in order to keep her job, so RTX fired her on January 31, 2022.

50.     Ms. Leake filed a complaint with the EEOC and received a Notice of Right to Sue after the litigants filed their class complaint but before its final disposition at the Supreme Court.

## Christopher Stein

51.     Plaintiff Christopher Stein worked for RTX for over 20 years.

52.     He requested a religious accommodation to the COVID-19 vaccine mandate.

53.     RTX responded that he would have to test, which also violated his religious beliefs.

54.     He informed RTX of his religious beliefs against testing as well.

55.     Despite his repeated efforts to work to find a workable solution, RTX terminated Mr. Stein on January 31, 2022.

JA194

56.     Mr. Stein filed a complaint with the EEOC and received a Notice of Right to Sue 25 days before the putative class filed its class complaint.

## Christopher Sublett

57.     Plaintiff Christopher Sublett was similarly a long-term employee of RTX.

58.     He submitted a religious accommodation request for the vaccine mandate and received the response that he would have to test, which he also objected to doing.

59.     He communicated his religious objection to testing as well.

60.     RTX constructively discharged Mr. Sublett on December 4, 2021.

61.     Mr. Sublett was an unnamed putative class member who was part of the group of litigants from the beginning but made the decision to remain unnamed during the pendency of the class complaint.

62.     Mr. Sublett filed a complaint with the EEOC and received a Notice of Right to Sue after the litigants filed their class complaint but before its final disposition at the Supreme Court.

## Leslie Zepeda

63.     Plaintiff Leslie Zepeda was a six-year employee of RTX and served as a Principal Specialist, Engineering Services.

64.     She requested a religious accommodation request but could not in good conscience submit her testing results in a manner that waive her rights under HIPAA.

65.     She communicated this to RTX.

66.     RTX terminated her on February 4, 2022.

8

JA195

67. Ms. Zepeda filed a complaint with the EEOC and received a Notice of Right to Sue after the litigants filed their class complaint but before its final disposition at the Supreme Court.

68. All plaintiffs named above submitted their claims as part of a class complaint submitted on September 24, 2022.

69. That claim was dismissed.

70. The putative class appealed the decision, and the 9th Circuit Court of Appeals upheld the decision.

71. Plaintiffs filed a petition for a writ of certiorari with the U.S. Supreme Court which it declined on October 21, 2024.

## CLAIMS FOR RELIEF

### COUNT I
### (Title VII Religious Discrimination: Failure to Accommodate)

1. All previous paragraphs are incorporated herein.

2. RTX has failed to accommodate the religious beliefs of the plaintiffs.

3. Title VII of the Civil Rights Act of 1964 requires employers to accommodate the religious practice of their employees unless doing so would impose an undue hardship on the conduct of the employer's business. 42 U.S.C.S. § 2000e(j), *Groff v. DeJoy*, 143 S. Ct. 2279, 2286 (2023).

4. As the Supreme Court has stated,

Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. *Rather, it gives them favored treatment*, affirmatively obligating employers not "to fail or refuse to hire or discharge any individual . . . because of such individual's religious observance and practice.

9

JA196

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775, 135 S. Ct. 2028, 2034 (2015) (emphasis added and internal citations omitted).

5.    To establish a *prima facie* religious accommodation claim, a plaintiff must establish that: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Chalmers v. Tulon Co.*, 101 F.3d 1012, 1019 (4th Cir. 1996) (*quoting Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985)).

6.    Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to demonstrate either that it reasonably accommodated the employee or that it was unable to reasonably accommodate the employee's needs without undue hardship. *Id.*

7.    The Supreme Court recently clarified that, "'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." That inquiry it described as "fact specific." *Groff v. DeJoy*, 2023 U.S. LEXIS 2790, *28 (2023).

8.    Plaintiffs all had sincere religious beliefs that conflicted with aspects of the testing, masking, and travel restriction regime.

9.    Plaintiffs each made that conflict known to RTX by filing a religious accommodation exemption requests or otherwise informing their supervision about their beliefs.

10.    As a result of such actions, RTX terminated defendants, or in Mr. Garza's case, required him to test under religious and spiritual duress.

11.    RTX offered only medical / ADA accommodations for the testing and associated requirements which were inapplicable to all plaintiffs.

JA197

12.     The statutory framework for determining reasonable accommodation requires an interactive process and participation by both the employer and the employee. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (stating that, consistent with the goals expressed in the legislative history of the religious accommodation provision, "courts have noted that bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business") *Id., see also Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141 (5th Cir. 1982).

13.     "Once an employee makes [an accommodation] request, the employer is obligated by law to engage in an interactive process - a meaningful dialogue." *Equal Emp. Opportunity Comm'n v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009) (in the context of a disability).

14.     Here, RTX made no attempt to arrive at an "acceptable reconciliation for both parties." *Ansonia Bd. of Educ.*, 479 U.S. at 69.

15.     If RTX had provided meaningful accommodations to Plaintiffs' requests, all of them would be contributing meaningfully to its operations, and Mr. Garza would not have suffered spiritual and religious harm.

## **PRAYER FOR RELIEF**

79.     Plaintiffs respectfully requests that the Court award the following:

(a) Compensatory damages for monetary and non-monetary loss in the amount of at least 8 million dollars;

(b) Exemplary and punitive damages;

(c) Prejudgment interest;

(d) Reasonable attorney's fees; and,

(e) Such other relief as law or equity may pertain.

11

JA198

**JURY TRIAL**

80.     A jury trial is requested in this matter.

Dated: February 14, 2025

                                        Respectfully Submitted,

                                        /s/ E. Scott Lloyd
                                        E. Scott Lloyd
                                        Virginia Bar # 76989
                                        Lloyd Law Group, PLLC
                                        15 Chester St.
                                        Front Royal, VA 22630
                                        (540) 823-1110
                                        scott@lloydlg.com
                                        *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 14, 2025, a copy of the foregoing was electronically

filed with the Clerk of Court of the United States District Court for the Eastern District of

Virginia using the CM/ECF system, which will send a Notice of Electronic filing to all parties of

record.

                                        /s/ E. Scott Lloyd
                                        E. Scott Lloyd
                                        Virginia Bar # 76989
                                        Lloyd Law Group, PLLC
                                        15 Chester Street
                                        Front Royal, VA 22630
                                        Office: (540) 823-1110
                                        Cell: (540) 631-4081
                                        Fax: (540) 583-4279
                                        scott@lloydllg.com
                                        *Counsel for the Plaintiffs*

12

JA199

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| KRISTEN GRACE, FRANCISCO GARZA, ROSSANA HERNANDEZ, J. MICHAEL HEYSER, LISA LEAKE, CHRISTOPHER STEIN, CHRISTOPHER SUBLETT, and LESLIE ZEPEDA | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 24-cv-2083-CMH-WBP |
| RTX CORPORATION f/k/a RAYTHEON TECHNOLOGIES CORPORATION, | ) ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

Defendant RTX Corporation f/k/a Raytheon Technologies Corporation ("Raytheon"),[1] by its undersigned attorneys, respectfully moves this Court for an order, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing *with prejudice* the Amended Complaint of plaintiffs Kristen Grace, J. Michael Heyser, Lisa Leake, Christopher Stein, and Leslie Zepeda (the "Arizona Plaintiffs") and Francisco Garza, Rossana Hernandez, and Christopher Sublett (the "Additional Plaintiffs") (the Arizona Plaintiffs and the Additional Plaintiffs, collectively, "Plaintiffs").

As set forth more fully in the accompanying Memorandum of Points and Authorities in Support, Plaintiffs' Amended Complaint should be dismissed with prejudice for four reasons. **First**, the claims of the Arizona Plaintiffs are barred by *res judicata* because they previously

---

[1] Plaintiffs were actually employed by Raytheon Company, not Raytheon Technologies Company. Raytheon Technologies Company is now RTX Corporation. For ease of reference, RTX Corporation refers to itself and Plaintiffs' employer as "Raytheon."

316313615v.1

JA200

asserted similar claims in an action filed in the U.S. District Court for the District of Arizona, Case No. 22-cv-00436-TUC-RM (the "Arizona Action"), which was dismissed **with prejudice**. *Leake v. Raytheon Technologies Corp.*, 2023 U.S. Dist. LEXIS 32177 (D. Az. Feb. 27, 2023); *Leake v. Raytheon Technologies Corp.*, 2024 U.S. App. LEXIS 10287 (9th Cir. Apr. 29, 2024), *cert denied*, 2024 U.S. LEXIS 4384 (Oct. 21, 2024).  Because the Amended Complaint in this action arises from the exact same nucleus of fact as the Arizona Action, their claims here are barred by *res judicata.  See, e.g., Laurel Sand & Gravel, Inc. v. Wilson,* 519 F.3d 156, 161-62 (4th Cir. 2008).

**Second**, all of Plaintiffs' claims are time-barred because they waited more than 90 days after receiving right-to-sue letters from the U.S. Equal Employment Opportunity Commission ("EEOC") to commence this action.  *See, e.g., Quinn v. Copart of Conn., Inc.*, 791 F. App'x 393, 395 (4th Cir. 2019).  Each of the Plaintiffs received their right-to-sue letters between October 3, 2022 and August 4, 2024, yet did not commence this action until November 20, 2024.  Even assuming, for the sake of argument, that the tolling doctrine set forth in *American Pipe & Constr. Co. v. Utah*, 414 U. S. 538 (1974) applies, Plaintiffs' claims are ***still*** untimely because the tolling would not have continued to run during the Arizona Plaintiffs' appeal in the Arizona Action. Accordingly, all Plaintiffs' claims are time-barred.

**Third**, Plaintiffs' Amended Complaint fails to state a claim upon which relief may be granted because Plaintiffs have not adequately alleged that they held religious beliefs that conflicted with the requirements of their employment.  *See, e.g., Ellison v. Inova Health Care Servs.*, 692 F. Supp. 3d 548, 556-61 (E.D. Va. 2023).  Among other things, several Plaintiffs do not allege that they had religious objections to the health and safety conditions of their exemptions from Raytheon's 2021 COVID-19 vaccination policy, and at least one Plaintiff

2

affirmatively alleges that her objections were secular.  The other Plaintiffs do not allege the nature of their purported religious beliefs and do not explain how those beliefs conflicted with health and safety conditions such as testing and masking.  Plaintiffs have not come close to pleading a Title VII cause of action.  Worse, Plaintiffs have had three tries to state a claim—once in the Arizona Action and twice in this Court—but have not done so, despite being on notice of the defects.  Dismissal should therefore be with prejudice.  *See, e.g., Feeley v. Totally Realty Mgmt.*, 660 F. Supp. 2d 700, 715-16 (E.D. Va. 2009).

**Fourth**, the Arizona Plaintiffs' claims are barred by their binding judicial admissions in the Arizona Action.  *See, e.g., Flexi-Van Leasing, Inc. v. Traveles Indem. Co.*, 837 F. App'x 141, 145 (4th Cir. 2020).  Among other things, the Arizona Plaintiffs alleged in the Arizona Action that they did ***not*** have religious objections to masking, testing, and social distancing, and that any objections they did have were secular in nature.  Even setting aside *res judicata*, the Arizona Plaintiffs are bound by their representations to another federal court, and they cannot contradict those representations in this Court.

Accordingly, for multiple, independent reasons, the Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), with prejudice.

Dated: February 28, 2025

                                        Respectfully submitted,

By:       */s/ Samantha L. Brooks*

         Samantha L. Brooks, VA Bar No. 91928
         SEYFARTH SHAW LLP
         975 F Street, N.W.
         Washington, D.C. 20004
         (202) 828-3560

         Fax: (202) 641-9209
         sbrooks@seyfarth.com

         Dawn R. Solowey (admitted *pro hac vice*)
         SEYFARTH SHAW LLP
         Seaport East, Suite 1200
         Two Seaport Lane
         Boston, MA 02210
         (617) 946-4800
         dsolowey@seyfarth.com

         Owen R. Wolfe (admitted *pro hac vice*)
         SEYFARTH SHAW LLP
         620 Eighth Avenue
         New York, NY 10018
         (212) 218-5500
         owolfe@seyfarth.com

        *Counsel for Defendant RTX Corporation*

316313615v.1

4

JA203

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of February 2025, the foregoing MOTION TO

DISMISS was filed with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing to the following counsel of record:

> E. Scott Loyd
> Lloyd Law Group, PLLC
> 15 Chester Street
> Front Royal, VA 22630
> scott@lloydlg.com
>
> *Counsel for Plaintiffs*

                                    /s/ Samantha L. Brooks
                                    Samantha L. Brooks
                                     VA Bar No. 91928
                                    SEYFARTH SHAW LLP
                                    975 F Street, N.W.
                                    Washington, D.C. 20004
                                    (202) 828-3560
                                    Fax: (202) 641-9209
                                    sbrooks@seyfarth.com
                                    *Counsel for Defendant RTX Corporation*

316313615v.1

JA204

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| KRISTEN GRACE, FRANCISCO GARZA, ROSSANA HERNANDEZ, J. MICHAEL HEYSER, LISA LEAKE, CHRISTOPHER STEIN, CHRISTOPHER SUBLETT, and LESLIE ZEPEDA | ) ) ) ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | Civil Action No. 24-cv-2083-CMH-WBP |
| RTX CORPORATION f/k/a RAYTHEON TECHNOLOGIES CORPORATION, | ) ) ) ) |  |
| Defendant. | ) |  |

**DEFENDANT'S MEMORANDUM OF
<u>POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS</u>**

Defendant RTX Corporation f/k/a Raytheon Technologies Corporation ("Raytheon"),[1] by its undersigned attorneys, respectfully submits this memorandum of points and authorities in support of its motion to dismiss the Amended Complaint (ECF No. 16) of plaintiffs Kristen Grace, J. Michael Heyser, Lisa Leake, Christopher Stein, and Leslie Zepeda (the "Arizona Plaintiffs") and Francisco Garza, Rossana Hernandez, and Christopher Sublett (the "Additional Plaintiffs") (the Arizona Plaintiffs and the Additional Plaintiffs, collectively, "Plaintiffs"), with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[1] Plaintiffs were actually employed by Raytheon Company, not Raytheon Technologies Company. Raytheon Technologies Company is now RTX Corporation. For ease of reference, RTX Corporation refers to itself and Plaintiffs' employer as "Raytheon."

