# No. 25-2022

# United States Court of Appeals
*for the*
# Fourth Circuit

KRISTEN GRACE, ROSSANA HERNANDEZ, J. MICHAEL HEYSER, LISA LEAKE, CHRISTOPHER STEIN, CHRISTOPHER SUBLETT and LESLIE ZEPEDA,

*Plaintiffs-Appellants*,

v.

RTX CORPORATION F/K/A RAYTHEON TECHNOLOGIES CORPORATION,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
CASE NO. 1:24-cv-02083-CMH-WBP

## BRIEF OF DEFENDANT-APPELLEE

DAWN R. SOLOWEY
SEYFARTH SHAW LLP
Seaport East, Suite 1200
Two Seaport Lane
Boston, MA 02210
Telephone: (617) 946-4800
Facsimile: (617) 946-4801
dsolowey@seyfarth.com

SAMANTHA L. BROOKS
SEYFARTH SHAW LLP
975 F Street, NW
Washington, DC 20004
Telephone: (202) 463-2400
Facsimile: (202) 828-5393
sbrooks@seyfarth.com

OWEN R. WOLFE
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 218-3389
Facsimile: (212) 218-5526
owolfe@seyfarth.com

*Attorneys for Defendant-Appellee*

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1:

RTX Corporation,[1] by and through its undersigned counsel, hereby states that Defendant-Appellee RTX Corporation is a publicly-traded company that has no parent company, and no publicly-held entity directly or indirectly owns 10% or more of its stock.

---

[1] Plaintiffs-Appellants were actually employed by Raytheon Company, not Raytheon Technologies Company. Raytheon Technologies Company is now RTX Corporation. For ease of reference, RTX Corporation refers to itself and Plaintiffs-Appellants' employer as "Raytheon."

i

**TABLE OF CONTENTS**

DISCLOSURE STATEMENT ...................................................................... i

TABLE OF CONTENTS .......................................................................... ii

TABLE OF AUTHORITIES ..................................................................... iv

PRELIMINARY STATEMENT ..................................................................1

JURISDICTIONAL STATEMENT ...........................................................5

STATEMENT OF THE ISSUES.................................................................5

STATEMENT OF THE CASE.....................................................................6

    I.    Five of Plaintiffs Commence The Arizona Action Based Upon The Same Facts And Circumstances as The Subsequent Virginia Action...................................................................6

    II.    The Arizona District Court Dismisses The Arizona Action, With Prejudice, Which The Ninth Circuit Affirms And The Supreme Court Denies Certiorari....................................10

    III.    Plaintiffs Receive Right-to-Sue Letters From the EEOC, But do Not Commence The Virginia Action Within 90 Days of Receiving Them ...................................................14

    IV.    Plaintiffs File an Amended Complaint in The Virginia Action That Mirrors The Arizona Action .....................................14

    V.    Raytheon Moves to Dismiss the Virginia Action and For Rule 11 Sanctions .....................................................20

    VI.    The District Court Dismisses The Action as Barred by *Res Judicata* And Untimely .........................................21

ARGUMENT .........................................................................................23

    I.    Standard of Review .........................................................23

    II.    The District Court Correctly Determined That *Res Judicata* Barred The Arizona Plaintiffs' Claims Here......................................23

A.  There is no Dispute That The Arizona Action Arose Out of The Same Facts And Circumstances as The Virginia Action ...................................................................23

B.  The Supreme Court's Decision in *Cooper* Supports The District Court's Decision .......................................26

C.  Plaintiff's Appeal Brief Ignores *Cooper*'s Facts And The Record in This Case ................................................27

III.  The District Court Correctly Determined That Plaintiffs' Claims Were Untimely .......................................................29

A.  There is no Dispute That Plaintiffs Did Not Commence The Virginia Action Within 90 Days of Receiving Their Right-to-Sue Letters ................................................30

B.  This Court Has Never Held That *American Pipe* Tolling Continues Pending Appeal and Other Circuit Courts Are Uniform in Holding That it Does Not ......................31

C.  Plaintiffs' Citation to State Court Decisions That Relied on Outdated Authorities is Unavailing ....................34

IV.  The District Court's Dismissal is Supported by Other Grounds in The Record ..................................................................37

CONCLUSION ................................................................................41

CERTIFICATE OF COMPLIANCE .............................................43

CERTIFICATE OF SERVICE .......................................................44

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Africa v. Pennsylvania*,
662 F.2d 1025 (3d Cir. 1981) ...........................................................38

*Alexander v. Chicago Park Dist.*,
773 F.2d 850 (7th Cir. 1985) ...........................................................24

*American Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974)...............................................................*passim*

*American Tierra Corp. v. W. Jordan*,
840 P.2d 757 (Utah 1992)...................................................34, 35, 36

*Andrews v. Orr*,
851 F.2d 146 (6th Cir. 1988) ...........................................................33

*Armstrong v. Martin Marietta Corp.*,
138 F.3d 1374 (11th Cir. 1998) .........................................32, 35, 36

*Barnett v. Inova Health Care Servs.*,
125 F.4th 465 (4th Cir. 2025) ...............................................37, 38, 41

*Bridges v. Dep't of Md. State Police*,
441 F.3d 197 (4th Cir. 2006) ...................................................22, 31

*Chalmers v. Tulon Co.*,
101 F.3d 1012 (4th Cir. 1996) ........................................................37

*City of San Antonio v. Hotels.com, L.P.*,
593 U.S. 330 (2021)........................................................................31

*Cooper v. Federal Reserve Bank*,
467 U.S. 867 (1984)...............................................................*passim*

*In re Copper Antitrust Litig.*,
436 F.3d 782 (7th Cir. 2006) ....................................................31, 32

*Culver v. City of Milwaukee*,
277 F.3d 908 (7th Cir. 2002) ..........................................................32

iv

*Davis v. Bethlehem Steel Corp.*,
  600 F. Supp. 1312 (D. Md. 1985),
  *aff'd* 769 F.2d 210 (4th Cir. 1985)...............................................................36

*Dettmer v. Landon*,
  799 F.2d 929 (4th Cir. 1996) ........................................................................38

*Drager v. PLIVA USA, Inc.*,
  741 F.3d 470 (4th Cir. 2014) ........................................................................37

*Feeley v. Totally Realty Mgmt.*,
  660 F. Supp. 2d 700 (E.D. Va. 2009) ............................................................41

*Fernandez v. Chardon*,
  681 F.2d 42 (1st Cir. 1982)............................................................................33

*Flexi-Van Leasing, Inc. v. Travelers Indem. Co.*,
  837 F. App'x 141 (4th Cir. 2020) ..................................................................40

*Giovanniello v. ALM Media, LLC*,
  726 F.3d 106 (2d Cir. 2013) ...........................................................32, 35, 36

*Griffin v. Singletary*,
  17 F.3d 356 (11th Cir. 1994) .........................................................................35

*Hemenway v. Peabody Coal Co.*,
  159 F.3d 255 (7th Cir. 1998) .........................................................................36

*Jimenez v. Weinberger*,
  523 F.2d 689 (7th Cir. 1975) ....................................................................35, 36

*Laurel Sand & Gravel, Inc. v. Wilson*,
  519 F.3d 156 (4th Cir. 2008) .........................................................................23

*Leake v. Raytheon Technologies Corp.*,
  2023 U.S. Dist. LEXIS 32177 (D. Az. Feb. 27, 2023)...............10, 24, 28, 33, 41

*Leake v. Raytheon Techs. Corp.*,
  2024 U.S. App. LEXIS 10287 (9th Cir. Apr. 29, 2024)..................................13

*Leake v. Raytheon Technologies Corp.*,
  2024 U.S. LEXIS 4384 (Oct. 21, 2024) .........................................................14

*M.P. v. Meta Platforms, Inc.*,
127 F.4th 516 (4th Cir. 2025) ................................................................23

*Muhammad v. Giant Food*,
108 F. App'x 757 (4th Cir. 2004) ..........................................................24

*Quinn v. Copart of Conn., Inc.*,
791 F. App'x 393 (4th Cir. 2019) ..........................................................30

*Seaboard Corp. v. Marsh Inc.*,
284 P.3d 314 (Kan. 2012) ................................................................34, 35

*Stone Container Corp. v. United States*,
229 F.3d 1345 (Fed. Cir. 2000) .............................................................32

*Tarashuk v. Givens*,
53 F.4th 154 (4th Cir. 2022) ..................................................................34

*Taylor v. United Parcel Serv., Inc.*,
554 F.3d 510 (5th Cir. 2008) ...........................................................32, 36

*Wisconsin v. Yoder*,
406 U.S. 205 (1972).................................................................................38

*Womack v. UPS*,
311 F. Supp. 2d 492 (E.D.N.C. 2004) ...................................................33

## Rules

Fed. R. Civ. P. 62 ............................................................................31, 33

## Other Authorities

Centers for Disease Control, *COVID-19 Vaccination Coverage
Among Adults* (June 25, 2021),
https://www.cdc.gov/mmwr/volumes/70/wr/mm7025e1.htm.............................8

## PRELIMINARY STATEMENT

This appeal by Plaintiffs-Appellants Kristen Grace, J. Michael Heyser, Lisa Leake, Christopher Stein, Leslie Zepeda, Rossana Hernandez, and Christopher Sublett (collectively, "Plaintiffs") is frivolous.  The underlying action never should have been filed.  The District Court properly dismissed it, and Plaintiffs were subsequently sanctioned under Rule 11.[2]  By burdening this Court with a meritless appeal, Plaintiffs have exacerbated their misconduct, which has now spanned five different courts.  This Court should reject Plaintiffs' baseless arguments and affirm the District Court's dismissal of this action.