316291824v.3

JA205

## **PRELIMINARY STATEMENT**

On November 20, 2024, Plaintiffs filed a conclusory Complaint that asserts a single cause of action, for alleged failure to accommodate religious beliefs under 42 U.S.C. §§ 2000e-2 ("Title VII").  Raytheon filed a motion for sanctions pursuant to Rule 11, and to dismiss for failure to state a claim pursuant to Rule 12, on January 24, 2025.  Although Plaintiffs did not file an opposition to the motion to dismiss, they filed an Amended Complaint on February 14, 2025.  The Amended Complaint fails to address or correct *any of the defects* identified in Raytheon's initial motion to dismiss, however.  The Court should not give Plaintiffs what would be their *fourth* bite at the apple, following an initial complaint in Arizona federal court—the dismissal of which the Ninth Circuit affirmed, with Plaintiffs' cert petition denied by the Supreme Court— and now two complaints in this Court.  Instead, the Court should dismiss the Amended Complaint in full and with prejudice.

Plaintiffs' claims relate to Raytheon's COVID-19 vaccination policy from 2021 (the "2021 Policy"), but they do *not* allege that Raytheon failed to accommodate their religious objections to receiving the COVID-19 vaccine.  *They admit that Raytheon exempted all of the Plaintiffs from receiving the COVID-19 vaccine*.  Rather, Plaintiffs allege that they should not have had to comply *any* health and safety measures, despite not being vaccinated during a global pandemic.  They objected to the health and safety conditions of their vaccination exemptions: testing, masking, and social distancing.  Essentially, Plaintiffs' assertion is that, based upon their unspecified religious beliefs, they were entitled to work in 2021 and early 2022 without *any* restrictions aimed at reducing the spread of COVID-19.  Plaintiffs' brazen position, which another federal court characterized as "shocking," fails to state a claim.  The Amended Complaint should be dismissed with prejudice for several reasons.

2

*First*, as set forth in greater detail in Raytheon's motion for Rule 11 sanctions (ECF Nos. 4-5), the Arizona Plaintiffs' claims are barred by *res judicata*.  The Arizona Plaintiffs already filed a Title VII suit in federal court based upon the ***exact same facts***.  The Arizona Plaintiffs' complaint was dismissed ***with prejudice***; the dismissal was unanimously affirmed by the U.S. Court of Appeals for the Ninth Circuit; and the U.S. Supreme Court denied the Arizona Plaintiffs' petition for a writ of certiorari. In connection with Raytheon's Rule 11 motion, Plaintiffs admit that this action arises from the exact same facts and circumstances.  The Arizona Plaintiffs' claims are barred by *res judicata*.

*Second*, as also set forth in greater detail in Raytheon's Rule 11 motion, Plaintiffs' claims are time-barred.  A plaintiff bringing suit under Title VII has 90 days to commence an action after receiving a right-to-sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC").  Here, Plaintiffs filed suit on November 20, 2024.  Yet they received their respective right-to-sue letters from the EEOC between October 3, 2022 and August 5, 2024.  Thus, many of the Plaintiffs' claims have been time-barred for several years.  Although Plaintiffs have belatedly asserted that the statute of limitations was tolled by the Arizona action—thereby contradicting their *res judicata* argument—any such tolling would have ended no later than March 2023, so Plaintiffs' claims are ***still*** untimely.

*Third*, even if Plaintiffs could somehow overcome *res judicata* and the fact that their claims are untimely, their allegations are woefully insufficient to plead a claim under Title VII. Plaintiffs do not allege what their beliefs were, explain how those beliefs were religious in nature, or articulate how those beliefs purportedly conflicted with masking, testing, or social distancing.  Several Plaintiffs admit that their objections were not religious, but rather based upon "conscience" or secular concerns relating to the Health Insurance Portability and

316291824v.3

Accountability Act ("HIPAA").  Despite being on notice of these defects, Plaintiffs made no attempt to address them in their Amended Complaint, presumably because they cannot. Plaintiffs have not come close to stating a claim.

*Fourth*, and relatedly, the Arizona Plaintiffs' claims are barred by their judicial admissions in their prior lawsuit.  Among other things, the Arizona Plaintiffs alleged in their prior action that they did *not* have religious objections to masking, testing, and social distancing, and that any objections they did have were secular in nature.  Even setting aside *res judicata*, the Arizona Plaintiffs are bound by their representations to another federal court, and they cannot contradict those representations in this Court.

Plaintiffs' Amended Complaint should be dismissed, with prejudice.

## FACTUAL BACKGROUND

In order to avoid repetition, Raytheon respectfully refers the Court to, and incorporates by reference herein, the factual background set forth in the Memorandum of Points and Authorities submitted in support of Raytheon's Rule 11 motion (ECF No. 5), as well as the facts set forth in the Declaration of Samantha L. Brooks and exhibits thereto, also submitted in support of the Rule 11 motion (ECF Nos. 5-1 through 5-16).

## ARGUMENT

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level," and the pleading must contain "enough facts to state a claim to relief that is plausible on its face" and "nudge [the] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007).  A plaintiff must allege "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550

316291824v.3

4

U.S. at 555).  Instead, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A plaintiff's failure to allege an essential element of their claim warrants dismissal.  *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

Here, Plaintiffs' Amended Complaint fails to state a claim and should be dismissed.

**A.  The Arizona Plaintiffs' Claims are Barred by *Res Judicata*.**

Raytheon respectfully refers the Court to, and incorporates by reference, the arguments set forth in its Rule 11 motion regarding *res judicata*.  Briefly, "*res judicata* is…sufficient grounds to dismiss…pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Cenezy v. O'Malley*, 2024 U.S. Dist. LEXIS 174044, at *6-7 (E.D.N.C. Sept. 23, 2024); *see also Colonial River Wealth Advisors, LLC v. Cambridge Inv. Rsch., Inc.*, 2023 U.S. Dist. LEXIS 124874, at *11 (E.D. Va. July 19, 2023) ("A motion to dismiss under the doctrines of res judicata or collateral estoppel is properly reviewed under the standard for Rule 12(b)(6)").

"Res judicata, also known as claim preclusion, bars a party from relitigating a claim that was decided ***or could have been decided*** in an original suit." *Laurel Sand & Gravel, Inc. v. Wilson,* 519 F.3d 156, 161 (4th Cir. 2008) (emphasis added).  "The test for deciding 'whether the causes of action are identical for claim preclusion purposes is whether the claim presented in the new litigation '***arises out of the same transaction or series of transactions*** as the claim resolved by the prior judgment.'" *Id.* at 162 (emphasis added).  Accordingly, "'[n]ewly articulated claims based on the same [transactional] nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action.'" *Id.*

The Arizona Plaintiffs' claims here arise out of the exact same facts as their prior litigation in the United States District Court for the District of Arizona, Case No. 22-cv-00436-TUC-RM (the "Arizona Action"): their refusals to comply with the testing, masking, and social

distancing conditions of their exemptions from the vaccination policy.  *See, e.g., Leake v. Raytheon Technologies Corp.*, 2023 U.S. Dist. LEXIS 32177, at \*13-19 (D. Az. Feb. 27, 2023);[2] *see also* ECF No. 5 at 10-14, 16-18; ECF No. 15 at 3-5.  Because it was based on the same factual circumstances, the Arizona Plaintiffs could have asserted their Title VII claim for failure to accommodate in the Arizona Action.

In their opposition to Raytheon's Rule 11 motion, Plaintiffs effectively concede that this action arises from the same facts and circumstances, including because they assert that the Arizona Action "tolled" the statute of limitations in this action.  *See* ECF No. 14 at 5-10.  That, without more, confirms that this action is barred by *res judicata*.  ECF No. 5 at 16-18.  Plaintiffs rely on *Cooper v. Federal Reserve Bank*, 467 U.S. 867 (1984), but that case holds that where "the individual claims" of named plaintiffs "have been finally decided in the [defendant's] favor," those individuals are barred from suing again.  *Id.* at 873-74 and n.7.  Accordingly, *Cooper* also confirms that *res judicata* applies.  *See* ECF No. 5 at 17-18; ECF No. 15 at 3-5.

The Arizona Plaintiffs' claims are barred by *res judicata*.  The Amended Complaint should be dismissed, with prejudice, as to the Arizona Plaintiffs.

### B.  All Plaintiffs' Claims are Time-Barred.

Plaintiffs' Amended Complaint should also be dismissed because it is time-barred.  As set forth in Raytheon's Rule 11 Motion, incorporated by reference herein (ECF No. 5 at 18-19; ECF No. 15 at 5-8), "Title VII requires that an aggrieved person file a civil action within 90 days of receiving a right-to-sue letter from the EEOC."  *Quinn v. Copart of Conn., Inc.*, 791 F. App'x 393, 395 (4th Cir. 2019).  "It is well settled that a Title VII claimant who fails to file a complaint

---

[2] The Court may take judicial notice of court filings in the Arizona Action.  *See, e.g., Anderson v. Bolster*, 2020 U.S. Dist. LEXIS 156859, at \*7-8 (E.D. Va. Aug. 27, 2020) ("a court may take judicial notice of matters of public record such as court filings or records") (citing *Wittholn v. Fed. Ins. Co.*, 164 F. App'x 395 (4th Cir. 2006)).

316291824v.3

within the 90-day period generally forfeits his right to pursue his claims." *Id.*; *see also Davis v. Navy Fed. Credit Union*, 2012 U.S. Dist. LEXIS 2649, at *7-8, 14-16 (E.D. Va. Jan. 10, 2012) (dismissing complaint, with prejudice, where plaintiff failed to bring claims within 90 days of receiving right-to-sue letter). On a Rule 12(b)(6) motion, a court can consider EEOC right-to-sue letters, even if they are not referenced in the plaintiff's complaint, because the letters are "integral to the Complaint's administrative history" and are "public documents of which the Court may take judicial notice." *Davis*, 2012 U.S. Dist. LEXIS 2649, at *7-8.

Here, it is indisputable that none of the Plaintiffs filed suit within 90 days of receiving their right-to-sue letters. As set in Raytheon's Rule 11 motion, many of the Plaintiffs received their right-to-sue letters more than ***two years ago***, in late 2022. *See* ECF Nos. 5-5 through 5-12. The most recent right-to-sue letter, issued to Mr. Heyser on August 5, 2024, required him to file suit no later than November 5, 2024. ECF No. 5-12. Yet this action was not commenced until November 20, 2024. ECF No. 1.

In opposition to Raytheon's Rule 11 motion, Plaintiffs argued that the Arizona Action tolled the statute of limitations in accordance with the limited tolling rule set forth in *American Pipe & Constr. Co. v. Utah*, 414 U. S. 538 (1974). ECF No. 14 at 9-10. "[T]he *American Pipe* rule provides a ***narrow exception*** to the fixed statutes of limitations, suspending their running from the date a class action is filed until the date it is denied, ***for whatever reason***." *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 212 (4th Cir. 2006) (emphasis added).