Five Plaintiffs—Kristen Grace, J. Michael Heyser, Lisa Leake, Christopher Stein, and Leslie Zepeda (collectively, the "Arizona Plaintiffs")—brought suit, individually and as named plaintiffs on behalf of a purported class, against Raytheon under 42 U.S.C. §§ 2000e-2 and 2000e-3 ("Title VII") in the United States District Court for the District of Arizona.  They alleged religious discrimination in connection with Raytheon's COVID-19 vaccination policy from 2021 (the "2021 Policy").  The Arizona Plaintiffs admitted that Raytheon exempted all of them from the requirement of receiving a COVID-19 vaccine, subject to the Arizona Plaintiffs complying with alternative health and safety

---

[2] Those Rule 11 sanctions are subject to a pending Rule 72 objection in the District Court.  *See* n.9, *infra*.

1

requirements, such as masking and weekly testing. The Arizona Plaintiffs claimed that the health and safety conditions of their vaccination exemption violated Title VII.

The Arizona District Court dismissed the Arizona Plaintiffs' *individual* claims *with prejudice*. The Arizona Plaintiffs appealed to the Ninth Circuit, which unanimously affirmed the dismissal of their individual claims *with prejudice*. The Arizona Plaintiffs sought review in the U.S. Supreme Court, but the Court denied their petition for a writ of certiorari in October 2024. That should have been the end of the matter.

Unfortunately, the Arizona Plaintiffs, joined by Rossana Hernandez and Christopher Sublett (the "Additional Plaintiffs"),[3] filed another Title VII complaint in the Eastern District of Virginia based upon the same 2021 Policy. Plaintiffs never disputed, and still do not dispute, that the Arizona action and the Virginia action arose from the exact same facts and circumstances. Plaintiffs also openly admit that their Title VII claim in the Virginia action could have been asserted in Arizona. It should go without saying, then, that the Virginia action was barred by *res judicata* as to the Arizona Plaintiffs.

---

[3] Francisco Garza was also a plaintiff in the Virginia action only (not the Arizona action), but is not participating in this appeal.

2

Plaintiffs continue to insist otherwise, despite the fact that they cannot identify any legal authority in support of their *res judicata* position. Plaintiffs rely exclusively on the Supreme Court's decision in *Cooper v. Federal Reserve Bank*, 467 U.S. 867 (1984). In *Cooper*, however, the Supreme Court held that when the individual claims of named plaintiffs are dismissed with prejudice, that dismissal precludes the named plaintiffs from suing again. Only ***non-named*** class members whose individual claims were not adjudicated can sue again based upon their individual facts and circumstances. Here, the Arizona Plaintiffs were undisputedly named plaintiffs whose individual claims were dismissed with prejudice in Arizona. Accordingly, under *Cooper* and the basic principles of our legal system, the Arizona Plaintiffs were barred from suing again. The District Court correctly held that the Arizona Plaintiffs' claims were barred by *res judicata*.

Moreover, the claims of all Plaintiffs were unequivocally time barred. A plaintiff bringing suit under Title VII has 90 days to commence an action after receiving a right-to-sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC"). Here, Plaintiffs filed suit in Virginia on November 20, 2024. Yet, they received they received their respective right-to-sue letters from the EEOC between October 3, 2022 and August 5, 2024. Plaintiffs did not commence the Virginia action within 90 days of receiving right-to-sue letters on any of those dates.

3

Plaintiffs argue that their claims were tolled by the Arizona action. As this Court has previously held, however, class action tolling ends whenever the class action is denied or dismissed for any reason. Moreover, district court orders have immediate effect absent a stay pending appeal, which the Arizona Plaintiffs never sought in the Arizona proceedings. Accordingly, every Circuit Court of Appeals to address this issue has held that class action tolling does not continue on appeal. Consistent with its prior holdings, this Court should join the First, Second, Fifth, Seventh, Eleventh, and Federal Circuits in holding that class action tolling does not continue on appeal.

Plaintiffs are still unable to cite any authority that actually supports their contrary position. The best they can muster are two state court cases, which Plaintiffs did not cite to the District Court in connection with the motion to dismiss and thus should not be considered on appeal. That said, those state court cases do not help Plaintiffs. One of the cases rejected class action tolling altogether. And both cases relied upon federal decisions that were later repudiated or overruled. Plaintiffs' belated citations to outdated and inapplicable state court cases do not demonstrate any error by the District Court.

Although the Court need go further, other bases in the record support dismissal of the action. Plaintiffs failed to state a claim because they never alleged the nature of their religious beliefs or how those beliefs conflicted with testing,

4

masking, and the other health and safety conditions of their vaccination exemptions.  In fact, several Plaintiffs admitted that their objections were ***not*** religious, but were rather based upon "conscience" or secular concerns relating to the Health Insurance Portability and Accountability Act ("HIPAA").  Under those circumstances, Plaintiffs failed to state a claim.

This appeal is baseless.  The District Court should be affirmed.

## JURISDICTIONAL STATEMENT

Raytheon agrees with Plaintiffs' jurisdictional statement.

## STATEMENT OF THE ISSUES

1.  Should the District Court's decision dismissing the claims of the Arizona Plaintiffs on *res judicata* grounds be affirmed where the Arizona District Court dismissed the Arizona Plaintiffs' individual claims with prejudice; the Ninth Circuit affirmed; the Supreme Court denied certiorari; and the subsequent Virginia action undisputedly arose out of the same facts and circumstances?

2.  Should the District Court's decision dismissing the Amended Complaint on timeliness grounds be affirmed where Plaintiffs indisputably did not commence the action in the District Court within 90 days of receiving their EEOC right-to-sue letters or within 90 days of the dismissal of the Arizona action?

3.  Should the District Court's decision dismissing the Amended Complaint be affirmed where Plaintiffs failed to adequately plead their claims?

## STATEMENT OF THE CASE

**I.      Five of Plaintiffs Commence The Arizona Action Based Upon The Same Facts And Circumstances as The Subsequent Virginia Action.**

The Arizona Plaintiffs commenced the Arizona action on September 24, 2022.  JA49-65.[4]  The Arizona Plaintiffs alleged that on September 15, 2021, Raytheon announced that all of its employees would be required to be vaccinated against COVID-19.  JA52 ¶¶ 18-19.  The Arizona Plaintiffs alleged that at least some of them objected to receiving COVID-19 vaccines on religious grounds.  JA52-53 ¶¶ 20-21.

The Arizona Plaintiffs alleged that, beginning on September 15, 2021, Raytheon provided "blanket" exemptions from the 2021 Policy for employees who sought exemptions for medical or religious reasons, on the condition that those exempt employees agreed to "mask wear and weekly COVID testing."  JA56 ¶ 47.  The Arizona Plaintiffs affirmatively alleged that they "***did not object*** to other non-permanent safety measures, such as physical distancing, sick leave, indoor masking, and teleworking."  JA54 ¶ 29 (emphasis added).

Each of the Arizona Plaintiffs alleged that he or she sought, and received, an exemption from vaccination under the 2021 Policy, but refused to comply with the health and safety protocols that were conditions of that exemption:

---

[4] References to "JA__" are to the Joint Appendix (Doc. No. 11).  References to "Pl. Br." are to Plaintiffs' appeal brief (Doc. No. 12).

**Plaintiff Leake**:  On November 1, 2021, Ms. Leake "submitted a request for religious accommodation."  JA54 ¶ 35.  Ms. Leake alleged that her "religious accommodation was approved with a…weekly testing stipulation."  JA55 ¶ 36.  Ms. Leake asserted that this stipulation "was in violation of Plaintiff's accommodation statement explaining sincerely held religious beliefs," but did not explain how or why.  *See id.*  In fact, Ms. Leake admitted that her concerns about testing were not religious at all, but rather based on the false assertion that the tests "were the most invasive EUA [Emergency Use Authorization] versions, that have since been recalled by the FDA."  *Id.*  Ms. Leake alleged that she was fired on February 1, 2022, not because of her religious beliefs, but because of "non-compliance with the Defendant's Covid 19 mandate" (*i.e.*, her refusal to submit to testing).  *Id.* ¶ 37.