As set forth in greater detail in Raytheon's reply in support of its Rule 11 motion (ECF No. 15 at 5-8), *American Pipe* tolling does not continue through appeal; it ends when the district court denies class certification or otherwise dismisses the case. "The general rule is that the judgment of a district court becomes effective and enforceable as soon as it is entered; there is no

7

suspended effect pending appeal unless a stay is entered." *In re Copper Antitrust Litig.*, 436 F.3d 782, 793 (7th Cir. 2006). Accordingly, *American Pipe* tolling ***does not continue while an appeal is pending***; "the statute of limitations begins running again as soon as class certification is denied…. At that point, the parties are on notice that they must take steps to protect their rights or suffer the consequences." *Id.*; *see also Bridges*, 441 F.3d at 212 (tolling ends upon denial "for whatever reason"); *Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 117 (2d Cir. 2013) ("If the Court had contemplated that tolling continued through the pendency of reconsideration or through appeal, there would be no need for class members to take action to protect their rights"); *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 519 (5th Cir. 2008) ("Therefore, it is clear…that if the district court denies class certification under Rule 23, tolling of the statute of limitations ends"); *Culver v. City of Milwaukee*, 277 F.3d 908, 914 (7th Cir. 2002) ("***[W]hen the suit is dismissed*…*the statute resumes running for the class members***" (emphasis added)); *Stone Container Corp. v. United States*, 229 F.3d 1345, 1355-56 (Fed. Cir. 2000) ("[W]e hold that tolling ends when class certification is denied ***in the trial court***" (emphasis added)); *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1391 (11th Cir. 1998) (en banc) ("If class certification is denied in whole or in part, the statute of limitations begins to run again as to those putative class members who were excluded from the class. In order to protect their rights, such individuals must seek to intervene in the pending action…, ***or file a separate individual action before the time remaining in the limitations period expires***" (emphasis added)); *Andrews v. Orr*, 851 F.2d 146, 149-50 (6th Cir. 1988) (holding that the suit "ceased to be a class action," and tolling ended, upon entry of order denying class certification); *Fernandez v. Chardon*, 681 F.2d 42, 48 (1st Cir. 1982) ("the statute will resume running when class certification is denied"); *Womack v. UPS*, 311 F. Supp. 2d 492, 496-97 (E.D.N.C. 2004)

316291824v.3

("Many Circuit Courts of Appeals have held that tolling ceases directly upon the denial of class certification, and does not extend…*throughout the appeals process*" (emphasis added)). Plaintiffs do not cite to any contrary authority.  ECF No. 14 at 9-10.

Even assuming *arguendo* that Plaintiffs—including the Arizona Plaintiffs whose claims are barred by *res judicata*—were entitled to tolling, the statute of limitations resumed when the Arizona Action was dismissed on February 27, 2023 or, being generous to Plaintiffs, 30 days thereafter in accordance with the automatic stay in Rule 62(a), *i.e.*, March 29, 2023.  *See Leake*, 2023 U.S. Dist. LEXIS 32177, at *19.  Plaintiffs whose right-to-sue letters were issued before March 29, 2023—Mr. Garza, Ms. Grace, Ms. Leake, Mr. Stein, and Ms. Zepeda (*see* ECF No. 5 at 9)—had 90 days, *i.e.*, until June 27, 2023, to file a new suit.  The other Plaintiffs, whose right-to-sue letters came *after* the Arizona Action was dismissed with prejudice, had 90 days from receipt of the letter to file: July 12, 2023 for Mr. Sublett; April 1, 2024 for Ms. Hernandez; and November 4, 2024 for Mr. Heyser.  *See* ECF No. 5 at 9.  But they did not sue until November 20, 2024.  ECF No. 1.

Accordingly, Plaintiffs' claims are time-barred.  The Amended Complaint should be dismissed, with prejudice.

### C. Plaintiffs' Amended Complaint Fails to Adequately Allege the Nature of Plaintiffs' Purported Religious Beliefs or How The Health and Safety Conditions of Their Vaccination Exemptions Conflicted With Those Beliefs.

The Court need go no further, since *res judicata* and the fact that Plaintiffs' claims are time-barred are fatal to the Amended Complaint.  Even if Plaintiffs could somehow overcome those insurmountable obstacles, however, their Amended Complaint fails to state a claim.

Title VII makes it unlawful for employers covered by the statute "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges [of] employment, because of such individual's

316291824v.3

9

. . . religion." 42 U. S. C. §2000e-2(a)(1). To state a claim for failure to accommodate religious beliefs under Title VII, a plaintiff must allege that: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Ellison v. Inova Health Care Servs.*, 692 F. Supp. 3d 548, 556 (E.D. Va. 2023) (citing, *inter alia*, *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996)).[3]

Raytheon does not dispute, for purposes of this motion only, that Plaintiffs' beliefs were sincere. "Title VII does not protect just any belief," however, even if the belief is sincerely held. *Ellison*, 692 F. Supp. 3d at 556. "To be protected, an employee's belief must be religious in nature." *Id.* (collecting cases). "[T]he very concept of ordered liberty precludes allowing every person to make his [or her] own standards on matters of conduct in which society as a whole has important interests." *Id.* at 557.

Courts frequently dismiss claims at the pleading stage where the plaintiff fails adequately to allege religious beliefs that conflict with an employment requirement. *See id.* at 557-61. Otherwise, a conclusory assertion that a plaintiff has "religious" objections would "amount[] to [a] 'blanket privilege' that undermines our system of ordered liberty." *Id.* at 559. Similarly, reliance upon "conscience" is not sufficient because a "conscience-based justification could be used to evade any job requirement that [Plaintiff] disagreed with." *Finn v. Humane Soc'y of United States*, 2024 U.S. Dist. LEXIS 75138, at *11 (D. Md. Apr. 24, 2024) (quoting *Foshee v. AstraZeneca Pharms. LP*, 2023 U.S. Dist. LEXIS 185848, at *13 (D. Md. Oct. 17, 2023)).

---

[3] The plaintiff in *Ellison* sought leave to appeal the District Court's decision, which dismissed the complaint only in part, but the Fourth Circuit denied that application. *See* Case No. 23-263, ECF No. 12. The district court subsequently granted the defendant's motion for summary judgment on April 15, 2024; the plaintiff's appeal, which challenges both the 2024 summary judgment decision and the 2023 motion to dismiss decision, remains pending. *See Ellison v. Inova Health Care Servs.*, 730 F. Supp. 3d 221 (E.D. Va. 2024); Case No. 24-1396.

10

316291824v.3

Moreover, where a plaintiff fails to "provide information concerning the religious nature of [her] belief and how it is connected to her objection to the COVID-19" safety measures, she fails to state a claim under Title VII. *See Ellison*, 692 F. Supp. 3d at 560-61 (collecting cases). Similarly, where a plaintiff fails to allege whether "she subscribes to any particular religion or the specific nature of any religious beliefs," her claim fails. *Finn*, 2024 U.S. Dist. LEXIS 75138, at *10. Doubts about the "safety, efficacy, and necessity" of COVID-19 safety measures also do not suffice to state a claim. *Id.* at *14.

A mere statement that plaintiffs' "consciences tell them not to do it…is not subject to any principled limitation in its scope," thus amounting to "the type of unverifiable 'blanket privilege' that courts cannot permit to be couched as religious in nature." *Foshee*, 2023 U.S. Dist. LEXIS 185848, at *14; *see also Menk v. Mitre Corp.*, 713 F. Supp. 3d 113, 149-50 (D. Md. 2024) (dismissing Complaint where the allegations "lack[] the specificity required by *Ellison*" because plaintiff "set forth no allegation regarding individualized, subjective personal religious beliefs; and fail to state how…those religious beliefs or practices form the basis of their objection to [the employer's] vaccine policy"); *Tomov v. Micron Tech. Inc.*, 2024 U.S. Dist. LEXIS 208265, at *8-9 (E.D. Va. Nov. 15, 2024) (plaintiff's notice of religious objection to employer insufficient under Title VII, and failure-to-accommodate claim dismissed with prejudice, where plaintiff "stated nothing about his beliefs apart from blanketly asserting 'because of my religion'"); *Cox v. Valley Health Sys.*, 2024 U.S. Dist. LEXIS 114491, at *8-14 (W.D. Va. June 28, 2024) (same, dismissing failure to accommodate claim with prejudice).

Here, Plaintiffs' allegations fall woefully short of the standard required by *Ellison* and the authorities cited above. The Amended Complaint alleges that the "testing, masking, and travel restriction" conditions of Plaintiffs' vaccination exemptions " violated Plaintiffs' religious

316291824v.3

beliefs." ECF No. 16 ¶ 2. Plaintiffs never explain why that is the case; what their "religious beliefs" were; or how the health and safety conditions of their vaccination exemptions "violated" those beliefs. *See id.* Elsewhere, Plaintiffs allege that they "all had sincere religious beliefs that conflicted with aspects of the testing, masking, and travel restriction regime." *Id.* at Count I, ¶ 8. This conclusory allegation does not explain what Plaintiffs' "religious beliefs" were, which Plaintiffs held those beliefs, or how certain, undefined "aspects" of the health and safety conditions for Plaintiffs' vaccine exemptions "conflicted" with those beliefs. *See id.*

The allegations regarding each individual Plaintiff either shed no additional light, and in many cases confirm that Plaintiffs' objections were non-religious in nature:

**Kristen Grace**. Plaintiffs allege that Ms. Grace "submitted a religious accommodation request to the vaccine, masking, and testing policies." *Id.* ¶ 23. Plaintiffs further allege that although Raytheon exempted Ms. Grace from receiving the COVID-19 vaccine, it "denied her religious accommodation request for the testing and masking requirements." *Id.* ¶ 24. Plaintiffs do not allege what Ms. Grace's religious beliefs were, or how they conflicted with testing and masking conditions of her vaccination exemption. *See id.* ¶¶ 5, 16-26.

**Francisco Garza.** Plaintiffs allege that Mr. Garza "requested a religious accommodation request to [Raytheon's] testing mandate." *See id.* ¶ 28. Mr. Garza alleges that he agreed to "submit to [the] testing mandate under duress despite his sincerely held religious beliefs against the testing," and that he "suffered religious and spiritual injury as a result." *Id.* ¶¶ 29-30. Plaintiffs nowhere articulate what Mr. Garza's religious beliefs were, and they do not explain how those beliefs conflicted with COVID-19 testing. *See id.* ¶¶ 6, 27-32.

**Rossana Hernandez.** Plaintiffs allege that Ms. Hernandez "could not in good conscience agree to the testing that came as a result of her" vaccination exemption. *See id.* ¶ 36.

12

316291824v.3

Plaintiffs allege that "[b]ecause she would not violate her conscience," Raytheon "terminated Ms. Hernandez on January 31, 2022." *Id.* ¶ 37. Plaintiffs nowhere allege that Ms. Hernandez's "conscience" was related to religious beliefs or, if so, whether or how those beliefs were inconsistent with COVID-19 testing. *See id.* ¶¶ 7, 33-39.

**J. Michael Heyser**. Plaintiffs allege that Mr. Heyser "found that [Raytheon] offered no accommodations for testing, masking, and travel restrictions, which also violated his beliefs." *Id.* ¶ 42. Plaintiffs do not allege whether those "beliefs" were religious in nature. *See id.* Plaintiffs do not, in any event, allege what Mr. Heyser's beliefs were or why those beliefs precluded testing, masking, and similar safety requirements. *See id.* ¶¶ 8, 40-44.

**Lisa Leake**. Plaintiffs allege that Ms. Leake was required "to test instead" of receiving the COVID-19 vaccine, "which also violated her religious beliefs." *Id.* ¶ 47. Plaintiffs allege that because Ms. Leake "was unwilling to violate her religious beliefs in order to keep her job," she was fired. *See id.* ¶ 49. Plaintiffs do not explain what Ms. Leake's beliefs were or why those beliefs were inconsistent with testing. *See id.* ¶¶ 9, 45-50.

**Christopher Stein**. Plaintiffs allege that when Mr. Stein was granted an exemption from receiving the COVID-19 vaccine, Raytheon "responded that he would have to test, which also violated his religious beliefs." *Id.* ¶ 53. Again, Plaintiffs do not articulate what Mr. Stein's religious beliefs were or why testing conflicted with those beliefs. *See id.* ¶¶ 10, 51-56.

**Christopher Sublett**. Plaintiffs allege that when Mr. Sublett received an exemption from the 2021 Policy's vaccination requirement, "he would have to test, which he also objected to doing." *Id.* ¶ 58. Plaintiffs also do not allege what Mr. Sublett's beliefs were or why those beliefs conflicted with COVID-19 testing. *See id.* ¶¶ 11, 57-62.

13

316291824v.3

JA217

**Leslie Zepeda**.  Plaintiffs allege that Ms. Zepeda "could not in good conscience submit her testing results in a manner that waive [sic] her rights under HIPAA."  *Id.* ¶ 64.  In other words, Plaintiffs affirmatively allege that Ms. Zepeda's objection was a secular one, based upon her belief that she was being required to waive certain HIPAA rights.  *See id.*  Plaintiffs do not identify Ms. Zepeda's alleged religious beliefs, nor do they allege that she had religious beliefs that conflicted with testing, masking, or the other health and safety conditions of her vaccination exemption.  *See id.* ¶¶ 12, 63-67.

Plaintiffs' allegations are facially insufficient.  The Court has no way to know whether Plaintiffs' beliefs were religious in nature and, if so, how or why those beliefs conflicted with the health and safety conditions of Plaintiffs' exemptions from vaccination.  Ms. Hernandez and Ms. Zepeda expressly rely upon allegations of "conscience" that, as set forth above, are insufficient to state a claim.  *See* ECF No. 16 ¶¶ 36-37, 64; *Finn*, 2024 U.S. Dist. LEXIS 75138, at *11-12; *Foshee*, 2023 U.S. Dist. LEXIS 185848, at *14.  Ms. Zepeda further alleges, again, that her objection related to HIPAA, not religion.  *See* ECF No. 16 ¶ 64.