**Plaintiff Grace**:  Ms. Grace alleged that, on February 25, 2021, she "requested a transfer to a remote position, due to her sincere religious objections…that precluded her from complying to [sic] Defendant's COVID-19 policy."  *Id.* ¶ 39.  Raytheon's 2021 Policy was not announced until September 15, 2021, *see* JA52 ¶ 18, and the Arizona Complaint did not explain what "COVID-19 policy" was in effect as of February 25, 2021, a time period in which vaccines

7

were not widely available to the public. *See* JA55 ¶ 39.[5] Ms. Grace alleged that on

May 7, 2021, Raytheon "denied [her] request for a remote position" and instead

placed her on "involuntary medical leave." *See id.* ¶ 40. Ms. Grace alleged,

without any explanation, that on September 24, 2021,[6] she "secured a remote

position" with Raytheon. *Id.* ¶ 41. She then applied for a religious exemption,

which was allegedly "denied based on Plaintiff's [unspecified] medical disability."

*Id.* ¶ 42. Ms. Grace alleged that she was subject to unspecified "harassment,

coercion, threats, and humiliation," and was ultimately terminated on January 31,

2022 "for non-compliance to [sic] Defendant's COVID-19 mandate." JA56 ¶ 43.

**Plaintiff Heyser**: Mr. Heyser alleged that on September 30, 2021, Raytheon

"lifted masking and social distancing requirements for vaccinated employees only,

making [Mr. Heyser] easily identifiable as a person who had a medical or religious

objection." *Id.* ¶ 48. Mr. Heyser conceded that he refused to abide by the health

and safety protocols that were conditions of his exemption, allegedly based on

unspecified religious beliefs, and was "repeatedly advised and warned" that failure

---

[5] The COVID-19 vaccines did not become available to all individuals over the age of 16 until April 19, 2021. *See* Centers for Disease Control, *COVID-19 Vaccination Coverage Among Adults* (June 25, 2021), https://www.cdc.gov/mmwr/volumes/70/wr/mm7025e1.htm.

[6] This paragraph of the Arizona Complaint says "September 24, 2022," but since that is the date on which the Arizona Complaint was filed, the Arizona Plaintiffs presumably meant 2021.

to comply with the conditions of his exemption "would be termination." *Id.* ¶¶ 49-51.  Mr. Heyser opted to resign on January 14, 2022.  JA57 ¶ 52.

**Plaintiff Stein**:  Mr. Stein alleged that he was unable to obtain a medical exemption because he did not have "a doctor's note" supporting such an exemption.  *Id.* ¶ 54.  Mr. Stein was instead advised that he could seek a religious exemption, which would allegedly require Mr. Stein to comply with "blanket" conditions applied to all medical and religious exemptions, "masking, social distancing, weekly testing."  *Id.* ¶ 55.  Mr. Stein objected to these health and safety protocols on non-religious grounds because they were "only required . . . of unvaccinated employees" and because they involved the use of "invasive PCR tests."  *Id.* ¶ 56.  Mr. Stein alleged that he refused to comply with the health and safety protocols, and was terminated on January 31, 2022 "for non-compliance." *Id.* ¶¶ 59-60.

**Plaintiff Zepeda**:  Ms. Zepeda alleged that she submitted "a religious accommodation based on sincerely held faith for [sic] the COVID 19 vaccine." JA58 ¶ 63.  Ms. Zepeda further alleged that she sought "a medical accommodation to submit a saliva only test for COVID 19."  *Id.*  Ms. Zepeda did not allege that Raytheon refused her request for a "saliva only test."  *See id.*  Instead, Ms. Zepeda alleged that she was terminated on February 2, 2022, not because of her religious

9

beliefs, but because she refused to provide "a waiver of HIPPA [sic] rights" as part

of the testing requirement. *Id.* ¶¶ 65-66.

Based upon these allegations, the Arizona Plaintiffs commenced the Arizona

action, both individually and as named plaintiffs on behalf of a purported class of

affected individuals. JA49-65. Although inartfully drafted, the Arizona Complaint

alleged three causes of action under Title VII: (1) disparate treatment; (2) hostile

work environment; and (3) retaliation. *See* JA61-65.

## II.  The Arizona District Court Dismisses The Arizona Action, With Prejudice, Which The Ninth Circuit Affirms And The Supreme Court Denies Certiorari.

On December 2, 2022, Raytheon filed a motion to dismiss the Arizona

action for failure to state a claim. *Leake v. Raytheon Technologies Corp.*, 2023

U.S. Dist. LEXIS 32177, at *4 (D. Az. Feb. 27, 2023).[7] On February 27, 2023, the

Arizona District Court dismissed the Arizona Complaint, ***with prejudice***. *Id.* at

*19. The District Court held that "Plaintiffs' overlapping allegations lack the legal

and factual support to state a Title VII claim." *Id.* at *19. The Arizona District

Court held that the Arizona Plaintiffs could not state a disparate treatment claim

because

> [a]ll vaccination-exempt employees were treated the
> same, regardless of the reason for the exemption. The
> vaccination mandate never mentioned religion and was
> therefore facially neutral, and Plaintiffs have not

---

[7] The Arizona District Court's decision is also in the record at JA67-74.

> established that Defendant had a discriminatory intent in either issuing the vaccination mandate or implementing health and safety protocols for vaccination-exempt employees.

*Id.* at *13-14. Although the Arizona District Court held that the foregoing was sufficient to dismiss the claim, it held also that "Plaintiffs never alleged they were members of any protected class, or what their religious beliefs were," particularly since some of the Arizona Plaintiffs objected to vaccination "not because of religious reasons, but for medical reasons." *Id.* at *14. Even if the Arizona Plaintiffs had adequately alleged membership in a protected class, the District Court held that "they still fail to demonstrate that they were treated any differently from other vaccination-exempt employees." *Id.*

The Arizona District Court next held that "Plaintiffs fail to show they were members of a protected class" and had not, in any event, met the "demanding standard" for a hostile work environment claim. *Id.* at *15. The District Court found that "Defendant had a blanket vaccination exemption and only required those employees with a vaccination exemption to wear masks and test weekly for COVID-19." *Id.* The District Court found Plaintiffs' allegation that requiring masking and testing created a hostile work environment "shocking" in light of the fact that COVID-19 "has claimed the lives of over one million Americans, and counting." *Id.* at *16.

11

The District Court further held that masking requirements "do[] not create a 'scarlet letter' effect because the employees could be vaccination-exempt for a multitude of reasons" other than religion, "or the masking employees could be vaccinated but simply want the added facial protection." *Id.* The District Court held that email reminders and signage regarding the 2021 Policy were "facially neutral" communications "visible to all Raytheon employees," which, "combined with the reasonable safety accommodations for vaccination-exempt employees, does not come close to meeting the demanding standard needed to state a legally valid hostile work environment claim." *Id.* at *16-17.

Finally, with respect to retaliation, the Arizona District Court again held that "Plaintiffs have not established that they were members of a protected class or were engaging in protected activity." *Id.* at *17. The Arizona District Court further held that even if the Arizona Plaintiffs had done so, they did not "establish a causal link between [their] protected activity and any adverse employment action." *Id.* at *17. As the Arizona District Court held:

> Plaintiffs admit in their Complaint … [that] they were terminated or resigned due to their refusal to comply with the health and safety protocols for vaccination-exempt employees. Defendant's requirement that vaccination-exempt employees wear facial masks and engage in weekly COVID-19 testing does not have any religious aspect attached to it and is a facially neutral policy. Plaintiffs' religious and, in some cases, medical objections to the COVID-19 vaccine was not a but-for cause of Plaintiffs' termination. Instead, the but-for

12

> cause of Plaintiffs' termination was Plaintiffs' refusal to comply with the safety conditions for vaccination exempt employees.

*Id.* at *17-18.

The Arizona District Court concluded that, in light of the Arizona Plaintiffs' binding judicial admissions in the Arizona complaint, "any amendment to the Complaint would be futile.  Therefore, dismissal of the Complaint with prejudice is appropriate."  *Id.* at *18-19.  Raytheon had also moved to strike the Arizona Plaintiffs' class allegations, but because the Arizona District Court dismissed the Arizona Plaintiffs' individual claims with prejudice, it determined that Raytheon's other motion was moot.  *Id.* at *19.