It is worth noting that in the Arizona Action, the District Court held that the Arizona Plaintiffs failed to state a Title VII claim in part because they failed adequately to allege their religious beliefs.  *See Leake*, 2023 U.S. Dist. LEXIS 32177, at *14.  The District Court found that Plaintiffs never alleged:

> what their religious beliefs were.  Plaintiffs simply state that some employees rejected the vaccination due to their "sincere religious belief that the human body is God's temple, and that they must not take anything into their bodies that God has forbidden or that would alter the functions of their body such as by inducing the production of a spike protein in a manner not designed by God," while others objected not because of religious reasons, but for medical reasons.

*Id.* at *14.  Plaintiffs' allegations here are even less detailed.  *See* ECF No. 16 ¶¶ 5-12, 16-67.

14

316291824v.3

A contrast with the Fourth Circuit's recent decision in *Barnett v. Inova Health Care Servs.*, 2025 U.S. App. LEXIS 296 (4th Cir. Jan. 7, 2025) is instructive, even though that case involved objections to vaccination, rather than the masking, testing, and other health and safety protocols at issue in this case. *See id.* at \*2. In *Barnett*, the plaintiff alleged that "she is a sincere follower of the Christian faith." *Id.* at \*10. She alleged that "she was a devout Christian, baptized in 2011, and made 'all life decisions after thoughtful prayer and Biblical guidance.'" *Id.* The plaintiff further alleged that her Christian religious beliefs conflicted with vaccination because:

> (1) 'it would be sinful for her to engage with a product such as the vaccination after having been instructed by God to abstain from it'; (2) her 'religious reasons for declining the covid [sic] vaccinations…were based on her study and understanding of the Bible and personally directed by the true and living God'; and (3) receiving the vaccine would be sinning against her body, which is a temple of God, and against God himself.

*Id.* The Fourth Circuit held that those allegations were sufficient at the pleading stage to establish religious beliefs that were "plausibly connected with [plaintiff's] refusal to receive the COVID-19 vaccine." *Id.* at \*11.

Here, Plaintiffs have not alleged anything close to the detail in the plaintiff's complaint in *Barnett*. The Court and Raytheon have no idea if Plaintiffs are members of the Christian faith, another religious denomination, or no religious denomination at all. ECF No. 16 ¶¶ 5-12, 16-67. They also have no idea what Plaintiffs' alleged religious beliefs are or how they allegedly conflict with masking or testing. *See id.* Moreover, unlike the COVID-19 vaccine at issue in *Barnett*, Plaintiffs here were **exempt from vaccination**, but claim religious objections to masking, testing, and similar health and safety protocols for vaccine-exempt employees in place during the height of the pandemic. *See id.* The Court and Raytheon are left to guess as to how or why their religious beliefs conflicted with masking or testing. *See id.* Plaintiffs have not

15

"alleged [their] beliefs are religious in nature" or that those beliefs "are plausibly connected with [their] refusal to" wear a mask, regularly test, and so forth. *Barnett*, 2025 U.S. App. LEXIS 296, at *10-11.

In short, Plaintiffs' allegations in their Amended Complaint are ***less detailed*** than the allegations found to be inadequate in the Arizona Action or *Ellison*. *See* ECF No. 16 ¶¶ 5-12, 16-67. They are also a far cry from the allegations in *Barnett*. *See id.* In certain instances, Plaintiffs even concede that their objections were secular (*e.g.*, HIPAA concerns). *See id.*

Plaintiffs have not come close to pleading a claim that can survive a motion pursuant to Rule 12(b)(6). Moreover, Plaintiffs have had three tries—once in the Arizona Action and now twice in this Court—yet have not pled valid claims, despite being on notice of these defects from the Arizona Action decision and from Raytheon's Rule 12 motion in this action. The Amended Complaint should be dismissed, with prejudice. *See, e.g., Feeley v. Totally Realty Mgmt.*, 660 F. Supp. 2d 700, 715-16 (E.D. Va. 2009) ("Given the multiple attempts that Plaintiffs have had to sufficiently set forth their allegations in three tries, this Court is of the opinion that further leave to amend is futile, and therefore the dismissal is with prejudice").

**D.    The Arizona Plaintiffs' Claims are Also Barred by Their Judicial Admissions in the Arizona Action.**

Finally, the Arizona Plaintiffs' claims are barred for the additional reason that they cannot contradict their judicial admissions in the Arizona Action. "A judicial admission is usually treated as absolutely binding" when it "go[es] to matters of fact which, otherwise, would require evidentiary proof." *Hanover Cty. Unit of the NAACP v. Hanover Cty.*, 461 F. Supp. 3d 280, 295 (E.D. Va. 2020). "Judicial admissions are not…limited to affirmative statements of fact, but also can include 'intentional and unambiguous waivers that release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law.'" *Flexi-*

316291824v.3

16

*Van Leasing, Inc. v. Travelers Indem. Co.*, 837 F. App'x 141, 145 (4th Cir. 2020). Because "[a]

judicial admission is conclusive," plaintiffs cannot contradict prior judicial admissions in order

to try to state a claim. *See Davis v. Complete Auto Recovery Servs.*, 2017 U.S. Dist. LEXIS

207934, at *3-6 (D. Md. Dec. 15, 2017) (denying leave to amend complaint as futile where

proposed amendment would contradict prior judicial admission).

Here, the Arizona Plaintiffs made numerous judicial admissions in the Arizona Action

that contradict their claims here. In particular:

- "Plaintiffs ***did not object*** to other non-permanent safety measures, such as ***physical distancing***, sick leave, ***indoor masking***, and teleworking. [Plaintiffs] had complied with such measures during the prior eleven months…." Arizona Complaint, ECF No. 5-2 ¶ 29 (emphasis added).

- Raytheon "possessed multiple less restrictive methods of mitigating the spread of COVID-19, including ***masking***, remote teleworking, ***physical distancing***, and ***voluntary testing*** of all symptomatic employees." *Id.* ¶ 30 (emphasis added).

- Ms. Leake's objection to testing was driven by her secular (and false) beliefs that testing "was only required of a small set of employees and tests were the most invasive [Emergency Use Authorization ("EUA")] versions, that have since been recalled by the FDA." *Id.* ¶ 36.

- Mr. Heyser objected to testing, masking, and social distancing because: (1) "the tests are not FDA approved and under an emergency use authorization"; (2) Raytheon "lifted masking and social distancing requirements for vaccinated employees only, making [Heyser] easily identifiable as a person who had a medical and religious objection"; and (3) Heyser "never agreed to any medical procedures as a condition to employment. [Raytheon], without a published policy, imposed such a requirement." *Id.* ¶¶ 47-49.

- Mr. Stein similarly objected to testing because: (1) Raytheon "only required testing of unvaccinated employees despite the ability of the vaccinated to contract and spread the virus"; and (2) Raytheon "demanded invasive PCR tests that were emergency authorized and have since been recalled by the FDA." *Id.* ¶¶ 56-57.

- Ms. Zepeda objected to testing because it was an "accommodation requirement of only those either not disclosing vaccine status or not vaccinated" and she was required to sign "a waiver of HIPPA [sic] rights" with the testing results. *Id.* ¶¶ 64-65. Notably, Raytheon permitted Ms. Zepeda to use "a saliva only test for COVID 19" at her request. *See id.* ¶ 63.

316291824v.3

- "Multiple Plaintiffs were granted medical or religious exemptions but were forced to comply with onerous masking and PCR testing, in the face of nearly all brands of PCR tests being recalled by the FDA on Class 1 likely to cause harm or death status." *See id.* ¶ 74.

In short, the Arizona Plaintiffs made binding judicial admissions in the Arizona Action that they had no religious objections to testing, masking, and social distancing. To the contrary, they affirmatively alleged that they had been complying with some of those conditions for months, and that those conditions would be good alternatives to requiring vaccination. *See id.* ¶¶ 29-30. To the extent they had objections, it was because nasal swab tests were "invasive" tests that the Arizona Plaintiffs (falsely) believed had been recalled; they felt singled out because vaccinated employees were not required to comply with masking, testing, and social distancing;[4] or, in the case of Ms. Zepeda, they did not want to waive certain purported rights under HIPAA. *See id.* None of these are religious objections.

By asserting in this Court that they had (unspecified) religious objections to COVID-19 testing, masking, and similar health and safety conditions of their vaccination exemptions, the Arizona Plaintiffs are attempting to contradict their binding judicial admissions in the Arizona Action. This they cannot do. The Amended Complaint should be dismissed, with prejudice.

## CONCLUSION

The Court should grant Raytheon's motion and dismiss Plaintiffs' Amended Complaint, with prejudice, pursuant to Rule 12(b)(6).

---

[4] Although not before this Court, the District Court in the Arizona Action rejected this "scarlet letter" argument; other courts have done the same. *See Leake*, 2023 U.S. Dist. LEXIS 32177, at *16 (citing *Klaasen v. Trustees of Indiana Univ.*, 549 F. Supp. 3d 836, 890 (N.D. Ind. 2021) *vacated and remanded as moot*, 24 F.4th 638 (7th Cir. 2022)).

18

316291824v.3

Dated: February 28, 2025

Respectfully submitted,

By:     */s/ Samantha L. Brooks*

Samantha L. Brooks, VA Bar No. 91928
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, D.C. 20004
(202) 828-3560
Fax: (202) 641-9209
sbrooks@seyfarth.com

Dawn R. Solowey (admitted *pro hac vice*)
SEYFARTH SHAW LLP
Seaport East, Suite 1200
Two Seaport Lane
Boston, MA 02210
(617) 946-4800
dsolowey@seyfarth.com

Owen R. Wolfe (admitted *pro hac vice*)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, NY 10018
(212) 218-5500
owolfe@seyfarth.com

*Counsel for Defendant RTX Corporation*

316291824v.3

19

JA223

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of February 2025, the foregoing MEMORANDUM

OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS was filed with

the Clerk of Court using the CM/ECF system, which will then send a notification of such filing

to the following counsel of record:

E. Scott Loyd
Lloyd Law Group, PLLC
15 Chester Street
Front Royal, VA 22630
scott@lloydlg.com

*Counsel for Plaintiffs*


 */s/ Samantha L. Brooks*
Samantha L. Brooks
VA Bar No. 91928
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, D.C. 20004
(202) 828-3560
Fax: (202) 641-9209
sbrooks@seyfarth.com
*Counsel for Defendant RTX Corporation*

316291824v.3

JA224

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| KRISTEN GRACE, FRANCISCO GARZA, ROSSANA HERNANDEZ, J. MICHAEL HEYSER, LISA LEAKE, CHRISTOPHER STEIN, CHRISTOPHER SUBLETT, and LESLIE ZEPEDA | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |  |
| Plaintiffs, | )<br>) |  |
| v. | )<br>) | Civil Action No. 24-cv-2083-CMH-WBP |
| RTX CORPORATION f/k/a RAYTHEON TECHNOLOGIES CORPORATION, | )<br>)<br>)<br>) |  |
| Defendant. | )<br>) |  |

**NOTICE OF HEARING OF**
**DEFENDANT'S MOTION TO DISMISS**

PLEASE TAKE NOTICE, that on Friday, March 28, 2025, at 10:00 a.m., or as soon

thereafter as counsel may be heard, Defendant RTX Corporation f/k/a Raytheon Technologies

Corporation ("Raytheon"),[1] by and through its undersigned counsel, will move this Court to

enter an order dismissing the Complaint of plaintiffs Kristen Grace, J. Michael Heyser, Lisa

Leake, Christopher Stein, Leslie Zepeda, Francisco Garza, Rossana Hernandez, and Christopher

Sublett pursuant to Fed. R. Civ. P. 12(b)(6), with prejudice.

---

[1] Plaintiffs were actually employed by Raytheon Company, not Raytheon Technologies Company. Raytheon Technologies Company is now RTX Corporation. For ease of reference, RTX Corporation refers to itself and Plaintiffs' employer as "Raytheon."

JA225

Dated:  February 28, 2025

Respectfully submitted,

By:     */s/ Samantha L. Brooks*
        Samantha L. Brooks, VA Bar No. 91928
        SEYFARTH SHAW LLP
        975 F Street, N.W.
        Washington, D.C. 20004
        (202) 828-3560

        Fax: (202) 641-9209
        sbrooks@seyfarth.com

        Dawn R. Solowey (admitted *pro hac vice*)
        SEYFARTH SHAW LLP
        Seaport East, Suite 1200
        Two Seaport Lane
        Boston, MA 02210
        (617) 946-4800
        dsolowey@seyfarth.com

        Owen R. Wolfe (admitted *pro hac vice*)
        SEYFARTH SHAW LLP
        620 Eighth Avenue
        New York, NY 10018
        (212) 218-5500
        owolfe@seyfarth.com

        *Counsel for Defendant RTX Corporation*

316313972v.3

2

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of February 2025, the foregoing Notice of Hearing

was filed with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing to the following counsel of record:

E. Scott Loyd
Lloyd Law Group, PLLC
15 Chester Street
Front Royal, VA 22630
scott@lloydlg.com

*Counsel for Plaintiffs*

/s/ Samantha L. Brooks
Samantha L. Brooks, VSB No. 91928
sbrooks@seyfarth.com
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, DC  20004-1454
Telephone:  (202) 463-2400
Facsimile:  (202) 828-5393

*Counsel for Defendant*

3

316313972v.3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| KRISTEN GRACE, FRANCISCO GARZA, ROSSANA HERNANDEZ, J. MICHAEL HEYSER, LISA LEAKE, CHRISTOPHER STEIN, CHRISTOPHER SUBLETT, and LESLIE ZEPEDA | ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) ) | Civil Action No. 1:24-cv-02083-CMH-WBP |
| RTX CORPORATION f/k/a RAYTHEON TECHNOLOGIES CORPORATION, | ) ) ) | Dated: March 14, 2025 |
| **Defendant.** | ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

COME NOW Plaintiffs Kristen Grace, Francisco Garcia, Rossana Hernandez, J. Michael Heyser, Lisa Leake, Christopher Stein, Christopher Sublett, and Leslie Zepeda (collectively, "Plaintiffs"), by their undersigned attorney, and states the following in opposition to Defendant RTX Corporation's ('RTX") Motion to Dismiss.