The Arizona Plaintiffs appealed to the Ninth Circuit.  JA196 ¶ 70.  After that appeal was fully briefed, the Arizona Plaintiffs obtained new counsel—the same counsel representing them in this appeal—and argued that the appeal should be re-briefed or remanded because, *inter alia*, the Arizona Plaintiffs wished to assert an additional Title VII cause of action for failure to accommodate.  JA129, 132, 161.

On April 29, 2024, the Ninth Circuit unanimously affirmed the dismissal of the Arizona action.  *Leake v. Raytheon Techs. Corp.*, 2024 U.S. App. LEXIS 10287 (9th Cir. Apr. 29, 2024).[8]  The Arizona Plaintiffs next sought review from the U.S. Supreme Court, but the Supreme Court denied their petition for a writ of

---

[8] The Ninth Circuit's decision is also in the record at JA76-80.

certiorari on October 21, 2024.  JA196 ¶ 71; *Leake v. Raytheon Technologies Corp.*, 2024 U.S. LEXIS 4384 (Oct. 21, 2024).

### III. Plaintiffs Receive Right-to-Sue Letters From the EEOC, But do Not Commence The Virginia Action Within 90 Days of Receiving Them.

At various times during the pendency of the Arizona action or the subsequent appeals therefrom, each of the Plaintiffs received a right-to-sue letter from the EEOC.  Francisco Garza (who is not participating in this appeal) was the first, on October 3, 2022, followed by Ms. Grace on October 13, 2022; Ms. Leake on October 24, 2022; Mr. Stein on October 26, 2022; Ms. Zepeda on December 13, 2022; Mr. Sublett on April 13, 2023; Ms. Hernandez on January 2, 2024; and Mr. Heyser on August 5, 2024.  JA82-112.

Plaintiffs did not commence the Virginia action in the District Court within 90 days of any of these right-to-sue letters.  *See* JA2.  Rather, Plaintiffs commenced the action on November 20, 2024.  *Id.*

### IV. Plaintiffs File an Amended Complaint in The Virginia Action That Mirrors The Arizona Action.

After commencing the Virginia action on November 20, 2024, Plaintiffs filed an Amended Complaint on February 14, 2025.  JA188-199.  The Amended Complaint was based upon Plaintiffs' allegation that they "requested religious accommodations to RTX's COVID-19 vaccine mandate," and in response, Raytheon "impos[ed] a testing, masking, and travel restriction policy which," for

14

reasons not explained anywhere in the Amended Complaint, "also violated Plaintiffs' religious beliefs." JA189 ¶¶ 1-2. As in the Arizona Action, Plaintiffs alleged that Raytheon "terminated or constructively discharged them in violation of Title VII." *Id.* ¶ 4.

The Amended Complaint's allegations regarding the Arizona Plaintiffs were nearly identical in many respects to those in the Arizona Complaint:

| Plaintiff Kristen Grace | |
|---|---|
| **Arizona Complaint Allegation** | **Virginia Amended Complaint Allegation** |
| "Named Plaintiff Grace was employed by Defendant for over 18 years and received various promotions and pay increase. She had no prior disciplinary issues with Defendant." JA55 ¶ 38. | "Kristen Grace was employed as a Senior Engineer, Design Engineer by RTX for more than 18 years and consistently received outstanding reviews." JA191 ¶ 16. |
| "On or about February 25, 2021, Plaintiff requested a transfer to a remote position, due to her sincere religious objections and medical disability that precluded her from complying to Defendant's COVID-19 policy. Defendant acknowledged Plaintiff's ADA disability but dismissed Plaintiff's right to assert a religious exception." JA55 ¶ 39. | "On February 25, 2021, Ms. Grace requested a transfer to a remote position as an accommodation to her sincerely held religious beliefs against the masking and testing policy that Defendant held for unvaccinated individuals. Upon learning that no religious accommodation was available for the masking and testing policy, on March 23, 2021, Ms. Grace reluctantly submitted an ADA accommodation request to the masking and testing policy. Ms. Grace continued to work remotely while awaiting RTX's determination on a permanent remote position." JA191 ¶¶ 17-19. |
| "On or about May 7, 2021, Defendant denied Plaintiff's request for a remote position as a reasonable accommodation | "On May 7, 2021, RTX denied Ms. Grace's request for a permanent remote |

15

| | |
|---|---|
| and retaliated against Plaintiff by putting her on involuntary unpaid medical leave, prohibiting Plaintiff from seeking any outside income while on leave." JA55 ¶ 40. | position and put her on permanent unpaid medical leave." JA191 ¶ 20. |
| "On or about September 24, 202[1], Plaintiff secured a remote position and submitted a religious exemption for the COVID-19 vaccine mandate." JA55 ¶ 41. | "On September 22, 2021, Ms. Grace secured a permanent remote position with RTX through her own independent efforts. She immediately submitted a religious accommodation request to the vaccine, masking, and testing policies that RTX announced on September 15, 2021." JA192 ¶¶ 22-23. |
| "On or about November 4, 2022, Plaintiff's religious exemption was denied based on Plaintiff's medical disability." JA55 ¶ 42. | "Despite her approved ADA accommodation for her medical disability, RTX denied her religious accommodation request for the testing and masking requirements." JA192 ¶ 24. |
| "After months of Defendant's continuous harassment, coercion, threats, and humiliation, on or about January 31, 2022, Defendant terminated Plaintiff's employment for non-compliance to [sic] Defendant's COVID-19 mandate." JA56 ¶ 43. | "RTX terminated Ms. Grace on January 31, 2022." JA192 ¶ 25. |
| **Plaintiff J. Michael Heyser** ||
| **Arizona Complaint Allegation** | **Virginia Amended Complaint Allegation** |
| "Named Plaintiff Heyser was a longtime employee (14 years) and USAF veteran who left a career as an airline pilot to join Raytheon so he could help deliver solutions to his brothers in arms." JA56 ¶ 44. | "J. Michael Heyser began his career with RTX in 2008. Over 12 years, he worked his way up to his 'dream job' as a Warfighter School Director, where he planned to stay until retirement." JA193¶¶ 40-41. |
| "Plaintiff never agreed to any medical procedures as a condition to employment. Defendant, without a published policy, imposed such a | "He requested a religious accommodation to the COVID-19 vaccine mandate, but found that RTX offered no accommodations for testing, |

16

|  | |
|---|---|
| requirement…. Unable to tolerate what had become a hostile work environment, Plaintiff resigned on Jan 14, 2022." JA56-57 ¶¶ 49-52. | masking, and travel restrictions, which also violated his beliefs, which he communicated to RTX. RTX constructively discharged Mr. Heyser on January 14, 2022." JA193-94 ¶¶ 42-43. |

| Plaintiff Lisa Leake | |
|---|---|
| **Arizona Complaint Allegation** | **Virginia Amended Complaint Allegation** |
| "Named Plaintiff Leake was employed by Defendant for over 13 years and received various promotions and yearly pay increases. She had no prior disciplinary issues." JA54 ¶ 34. | "Plaintiff Lisa Leake was an RTX employee for more than 14 years, where she served as a Senior Systems Engineer I and RTX's Tucson, Arizona facility." JA194 ¶ 45. |
| "On or about November 1, 2021, in good faith and compliance to policy, Plaintiff submitted a request for religious accommodation." JA54 ¶ 35. | "Ms. Leake requested a religious accommodation to the COVID-19 vaccine." JA194 ¶ 46. |
| "On or about December 15, 2021, religious accommodation was approved with a with weekly testing stipulation, which was in violation of Plaintiff's accommodation statement explaining sincerely held religious beliefs. This non-negotiable testing requirement, dictated by Defendant, was only required of a small set of employees and tests were the most invasive EUA versions, that have since been recalled by the FDA." JA55 ¶ 36. | "RTX required her to test instead, which also violated her religious beliefs." JA194 ¶ 47. |
| "On or about February 1, 2022, Plaintiff was terminated for non-compliance with the Defendant's Covid 19 mandate." JA55 ¶ 37. | "She was unwilling to violate her religious beliefs in order to keep her job, so RTX fired her on January 31, 2022." JA194 ¶ 49. |