**FACTUAL BACKGROUND**

**A.      Factual Allegations**

Kristen Grace was employed as a Senior Engineer, Design Engineer by Raytheon. Ms. Grace had a sincerely held religious belief against Raytheon's masking policy and requested a religious accommodation for that belief. Raytheon refused to make any accommodation for Ms. Grace's sincerely held religious belief and ultimately fired her for not abandoning her religious convictions and adhering to the masking policy.

Francisco Garza was a Principal Specialist, Misson / Quality Assurance for Raytheon. Mr.

1

JA228

Garza had a sincerely held religious belief against Raytheon's COVID testing mandate. Mr. Garza submitted to the testing mandate under duress and suffered religious and spiritual injury because of Raytheon's refusal to accommodate his religious beliefs.

Rossana Hernandez was an employee of Raytheon. She requested a religious accommodation from Raytheon's vaccine mandate but could not in good conscience agree to the testing that came as a result of her request for accommodation. Because she would not violate her conscience, Raytheon terminated her.

J. Michael Heyser began working for Raytheon in 2008. He requested religious accommodations to the vaccine mandate and the testing, masking, and travel restrictions. Raytheon did not offer any accommodation for the testing, masking, and travel restrictions to which Mr. Heyser objected. Raytheon constructively discharged Mr. Heyser.

Lisa Leake was a Senior Systems Engineer. She requested a religious accommodation to Raytheon's COVID vaccine mandate. In lieu of the vaccine mandate, Raytheon required her to test regularly for COVID instead, which also violated her religious beliefs. She was unwilling to violate her religious beliefs to keep her job, so Raytheon fired her.

Christopher Stein worked for Raytheon for over 20 years. Despite repeated efforts to work to find a mutually agreeable alternative, Raytheon fired him for refusing to violate his religious beliefs by taking regular COVID tests.

Christopher Sublett was a long-term employee for Raytheon. When he realized that his work would require him to violate his religious beliefs, he refused, and Raytheon constructively discharged him.

Leslie Zepeda was a Principal Specialist, Engineering Services for Raytheon. She requested a religious accommodation request but could not in good conscience submit her testing results in a in

2

JA229

the manner that Raytheon prescribed. Raytheon terminated her.

**B.        Procedural History**

Plaintiffs Grace, Heyser, Leake, Stein, and Zepeda, were named putative class members, and Francisco Garcia, Rossana Hernandez, and Christopher Sublett unnamed putative class members ("Plaintiffs" herein) in a class action complaint against Raytheon in the District of Arizona, where they alleged Discrimination, Wrongful Termination, and Retaliation in violation of Title VII. The District Court dismissed the complaint with prejudice, the Ninth Circuit affirmed, and the Supreme Court denied certiorari on October 24, 2024.

After receiving the petition decision from the Supreme Court, and at the request of Plaintiffs, undersigned counsel conducted a considerable amount of research on the possibilities of moving forward after denial of the Plaintiffs' class action suit and reported back to the Plaintiffs.

Plaintiffs then brought this present suit in their individual capacities against Raytheon for failure to make reasonable accommodation for their religious beliefs in violation of their rights under Title VII. Counsel developed a sincere belief in the defensibility and correctness of his legal conclusions and offered them in good faith. Defendants filed a motion for Rule 11 sanctions and a motion to dismiss.

Plaintiffs then filed an amended complaint as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(A). Defendant filed this motion to dismiss.

**<u>ARGUMENT</u>**

Fed R. Civ P. 12(b)(6) permits a defendant to motion for dismissal should a plaintiff fail to state a claim upon which relief can be granted. Defendant RTX claims that Plaintiffs have failed to state a claim for four reasons: that it is *res judicata*, that it is untimely, that the Plaintiffs have insufficiently plead the facts for a claim under Title VII, and that judicial admissions in another

3

JA230

proceeding bar the Plaintiffs' claims here.

### A.       Legal Standard

To overcome a defendant's motion to dismiss, a plaintiff must plead a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be facially plausible under the familiar Twombly standard, and courts must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff." *Midwest Feeders, Inc., v Bank of Franklin*, 886, F3d 507, 513 (5th Cir. 2018).

### B.       *Res judicata* **does not bar Plaintiffs' claims**

RTX argues that because the trial court in Arizona dismissed a class action suit involving the same parties as putative class members with prejudice, it bars the instant case where plaintiffs raise similar claims in their individual capacities. RTX is mistaken.

In *Cooper v. Fed. Res. Bank*, 467 U.S. 867, 880 (1984), a case out of the Fourth Circuit, the Supreme Court considered an action that the Equal Employment Opportunity Commission brought against the Federal Reserve Bank of Richmond alleging racial discrimination according to Title VII of the Civil Rights Act of 1964. *Id.* at 869. Six months after the action commenced, "four individual employees were allowed to intervene as plaintiffs. In their 'complaint in intervention,' these plaintiffs alleged that the Bank's employment practices violated 42 U.S.C. § 1981, as well as Title VII; that each of them was the victim of employment discrimination based on race; and that they could adequately represent a class of black employees against whom the Bank had discriminated because of their race." *Id.* at 869-870.

The issue in *Cooper*, according to the Court, was "whether a judgment in a class action

4

JA231

determining that an employer did not engage in a general pattern or practice of racial discrimination against the certified class of employees precludes a class member from maintaining a subsequent civil action alleging an individual claim of racial discrimination against the employer." *Id.* at 869.

The Court explained, "[c]laims of two types were adjudicated in the *Cooper* litigation. First, the individual claims of each of the four intervening plaintiffs have been finally decided in the Bank's favor. Those individual decisions do not, of course, foreclose any other individual claims. Second, the class claim that the Bank followed 'policies and practices' of discriminating against its employees has also been decided. It is that decision on which the Court of Appeals based its res judicata analysis." *Id.* at 873-874

The Court clearly delineates between four intervening, individual plaintiffs and the plaintiffs who constituted a putative class. It is careful to note that the decisions in the individual cases of the intervenors do not "foreclose any other individual claims."

The court then goes on to conclude that,

> The court erred, however, in the preclusive effect it attached to that prior adjudication. That judgment (1) bars the class members from bringing another class action against the Bank alleging a pattern or practice of discrimination for the relevant time period and (2) precludes the class members in any other litigation with the Bank from relitigating the question whether the Bank engaged in a pattern and practice of discrimination against black employees during the relevant time period. The judgment is not, however, dispositive of the individual claims the Baxter petitioners have alleged in their separate action. *Id.* at 880.

Plaintiffs here in their original complaint were trying to establish a pattern and practice of discrimination under Title VII of the Civil Rights Act, which is the essential nature of a class action claiming employment discrimination. They are not trying to do in this case, nor are they bringing another class action against Defendant. Here they are instead litigating their individual claims.

5

According to *Cooper*, the action here is allowed.

Defendant in its (now moot) Rule 11 motion mischaracterizes the significance of the Court's treatment of the intervening plaintiffs in *Cooper* by attempting to treat them as "named plaintiffs." The Supreme Court itself makes a distinction between the two groups that Defendant does not, allowing individual claims by what Defendant calls "named plaintiffs" to continue even after those class members had provided testimony in the class litigation. *Cooper*, 467 U.S. 881 (1984). The Court clearly makes a distinction between the group of named class members and the intervening parties. This is a critical distinction in *Cooper* that Defendant misses. *Cooper* clearly stands for the proposition that the plaintiffs here may proceed with their individual claims in this case, at least in so far as it may form the basis for a reasonable attorney to conclude that it is appropriate to bring the individual claims in this case.

In its Motion to Dismiss, Defendant again loses the thread. Defendant states that *Cooper* "holds that where 'the individual claims' of named plaintiffs 'have been finally decided in the [defendant's] favor,' those individuals are barred from suing again." In this quote, the Court is referring to the *intervening* plaintiffs who had attached their individual claims to a class action. The Court in the opinion was making clear that the individual claims of the class members could proceed, which is the circumstance of the Plaintiffs here. Note 7 of *Cooper*, which the Defendant also cites, simply clarifies the disposal of the four intervening plaintiffs in that case. It adds no weight to the Defendant's theory.

### C.    Plaintiffs' claims are not time barred

Defendant argues that Plaintiffs' complaint is time barred as none of the Plaintiffs filed suit within 90 days of receiving their right-to-sue letters. This is not correct, however.

As the Supreme Court has stated, "*American Pipe* [*& Constr. Co. v. Utah*, 414 U. S. 538

6

JA233

(1974)] and *Crown, Cork* [*& Seal Co. v. Parker*, 462 U. S. 345, (1983)] addressed […] putative class members who wish to sue individually after a class-certification denial." *China Agritech, Inc. v. Resh*, 584 U.S. 732, 739 (2018). "American Pipe established that the commencement of the original class suit tolls the running of the statute [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Id* (citations omitted).

"In *Crown, Cork*, the Court further elaborated: Failure to extend the *American Pipe* rule 'to class members filing separate actions,' in addition to those who move to intervene, would result in 'a needless multiplicity of actions' filed by class members preserving their individual claims— 'precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid.'" *Id*. "The filing of a class action tolls the statute of limitations as to all asserted members of the class." *Crown v. Parker*, 462 U.S. 345, 350 (1983), *quoting Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974).

The standard that the Supreme Court articulated forty years ago and has upheld since is the legal framework that the Plaintiffs here fall within. Plaintiffs were putative class members in a class action that the District Court dismissed; they are now able to bring individual claims, which is what they did here. The plaintiffs who were not named in the original suit are unnamed class members who have been part of the group the whole time, but who were not prepared at the time to join as named plaintiffs. There was, in the words of the Supreme Court, no reason to create a "needless multiplicity of actions."

"A federal class action is no longer an invitation to joinder but a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 550 (1974). The rule that during the pendency of

7

JA234

a class action complaint, the statutes of limitations for individual rights to action are tolled applies here. All of the plaintiffs timely filed. They were all either named or unnamed members of the putative class that the class action complaint represented. When the group received the last word on the class complaint, they filed the individual complaints that constitute this action. This is how the Supreme Court has interpreted Rule 23 to work for forty or fifty years.

Defendant contends that *American Pipe* tolling does not continue through appeal but rather ends when the District Court dismisses a case and does not continue during the appeal of that dismissal.

For that proposition, it cites no controlling authority. The only Fourth Circuit case that it cites is *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 212 (4th Cir. 2006). The quote that it provides and emphasizes, "[T]he *American Pipe* rule provides a narrow exception to the fixed statutes of limitations, suspending their running from the date a class action is filed until the date it is denied, for whatever reason," is the conclusion of an analysis that discusses the possibility of tolling depending on the basis of dismissal of the class action. The paragraph before starts,

> As we have noted, [t]he Crown, Cork & Seal Court appears to have untethered this tolling rule from any necessary connection to the reasons for denying certification. […] In untethering the rule, the Supreme Court signaled that American Pipe tolling extends as far as is justified by the objectively reasonable reliance interests of the absent class members. If courts were to toll statutes of limitations only when class certification was denied for lack of numerosity, the rule, which would turn on the substantive reason for the denial, would not discourage premature intervention because class members could not know or predict at the time of filing why class certification might eventually be denied. *Id.* at 211(citations omitted).

When the Fourth Circuit adds "for whatever reason," it is simply stating that the statute of limitations is tolled during consideration of a class action whether the dismissal is for numerosity reasons or other grounds.

8

JA235

In *Bridges*, the plaintiffs *abandoned* their class claims in pursuit of a settlement agreement and consent decree, and then two years later attempted to amend their complaint to add 18 individuals from the class as individual plaintiffs. The Court ruled that the statute of limitations had run. *See*, *Id, generally*. The case does not address what happens to *American Pipe* tolling while the parties appeal. The reality is that there is not a rule in the Fourth Circuit or in this District for what happens when the plaintiffs appeal the dismissal of the class action suit.

To the extent that other Circuits have found that the statute of limitations is not tolled during appeal, this seems to conflict with the Supreme Court's concern over the purpose of Rule 23, which is, in its words, "to avoid, rather than encourage, unnecessary filing of repetitious papers and motions," and a "needless multiplicity of actions."