17

| Plaintiff Christopher Stein | |
|---|---|
| **Arizona Complaint Allegation** | **Virginia Amended Complaint Allegation** |
| "Named Plaintiff Stein was employed by Defendant for over 20 years, receiving multiple promotions and pay increase[s]. He had no prior disciplinary issues with Defendant." JA57 ¶ 53. | "Plaintiff Christopher Stein worked for RTX for over 20 years." JA194 ¶ 51. |
| "Defendant recommended a religious exemption which had three non-negotiable, mandated 'accommodations' dictated by Defendant (masking, social distancing, weekly testing)." JA57 ¶ 55. | "He requested a religious accommodation to the COVID-19 vaccine mandate. RTX responded that he would have to test, which also violated his religious beliefs." JA194 ¶¶ 52-53. |
| "Plaintiff repeatedly worked with managerial staff and Defendant representatives to attempt an acceptable resolution to discriminatory and invasive weekly testing, but was told Defendant's testing mandate 'accommodations' were non-negotiable. Plaintiff was terminated by Defendant for non-compliance to Defendant's COVID-19 mandate ON January 31, 2022." JA57 ¶¶ 59-60. | "Despite his repeated efforts to work to find a workable solution, RTX terminated Mr. Stein on January 31, 2022." JA194 ¶ 55. |
| **Plaintiff Leslie Zepeda** | |
| **Arizona Complaint Allegation** | **Virginia Amended Complaint Allegation** |
| "Named Plaintiff Zepeda was employed by Defendant for six years, earning two promotions and multiple awards." JA57 ¶ 61. | "Plaintiff Leslie Zepeda was a six-year employee of RTX and served as a Principal Specialist, Engineering Services." JA195 ¶ 63. |
| "Plaintiff submitted vaccination status and a religious accommodation based on sincerely held faith for the COVID 19 vaccine and a medical accommodation to submit a saliva only test for COVID 19….. Defendant | "She requested a religious accommodation request but could not in good conscience submit her testing results in a manner that waive [sic] her rights under HIPAA." JA195 ¶ 64. |

18

| | |
|---|---|
| refused test results unless accompanied by a waiver of HIPPA [sic] rights presented as RTX COVID Testing Privacy Consent Form." JA58 ¶¶ 63-65. | |
| "In retaliation, Zepeda's employment was wrongfully terminated by Raytheon Technologies due to not agreeing waiving/ consenting to waive HIPPA [sic] rights on February 2. 2022." JA58 ¶ 66. | "RTX terminated her on February 4, 2022." JA195 ¶ 66. |

The Amended Complaint contained similar allegations regarding the Additional Plaintiffs. Plaintiffs alleged that Ms. Hernandez "requested a religious accommodation for the vaccine mandate but could not in good conscience agree to the testing that came as a result of her request for accommodation." JA193 ¶ 36. Plaintiffs did not explain why testing would violate Ms. Hernandez's conscience. *See id.* They alleged that "[b]ecause she would not violate her conscience, RTX terminated Ms. Hernandez on January 31, 2022." *Id.* ¶ 37. Plaintiffs alleged that Mr. Sublett "submitted a religious accommodation request for the vaccine mandate and received the response that he would have to test, which he also objected to doing," for unexplained reasons, and so "RTX constructively discharged Mr. Sublett on December 4, 2021." JA195 ¶¶ 58, 60.

In the Amended Complaint, Plaintiffs conceded that "*[a]ll plaintiffs* submitted their claims as part of a class complaint submitted on September 24, 2022," *i.e.*, the Arizona Action, and "[t]hat claim was dismissed." JA196 ¶¶ 68-69 (emphasis added). Plaintiffs alleged that "[t]he putative class appealed the

19

decision and the 9th Circuit Court of Appeals upheld the decision." *Id.* ¶ 70.  They

further alleged that "Plaintiffs filed a petition for a writ of certiorari with the U.S.

Supreme Court which it declined on October 21, 2024." *Id.* ¶ 71.

Plaintiffs asserted a single cause of action, for failure to accommodate under

Title VII, *i.e.*, the same claim the Arizona Plaintiffs told the Ninth Circuit they

wanted to assert in Arizona.  *See* JA129, 132, 161, 196-198.  Plaintiffs sought

damages of "8 million dollars," plus punitive damages, interest, and attorneys'

fees.  JA 198 ¶ 79.

## V.    Raytheon Moves to Dismiss the Virginia Action and For Rule 11 Sanctions.

Prior to the filing of the Amended Complaint, on December 9, 2024,

Raytheon's counsel wrote to Plaintiffs' counsel, stating that Plaintiffs and their

counsel had violated Rule 11 because the original Complaint was both barred by

*res judicata* and time barred.  JA114-117.  On December 13, 2024, Plaintiffs'

counsel responded by asserting that the Complaint complied with Rule 11 and that

if Raytheon filed this motion, ***Raytheon*** would be subject to Rule 11 sanctions.

JA119.

Plaintiffs' counsel did not address the fact that Plaintiffs' claims were time-

barred.  *See id.*  With respect to *res judicata*, Plaintiffs' counsel argued that

Plaintiffs' claims were not barred, based upon the Supreme Court's decision

*Cooper*, *supra*.  *See id.*  On Monday December 16, 2024, Raytheon's counsel

20

responded by noting that *Cooper* confirms that the Arizona Plaintiffs' claims were barred by *res judicata*, and that Plaintiffs' counsel failed to address the fact that all Plaintiffs' claims were time barred. *See id.* Plaintiffs' counsel did not respond. *See id.*

On January 24, 2025, Raytheon filed a motion to dismiss the original Complaint and for sanctions under Rule 11. *See* JA3. After the Rule 11 motion was fully briefed, Plaintiffs filed the Amended Complaint as of right on February 14, 2025. JA4. Accordingly, Raytheon was forced to file a new motion to dismiss and new motion for Rule 11 sanctions on February 28, 2025 and March 27, 2025, respectively. JA4-5.

## VI.    The District Court Dismisses The Action as Barred by *Res Judicata* And Untimely.

On July 22, 2025, the District Court granted Raytheon's Rule 12 motion to dismiss in its entirety, holding that the Arizona Plaintiffs' claims were barred by res judicata and that all Plaintiffs' claims were untimely. *See* JA255-263.[9]

With respect to *res judicata*, the District Court held that all of the elements of *res judicata* were satisfied. JA258-259. The District Court rejected Plaintiffs' reliance on *Cooper*, *supra*, holding that:

---

[9] Although not at issue in this appeal, on September 19, 2025 and October 10, 2025, Magistrate Judge William B. Porter granted Raytheon's motion for Rule 11 sanctions and awarded a monetary sanction of $7,500. *See* JA7. Plaintiffs filed a Rule 72 objection, which remains pending. *See id.*

21

> Unlike in *Cooper*, no class was ever certified in the Arizona Action, and no decision was made as to the class claim. Instead, the Arizona District Court dismissed the individual claims of the Arizona Plaintiffs with prejudice for failure to state a claim…. The court also found that any amendment to the complaint would be futile and declined to address class allegations. Therefore, *res judicata* applies to the Arizona Plaintiffs because their individual claims were previously dismissed.

JA259-260.

With respect to timeliness, the District Court found that Plaintiffs did not commence this action within 90 days of receiving their EEOC right-to-sue letters. JA261. The District Court stated that, although Plaintiffs invoked class action tolling under *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), they did "not identify when the tolling period purportedly ended, or when they were required to bring suit once the tolling period ended." JA261-262.

The District Court further held that Plaintiffs' tolling argument was "unpersuasive." JA262. The District Court noted that *American Pipe* is "a narrow exception" and the tolling only applies "until the date [the class action] is denied, for whatever reason." *Id.* (internal quotation marks omitted) (quoting *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 210 (4th Cir. 2006)). Accordingly, the District Court held that even if *American Pipe* applied, the tolling ended "when the Arizona Court dismissed the matter…." *Id.*

On August 22, 2025, Plaintiffs timely filed their notice of appeal. JA264-265.

22

**ARGUMENT**

**I.    Standard of Review.**

This Court "review[s] de novo the district court's holding granting [defendant's] motion to dismiss." *M.P. v. Meta Platforms, Inc.*, 127 F.4th 516, 522 (4th Cir. 2025).

**II.    The District Court Correctly Determined That *Res Judicata* Barred The Arizona Plaintiffs' Claims Here.**

The District Court properly determined that the Arizona Plaintiffs' claim in Virginia was barred by *res judicata*.  As set forth above, and as described below, the Arizona Plaintiffs conceded that both the Arizona and Virginia actions arose out of the same facts and circumstances, and that the Title VII failure-to-accommodate claim Plaintiffs asserted in Virginia could have been asserted alongside the Arizona Plaintiffs' other Title VII claims in Arizona.  As a matter of black-letter law, the Arizona Plaintiffs were not entitled to sue again in Virginia after the Arizona action was dismissed with prejudice.  Accordingly, the District Court's dismissal of the Arizona Plaintiffs' should be affirmed.