To find to the contrary is to suggest that it would be appropriate for the individual class members to file individual complaints and have them proceed through the initial phases of litigation, costing plaintiffs and the defendants in attorneys fees, and this Court or another(s) in time and resources, only to have those individual cases mooted in the event of a successful appeal. This approach contradicts the purpose of Rule 23—this Court should decline to follow any Court in another jurisdiction that would take an approach that would lead to such unnecessary actions on the part of parties seeking to preserve their individual claims. An approach that acknowledges *American Pipe* through the end of any appeal in a class action is more in line with Rule 23 and Supreme Court precedent.

9

**D.    Plaintiffs Plead Sufficient Facts to Raise a Title VII Claim**

To state a claim for failure to accommodate religious beliefs under Title VII, a plaintiff must allege that: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Ellison v. Inova Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996). Taking each element in turn:

***He or she has a bona fide religious belief that conflicts with an employment requirement***

- Kristen Grace alleges that she "requested a transfer to a remote position as an accommodation to her sincerely held religious beliefs against the masking and testing policy that Defendant held for unvaccinated individuals."

- Francisco Garza "informed his management that he would submit to RTX's testing mandate under duress despite his sincerely held religious beliefs against testing.

- Rosana Hernandez "could not in good conscience agree to the testing that came as a result of her request for accommodation."

- Michael Heyser "found that RTX offered no accommodations for testing, masking, and travel restrictions, which also violated his beliefs."

- "RTX required [Lisa Leake] to test instead, which also violated her religious beliefs."

- "RTX responded that [Christopher Stein] would have to test, which also violated his religious beliefs."

- Christopher Sublett "submitted a religious accommodation request for the vaccine mandate and received the response that he would have to test, which he also objected to doing."

10

JA237

- Leslie Zepeda "requested a religious accommodation request but could not in good conscience submit her testing results in a manner that waive her rights under HIPAA."

*He or she informed the employer of this belief*

- Kristen Grace alleges that she "immediately submitted a religious accommodation request to the vaccine, masking, and testing policies that RTX announced in September 2021."

- Francisco Garza "requested a religious accommodation to RTX's testing mandate that RTX denied."

- Rosana Hernandez "could not in good conscience agree to the testing that came as a result of her request for accommodation."

- Michael Heyser "found that RTX offered no accommodations for testing, masking, and travel restrictions, which also violated his beliefs, which he also communicated to RTX."

- "[Lisa Leake] informed RTX of her religious objection to the testing requirement."

- " [Christopher Stein] informed RTX of his religious beliefs against testing as well."

- Christopher Sublett "communicated his religious objection to testing as well."

- Leslie Zepeda "requested a religious accommodation request but could not in good conscience submit her testing results in a manner that waive her rights under HIPAA. She communicated this to RTX"

*He or she was disciplined for failure to comply with the conflicting employment requirement*

Defendant fired all of the Plaintiffs except Mr. Garza, who experienced "religious and spiritual injury."

Plaintiffs have alleged all of the elements in the *Chalmers* analysis. Defendant for its part cites inapposite analysis from a variety of cases that go to the sincerity of complainants'

11

JA238

beliefs, which are admittedly not at issue here. As for that question, analysis in this District has taken a different approach. "This Court therefore declines to employ […] any […] test that would require it to scrutinize whether Plaintiff's beliefs are 'religious' beliefs. 'Heresy trial [sic] are foreign to our Constitution,' and one will not be conducted in this proceeding. This is particularly true at the motion to dismiss stage, where a plaintiff's job is to plead, not to prove. Aside from a blanket assertion in the complaint that a belief is religious, it is unclear what more a plaintiff can or should do." *Chinnery v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*, No. 1:23cv1110 (DJN), 2024 U.S. Dist. LEXIS 110887, at *11-12 (E.D. Va. June 24, 2024).

Title VII makes it unlawful for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges [of] employment, because of such individual's . . . religion." 42 U. S. C. §2000e-2(a)(1). It announces no pleading standard, and to the extent that the Fourth Circuit has identified an approach in *Chalmers*, the Plaintiffs here have met it.

### E.    Plaintiffs' Claims are not Barred by Judicial Admissions

Judicial admissions to not bar Plaintiffs' claims in the instant case. To show that plaintiffs have made judicial admissions that are detrimental to the instant case, Defendant quotes from proceedings and filings from a different case than the instant case.

However, "Judicial admissions are binding for the purpose of the case in which the admissions are made, not in separate and subsequent cases." *In re Raiford,* 695 F.2d 521, 253 (11th Cir. 1983). *See also*, *Cooper v. Meridian Yachts, Ltd.*, 575 F. 3d 1151 n. 17 (11th Cir. 2009); *State Farm Mut. Auto. Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir. 1968) ("[J]udicial admissions are binding for the purpose of the case in which the admissions are made

12

JA239

including appeals. This does not make the same judicial admissions conclusive and binding in separate and subsequent cases.")

Defendant quotes *Hanover Cty. Unit of the NAACP v. Hanover Cty.*, 641 F. Supp. 3d 280 (E.D. Va. 2020), *Flexi-Van Leasing, Inc. v. Travelers Indem. Co.*, 837 F. App'x 141(4th Cir. 2020) and *Davis v. Complete Auto Recovery Servs.*, 2017 U.S. Dist. LEXIS 207934 (D. Md. Dec. 15, 2017) to corroborate its claim that judicial admissions have barred the instant case. However, each of these cases only speak to judicial admissions that occurred during that same litigation. *See Hanover Cty.*, 641 F. Supp. 3d at 295 (finding that the factual assertion of the relevant dates in the complaint being litigated were judicial admissions and dispositive in determining whether the statute of limitations had expired); *Flexi-Van Leasing, Inc.* 837 Fed. Appx. at 164 (finding that factual assertion in the complaint being litigated was a judicial admission); and *Davis* 2017 US Dist. LEXIS 207934 at 3-4 (factual assertion in first complaint makes futile any amended complaint in that action as the factual assertion was a judicial admission). When looking in the federal rules for prior statements, the only place that they are found is in the rules of evidence as tools for impeachment or when a witness is unavailable. Defendant's argument is an improper use of the prior statements concept in an attempt to shoehorn a dismissal.

Even if Defendant could show that a judicial admission was made, "a judicial admission, however, is not necessarily the final word. A court, unquestioningly, has the right to relieve a party of his judicial admission if it appears that the admitted fact is clearly untrue and that the party was laboring under a mistake when he made the admission." *Flexi-Van Leasing* 837 Fed. Appx. at 146.

Here, as is clear in the record on appeal in the previous case, there were significant issues with the manner in which the parties' previous attorney framed the case through its initial stages

13

JA240

and beyond their initial filings in the Ninth Circuit. The Plaintiffs attempted in their filings to make this clear to no avail. These issues call into question any statement that could otherwise be considered a judicial admission.

**CONCLUSION**

Because Plaintiffs' claims are not barred by *res judicata*, time, or judicial admissions, and Plaintiffs properly pleaded claims under Title VII, the Court should deny Defendant's Motion to Dismiss.

Dated: March 14, 2025                          Respectfully Submitted,


                                   /s/ E. Scott Lloyd
                                   E. Scott Lloyd
                                   Virginia Bar # 76989
                                   Lloyd Law Group, PLLC
                                   106 Chester Street, Suite 1
                                   Front Royal, VA 22630
                                   Office: (540) 823-1110
                                   Cell: (540) 631-4081
                                   Fax: (540) 583-4279
                                   scott@lloydllg.com
                                   *Counsel for the Plaintiffs*


**CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing, was filed and served via ECF, and was served via Federal Express and email on this 14th day of March 2025, upon:


                      Samantha L. Brooks
                      VA Bar No. 91928
                      SEYFARTH SHAW LLP
                      975 F Street, N.W.
                      Washington, D.C. 20004
                      (202) 828-3560

14

JA241

Fax: (202) 641-9209
sbrooks@seyfarth.com
*Counsel for Defendant RTX Corporation*

<u>E. Scott Lloyd</u>
E. Scott Loyd
Lloyd Law Group, PLLC
106 Chester Street, Suite 1
Front Royal, VA 22630
scott@lloydlg.com
*Counsel for Plaintiffs*

15

JA242

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| KRISTEN GRACE, FRANCISCO GARZA, ROSSANA HERNANDEZ, J. MICHAEL HEYSER, LISA LEAKE, CHRISTOPHER STEIN, CHRISTOPHER SUBLETT, and LESLIE ZEPEDA<br><br>Plaintiffs,<br><br>v.<br><br>RTX CORPORATION f/k/a RAYTHEON TECHNOLOGIES CORPORATION,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 24-cv-2083-CMH-WBP |

**DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES**
**IN FURTHER SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12**

Raytheon[1] respectfully submits this reply in further support of its motion to dismiss.

**PRELIMINARY STATEMENT**

Plaintiffs' opposition confirms that dismissal is warranted. They do not dispute that this action arises from the same facts and circumstances as the Arizona Action that was dismissed with prejudice. Nor do Plaintiffs dispute that this action was filed more than 90 days after each Plaintiff received his or her right-to-sue letter. Plaintiffs still do not explain what their religious beliefs were or how those beliefs allegedly conflicted with the health and safety conditions of their exemptions from vaccination. And Plaintiffs do not dispute that their statements in the Arizona Action contradict their allegations in this case. This is an action that was brought without any good-faith basis, and it should be dismissed, with prejudice.

---

[1] Capitalized terms not otherwise defined herein have the meanings set forth in Raytheon's opening Memorandum of Points and Authorities in Support of Motion to Dismiss Pursuant to Rule 12 (ECF No. 19).

316738486v.1

JA243

With respect to *res judicata*, Plaintiffs cite to a single case, addressed in Raytheon's opening papers, in which the Supreme Court held that, where a class has been certified, a final judgment as to general, class-wide pattern-and-practice allegations does not have *res judicata* effect as to individual discrimination claims, but a final judgment as to any ***individual discrimination claims bars those individuals***.  Here, no class was certified in the Arizona Action and the District Court never had any occasion to consider whether a class was even viable because it dismissed the ***individual discrimination claims*** of the Arizona Plaintiffs ***with prejudice***.  It is a basic precept of our legal system that individuals whose claims are dismissed with prejudice cannot bring suit again based upon the same facts and circumstances.

With respect to timeliness, Plaintiffs do not cite to a single case holding that *American Pipe* tolling extends during appeal where, as here, Plaintiffs never sought a stay pending appeal. They do not address the extensive authority holding otherwise, except to assert, without support, that every other court to consider the issue got it wrong and this Court should become what would apparently be the first to find that tolling continues during appeal under these circumstances.  Plaintiffs' novel argument should be rejected.

Plaintiffs similarly have no real argument that they sufficiently pled their religious beliefs or any conflict between those beliefs and masking, testing, and other health and safety conditions of their vaccination exemptions.  Plaintiffs cite to a decision by Judge David Novak where Judge Novak ***dismissed*** the plaintiff's Title VII claims.  Judge Novak's decision is directly on point and confirms why Plaintiffs' claims should be dismissed: they failed to explain the nature of their religious beliefs or why those beliefs conflicted with masking, testing, and the like.  Even setting aside *res judicata* and timeliness, Plaintiffs' Amended Complaint fails.

316738486v.1

Plaintiffs also do not dispute that their allegations in the Arizona Action contradict their allegations in this Court.  Plaintiffs' argument is essentially that this Court should ignore what Plaintiffs told a sister District Court in Arizona.  The Court should reject that argument.

Plaintiffs' commencement of this action was egregious.  The action should never have been filed.  Plaintiffs have no real response or supporting legal authority to address the numerous flaws with their pleading, even after having had three bites at the proverbial apple (one in Arizona and two in this Court).  By doubling-down and filing an Amended Complaint, Plaintiffs have wasted both this Court's and Raytheon's time and resources.  Dismissal should be with prejudice, and the Court should also sanction Plaintiffs pursuant to the renewed Rule 11 motion Raytheon intends to file upon the expiration of the 21-day period set forth in Rule 11(c).

<u>**ARGUMENT**</u>

**A.  Plaintiffs' Opposition Confirms That Their Claims are Barred by *Res Judicata*.**

Plaintiffs do not dispute that this action arises from the same facts and circumstances as the Arizona Action.  *See* ECF No. 22 at 4-6.  That, without more, confirms that the Complaint is barred.  ECF No. 19 at 5-6.  They rely, again, on a single case: *Cooper v. Federal Reserve Bank*, 467 U.S. 867, 880 (1984).  According to Plaintiffs, *Cooper* stands for the proposition that where a class action complaint is dismissed, individual intervenors are barred from suing again, but the other class members, including the original named plaintiffs, are not.  *See* ECF No. 22 at 4-6.  Counsel cannot reasonably believe this, however, because *Cooper* refutes the argument.