**A.    There is no Dispute That The Arizona Action Arose Out of The Same Facts And Circumstances as The Virginia Action.**

"Res judicata, also known as claim preclusion, bars a party from relitigating a claim that was decided *or could have been decided* in an original suit." *Laurel Sand & Gravel, Inc. v. Wilson,* 519 F.3d 156, 161 (4th Cir. 2008) (emphasis added).  Under this standard, "[t]he test for deciding 'whether the causes of action

23

are identical for claim preclusion purposes is whether the claim presented in the new litigation '*arises out of the same transaction or series of transactions* as the claim resolved by the prior judgment.'" *Id.* at 162 (emphasis added). Accordingly, "'[n]ewly articulated claims based on the same [transactional] nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action.'" *Id.*

When a class action complaint, like that filed in the Arizona action, is dismissed, the dismissal "of the named employees' individual claims is binding as to those employees." *Muhammad v. Giant Food*, 108 F. App'x 757, 765 n.5 (4th Cir. 2004) (emphasis added); *see also, e.g., Alexander v. Chicago Park Dist.*, 773 F.2d 850, 854 (7th Cir. 1985) (dismissal of class action "does not affect application of res judicata against the named plaintiffs").

Here, the Arizona Plaintiffs filed a purported class action complaint in the Arizona action, bringing individual claims based upon their individual facts, as well as asserting that they were the named representatives of a putative class. JA49-65. The Arizona District Court never certified a class, however, because it dismissed the Arizona Plaintiffs' *individual* claims, based upon each of their unique, individualized allegations, on the merits and with prejudice. *Leake*, 2023 U.S. Dist. LEXIS 32177, at *19.

24

There is no dispute that the action in the District Court arose out of the exact same facts as the Arizona Action: the Arizona Plaintiffs' refusals to comply with the testing, masking, and social distancing conditions of their exemptions from the vaccination requirement of Raytheon's 2021 Policy. *See, e.g.,* JA196 ¶ 68; *see also* Pl. Br. at 7-12. The Arizona Plaintiffs brought this action under the exact same statute at issue in the Arizona action, Title VII. *See* JA196-198. Plaintiffs even argued that the Arizona action "tolled" their time to commence this action, which was an admission that the Arizona action and this action arose from the same facts and circumstances. *See* JA233-236.

Plaintiffs' counsel also argued to the Ninth Circuit in the Arizona action, after merits briefing had been completed, that the Ninth Circuit should re-open briefing because the Arizona Plaintiffs' prior counsel had failed in the Arizona District Court "to plead a claim under Title VII for failure to accommodate Plaintiffs' religious beliefs, which is the most relevant and applicable claim Plaintiffs had." JA129, 132, 161. The Arizona Plaintiffs argued to the Ninth Circuit that they wished they had "inclu[ded] a Title VII Failure to Accommodate Claim" in the Arizona Complaint. *See id.* In other words, the Arizona Plaintiffs affirmatively represented to the Ninth Circuit that a failure to accommodate claim, like the one Plaintiffs asserted in Virginia, ***could have been asserted in the Arizona action***.

There is no dispute that the Arizona and Virginia actions arose from the same facts and circumstances, and that Plaintiffs' cause of action in Virginia could have been asserted in Arizona. *See* Pl. Br. at 7-12. Accordingly, the Arizona Plaintiffs' claims were barred by *res judicata*. The District Court's dismissal of the Arizona Plaintiffs' claims should be affirmed.

**B.    The Supreme Court's Decision in *Cooper* Supports The District Court's Decision.**

Plaintiffs continue to rely, as they did in the District Court, on a single case: *Cooper*, *supra*. *See* Pl. Br. at 7-12; JA231-233. *Cooper* refutes Plaintiffs' position, however, and supports the District Court's decision.

*Cooper* was not originally a class action; the underlying litigation was brought by the EEOC. *See Cooper*, 467 U.S. at 869. The intervening Cooper plaintiffs alleged "that each of them was the victim of employment discrimination," but also "that they could adequately represent a class of black employees against whom the Bank had discriminated because of their race." *Id.* at 869-70. After the Cooper plaintiffs intervened, the district court conditionally certified a class, with the Cooper plaintiffs as the named, class representatives. *Id.* at 870. At trial, the "intervening [Cooper] plaintiffs…testified," as did a group of non-named class members, referred to in the Supreme Court decision as the "Baxter petitioners." *Id.* at 871.

The Supreme Court held that "[c]laims of two types were adjudicated in the Cooper litigation. First, the individual claims of each of the four intervening plaintiffs have been finally decided in the Bank's favor." *Id.* at 873. Those "determinations are…final." *Id.* at 873 n.7. The other claim type was "the class claim that the Bank followed 'policies and practices' of discriminating against its employees…." *Id.* at 873-74. The Supreme Court held that although the Cooper plaintiffs were barred from suing again—since their individual claims had been adjudicated—non-named class members, like the Baxter petitioners, were only barred from asserting class-wide "pattern and practice" claims; they could still bring individual claims asserting that each of them suffered individualized discrimination. *Id.* at 880.

The Arizona Plaintiffs were similarly situated to the Cooper plaintiffs: named plaintiffs purporting to represent a putative class. Like the Cooper plaintiffs, the Arizona District Court adjudicated the Arizona Plaintiffs' individual claims. Accordingly, under *Cooper*, the Arizona Plaintiffs were barred by *res judicata*; only the Additional Plaintiffs, whose individual claims were not adjudicated in Arizona, could sue again (for any timely claims).

**C.    Plaintiff's Appeal Brief Ignores *Cooper*'s Facts And The Record in This Case.**

Plaintiffs' attempt to analogize this case to *Cooper* (*see* Pl. Br. at 8-12) relies on misstatements or distortions of the record. In particular, Plaintiffs appear to

argue that the Arizona Plaintiffs did not assert individual claims, but only class claims, in Arizona. *See id.* at 10. They assert, falsely, that the Arizona Plaintiffs merely asserted "a pattern and practice of discrimination under Title VII" in Arizona, and that "[w]hen they were unsuccessful in doing so, they went on to bring their individual claims in this case." *Id.* at 10. Apparently based on the erroneous assertion that the Arizona Plaintiffs did not assert individual claims in Arizona, Plaintiffs argue that the District Court's "approach…would rob litigants of the benefit of…forbearing on their individual claims with a putative class agent litigates on their behalf." *Id.* at 11.

Plaintiffs' argument makes no sense, and it ignores the record and the Arizona District Court's decision. Like the Cooper plaintiffs in *Cooper*, the Arizona Plaintiffs were the "putative class agent[s]" for the unnamed class members. *See* Pl. Br. at 11; JA49-65. The Arizona Plaintiffs alleged in the Arizona action their individualized facts and brought individual claims. *See* JA49-65. The Arizona District Court specifically adjudicated those individual claims and refused to even address class issues because the Arizona Plaintiffs' individual claims were dismissed with prejudice. *Leake*, 2023 U.S. Dist. LEXIS 32177, at *13-19. Plaintiffs' appeal brief never grapples with any of these fundamental points. *See* Pl. Br. at 8-12.

28

Plaintiffs appear to argue that the District Court applied *res judicata* to the Additional Plaintiffs, such that they were "robbed of the opportunity to bring any claim at all…." *See id.* at 11-12. That assertion is also false. Raytheon never argued that the Additional Plaintiffs were barred by *res judicata*. *See, e.g.,* JA207 (arguing that "[t]he Arizona Plaintiffs' claims are barred by *res judicata*"). And the District Court never held that the Additional Plaintiffs' claims were barred by *res judicata*. *See* JA258-259 ("***the Arizona Plaintiffs*** claims are barred based on res judicata" (bold and italicized emphasis added)). Raytheon agrees that the Additional Plaintiffs were not barred by *res judicata*. Instead, as set forth immediately below, their claims were untimely.

The Arizona Plaintiffs' claims were quite obviously barred by *res judicata*. Plaintiffs never articulated a non-frivolous basis to argue otherwise, and they still have not done so on appeal. The District Court's holding should be affirmed.

## III. The District Court Correctly Determined That Plaintiffs' Claims Were Untimely.

Even setting aside the *res judicata* issue, all Plaintiffs' claims were untimely. Plaintiffs do not dispute that they failed to commence the Virginia action with 90 days of receiving their EEOC right-to-sue letters. Instead, they rely upon the *American Pipe* tolling doctrine, which this Court has never held continues during an appeal, and which the First, Second, Fifth, Seventh, Eleventh, and Federal Circuits

29

have all held does not continue on appeal. The District Court properly rejected Plaintiffs' tolling argument, and this Court should affirm.

### A. There is no Dispute That Plaintiffs Did Not Commence The Virginia Action Within 90 Days of Receiving Their Right-to-Sue Letters.