As set forth in Raytheon's opening brief (ECF No. 19 at 5-6), *Cooper* held that a decision regarding general, class-wide allegations of a pattern and practice, rather than individual allegations of discrimination, does not bar individual class members from later suing for discrimination based upon their individual factual circumstances.  *Cooper*, 467 U.S. at 880.  But

316738486v.1

where "the individual claims" of named plaintiffs "have been finally decided in the [defendant's] favor," those individuals are barred from suing again. *Id.* at 873-74 and n.7.

Although Plaintiffs emphasize the fact that the individuals who were barred in *Cooper* became named plaintiffs by intervening after commencement of the action, the Supreme Court did not hold that *res judicata* only applies to intervenors; that would make no sense because when parties intervene, they "assume the status of full participants in a lawsuit and are normally treated as if they were original parties once intervention is granted." *D.C. v. Merit Systems Protection Bd.*, 762 F.2d 129, 132 (D.C. Cir. 1985). Rather, the Court held that *res judicata* barred the intervening named plaintiffs because their "individual claims," as opposed to general, class-wide allegations not specific to any particular plaintiff, were finally decided by the district court. *Cooper*, 467 U.S. at 473-74 and n.7.

That is exactly what happened here. No class was ever certified in the Arizona Action; the District Court **specifically declined** to address class allegations; and there was no generalized, class-wide holding. *See Leake v. Raytheon Technologies Corp.*, 2023 U.S. Dist. LEXIS 32177 , at *19 (D. Az. Feb. 27, 2023), *aff'd*, 2024 U.S. App. LEXIS 10287 (9th Cir. Apr. 29, 2024), *cert denied*, 2024 U.S. LEXIS 4384 (Oct. 21, 2024). Nor did the District Court in Arizona dismiss based upon class-wide allegations of a general "pattern and practice" not applicable to any specific plaintiff: the District Court examined the **individualized allegations** of the Arizona Plaintiffs and determined that their **individual claims of discrimination must be dismissed with prejudice**. *See id.* at *13-19. "[T]he individual claims of each of the" Arizona Plaintiffs "have been finally decided in [Raytheon's] favor." *See Cooper*, 467 U.S. at 873-74.

Plaintiffs have not cited **to a single case** holding that the dismissal of named plaintiffs' **individual claims** in a putative class action does not have preclusive effect as to those named

plaintiffs.  It should go without saying that the law is to the contrary.  When a class action is dismissed, the dismissal "of the named employees' individual claims ***is binding as to those employees***."  *Muhammad v. Giant Food*, 108 F. App'x 757, 765 n.5 (4th Cir. 2004) (emphasis added); *see also, e.g., Alexander v. Chicago Park Dist.*, 773 F.2d 850, 854 (7th Cir. 1985) (dismissal of class action "***does not affect application of res judicata against the named plaintiffs***" (emphasis added)).

Again, Plaintiffs do not dispute that this action arises out of the same facts and circumstances as the Arizona Action.  *See* ECF No. 22 at 4-6.  They cite no law holding that where the individual claims of the named plaintiffs are adjudicated to conclusion, those named plaintiffs are permitted to bring another suit based on the same facts and circumstances.  *See id.* Nor could they: when an individual's claim is dismissed by a court with prejudice, that individual cannot bring a subsequent suit based upon the same facts and circumstances.  The Amended Complaint should be dismissed, with prejudice.

## B.  Plaintiffs' Claims are Time-Barred.

Plaintiffs also do not dispute that this action, standing alone, was not timely because it was filed more than 90 days after every single Plaintiff received his or her EEOC right-to-sue letter.  *See* ECF No. 22 at 6-9.  Plaintiffs also cite to no authority for the proposition that *American Pipe* tolling continues through appeal.  *See id.*  Plaintiffs concede (*see id.* at 9) the existence of extensive authority from across the United States holding that *American Pipe* tolling ***does not continue through appeal***, based upon the narrowness of the doctrine and the fact that federal district court judgments are effective while an appeal is pending, unless a stay is entered. *See* Fed. R. Civ. P. 62; *see also* ECF No. 19 at 7-9.  Plaintiffs do not cite to even ***one*** case in which a court held that *American Pipe* tolling extends through an appeal.  *See* ECF No. 22 at 9.

5

316738486v.1

Plaintiffs' "argument" is simply that, in their view, every other court to consider this issue has gotten it wrong. *See id.* Plaintiffs effectively ask this Court to ignore the holdings of numerous other Circuit Courts and District Courts, and to instead become what would seem to be the first court to ever find that *American Pipe* tolling extends through appeal under these circumstances. The Court should reject that invitation.

**C. Plaintiffs Failed to Plead Their Religious Beliefs or a Conflict Between Those Beliefs and the Health and Safety Conditions of Their Vaccination Exemptions.**

Plaintiffs' original Complaint did not explain the nature of their religious beliefs or how those beliefs conflict with masking and testing, and Plaintiffs failed to correct those fatal defects in the Amended Complaint. ECF No. 19 at 9-16. In opposition, Plaintiffs essentially argue that they are not required to allege what their beliefs were or how they conflicted with the health and safety conditions. ECF No. 22 at 10-12. Plaintiffs' own cited authority holds otherwise.

Plaintiffs attempt to frame Raytheon's arguments as going to "sincerity." ECF No. 22 at 11-12. Plaintiffs are wrong: again, Raytheon assumes, for purposes of this motion, that Plaintiffs' beliefs were sincere. *See* ECF No. 19 at 10. The problem is that the Court and Raytheon do not know what Plaintiffs' beliefs were or why those beliefs conflicted with masking and testing. *See id.* at 10-16. Plaintiffs' citation (ECF No. 22 at 12) to Judge Novak's decision in *Chinnery v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*, 2024 U.S. Dist. LEXIS 110887 (E.D. Va. June 24, 2024) proves the point.

There, the plaintiff alleged the nature of her religious beliefs: "her 'Christian . . . faith' compels the belief that her 'body is the Temple of the Holy Spirit,' her 'blood is sacred' and that both must be kept '[]pure' by avoiding 'any foreign substances . . . being inserted' therein." *Id.* at *12. By contrast, Plaintiffs here simply asserted that they have religious beliefs, without any explanation as to what those beliefs are. *See* ECF No. 22 at 10-11; *see also* ECF No. 19 at 12-

6

14.  There are no allegations that, for example, Plaintiffs' beliefs require that their bodies be kept "pure" or that they must avoid "foreign substances."  *See* ECF No. 22 at 10-11; ECF No. 19 at 12-14.  Despite being on notice of this problem from both the Arizona Action and Raytheon's motion to dismiss the original Complaint (*see* ECF No. 8 at 6-13), Plaintiffs failed to address this fatal defect.

There is another problem with Plaintiffs' pleading, however, which is also captured by Judge Novak's decision in *Chinnery*.  In that case, even though the plaintiff adequately pled the nature of her beliefs (unlike Plaintiffs here), Judge Novak ***dismissed*** her claims, including dismissing her claim for alleged failure to accommodate ***with prejudice***.  *Chinnery*, 2024 U.S. Dist. LEXIS 110887, at \*15.  The plaintiff did not "plausibly allege a conflict between her faith and Kaiser's workplace policies" because she did not "explain why the COVID vaccine defiles God's design" or otherwise conflicted with her religion.  *Id.* at \*13.  As Judge Novak explained:

> Cases dismissing these claims are legion.  These dismissals crystalize around one unifying theme: a conviction that glorification of self glorifies the Lord, accepted as true, does not plead a conflict with vaccination.  The problem is not the faith; similar adherents to Chinnery's brand of Christianity have successfully pled Title VII claims.  Those claimants have done so by ***pointing to specific and plausible grounds for why the vaccine clashes with the tenants of their religion***.  For example, objecting to a vaccine on the grounds that it contains or was developed using ingredients prohibited by one's faith, such as fetal cells or pork products, suffices to 'plausibly connect [a] refusal to receive the vaccine with [] religious beliefs,' such as the sanctity of the body as a temple to God.  But a blanket objection to anything 'foreign' or 'impure' does not plausibly plead a religious conflict, since such statements cannot be taken literally and do not explain what renders a vaccine foreign or impure.

*Id.* at \*14-15 (emphasis added) (footnote and citations omitted).

Here, just like the plaintiff in *Chinnery*, Plaintiffs have not "point[ed] to specific and plausible grounds for why" masking and testing "clashes with the tenants of their religion."  *Id.* The Court and Raytheon have no idea why Plaintiffs' beliefs, whatever they may be, are incompatible with wearing a mask, testing for COVID, and the like.

316738486v.1

"[I]t it is not the Court's job to act as advocate for the plaintiff or to 'ferret through a complaint, searching for viable claims.'" *Bond v. United States Dep't of Educ.*, 2014 U.S. Dist. LEXIS 114144, at *9 (W.D. Va. Aug. 18, 2014). Plaintiffs were required to expressly allege the nature of their religious beliefs and how those beliefs conflicted with Raytheon's workplace requirements. Plaintiffs did not do so in the Arizona Action; they did not do so in their original Complaint in this action; and they did not do so in their Amended Complaint in this action. The Amended Complaint should be dismissed, with prejudice.

**D. Plaintiffs Cannot Walk Away From Their Assertions in Arizona.**

Raytheon also demonstrated that Plaintiffs are contradicting their assertions to the District Court in the Arizona Action. ECF No. 19 at 16-18. Plaintiffs do not deny making these assertions, but cite to out-of-Circuit cases to argue that their admissions are only binding in the Arizona Action. *See* ECF No. 22 at 12-14. Other courts have held, however, that a motion to dismiss can be granted, and a motion for leave to amend denied, where, *inter alia*, "Plaintiffs' contention…is contradicted by…the allegations made in their prior action" against the same defendant. *Zinni v. White*, 2012 U.S. Dist. LEXIS 33896, at *6 (D. Ariz. Mar. 14, 2012). That outcome makes sense because where, as here, the same plaintiffs are suing the same defendant based upon the same facts and circumstances, the situation is akin to a plaintiff attempting to submit an amended complaint that contradicts its prior pleading, which is barred. *See Quattlebaum v. Earl Indus.*, 2005 U.S. Dist. LEXIS 32419, at *29-30 (E.D. Va. Sept. 2, 2005) ("Plaintiff cannot amend his complaint…without contradicting facts alleged in his complaint").

Plaintiffs argue briefly that this Court should ignore what Plaintiffs said to another federal court because "there were significant issues with the manner in which the parties' previous attorney framed the" Arizona Action and this "call[s] into question any statement that

316738486v.1

could otherwise be considered a judicial admission." ECF No. 22 at 13-14. Plaintiffs cite to no supporting evidence, other than pointing generally to the record in the Ninth Circuit appeal in the Arizona Action. Plaintiffs should not be permitted to contradict in this Court what they represented to the Arizona court.

### E. Plaintiffs Have Not Requested Leave to Amend, Which Would be Futile.

In their opposition, Plaintiffs do not request leave to further amend or suggest they could make amendments that would cure the fatal defects of the Amended Complaint. Nor could they. As set forth in Raytheon's opening papers (ECF No. 19 at 16), any further amendment would be futile. No amount of re-pleading can get around *res judicata* or the fact that Plaintiffs' claims are untimely. Moreover, Plaintiffs already had three tries (between the Arizona Action and this action) and have failed each time, rendering a further amendment futile. *See, e.g., Feeley v. Totally Realty Mgmt.*, 660 F. Supp. 2d 700, 715-16 (E.D. Va. 2009) ("Given the multiple attempts that Plaintiffs have had to sufficiently set forth their allegations in three tries, this Court is of the opinion that further leave to amend is futile, and therefore the dismissal is with prejudice"). Dismissal should be with prejudice.

### CONCLUSION

The Court should grant Raytheon's motion and dismiss Plaintiffs' Complaint with prejudice.

Dated: March 20, 2025

Respectfully submitted,

By:    */s/ Samantha L. Brooks*
Samantha L. Brooks, VA Bar No. 91928
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, D.C. 20004
(202) 828-3560
Fax: (202) 641-9209

9

316738486v.1

JA251

sbrooks@seyfarth.com

Dawn R. Solowey (admitted *pro hac vice*)
SEYFARTH SHAW LLP
Seaport East, Suite 1200
Two Seaport Lane
Boston, MA 02210
(617) 946-4800
dsolowey@seyfarth.com

Owen R. Wolfe (admitted *pro hac vice*)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, NY 10018
(212) 218-5500
owolfe@seyfarth.com

*Counsel for Defendant RTX Corporation*

10

316738486v.1

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 20th day of March 2025, the foregoing REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO RULE 12 was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record:

E. Scott Loyd
Lloyd Law Group, PLLC
15 Chester Street
Front Royal, VA 22630
scott@lloydlg.com

*Counsel for Plaintiffs*

*/s/ Samantha L. Brooks*
Samantha L. Brooks
VA Bar No. 91928
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, D.C. 20004
(202) 828-3560
Fax: (202) 641-9209
sbrooks@seyfarth.com
*Counsel for Defendant RTX Corporation*

316738486v.1

JA253

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| KRISTEN GRACE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-02083 (CMH/WBP) |
| | ) | |
| RTX CORPORATION, f/k/a Raytheon Technologies Corporation, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant's Renewed Motion for Sanctions Pursuant to Rule 11. ("Motion"; ECF No. 25.) Because the district judge has informed the parties that Defendant's Motion to Dismiss (ECF No. 18) will be decided on the papers, it is hereby

ORDERED that the hearing on Defendant's Motion—currently scheduled for May 2, 2025—will be held in abeyance pending the district judge's ruling on Defendant's Motion to Dismiss. Once the district judge rules on the Motion to Dismiss, Defendant may notice a hearing on the Motion, if it is appropriate that it do so.