"Title VII requires that an aggrieved person file a civil action within 90 days of receiving a right-to-sue letter from the EEOC." *Quinn v. Copart of Conn., Inc.*, 791 F. App'x 393, 395 (4th Cir. 2019). "It is well settled that a Title VII claimant who fails to file a complaint within the 90-day period generally forfeits his right to pursue his claims." *Id.*

Here, it was (and is) undisputed that none of the Plaintiffs filed suit within 90 days of receiving their right-to-sue letters. *See* Pl. Br. at 12-15. As set forth above, many of the Plaintiffs received their right-to-sue letters more than ***two years*** before they commenced the Virginia action. *See* JA82-112. The most recent right-to-sue letter, issued to Mr. Heyser on August 5, 2024, required him to file suit no later than November 4, 2024. *See* JA109. Yet the Virginia action was not commenced until November 20, 2024. JA2. The District Court correctly determined that Plaintiffs' action was untimely.

**B.** **This Court Has Never Held That *American Pipe* Tolling Continues Pending Appeal and Other Circuit Courts Are Uniform in Holding That it Does Not.**

Unable to dispute that the Virginia action was not commenced within 90 days of their EEOC letters, Plaintiffs contend that their claims were "tolled" by the Arizona action because all Plaintiffs were members of the putative class. Pl Br. at 12-15. They rely on a limited exception to the statute of limitations outlined in *American Pipe, supra. See id.* That reliance is misplaced.

Under *American Pipe*, filing a class action tolls the statute of limitations for the individual claims of putative class members "***until the class action is denied***." *Bridges*, 441 F.3d at 210 (emphasis added). As this Court explained, "the *American Pipe* rule provides a ***narrow exception*** to the fixed statutes of limitations, suspending their running from the date a class action is filed until the date it is denied, ***for whatever reason***." *Id.* at 212 (emphasis added). Once the class action is dismissed ***for whatever reason***, the tolling ends. *See id.* at 212-13.

Absent entry of a stay pending appeal, federal court judgments are generally effective after 30 days. *See* Fed. R. Civ. P. 62. "The general rule is that the judgment of a district court becomes effective and enforceable as soon as it is entered; there is no suspended effect pending appeal unless a stay is entered." *In re Copper Antitrust Litig.*, 436 F.3d 782, 793 (7th Cir. 2006); *see also, e.g., City of San Antonio v. Hotels.com, L.P.*, 593 U.S. 330, 333 (2021) ("Unless a further stay

31

is granted, the prevailing party can attempt to execute on [a] judgment while an appeal is pending").

Consistent with that principle, *American Pipe* tolling **does not continue while an appeal is pending**; "the statute of limitations begins running again as soon as class certification is denied…. At that point, the parties are on notice that they must take steps to protect their rights or suffer the consequences." *Copper Antitrust*, 436 F.3d at 793; *see also Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 117 (2d Cir. 2013) ("If the Court had contemplated that tolling continued through the pendency of reconsideration or through appeal, there would be no need for class members to take action to protect their rights"); *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 519 (5th Cir. 2008) ("an appeal of the denial of class certification does not extend the tolling period"); *Culver v. City of Milwaukee*, 277 F.3d 908, 914 (7th Cir. 2002) ("**[W]hen the suit is dismissed…the statute resumes running for the class members**" (emphasis added)); *Stone Container Corp. v. United States*, 229 F.3d 1345, 1355-56 (Fed. Cir. 2000) ("[W]e hold that tolling ends when class certification is denied **in the trial court**" (emphasis added)); *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1391 (11th Cir. 1998) (en banc) ("If class certification is denied in whole or in part, the statute of limitations begins to run again as to those putative class members who were excluded from the class. In order to protect their rights, such individuals must seek to intervene in the

pending action…, ***or file a separate individual action before the time remaining in the limitations period expires***" (emphasis added)); *Andrews v. Orr*, 851 F.2d 146, 149-50 (6th Cir. 1988) (holding that the suit "ceased to be a class action," and tolling ended, upon entry of order denying class certification); *Fernandez v. Chardon*, 681 F.2d 42, 48 (1st Cir. 1982) ("the statute will resume running when class certification is denied"); *Womack v. UPS*, 311 F. Supp. 2d 492, 496-97 (E.D.N.C. 2004) ("Many Circuit Courts of Appeals have held that tolling ceases directly upon the denial of class certification, and does not extend…***throughout the appeals process***" (emphasis added)).

Even assuming *arguendo* that Plaintiffs—including the Arizona Plaintiffs whose claims are barred by *res judicata*—were entitled to tolling, the statute of limitations resumed when the Arizona action was dismissed on February 27, 2023 or, being generous to Plaintiffs, 30 days thereafter in accordance with the automatic stay in Rule 62(a), *i.e.*, March 29, 2023. *See Leake*, 2023 U.S. Dist. LEXIS 32177, at *19. Plaintiffs whose right-to-sue letters were issued before March 29, 2023— Mr. Garza, Ms. Grace, Ms. Leake, Mr. Stein, and Ms. Zepeda—had 90 days, *i.e.*, until June 27, 2023, to file a new suit. *See* JA82-97.

The other Plaintiffs, whose right-to-sue letters came ***after*** the Arizona action was dismissed with prejudice, had 90 days from receipt of their respective letters to file: July 12, 2023 for Mr. Sublett; April 1, 2024 for Ms. Hernandez; and November

33

4, 2024 for Mr. Heyser. *See* JA99-112. They did not sue until November 20, 2024. JA2. Accordingly, the District Court correctly held that their claims were untimely.

### C. Plaintiffs' Citation to State Court Decisions That Relied on Outdated Authorities is Unavailing.

Plaintiffs cite two state court cases to "support" their position: *Seaboard Corp. v. Marsh Inc.*, 284 P.3d 314 (Kan. 2012) and *American Tierra Corp. v. W. Jordan*, 840 P.2d 757 (Utah 1992). *See* Pl. Br at 13-14. As an initial matter, Plaintiffs never cited to these cases in connection with Raytheon's motion to dismiss, so they were not before the District Court when it issued its July 22, 2025 decision. *See* JA233-236. The argument is thus waived. "It is well established that this court does not consider issues raised for the first time on appeal, absent exceptional circumstances." *Tarashuk v. Givens*, 53 F.4th 154, 167 (4th Cir. 2022). Plaintiffs point to no exceptional circumstances that would warrant the Court considering these new arguments. *See* Pl. Br. at 13-14. In any event, these authorities do not help Plaintiffs.

*Seaboard* involved a specific Kansas saving statute not at issue here, K.S.A 60-518. *See Seaboard*, 284 P.3d at 328. The Kansas Supreme Court expressly held that "we apply the plain language of the statute rather than base this decision on the policy reasons that underlie the tolling principle of *American Pipe*…**especially because we have previously declined to adopt** *American Pipe*

**tolling principles."** *Id.* at 327 (bold emphasis added). Accordingly, *Seaboard* has nothing to do with this case.

True, the Kansas Supreme Court asserted, in *dicta*, that "several federal courts have held that *American Pipe* tolling continues during the pendency of the class action, including while its certification status is on appeal." *Id.* at 329. Even setting aside that it is *dicta*, the Kansas court relied upon cases that were later overruled or vacated. It cited to *Griffin v. Singletary*, 17 F.3d 356 (11th Cir. 1994), but the Eleventh Circuit, sitting *en banc*, subsequently held that *American Pipe* tolling **does not** continue during an appeal. *Armstrong*, 138 F.3d at 1382-91. *Seaboard* also cited a Third Circuit decision that the Kansas court acknowledged was vacated by the Supreme Court. *See Seaboard*, 284 P.3d at 329. Finally, *Seaboard* relied upon a New York District Court decision, *see id.*, but the Second Circuit later effectively overruled that decision. *See Giovanniello*, 726 F.3d at 117.

The Utah Supreme Court's decision in *American Tierra* suffers from a similar problem. There, the Utah court claimed that "[s]everal lower federal courts have…uniformly conclud[ed] that the rationale for tolling continues throughout the pendency of the appeal." *American Tierra*, 840 P.2d at 762. Notably, the *en banc* Eleventh Circuit held that "the *American Tierra* court misread federal law." *Armstrong*, 138 F.3d at 1384 n.18. For good reason: *American Tierra* relied primarily on the Seventh Circuit's decision in *Jimenez v. Weinberger*, 523 F.2d

35

689 (7th Cir. 1975). But, the Seventh Circuit later held that *Jimenez*'s statement was "dicta" that "should not be followed." *Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998) ("Later cases have confirmed that time begins immediately, rather than after final judgment or decision on appeal").

The *American Tierra* court also cited to a district court case from Connecticut, which is within the Second Circuit and thus was effectively overruled by *Giovanniello, supra*; and a district court case from Mississippi, which is within the Fifth Circuit and thus was effectively overruled by the Fifth Circuit in *Taylor, supra*. The only other case cited by *American Tierra* was a 1985 Maryland District Court case in which the court held that *American Pipe* tolling ***did not apply***. *See Davis v. Bethlehem Steel Corp.*, 600 F. Supp. 1312, 1319 (D. Md. 1985), *aff'd* 769 F.2d 210 (4th Cir. 1985).[10] *Davis* did include *dicta* suggesting that tolling could continue on appeal, but it relied upon, *inter alia*, the Seventh Circuit's *Jimenez dicta*, which, again, the Seventh Circuit subsequently instructed courts not to follow. *See id.* at 1316; *see also Armstrong*, 138 F.3d at 184 n.18 (stating that *Davis* was "wrongly decided").