Entered this 22nd day of April 2025.

_____
William B. Porter
United States Magistrate Judge

Alexandria, Virginia

JA254

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

KRISTEN GRACE et al.,                )
                                     )
      Plaintiffs,                     )
                                     )
v.                                    ) Civil Action No. 1:24-cv-2083
                                     )
RTX CORPORATION f/k/a                 )
Raytheon Technologies                 )
Corporation,                          )
                                     )
      Defendant.                      )

ORDER

THIS MATTER comes before the Court on Defendant RTX Corporation f/k/a Raytheon Technologies Corporation's ("Raytheon") Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs, eight former employees of Raytheon, filed an Amended Complaint on February 14, 2025 alleging that Raytheon failed to accommodate their religious beliefs under Title VII of the Civil Rights Act of 1964 ("Title VII"). See 42 U.S.C. §§ 2000e(j), 2000e-2. Raytheon moves to dismiss Plaintiffs' Amended Complaint arguing that some of Plaintiffs' claims are barred by res judicata, all Plaintiffs' claims are time-barred, and the Amended Complaint fails to state a claim.

Plaintiffs allege that while employed by Raytheon and during the COVID-19 pandemic they requested religious accommodations to

1

JA255

Raytheon's COVID-19 vaccine mandate. Raytheon granted Plaintiffs' religious accommodation requests as to the vaccine itself and exempted all Plaintiffs from receiving the COVID-19 vaccine but imposed "testing, masking, and travel restriction policies" that Plaintiffs allege also violated Plaintiffs' religious beliefs. For these "testing, masking, and travel restriction policies," Plaintiffs allege Raytheon did not offer any accommodations, and "constructively discharged" or terminated Plaintiffs' employment.

Prior to filing a lawsuit in this Court, five of the eight named Plaintiffs, Kristen Grace, J. Michael Heyser, Lisa Leake, Christopher Stein, and Leslie Zepeda (collectively, the "Arizona Plaintiffs"), filed a class action complaint in the United States District Court for Arizona against Raytheon alleging discrimination and wrongful termination under Title VII, 42 U.S.C. § 2000e-2(a)(1) and retaliation in violation of § 2000e-3. <u>See Lisa Leake et al., v. Raytheon Techs. Corp.</u>, Case No. 22-cv-436-TUC-RM (the "Arizona Action"). In the Arizona Action, the Arizona Plaintiffs alleged religious discrimination, wrongful termination, and retaliation under Title VII in connection with Raytheon's COVID-19 vaccine policy, including its masking and testing policies. On February 27, 2023, the Arizona District Court dismissed the Arizona Plaintiffs' individual claims with prejudice and found that any amendment to the complaint would be futile. The Arizona District Court also denied Raytheon's motion to strike

2

class allegations as moot. On April 29, 2024, the Arizona District Court's order was unanimously affirmed by the Ninth Circuit. The Arizona Plaintiffs sought review in the U.S. Supreme Court, but the Supreme Court denied their petition for a writ of certiorari in October 2024. Approximately one month later Plaintiffs filed suit in this Court.

A motion to dismiss tests the sufficiency of the complaint. See Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). On a Rule 12(b)(6) motion to dismiss, a court must accept all well-pleaded facts as true and construe those facts in the light most favorable to the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Reyes v. Waples Mobile Home Park Ltd. P'ship, 903 F.3d 415, 423 (4th Cir. 2018). The complaint must provide a short and plain statement showing that the pleader is entitled to relief, Fed. R. Civ. P. 8(a)(2), and it must state a plausible claim for relief to survive a motion to dismiss. Iqbal, 556 U.S. at 679; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"Res judicata, also known as claim preclusion, bars a party from relitigating a claim that was decided or could have been decided in an original suit." Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 161 (4th Cir. 2008) (emphasis added). The defense of res judicata may be properly raised and ruled upon in a motion to dismiss. Thomas v. Consolidation Coal Co., 380 F.2d 69, 75 (4th Cir. 1967). For res judicata to apply, a court of competent

3

JA257

jurisdiction must issue a final judgment on the merits; a subsequent case must be filed involving the same parties or parties in privity with each other; and the subsequent case is based on the same cause of action as the prior action. Pittston Co. v. United States, 199 F.3d 694, 704 (4th Cir. 1999). "The test for deciding whether the causes of action are identical for claim preclusion purposes is whether the claim presented in the new litigation arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." Laurel Sand & Gravel, Inc., 519 F.3d at 162 (internal quotation marks omitted). Accordingly, "[n]ewly articulated claims based on the same [transactional] nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." Id. "When entertaining a motion to dismiss on the ground of res judicata, a court may take notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." Q Int'l Courier, Inc. v. Smoak, 441 F.3d 214, 216 (4th Cir. 2006).

Here, the Arizona Plaintiffs claims are barred based on res judicata. Each of the res judicata elements are satisfied in this case. First, there was a final judgment on the merits in the Arizona Plaintiffs' prior suit. The Arizona Plaintiffs' Title VII claims, consisting of disparate treatment, hostile work environment, and retaliation, were dismissed with prejudice in the

4

JA258

District Court of Arizona, which was subsequently affirmed by the Ninth Circuit. Second, the parties in the prior suit and the present suit are the same. The same five Plaintiffs-the Arizona Plaintiffs-in addition to three other individual Plaintiffs have brought a Title VII claim against the same Defendant in the instant action.

And finally, the causes of action in the Arizona Plaintiffs' prior suit and the present suit are the same. Under Fourth Circuit precedent, a cause of action is identical for claim preclusion purposes if the claim presented in the new litigation "arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." Laurel Sand & Gravel, Inc., 519 F.3d at 162. Plaintiffs' Title VII claim arises out of Raytheon's COVID-19 vaccine mandate, including their refusal to comply with the safety procedures, i.e. testing, masking, social distancing.

Moreover, res judicata prohibits "not only issues that were raised, but also issues that could have been raised in the earlier action." United States v. Tatum, 943 F.2d 370, 381 (4th Cir. 1991). While the prior action did not specifically include a Title VII failure to accommodate claim—as asserted in the present matter—this claim could have been raised in the earlier action as it was based on the same factual circumstances.

In their opposition, Plaintiffs rely on Cooper v. Federal Reserve Bank to argue that the District Court's dismissal of the

5

class action suit in the Arizona Action does not foreclose the Arizona Plaintiffs in this matter from proceeding with their individual claims. 467 U.S. 867 (1984). In Cooper, the Supreme Court held that the failure of a plaintiff to prove a classwide pattern and practice of discrimination does not automatically foreclose a subsequent attempt by that plaintiff or a fellow class member to prove an individual claim of discrimination. 467 U.S. at 880 (holding that the plaintiff's subsequent discrimination claim was not barred by the prior class action because there might be individual discrimination despite the lack of a "pattern and practice of discrimination" as concluded in the class action).

Unlike in Cooper, no class was ever certified in the Arizona Action, and no decision was made as to the class claim. Instead, the Arizona District Court dismissed the individual claims of the Arizona Plaintiffs with prejudice for failure to state a claim as to the disparate treatment, hostile work environment, and retaliation claims. The court also found that any amendment to the complaint would be futile and declined to address class allegations. Therefore, res judicata applies to the Arizona Plaintiffs because their individual claims were previously dismissed.

Additionally, the Court finds that Plaintiffs' claims are time-barred. "Title VII requires that an aggrieved person file a civil action within 90 days of receiving a right-to-sue letter

6

JA260

from the EEOC." <u>Quinn v. Copart of Conn., Inc.</u>, 791 F. App'x 393, 395 (4th Cir. 2019). "It is well settled that a Title VII claimant who fails to file a complaint within the 90-day period generally forfeits his right to pursue his claims." <u>Id.</u>; <u>see also Davis v. Navy Fed. Credit Union</u>, 2012 U.S. Dist. LEXIS 2649, at *7-8, 14-16 (E.D. Va. Jan. 10, 2012) (dismissing complaint, with prejudice, where plaintiff failed to bring claims within 90 days of receiving right-to-sue letter). On a Rule 12(b)(6) motion, a court can consider EEOC right-to-sue letters, even if they are not referenced in the plaintiff's complaint, because the letters are "integral to the Complaint's administrative history" and are "public documents of which the Court may take judicial notice." <u>Davis</u>, 2012 U.S. Dist. LEXIS 2649, at *7-8.

Most of the Plaintiffs received their right-to-sue letters more than two years ago, in late 2022. Mr. Garza was the first, on October 3, 2022, followed by Ms. Grace on October 13, 2022; Ms. Leake on October 24, 2022; Mr. Stein on October 26, 2022; Ms. Zepeda on December 13, 2022; Mr. Sublett on April 13, 2023; Ms. Hernandez on January 2, 2024; and Mr. Heyser on August 5, 2024. The most recent right-to-sue letter was issued to Heyser on August 5, 2024, which required him to file suit no later than November 4, 2024. This action was filed on November 20, 2024.

In response, Plaintiffs contend that their claims were tolled by the Arizona Action but do not identify when the tolling period

7

JA261

purportedly ended, or when they were required to bring suit once the tolling period ended. But Plaintiffs' position that the Arizona Action tolled the statute of limitations through appeal in accordance with the limited tolling rule set forth in American Pipe is unpersuasive. The Supreme Court in American Pipe held "that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. 538, 554 (1974). However, "the American Pipe rule provides a narrow exception to the fixed statutes of limitations, suspending their running from the date a class action is filed until the date it is denied, for whatever reason." Bridges v. Dep't of Md. State Police, 441 F.3d 197, 210 (4th Cir. 2006).

Here, the class action was denied when the Arizona Court dismissed the matter for failure to state a claim and denied the defendant's motion to strike class certification as moot. Thus, any tolling of the statute of limitations ended when class certification was denied as moot in the trial court. Therefore, assuming tolling ended in February 2023, all Plaintiffs' claims in this action are untimely, including the Arizona Plaintiffs and the additional Plaintiffs, who received their EEOC right-to-sue letters after the Arizona Action was dismissed, and still did not file suit within 90 days.

For the foregoing reasons, it is hereby

8

JA262

ORDERED that Defendant's Motion to Dismiss is GRANTED, and this matter is DISMISSED.

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
July 22, 2025

9

JA263

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

|  |  |  |
|---|---|---|
| KRISTEN GRACE, FRANCISCO GARZA, ROSSANA HERNANDEZ, J. MICHAEL HEYSER, LISA LEAKE, CHRISTOPHER STEIN, CHRISTOPHER SUBLETT, and LESLIE ZEPEDA | ) ) ) ) ) ) ) |  |
| **Plaintiffs,** | ) ) | Civil Action No. 4-cv-2083-CMH-WBP |
| v. | ) ) ) |  |
| RTX CORPORATION f/k/a RAYTHEON TECHNOLOGIES CORPORATION, | ) ) ) | Dated: August 22, 2025 |
| **Defendant.** | ) |  |

<u>**NOTICE OF APPEAL**</u>

PLEASE TAKE NOTICE that Plaintiffs Kristen Grace, Rossana Hernandez, J. Michael Heyser, Lisa Leake, Christopher Stein, Christopher Sublett, and Leslie Zepeda hereby appeal to the United States Court of Appeals for the Fourth Circuit from this Court's July 22, 2025, Order granting Defendant's Motion to Dismiss (ECF No. 31). Plaintiff Francisco Garza is not participating in the appeal.

Dated: August 22, 2025

Respectfully submitted,

<u>/s/ E. Scott Lloyd</u>
E. Scott Lloyd
Virginia Bar # 76989
Lloyd Law Group, PLLC
106 Chester Street, Suite 1
Front Royal, VA 22630
Office: (540) 823-1110
Cell: (540) 631-4081
Fax: (540) 583-4279

1

JA264

scott@lloydllg.com
*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing was filed and served via ECF upon:


Samantha L. Brooks
VA Bar No. 91928
Seyfarth Shaw LLP
975 F Street, N.W.
Washington, D.C. 20004
(202) 828-3560
Fax: (202) 641-9209
sbrooks@seyfarth.com
*Counsel for Defendant RTX Corporation*

Dawn Reddy Solowey
*Pro hac vice*
Seyfarth Shaw LLP
Two Seaport Blvd, Suite 1200
Boston, MA 02210
617-946-4800
Fax: 617-439-3675
Dsolowey@seyfarth.Com
*Counsel for Defendant RTX Corporation*

Owen Richard Wolfe
*Pro hac vice*
Seyfarth Shaw LLP
620 Eighth Avenue 32nd Floor
New York, NY 10018
212-218-5500
Fax: 917-344-1394
Owolfe@seyfarth.Com


E. Scott Lloyd
E. Scott Loyd

2

JA265