---

[10] When it affirmed the decision, this Court similarly held that *American Pipe* ***did not apply*** because the prior class complaint did not provide "fair notice." *See Davis*, 769 F.2d at 212. This Court did not address whether tolling continues during an appeal. *See id.*

36

In short, Plaintiffs cannot justify their conduct by belatedly citing to state court cases—which they never cited in opposition to Raytheon's motion to dismiss—that discussed this issue in *dicta* or relied upon authorities that were overruled, vacated, or otherwise inapplicable. The District Court should be affirmed.

## IV. The District Court's Dismissal is Supported by Other Grounds in The Record.

Although the Court need go no further, the District Court's decision to dismiss was supported by other grounds in the record. "We may affirm on any ground supported by the record regardless of the ground on which the district court relied." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). Here, as Raytheon argued below, Plaintiffs failed to plead several essential elements of their claims, which was a separate basis for dismissal. JA213-222.

To plead a *prima facie* case under Title VII, a plaintiff must allege: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Chalmers v. Tulon Co.*, 101 F.3d 1012, 1019 (4th Cir. 1996) (internal quotation marks omitted). Here, Plaintiffs failed adequately to allege a *bona fide* religious belief that conflicted with an employment requirement.

"To qualify for Title VII protection, a plaintiff must show her professed belief is (1) sincerely held and (2) religious in nature." *Barnett v. Inova Health Care Servs.*,

37

125 F.4th 465, 470 (4th Cir. 2025). The first prong can "rarely be determined on…a motion to dismiss," *id.*, and Raytheon did not argue that prong below. *See* JA214. Instead, Raytheon contended that Plaintiffs failed to sufficiently allege that their beliefs were religious in nature or that those beliefs conflicted with an employment requirement. *See id.*

"[T]he very concept of ordered liberty precludes allowing every person to make his [or her] own standards on matters of conduct in which society as a whole has important interests." *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972). Thus, in assessing whether a plaintiff's belief is religious in nature, courts look to whether those beliefs (1) "address fundamental and ultimate questions having to do with deep and imponderable matters," (2) are "comprehensive in nature," and (3) "are accompanied by certain formal and external signs." *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981); *see also Dettmer v. Landon*, 799 F.2d 929, 931 (4th Cir. 1996) (following *Africa* to assess whether group constituted a religion).

This Court's decision in *Barnett* is instructive. In that case, the plaintiff was denied an exemption from vaccination—unlike Plaintiffs here—and she alleged that "she was a devout Christian, baptized in 2011, and made 'all life decisions after thoughtful prayer and Biblical guidance.'" *Id.* The plaintiff further alleged specific beliefs: "(1) it would be sinful for her to engage with a product such as the vaccination after having been instructed by God to abstain from it; (2) her religious

38

reasons for declining the covid vaccinations . . . were based on her study and understanding of the Bible and personally directed by the true and living God; and (3) receiving the vaccine would be sinning against her body, which is a temple of God, and against God himself." *Id.* at 471 (internal quotation marks omitted).

The Court held that these allegations were sufficient to allege beliefs that were religious in nature and those beliefs conflicted with the applicable employment requirement. *See id.* Plaintiffs did not make similar allegations here.

The Amended Complaint alleged that the "testing, masking, and travel restriction" conditions of Plaintiffs' vaccination exemptions "violated Plaintiffs' religious beliefs." JA189 ¶ 2. Plaintiffs never explained why that was the case; what their "religious beliefs" were; or how the health and safety conditions of their vaccination exemptions "violated" those beliefs. *See id.*

Elsewhere, Plaintiffs alleged that they "all had sincere religious beliefs that conflicted with *aspects* of the testing, masking, and travel restriction regime." JA197 at Count I, ¶ 8 (emphasis added). This conclusory allegation did not explain what Plaintiffs' "religious beliefs" were, which Plaintiffs held those beliefs, or how certain, undefined "aspects" of the health and safety conditions for Plaintiffs' vaccine exemptions "conflicted" with those beliefs. *See id.* The same was true for Plaintiffs' individual allegations: they alleged that they submitted "religious accommodation request[s]" and that masking and testing "violated [their] beliefs,"

39

but nowhere explained what those beliefs were or why those beliefs precluded wearing a mask or taking a test. *See* JA189-195 ¶¶ 5, 7-11, 16-26, 33-62.

In fact, certain Plaintiffs affirmatively represented that their objections to masking, testing, and the like were *not* religious in nature. Plaintiffs Rossana Hernandez and Leslie Zepeda, in particular, claimed in conclusory fashion that masking and testing conflicted with their "conscience," rather than religion. *See* JA193, 195 ¶¶ 36-37, 64. Ms. Zepeda further alleged that her objection related to HIPAA, not religion. *See* JA195 ¶ 64.

Moreover, in the Arizona action, the Arizona Plaintiffs admitted that they "*did not object* to other non-permanent safety measures, such as *physical distancing*, sick leave, *indoor masking*, and teleworking. [Plaintiffs] had complied with such measures during the prior eleven months…." JA54 ¶ 29 (emphasis added). Plaintiffs Lisa Leake, J. Michael Heyser, and Christopher Stein alleged that they objected to testing and masking not because of religion, but because they believed (erroneously) that the tests had been "recalled by the FDA" or that wearing a mask would single them out from other employees. JA55-57 ¶¶ 36, 47-49, 56-57. These judicial admissions are binding on the Arizona Plaintiffs. *See, e.g., Flexi-Van Leasing, Inc. v. Travelers Indem. Co.*, 837 F. App'x 141, 145 (4th Cir. 2020).

Notably, the Arizona District Court previously held that the Arizona Plaintiffs failed adequately to plead whether their beliefs were religious in nature or how those

40

beliefs conflicted with the conditions of their vaccination exemptions. *See, e.g., Leake*, 2023 U.S. Dist. LEXIS 32177, at \*14-17. The same conclusion applies here.

Plaintiffs' allegations did not come close to the level of detail found in the allegations in *Barnett*. The Court and Raytheon are left to guess as to what Plaintiffs' beliefs were; whether those beliefs were actually religious in nature; and why those beliefs were inconsistent with masking, testing, and the other health and safety conditions of their vaccination exemptions. Accordingly, the Amended Complaint could have been dismissed on this alternative ground.[11]

## CONCLUSION

For the foregoing reasons, Raytheon respectfully requests that this Court affirm the District Court.

Dated:          November 12, 2025                Respectfully submitted,

                                                 SEYFARTH SHAW LLP


                                                 */s/ Owen R. Wolfe*

Dawn R. Solowey                                  Samantha L. Brooks
dsolowey@seyfarth.com                            975 F Street, NW
Seaport East, Suite 1200                         Washington, DC 20004

---

[11] Plaintiffs did not request leave to amend in the District Court, but leave would have been futile. Plaintiffs had three tries at pleading their claims (once in the Arizona action and twice in the Virginia action) and failed each time. *See, e.g., Feeley v. Totally Realty Mgmt.*, 660 F. Supp. 2d 700, 715-16 (E.D. Va. 2009) ("Given the multiple attempts that Plaintiffs have had to sufficiently set forth their allegations in three tries, this Court is of the opinion that further leave to amend is futile, and therefore the dismissal is with prejudice").

Two Seaport Lane
Boston, Massachusetts 02210
Telephone:   (617) 946-4985
Facsimile:    (617) 439-3675

Telephone: (202) 463-2400
Facsimile: (202) 828-5393
sbrooks@seyfarth.com

Owen R. Wolfe
owolfe@seyfarth.com
620 Eighth Avenue
New York, New York 10018
Telephone:   (212) 218-5500
Facsimile:    (212) 218-5526

*Attorneys for Defendant-Appellee*

42

# CERTIFICATE OF COMPLIANCE

**4th Cir. Case Number(s): <u>25-2022</u>**

I am the attorney or self-represented party.

**This brief contains 9,674 words**, including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f).  The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this response brief complies with the word limit of FRAP 29(a)(5).

Dated: November 12, 2025

<u>*/s/ Owen R. Wolfe*</u>
Owen R. Wolfe

43

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2025, I electronically filed the foregoing Brief of Defendant-Appellee with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system, which caused a copy of the same to be served on counsel of record by email.

_/s/ Owen R. Wolfe_
Owen R. Wolfe